**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:22-cv-22483-GAYLES/TORRES**

EXPRESS FREIGHT INTERNATIONAL et al.,

      Plaintiffs,

v.

HINO MOTORS LTD., et al.,

      Defendants.

_____/

**DEFENDANTS HINO MOTORS MANUFACTURING U.S.A., INC. AND HINO**
**MOTORS SALES U.S.A., INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

    A.    The Parties. ............................................................................................ 3

    B.    Federal Regulation of Emissions for New Motor Vehicle Engines. ....................... 3

    C.    Plaintiffs' Allegations. ........................................................................... 5

PROCEDURAL STANDARD ............................................................................................. 7

ARGUMENT ......................................................................................................................... 7

I.       PLAINTIFFS LACK ARTICLE III STANDING ........................................................... 7

    A.    Plaintiffs Lack Standing to Sue for Mere Technical Violations of Federal Law or Generalized Environmental Harms. ........................................................ 8

    B.    Plaintiffs Fail To Allege A Concrete Injury. ......................................................... 9

          1.    Plaintiffs Do Not Allege The "SCR Emissions Fraud" Injured Them. ........................................................................................ 9

          2.    Plaintiffs Do Not Allege The "Defective OBD System" Injured Them. ....................................................................................... 11

          3.    Plaintiffs Do Not Allege The "Fuel Efficiency Fraud" Injured Them. ....................................................................................... 12

    C.    Plaintiffs Lack Standing to Sue Under the Laws of States Where No Plaintiff Purchased a Hino Vehicle. ...................................................................... 14

II.      PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW ............................ 15

    A.    Plaintiffs' Claims Are Expressly Preempted by the Clean Air Act. .................... 15

    B.    Plaintiffs' Claims Are Implicitly Preempted. ....................................................... 20

III.    THE FRAUDULENT CONCEALMENT CLAIM SHOULD BE DISMISSED ............ 21

    A.    The Complaint Does Not Plausibly Allege That Anything Was Concealed. ....... 22

    B.    Plaintiffs Have Not Identified Any Duty To Disclose. ......................................... 24

    C.    Plaintiffs Have Not Identified Any Omissions On Which They Relied. .............. 27

D.      The Economic Loss Rule Bars The Damages Plaintiffs Seek Here. ................... 27

IV.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR
       SEVERAL ADDITIONAL REASONS .......................................................................... 28

A.      The State Consumer Protection Claims Should Be Dismissed............................ 29

        1.      The State Consumer Protection Claims Fail For Many Of The
                Same Reasons As The Fraudulent Concealment Claim. ......................... 29

        2.      Additional State-Specific Requirements Further Bar Plaintiffs'
                Consumer Protection Claims. ................................................................... 31

B.      The Breach-of-Express-Warranty Claims Should Be Dismissed. ....................... 32

        1.      Claims Based on CAA-Mandated Warranties Are Preempted. ............... 33

        2.      Claims Based on Hino's Warranties Fail.................................................. 34

        3.      The Express Warranty Claims Suffer Additional Defects Under
                Each State's Law...................................................................................... 35

C.      The Breach-of-Implied-Warranty Claims Should Be Dismissed. ....................... 37

        1.      Plaintiffs Have Not Alleged that the Class Trucks Were Not
                Merchantable............................................................................................ 37

        2.      The Implied Warranty Claims Fail For Lack of Privity. ......................... 39

        3.      The Implied Warranty Claims Suffer Additional Defects Under
                Each State's Law...................................................................................... 39

D.      The California Song-Beverly Warranty Claims Should Be Dismissed. ............... 40

CONCLUSION.................................................................................................................... 40

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page(s)**

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ............................................................22, 25, 26, 27, 30

*Alvarez v. Bank of Am. Corp.*,
  2014 WL 3767669 (S.D. Fla July 31, 2014)............................................................................30

*Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*,
  998 F. Supp. 10 (D. Mass. 1997) ............................................................................................15

*Am. Suzuki Motor Corp. v. Sup. Ct.*,
  37 Cal. App. 4th 1291 (Ct. of App. 2d Dist. 1995)..................................................................38

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) .......................................................................22, 25, 27

*Arnett v. Seaside Transp. Servs.*,
  2014 WL 117325 (N.D. Cal. Jan. 13, 2014) ...........................................................................32

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*,
  2010 WL 1882316 (D. Conn. May 10, 2010)....................................................................29, 31

*Bailey v. Janssen Pharmaceutica, Inc.*,
  2006 WL 3665417 (S.D. Fla. Nov. 14, 2006).........................................................................38

*Baker v. Heller*,
  571 F. Supp. 419 (S.D. Fla. 1983) .........................................................................................10

*Bank v. Ikon Off. Sols., Inc.*,
  2011 WL 2633658 (D. Conn. July 5, 2011) ...........................................................................30

*Benchmark Bldg. Corp. v. United Builders Supply Co., Inc.*,
  1992 WL 124139 (Conn. Super. Ct. May 29, 1992)...............................................................37

*Benipayo v. Volkswagen Grp. of Am., Inc.*,
  2020 WL 553884 (N.D. Cal. 2020) ........................................................................................39

*Bledsoe v. FCA US LLC*,
  307 F. Supp. 3d 646 (E.D. Mich. 2018)......................................................................11, 13, 24

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001).....................................................................................15, 20, 21, 22

*Burns v. Winnebago Indus., Inc.*,
  2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) .......................................................................28

*Byrnes v. Small*,
   142 F. Supp. 3d 1262 (M.D. Fla. 2015) ..........................................................................36

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
   2015 WL 4591236 (D.N.J. July 29, 2015) ...............................................................20, 33

*Centore v. Smith*,
   1994 WL 235359 (Ct. Sup. Ct. May 23, 1994) ..............................................................29

*Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*,
   2021 WL 2653819 (S.D. Fla. Feb. 8, 2021) ..................................................................34

*Chapman v. Priceline Grp., Inc.*,
   2017 WL 4366716 (D. Conn. Sept. 30, 2017) ..............................................................31

*In re Chrysler-Dodge-Jeep Ecodiesel Mrktg, Sales Pracs., & Prods. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .....................................................................33, 39

*Chung v. Igloo Prods. Corp.*,
   2022 WL 2657350 (E.D.N.Y. July 8, 2022) .................................................................35

*U.S. ex rel. Clausen v. Lab'y Corp. of Am.*,
   290 F.3d 1301 (11th Cir. 2002) ..............................................................................21, 24

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ....................................................................................39

*Coba v. Ford Motor Co.*,
   932 F.3d 114 (3d Cir. 2019) ......................................................................................35

*Coleman v. Bos. Sci. Corp.*,
   2011 WL 13249828 (E.D. Cal. 2011) .........................................................................37

*Collins v. Anthem Health Plans, Inc.*,
   880 A.2d 106 (Conn. 2005) .......................................................................................30

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
   2012 WL 13148744 (S.D. Fla. July 11, 2012) .............................................................25

*Counts v. Gen. Motors, LLC*,
   237 F. Supp. 3d 572 (E.D. Mich. 2017) .......................................................9, 12, 13, 17, 26

*D'Agnese v. Novartis Pharms. Corp.*,
   952 F. Supp. 2d 880 (D. Ariz. 2013) ..........................................................................33

*Danise v. Safety-Kleen Corp.*,
   17 F. Supp. 2d 87 (D. Conn. 1998) ............................................................................37

*Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*,
2012 WL 1019066 (D. Ariz. Mar. 26, 2012) .........................................................................28

*Dipito LLC v. Siderman*,
2022 WL 3205205 (S.D. Cal. Apr. 18, 2022) .......................................................................40

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011) ..................................................................................31

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) .............................................................................................10, 23

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004) .............................................................................................................19

*Engine Mfrs. Ass'n v. U.S. E.P.A.*,
88 F.3d 1075 (D.C. Cir. 1996) ..............................................................................................4

*Estrada v. Becker*,
917 F.3d 1298 (11th Cir. 2019) ...........................................................................................15

*Ferry v. Mead Johnson & Co.*,
514 F. Supp. 3d 418 (D. Conn. 2021) ..................................................................................38

*In re Fla. Cement & Concrete Antitrust Litig.*,
746 F. Supp. 2d 1291 (S.D. Fla. 2010) ................................................................................24

*Flemming v. Goodwill Mortg. Servs., LLC*,
648 F. Supp. 2d 292 (D. Conn. 2009) .............................................................................22, 27

*Flory v. Silvercrest Indus.*,
129 Ariz. 574 (1981) ............................................................................................................37

*Fraiser v. Stanley Black & Decker*,
109 F. Supp. 3d 498 (D. Conn. 2015) ..................................................................................37

*Franklin v. Curry*,
738 F.3d 1246 (11th Cir. 2013) .............................................................................................7

*Frezza v. Google Inc.*,
2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) .....................................................................32

*Garcia v. Gen. Motors LLC*,
2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) ......................................................................25

*Garlough v. FCA US LLC*,
2021 WL 4033177 (E.D. Cal. Sept 3. 2021) .......................................................................31

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
  26 F.4th 1235 (11th Cir. 2022) ..........................................................................14

*Goldstein v. Gen. Motors LLC*,
  517 F. Supp. 3d 1076 (S.D. Cal. 2021)..............................................................28

*Hallmark Indus., Inc. v. Truseal Techs, Inc.*,
  2015 WL 13626029 (D. Ariz. Sept. 30, 2015).....................................................38

*Haugland v. Winnebago Indus.*,
  327 F. Supp. 2d 1092 (D. Ariz. 2004) ...............................................................39

*Hix v. Bos. Sci. Corp.*,
  2019 WL 6003456 (D. Ariz. Nov. 14, 2019)........................................................27

*Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*,
  641 F.3d 1259 (11th Cir. 2011) ..........................................................................13

*Humana Pharmacy Sols., Inc. v. Michelin*,
  2021 WL 3403950 (S.D. Fla. June 15, 2021) ......................................................24

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
  2021 WL 3666312 (S.D. Fla. Aug. 18, 2021).......................................................33

*Jackson v. Eddy's LI RV Ctr., Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012) ...............................................................39

*Jackson v. Gen. Motors Corp.*,
  770 F. Supp. 2d 570 (S.D.N.Y. 2011)................................................................16

*Jovine v. Abbott Labs., Inc.*,
  795 F. Supp. 2d 1331 (S.D. Fla. 2011) ..........................................................35, 38

*Kahn v. FCA US LLC*,
  2019 WL 3955386 (C.D. Cal. Aug. 2, 2019).......................................................35

*Kaiser v. Depuy Spine, Inc.*,
  944 F. Supp. 2d 1187 (M.D. Fla. 2013)..............................................................36

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp. 2d 392 (S.D.N.Y. 2013)................................................................28

*Kane v. Chobani, Inc.*,
  2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ....................................................29

*Kelly v. Lee County RV Sales Co.*,
  819 F. App'x 713 (11th Cir. 2020) ....................................................................39

*Kenney v. Healey Ford-Lincoln-Mercury, Inc.*,
   730 A.2d 115 (Conn. App. 1999) ........................................................................25

*Koublani v. Cochlear Ltd.*,
   2021 WL 2577068 (E.D.N.Y. June 23, 2021) ......................................................36

*Lewis v. Mercedes-Benz USA, LLC*,
   530 F. Supp. 3d 1183 (S.D. Fla. 2021) ................................................................14

*Lugones v. Pete & Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020)..................................................................36

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................................9

*McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*,
   623 F. App'x 980 (11th Cir. 2015) ........................................................................7

*In re Mercedes-Benz Emissions Litig.*,
   2016 WL 7106020 (D.N.J. Dec. 6, 2016) ............................................................13

*Meyer v. Colavita USA*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) ...................................................36

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ...................................................................37

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ...........................................................................22

*Morales v. Trans World Airlines, Inc*.,
   504 U.S. 374 (1992)..............................................................................................15

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
   2019 WL 1418129 (D.N.J. Mar. 29, 2019)..........................................................31

*Muransky v. Godiva Chocolatier, Inc*.,
   979 F.3d 917 (11th Cir. 2020) .........................................................................8, 14

*Murphy v. Nat'l Iron & Metal Co.*,
   71 Ariz. 323 (1951)...............................................................................................37

*Nathan Kimmel, Inc. v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) .............................................................................21

*Nemes v. Dick's Sporting Goods, Inc*.,
   521 F. Supp. 3d 328 (S.D.N.Y. 2021)..................................................................38

*Newton v. Kraft Heinz Foods Co.*,
   2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ......................................................31

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2015 WL 12732461 (C.D. Cal. May 27, 2015) ......................................................30

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ............................................................22, 25

*Omega Eng'g, Inc. v. Eastman Kodak Co.*,
   30 F. Supp. 2d 226 (D. Conn. 1998) ...................................................................33

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ...................................................................26

*Parducci v. Overland Sols., Inc.*,
   399 F. Supp. 3d 969 (N.D. Cal. 2019) .................................................................23

*Peguero v. Toyota Motor Sales, USA, Inc.*,
   2020 WL 10354127 (C.D. Cal. Nov. 18, 2020)................................................29, 30

*Perret v. Wyndham Vacation Resorts, Inc.*,
   889 F. Supp. 2d 1333 (S.D. Fla. 2012) ................................................................30

*Powell v. Powell*,
   2017 WL 2422958 (D. Ariz. Feb. 22, 2017)......................................................22, 25

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016)........................................................................................15

*Punian v. Gillette Co.*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016).......................................................30

*R.J. Reynolds Tobacco Co. v. Whitmire*,
   260 So. 3d 536 (Fla. Dist. Ct. App. 2018) ...........................................................26

*Ramirez v. E.I. Dupont De Nemours & Co.*,
   2010 WL 3529509 (M.D. Fla. Sept. 3, 2010) ...................................................20, 21

*Richard v. Johnson & Johnson, Inc.*,
   2018 WL 2976002 (N.D.N.Y. June 12, 2018)........................................................39

*Rickman v. BMW of N. Am.*,
   2019 WL 2710068 (D.N.J. June 27, 2019)........................................................11, 24

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008)........................................................................................16

*Riehle v. Bank of Am., N.A.*,
  2013 WL 1694442 (D. Ariz. Apr. 18, 2013) ........................................................29

*Robison v. Gen. Motors LLC*,
  2019 WL 1902592 (E.D. Cal. Apr. 29, 2019).......................................................27

*Rodarte v. Philip Morris, Inc.*,
  2003 WL 23341208 (C.D. Cal. June 23, 2003) ....................................................33

*Schaefer v. Seattle Serv. Bureau, Inc.*,
  2015 WL 9031511 (M.D. Fla. Dec. 16, 2015)................................................29, 30

*Schellenbach v. GoDaddy.com, LLC*,
  321 F.R.D. 613 (D. Ariz. 2017) ...........................................................................30

*Shanks v. Jarrow Formulas, Inc.*,
  2019 WL 4398506 (C.D. Cal. Aug. 27, 2019).......................................................29

*Sheris v. Nissan N.A. Inc.*,
  2008 WL 2354908 (D.N.J. June 3, 2008) ..............................................................38

*Silving v. Wells Fargo Bank, NA*,
  800 F. Supp. 2d 1055 (D. Ariz. 2011) .......................................................29, 30, 31

*Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*,
  862 F.2d 1449 (11th Cir. 1989) (en banc) ......................................................17, 19

*Sivilli v. Wright Med. Tech.*,
  2019 WL 3803808 (S.D. Cal. Aug. 13, 2019) ......................................................32

*Smith v. Ford Motor Co.*,
  749 F. Supp. 2d 980 (N.D. Cal. 2010) ............................................................30, 31

*Smith v. Teva Pharms. USA, Inc.*,
  437 F. Supp. 3d 1159 (S.D. Fla. 2020) .................................................................15

*Solomon v. Bell Atl. Corp.*,
  9 A.D.3d 49 (1st Dep't 2004) ........................................................................29, 30

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).............................................................................................7, 8

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)................................................................................................9

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ..................................................................38

ix

*In re Takata Airbag Prod. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016) ..............................................................27, 39

*In re Takata Airbag Prods. Liab. Litig.*,
  2016 WL 1266609 (S.D. Fla. Mar. 11, 2016) ...........................................................14

*In re Takata Airbag Prods. Liab. Litig.*,
  2016 WL 6072406 (S.D. Fla. Oct. 14, 2016) .............................................................32

*Taleshpour v. Apple, Inc.*,
  2022 WL 1577802 (9th Cir. May 19, 2022) ...............................................................31

*TD Props., LLC v. VP Bldgs., Inc.*,
  602 F. Supp. 2d 351 (D. Conn. 2009) ........................................................................39

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................................................8, 9

*Tsao v. Captiva MVP Rest. Partners, LLC*,
  986 F.3d 1332 (11th Cir. 2021) ...................................................................................7

*Tucker v. Gen. Motors LLC*,
  2021 WL 2665761 (E.D. Mo. June 29, 2021) ............................................................38

*TVT Recs. v. Island Def Jam Music Grp.*,
  412 F.3d 82 (2d Cir. 2005) .........................................................................................27

*Vazquez v. Gen. Motors, LLC*,
  2018 WL 447644 (S.D. Fla. Jan. 16, 2018) ..................................................28, 29, 34

*Vicuna v. O.P. Schuman & Sons, Inc.*,
  298 F. Supp. 3d 419 (E.D.N.Y. 2017) ........................................................................33

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................................38

*In re Volkswagen "Clean Diesel" Litig.*,
  94 Va. Cir. 189 (2016) ...........................................................................18, 19, 34

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  2019 WL 4581340 (N.D. Cal. Sept. 20, 2019) ..........................................................25

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  264 F. Supp. 3d 1040 (N.D. Cal. 2017) ...................................................16, 17, 19, 21

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  959 F.3d 1201 (9th Cir. 2020) ...........................................................................18, 20

x

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) ........................................................................27

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
2020 WL 7866674 (S.D. Fla. Dec. 31, 2020) ....................................................14

*Zeigler v. Sony Corp. of Am.*,
48 Conn. Supp. 397 (Ct. Super. Ct. 2004) .......................................................40

*Zeldman v. Pershing LLC*,
2010 WL 11505834 (S.D. Fla. Aug. 20, 2010).................................................36

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
2022 WL 522484 (C.D. Cal. Feb. 9, 2022)........................................................30

*Zia v. CitiMortgage, Inc.*,
210 F. Supp. 3d 1334 (S.D. Fla. 2016) ...................................................7, 8, 10, 11

**Statutes**

42 U.S.C. § 7401.......................................................................................................3

42 U.S.C. § 7507.....................................................................................................15

42 U.S.C. § 7521.......................................................................................................4

42 U.S.C. § 7522.......................................................................................................4

42 U.S.C. § 7523.......................................................................................................4

42 U.S.C. § 7524.................................................................................................4, 20

42 U.S.C. § 7525.................................................................................................4, 20

42 U.S.C. § 7541.......................................................................................4, 17, 18, 20

42 U.S.C. § 7543.................................................................2, 5, 15, 17, 18, 19, 33

Cal. Civ. Code § 1761............................................................................................32

Cal. Civ. Code § 1780............................................................................................32

Cal. Civ. Code § 1791............................................................................................40

Cal. Civ. Code § 1793.2.........................................................................................40

Cal. Civ. Code § 1794............................................................................................40

Fla. Stat. § 672.607................................................................................................36

## Rules and Regulations

40 C.F.R. Part 1065.................................................................................................................4

40 C.F.R. Part 1066.................................................................................................................4

40 C.F.R. § 86.001-21.............................................................................................................4

40 C.F.R. § 86.007-11.............................................................................................................4

40 C.F.R. § 86.007-21.............................................................................................................4

40 C.F.R. § 86.010-2...............................................................................................................4

40 C.F.R. § 86.010-18...........................................................................................................19

40 C.F.R. § 86.094-21.............................................................................................................4

40 C.F.R. § 86.1848-01.........................................................................................................21

40 C.F.R. § 1036.205..............................................................................................................4

40 C.F.R. § 1036.535............................................................................................................18

40 C.F.R. § 1036.540............................................................................................................18

40 C.F.R. § 1037.501............................................................................................................18

40 C.F.R. § 1037.550............................................................................................................18

40 C.F.R. § 1068.501..............................................................................................................4

## Other Authorities

Fed. R. Civ. P. 9(b)  ...........................................................21, 22, 23, 24, 25, 26, 27, 29

Fed. R. Civ. P. 12(b)(1) .....................................................................................................1, 7

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 7

Local Rule 7.1(a)(3)...............................................................................................................41

Restatement (Third) of Torts: Liab. for Econ. Harm § 13 cmt. a (2020).......................25

Defendants Hino Motors Manufacturing U.S.A., Inc. ("HMM") and Hino Motors Sales U.S.A., Inc. ("HMS") (collectively, "Defendants"),[1] by and through the undersigned counsel, file this Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

In early August 2022, Hino Motors, Limited ("HML") released a report from a Special Investigative Committee that was established and commissioned by HML to examine potential irregularities in the testing processes for HML engines certified to comply with Japanese emissions standards. Although the report identified certain irregularities with engines marketed and sold in Japan, it did not examine any engines certified to meet United States emissions standards, let alone reach any conclusions regarding potential conduct affecting vehicles sold in the United States.

Three days after HML announced the Committee's findings, four businesses that purchased Hino trucks in the United States rushed to file this putative class action lawsuit, primarily citing to the Committee's findings in Japan. No Plaintiff alleges that it purchased a truck equipped with one of the Japanese-market engines implicated in the Committee's report, and the report does not conclude that any of Plaintiffs' three theories of misconduct affected vehicles sold in the United States. The Complaint nevertheless assumes that some of the same conduct that occurred in Japan also affected vehicles sold in the United States.

The thrust of the Complaint is that Hino sold trucks to Plaintiffs that failed to comply with United States emissions standards. Unlike other emissions-related cases filed against other manufacturers, the Complaint does not assert claims for affirmative misrepresentations, and it does not identify any specific representation that any Plaintiff relied upon. Instead, the Complaint accuses four defendants of fraudulently concealing that Plaintiffs' trucks violate federal emissions

---

[1] By prior order of the Court (Dkt. 57), defendant Hino Motors, Limited's deadline to respond to the Complaint is December 27, 2022. This motion is submitted on behalf of HMM and HMS only.

1

standards in three ways and of breaching several warranties.  For several reasons, the Complaint fails to state a claim against defendants HMM and HMS.

The Complaint suffers from two global defects that are fatal to all of Plaintiffs' claims. *First*, Plaintiffs lack Article III standing.  It is black-letter law that Plaintiffs cannot sue to enforce mere violations of federal law or generalized harm to the environment; they must instead allege a concrete injury that they personally suffered.  Each Plaintiff attempts to do so by claiming they paid increased fuel costs due to receiving a truck that was less fuel-efficient than they expected. By Plaintiffs' own admission, however, the conduct alleged in the Complaint would have resulted in ***better*** fuel economy and performance for their vehicles.  In any event, Plaintiffs have not even attempted to plead that ***their*** specific vehicles experienced worse-than-expected fuel economy, much less conducted any actual vehicle testing that other courts have concluded are necessary to establish Article III standing on emissions-related claims.

*Second*, Plaintiffs' claims are preempted by the Clean Air Act, which sets forth a broad and comprehensive federal emissions regime.  To ensure national uniformity, Congress enacted an express preemption provision that prohibits Plaintiffs from "attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."  42 U.S.C. § 7543(a).  Plaintiffs' claims are preempted by this section because, to prevail on any of their theories of liability, Plaintiffs must prove Defendants violated a "standard relating to the control of emissions."  Plaintiffs' claims also are implicitly preempted because the Environmental Protection Agency ("EPA") has the exclusive authority to determine how to enforce purported violations of the Clean Air Act.

Plaintiffs' claims fail for numerous other reasons.  Plaintiffs assert omission-based claims for fraudulent concealment and for violation of various states' consumer protection laws, but these

claims suffer from various defects: there are no allegations that anything was concealed by Defendants, that any Defendant owed a duty to disclose, or that any Plaintiff was misled by any Defendant's purported failure to disclose. The express and implied warranty claims fare no better: the alleged warranties do not cover Plaintiffs' trucks or to the emissions-related conduct at issue here. And, depending on the state law at issue, Plaintiffs' omission- and warranty-based claims also fail for other reasons, including: the economic loss rule, lack of privity, lack of pre-suit notice, and because they do not confer a right of action on businesses as opposed to consumers.

For these reasons and the additional reasons below, the Complaint should be dismissed.[2]

## BACKGROUND

### A.   The Parties.

Plaintiffs are four businesses located in Florida, California and New York. Three Plaintiffs allege they purchased Hino 268 trucks, which contain a J08E engine. Compl. ¶¶ 11–12, 14, 97. The fourth Plaintiff (Marders) allegedly purchased several unspecified Hino trucks. *Id.* ¶ 13.

Defendant HML is a Japanese corporation that designs and develops Hino engines for commercial vehicles. *Id.* ¶ 15. Defendant Toyota Motor Corporation owns more than half of the stock of HML. *Id.* Defendant HMM manufactures and assembles Hino trucks that are sold in the United States. *Id.* ¶ 16. Defendant HMS sells Hino trucks to Hino-affiliated dealerships throughout the United States. *Id.* ¶ 17.

### B.   Federal Regulation of Emissions for New Motor Vehicle Engines.

New motor vehicle engines—including the Hino engines at issue in this case—are subject to extensive regulation by the EPA under the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.* The CAA and the EPA's regulations establish federal emissions standards for new vehicles. *See*

---

[2] For the convenience of the Court, Exhibit 1 is a chart that summarizes the different reasons why each count of the Complaint should be dismissed.

42 U.S.C. § 7521; 40 C.F.R. § 86.007-11.  The EPA's standards apply not only to the vehicle's engine, but also to the vehicle's broader emissions control system and other technology designed to monitor or control emissions.  *See* 40 C.F.R. § 86.010-2; *id.* § 86.094-21; *id.* § 1068.501(a)(1)(i). The EPA also has promulgated extensive regulations that explain the procedures manufacturers must follow to test whether engines comply with these federal emissions standards.  *See, e.g.*, 42 U.S.C. § 7541(b); 40 C.F.R. Part 1065; 40 C.F.R. Part 1066.

Before any engine can be sold in the United States, the manufacturer must obtain a certification from EPA that the engine complies with applicable emissions standards.  *See* 42 U.S.C. § 7522(a)(1).  To obtain a certification, manufacturers must submit detailed emissions test results and other information to EPA.  40 C.F.R. § 86.094-21(b).  Manufacturers must also certify that they have complied with the EPA's testing requirements and that the test results satisfy EPA's emissions standards.  *See, e.g.*, *id.*; *id.* § 86.001-21(b)(1)(i)(C); *id.* § 86.007-21(p)(1); *id.* § 1036.205(i).

The CAA reflects Congress's intention to give the federal government exclusive authority to set and enforce federal emissions standards.  The EPA has broad authority to establish emissions standards, 42 U.S.C. § 7521(a)(l), and to test and monitor manufacturers' compliance with those standards, *id.* §§ 7525, 7541(b).  The EPA also has expansive authority to enforce compliance with those standards, including by forcing recalls of engines that do not meet emissions standards, *id.* § 7541(c)(1), and to impose penalties for violations of those standards, *id.* §§ 7523, 7524.  To avoid "the possibility of 50 different state regulatory regimes rais[ing] the spectre of an anarchic patchwork of federal and state regulatory programs," *Engine Mfrs. Ass'n v. U.S. E.P.A.*, 88 F.3d 1075, 1079 (D.C. Cir. 1996),[3] the CAA contains a broad preemption provision that states:  "No

---

[3] All internal quotations are omitted and emphases added unless otherwise noted.

State or any political division thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a).

### C.     Plaintiffs' Allegations.

On March 4, 2022, HML announced that it was suspending sale of three Japanese engine models—A05C, A09C, and E13C—and their corresponding vehicles in Japan, after having identified "past misconduct in relation to its applications for certification concerning the emissions and the fuel economy performance of its engines for the Japanese market." *See* Compl. ¶ 3 n.2. Following its March 4 announcement, HML established a Special Investigation Committee of outside experts and commissioned it to investigate the nature and extent of "past misconduct" that may have occurred in the Japanese market. *See id.* ¶ 4 n.3.  The Committee announced the results of its Japanese investigation on August 2, 2022, concluding (among other things) that HML had engaged in misconduct concerning certain engines certified to ***Japanese*** regulatory standards.

Just three days after the Committee issued its report on vehicles sold in Japan, Plaintiffs filed this lawsuit.  Plaintiffs do not allege that they purchased a truck equipped with any of the Japanese-market engines considered by the Committee, nor do Plaintiffs attempt to tie the Committee's conclusions to the specific vehicles that they purchased.  Nevertheless, drawing heavily on press releases summarizing the Committee's report, Plaintiffs speculate that Defendants engaged in the following three types of conduct to violate United States emissions standards:

**"SCR Emissions Fraud" Theory.**   A selective catalytic reduction ("SCR") system reduces emissions in diesel vehicles by breaking down exhaust gasses after they leave the engine. *Id.* ¶ 45.  Plaintiffs claim that federal emissions law required Hino to use the same SCR system when testing that is included in the actual trucks that are sold. *Id.* ¶ 58.  Plaintiffs allege that Hino violated these laws in the A05C engines—which none of the Plaintiffs allege they purchased—by

using a different SCR system during regulatory testing to pass emissions tests than the system that was installed in retail trucks.  *Id.* ¶¶ 6, 47.  This conduct purportedly violates federal emissions testing rules and might lead emissions to "exceed regulatory standards."  *Id.*  But higher emissions, according to Plaintiffs, corresponds with "greater … fuel efficiency."  *Id.* ¶ 43.

**"Fuel Efficiency Fraud" Theory.**  Federal emissions law governs how manufacturers must test engines to determine their fuel efficiency.  *Id.* ¶ 61.  Plaintiffs allege that Hino violated these test requirements in the A09C, E13C, and N04C engines—again, none of which Plaintiffs purchased—the result of which allegedly made trucks "appear more fuel efficient in certification tests than they actually were."  *Id.* ¶¶ 8, 60, 65–66.  Plaintiffs do not allege why they believe their trucks were less fuel efficient than expected, do not allege that they performed any testing to establish lower-than-expected fuel economy, and their Complaint does not identify any promise by Hino that their trucks would meet a certain fuel economy standard.

**"Defective OBD System" Theory.**  Federal emissions law requires vehicles to have an on-board diagnostic ("OBD") system that monitors a vehicle and reports potential issues, including with respect to emissions controls.  *Id.* ¶¶ 9, 75.  Plaintiffs claim that Hino trucks do not comply with this requirement, which they say can lead to clogged filters, higher-than-expected emissions, and increased maintenance costs.  *Id.* ¶¶ 76–77.  But Plaintiffs do not allege that any of their trucks contained a defective OBD system, or that they experienced clogged filters or increased maintenance costs.

Based on these theories, Plaintiffs assert a total of 23 different claims under five different states' laws (Arizona, California, Connecticut, Florida, and New York).  Each Plaintiff asserts a common-law claim for fraudulent concealment, claims for violations of various state consumer protection laws, and claims for alleged breaches of various common-law and statutory warranties.

Despite only purchasing trucks from four model years, Plaintiffs nevertheless seek to represent a class of purchasers of Hino trucks covering eighteen model years and seven different engine models. *Id.* ¶ 108 (seeking to represent U.S. purchasers of 2004–2021 model year Hino trucks equipped with A05C, A09C, E13C, N04C, J05D, J05E, and J08E engines).

## PROCEDURAL STANDARD

To survive a Rule 12(b)(1) motion, Plaintiffs "must clearly allege facts demonstrating [Article III] standing." *Zia v. CitiMortgage, Inc.*, 210 F. Supp. 3d 1334, 1337 (S.D. Fla. 2016) (Gayles, J.) (cleaned up). Plaintiffs must therefore "set forth general factual allegations that plausibly and clearly allege a concrete injury," and "mere conclusory statements do not suffice." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337–38 (11th Cir. 2021) (cleaned up).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Franklin v. Curry*, 738 F.3d 1246, 1250–51 (11th Cir. 2013). "The complaint's allegations must establish more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1251. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and plaintiffs "cannot rely on naked assertions devoid of further factual enhancement." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*, 623 F. App'x 980, 982 (11th Cir. 2015).

## ARGUMENT

## I.     PLAINTIFFS LACK ARTICLE III STANDING

To establish Article III standing, Plaintiffs must plead an "injury in fact" that is (1) "concrete and particularized and actual or imminent," (2) "fairly traceable to the challenged conduct of the defendant," and (3) "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). "For an injury to be particularized, it must

affect the plaintiff in a personal and individual way," and "a concrete injury must be *de facto*; that is, it must actually exist" and be "real … not abstract." *Id.* at 339–40.

As explained below, Plaintiffs have not done so here. That is fatal to their claims because, even in a class action, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Zia*, 210 F. Supp. 3d at 1337.

### A. Plaintiffs Lack Standing to Sue for Mere Technical Violations of Federal Law or Generalized Environmental Harms.

The Complaint repeatedly accuses Hino of violating federal law governing emissions and fuel economy testing. *See, e.g.*, Compl. ¶¶ 1–9, 11–14, 47–58, 60–70, 75–77, 83–86. Plaintiffs also allege that these violations led to increased emissions and harm to the environment. *Id.* ¶ 2, 47, 76–77. These allegations are not sufficient to satisfy Article III's standing requirements.

It is black-letter law that Plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341; *see also Muransky v. Godiva Chocolatier*, *Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) ("even considering the welter of standing doctrines that can clutter our analysis, we know one thing to be true—alleging a statutory violation is not enough to show injury in fact"). Rather, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205. Accordingly, alleged violations of emissions laws do not give Plaintiffs standing to sue—they must additionally point to some "concrete injury" caused by those violations. *See, e.g.*, *Zia*, 210 F. Supp. 3d at 1340 (dismissing claims for lack of standing where there were "no allegations here of any injury other than bare procedural violations—statute *X* requires *Y*; Defendants did not do *Y*; thus, Defendants violated statute *X*, which caused injury to the Plaintiff").

Plaintiffs may not establish standing through vague references to potential environmental harm caused by increased emissions. *See, e.g.*, Compl. ¶¶ 2, 47, 76–77. The Supreme Court has rejected Article III standing premised on purported environmental harm absent allegations that Plaintiffs were personally "affected by the challenged activity." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) ("generalized harm to the forest or the environment will not alone support standing"). Plaintiffs thus "lack standing" to assert claims merely based on allegations that Hino engaged in "noncompliance with EPA emissions regulations or the environmental harms caused by increased NOx emissions." *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 582–83 (E.D. Mich. 2017).

### B.    Plaintiffs Fail To Allege A Concrete Injury.

Unable to establish standing through mere non-compliance with federal regulations or generalized environmental harm, each Plaintiff attempts to establish Article III standing by alleging the same purported "concrete injury": "having to pay for more fuel during its possession of the trucks than it would have had they achieved the represented fuel economy, and being inconvenienced by having to refill the fuel tanks more often." Compl. ¶¶ 11–14. These copy-and-pasted allegations are not enough to demonstrate Article III standing under any of Plaintiffs' three theories of misconduct. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (Article III standing must exist for "each claim that they press and for each form of relief that they seek.").

### 1.    Plaintiffs Do Not Allege The "SCR Emissions Fraud" Injured Them.

Plaintiffs first allege that Hino engaged in "SCR Emissions Fraud" by using a different SCR system during regulatory testing than was installed in retail trucks. *See* Compl. ¶¶ 6–7, 47. According to Plaintiffs, this meant that trucks sold to consumers had increased $NO_x$ emissions that will "eventually exceed regulatory standards." *Id.* ¶ 47. But there are no allegations that the SCR Emissions Fraud was even ***capable*** of causing decreased fuel economy, which is the only concrete

injury Plaintiffs claim to have suffered.  Because there is no "causal connection between the injury and the conduct complained of," Plaintiffs lack standing to pursue their SCR Emissions Fraud theory of liability.  *Zia*, 210 F. Supp. 3d at 1337.

Plaintiffs' own allegations confirm that the SCR Emissions Fraud could not have injured them.  According to the Complaint, there is "an inherent trade-off between … fuel efficiency[] and emissions:  the greater the … fuel efficiency, the higher the rate of emissions."  Compl. ¶ 43; *see also id.* ¶ 44 ("greater energy and fuel efficiency comes at a cost:  diesel produces dirtier and more dangerous emissions").  Thus, if the SCR Emissions Fraud truly led to higher-than-expected "$NO_x$ emissions" that will "exceed regulatory standards," *id.* ¶ 47, the higher emissions would lead to ***better*** fuel economy.  Plaintiffs cannot plead an injury-in-fact from the alleged SCR Emissions Fraud when their own allegations demonstrate that the effect of such conduct would be to ***increase*** the fuel efficiency of their vehicles.  *See, e.g.*, *Baker v. Heller*, 571 F. Supp. 419, 420 (S.D. Fla. 1983) (dismissing claims for lack of standing where plaintiffs "benefitted from, rather than were damaged by, the alleged violations").

Even if Plaintiffs had alleged that the SCR Emissions Fraud could negatively impact fuel economy, they lack standing for another reason:  the Complaint fails to allege that Plaintiffs' specific vehicles were impacted.  Although Plaintiffs rely on general allegations that the SCR Emissions Fraud impacted "Class Trucks," *see* Compl. ¶¶ 53, 59 (relying on "information and belief"), the only facts to support that allegation come from a company statement that concerned Hino's A05C engines sold in Japan, *id.* ¶ 52.  But Plaintiffs allege that they purchased trucks equipped with ***different engines*** that were sold in ***a different country*** (the United States) with ***different emissions standards***, *see supra* at 3–7, and they offer no plausible basis for this Court to infer that "if it happened there, it could have happened here."  *In re Elevator Antitrust Litig.*, 502

F.3d 47, 52 (2d Cir. 2007).  Plaintiffs fail to allege any facts to suggest "they personally have been injured" by any supposed SCR Emissions Fraud.  *Zia*, 210 F. Supp. 3d at 1337.

Another federal court reached a similar conclusion in a case involving emissions-related misconduct by a truck manufacturer.  *See Bledsoe v. FCA US LLC*, 307 F. Supp. 3d 646 (E.D. Mich. 2018).  In *Bledsoe*, the plaintiff alleged that a manufacturer manipulated emissions testing standards for Dodge Ram 2500 and 3500 trucks based on (1) the results of a test conducted on a 2012 Dodge Ram 2500, (2) an EPA enforcement action relating to the Dodge Ram 1500, and (3) past enforcement actions involving related engines.  *Id.* at 651.  The court dismissed the complaint because plaintiffs "allege no such links between [the other vehicles] and the Trucks at issue in the current action."  *Id.* at 659–60.  Here too, Plaintiffs lack standing to assert their SCR Emissions Fraud theory because there is no basis to infer that conduct affecting Hino's A05C, A09C, and E13C engines in vehicles sold in Japan also impacted Hino's J08E engine in trucks sold to Plaintiffs in the United States.  *See also Rickman v. BMW of N. Am.*, 2019 WL 2710068, at *11 (D.N.J. June 27, 2019) (dismissing claims where "Plaintiffs do not allege that these different BMW models have the same engines or use the same deceptive technology as the Subject Vehicles").

### 2.      Plaintiffs Do Not Allege The "Defective OBD System" Injured Them.

For similar reasons, Plaintiffs fail to allege that the "Defective OBD System" caused them any concrete injury.  As with the SCR Emissions Fraud, there are no allegations in the Complaint that the Defective OBD System theory—under which Hino's OBD systems allegedly failed to detect issues with the trucks' emissions controls technology—negatively impacted the fuel economy of Plaintiffs' trucks.  On the contrary, Plaintiffs' allegations suggest that increased emissions resulting from a defective OBD system would have resulted in ***better*** fuel economy for Plaintiffs' vehicles.  *See supra* at 10.

Even if a defective OBD system affected fuel economy, Plaintiffs fail to allege that their specific vehicles were equipped with defective OBD systems.  Nor do Plaintiffs allege that they suffered any concrete harm as a result of any purportedly defective OBD system.  The Complaint contends "[t]he OBD system does not properly alert drivers that the [diesel particulate filter] is in danger of being clogged," and therefore Hino's trucks "get clogged far more frequently than they should." Compl. ¶¶ 76–77.  Notably missing, however, are any allegations that ***Plaintiffs*** suffered one of these alleged clogs. *Id.* ¶¶ 11–14.  Thus, although Plaintiffs speculate that purchasers could be injured because "[s]ervicing is … required to unclog" the vehicle, *id.* ¶ 77, Plaintiffs fail to plead any facts to suggest that they personally have been injured in such a way.

### 3.     Plaintiffs Do Not Allege The "Fuel Efficiency Fraud" Injured Them.

Finally, Plaintiffs allege that Hino engaged in "Fuel Efficiency Fraud" where Hino purportedly submitted false emissions data to its regulators, but  Plaintiffs do not explain how the submission of allegedly false emissions data to regulators caused them any concrete injury.  *See* Compl. ¶¶ 8, 60, 65–68.  As explained above, Plaintiffs lack standing to sue to enforce violations of federal emissions standards because "a citizen does not have standing to sue an entity for legal or regulatory violations which do not directly impact the citizen." *Counts*, 237 F. Supp. 3d at 582.

To be sure, Plaintiffs speculate that the Fuel Economy Fraud theory could have caused "Class Trucks" to appear "more fuel efficient than they actually were" to Hino's regulators. Compl. ¶ 65.  Although that allegation is incompatible with Plaintiffs' separate allegations that Hino's conduct led to increased emissions (which necessarily ***increases*** fuel economy), this is the only theory of misconduct that bears any connection to the Plaintiffs' alleged increased fuel costs.

The problem for Plaintiffs is that the Complaint does not plausibly allege that the challenged conduct—which Plaintiffs allege was directed to Hino's ***regulators***—actually had any negative impact on the fuel economy of their specific vehicles.  According to the Complaint, the

alleged Fuel Efficiency Fraud affected Hino's A09, E13, and N04C engines sold in Japan. Compl. ¶ 8. Plaintiffs do not allege that they purchased vehicles with one of those engines. *Supra* at 3.

Although Plaintiffs assert "information and belief" that "Hino engaged in the same falsifications of fuel economy testing values" in the United States, *e.g.* Compl. ¶ 67, this does not help them. In prior emissions-related cases where standing was found, courts emphasized the importance of a plaintiff having performed their own independent vehicle testing to demonstrate an injury in fact.[4] Here, no testing at all has occurred, leaving this Court to merely speculate that Plaintiffs' vehicles might be affected. In another case like this one where adequate testing did ***not*** occur, the court dismissed the claims for lack of standing. *See Bledsoe*, 307 F. Supp. 3d at 660. Courts cannot "speculate concerning the existence of standing," and they "lack[] the power to create jurisdiction by embellishing a deficient allegation of injury." *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011).

It makes no difference that the Complaint identifies a few vague marketing statements that purportedly "featured inflated fuel economy ratings." *See* Compl. ¶¶ 97–98, 101–102. As an initial matter, "no Plaintiff has alleged that he or she relied upon any of the cited advertisements in deciding to lease or purchase one of Defendants' vehicles." *In re Mercedes-Benz*, 2016 WL 7106020, at *8. Plaintiffs thus cannot allege that their "injuries were fairly traceable to any of Defendants' representations." *Id.* (dismissing for lack of standing). Even if Plaintiffs had viewed those marketing materials, Hino's statements do not advertise or promise any specific fuel economy range, and the Complaint is completely silent as to what fuel economy Plaintiffs

---

[4] *See, e.g.*, *Counts*, 237 F. Supp. 3d at 583 ("Importantly, the Complaint also alleges that Plaintiffs have tested a Chevrolet Cruze themselves and found that emissions were significantly higher than represented … ."); *In re Mercedes-Benz Emissions Litig.*, 2016 WL 7106020, at *5 (D.N.J. Dec. 6, 2016) (emphasizing plaintiffs' allegations of "on-road testing of the vehicles, which appear to have been conducted by Plaintiffs' experts").

expected, what they achieved based on real-world operation of their vehicles, and what specific additional expenses they allegedly incurred.  Plaintiffs thus are left with nothing more than allegations that Hino misled its regulators and conclusory allegations of resulting injury.  This is not enough for standing.  *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) ("[o]nly factual allegations, and not legal conclusions" or "mere conclusory statements" are relevant to the standing inquiry); *Muransky*, 979 F.3d at 925 ("We will not imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none, and we are powerless to create jurisdiction by embellishing a deficient allegation of injury.").

C.    **Plaintiffs Lack Standing to Sue Under the Laws of States Where No Plaintiff Purchased a Hino Vehicle.**

Plaintiffs also lack standing to the extent they seek to assert claims in states where they did not purchase vehicles.  Although Plaintiffs allege they bought Hino vehicles in just five states, Compl. ¶¶ 11–14, they purport to bring a nationwide fraudulent concealment claim on behalf of purchasers in every U.S. state and territory.  *See id.* ¶ 135.  But "named plaintiffs in class actions have, time and time again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises."  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1204–06 (S.D. Fla. 2021) (dismissing nationwide class claims where plaintiffs were residents of only four states).  Plaintiffs therefore only have standing to assert fraudulent concealment claims and other claims on behalf of purchasers in the five states where their claims arise:  Arizona, California, Connecticut, Florida, New York.  *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 WL 7866674, at *17 (S.D. Fla. Dec. 31, 2020) (holding "a named plaintiff lacks standing to assert … claims on behalf of putative class members whose claims arise under other states' laws"); *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class

pursuant to state law under which the named plaintiff's own claims do not arise.").

## II.     PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW

It is well established that "any state law that interferes with, or is contrary to, federal law is preempted." *Smith v. Teva Pharms. USA, Inc*., 437 F. Supp. 3d 1159, 1163 (S.D. Fla. 2020) (Gayles, J.).  As relevant here, preemption can occur in two ways.  First, "Congress may pass a statute with an express preemption provision." *Estrada v. Becker*, 917 F.3d 1298, 1303 (11th Cir. 2019).  Where Congress does so, courts "do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr*., 579 U.S. 115, 125 (2016).  Second, when "the federal statutory scheme amply empowers the [federal agency] to punish and deter fraud against the [agency], and … this authority is used by the [agency] to achieve a somewhat delicate balance of statutory objectives," state-law claims may "conflict with, and are therefore impliedly pre-empted by, federal law." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).  Plaintiffs' claims are preempted under both principles.

### A.     Plaintiffs' Claims Are Expressly Preempted by the Clean Air Act.

Section 209(a) of the CAA contains an express preemption provision that states: "No State or any political subdivision thereof shall adopt or *attempt to enforce any standard relating to the control of emissions* from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a).[5] The phrase "relating to" expresses "a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (1992) (interpreting the same phrase in another express preemption provision); *see also Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't*

---

[5] California may seek a waiver for regulations that are as protective as and not inconsistent with federal standards, 42 U.S.C. § 7543(b), and other states may adopt California's stricter standards pursuant to 42 U.S.C. § 7507.  This unique exception does not alter the preemption analysis here.

*of Env't Prot.*, 998 F. Supp. 10, 17 (D. Mass. 1997) (Congress "intended to provide § 209(a) with a broad preemptive scope.").

The purpose of this statutory provision is to ensure that the EPA, the agency charged with administering the CAA, retains control both over setting a unified federal emissions policy and how that policy is enforced. "Section 209(a) does not just prohibit States from adopting emission standards that conflict with EPA standards; the provision instead bars States from adopt[ing] or *attempting to enforce any* standard within Section 209(a)'s reach." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 264 F. Supp. 3d 1040, 1050 (N.D. Cal. 2017) (emphasis in original).

Section 209(a) therefore reflects Congress's judgment that private civil litigants play no role in enforcing violations of federal emissions standards. "State tort law … disrupts the federal scheme no less than state regulatory law to the same effect." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 325 (2008). "[I]t is clear that a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption." *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 575 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012). By enacting Section 209(a), Congress intended to prevent civil lawsuits from "interfering with EPA investigations and enforcement actions based on fraud or deceit against the Agency" so as to avoid "a multiplicity of redundant investigations and enforcement actions." *In re Volkswagen*, 264 F. Supp. 3d at 1053.

For this reason, the Eleventh Circuit and other courts repeatedly have found that the CAA expressly preempts state-law claims seeking to enforce federal standards relating to the control of emissions because "[e]nforcement of the Clean Air Act before [the] first sale [of new motor

vehicles] is the sole and exclusive prerogative of the federal government." *Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989) (en banc); *see also In re Volkswagen*, 264 F. Supp. 3d at 1052 ("States … may not adopt their own rules prohibiting defeat devices in new vehicles, nor may they attempt to enforce EPA's rule barring defeat devices in new vehicles.").

This is not a case involving claims "that a vehicle manufacturer misrepresented the functionality and effectiveness of certain technology," which some courts have found are not preempted. *Counts*, 237 F. Supp. 3d at 592. Instead, as explained below, each of Plaintiffs' three theories of liability require Plaintiffs to prove that Hino violated a "standard relating to the control of emissions," and such claims are preempted by the CAA. 42 U.S.C. § 7543(a).

**"SCR Emissions Fraud" Theory.** Plaintiffs allege that the CAA provides that "[v]ehicles and engines used in regulatory testing must be materially identical to those sold." Compl. ¶ 58 (citing 42 U.S.C. § 7541(a)(3)(A)). Their SCR Emissions Fraud theory of liability accuses Hino of violating this requirement because "during a long-term durability test for emissions performance (one of the required engine certification tests), Hino intentionally replaced the SCR system mid-test" to pass "regulatory emissions standards." *Id.* ¶ 47. As a result of this conduct, Plaintiffs allege that "Hino was not able to achieve desired or lawful emissions targets using the SCR system actually installed in the trucks sold and leased," *id.* ¶ 6, and they claim that "as the trucks sold to its customers are driven," the trucks will "eventually exceed regulatory standards" for $NO_x$ emissions. *Id.* ¶ 47. Plaintiffs further allege that "the vehicles affected by the SCR Emissions Fraud … were illegal to import or sell" under federal law. *Id.* ¶ 58.

In other words, the SCR Emissions Fraud theory of liability requires proof that Hino violated 42 U.S.C. § 7541(a)(3)(A) because "the SCR system it used for regulatory testing of

certain engines sold in … the United States differed materially from the SCR systems it installed in trucks that it produced and sold to its customers."  Compl. ¶ 47.  Finding that Hino did not achieve "lawful emissions targets," *id.* ¶ 6, that its vehicles "would have failed the [EPA] emissions testing," *id.* ¶ 7, that its vehicle emissions "exceed regulatory standards," *id.* ¶ 47, and that the vehicles "were illegal to import or sell," *id.* ¶ 58, all require determinations that Hino violated federal emissions law.  Plaintiffs' state-law claims based on this theory of liability therefore are expressly preempted as "attempt[s] to enforce … standard[s] relating to the control of emissions." 42 U.S.C. § 7543(a); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d 1201, 1218 (9th Cir. 2020) (preempting state-law tampering claims "[b]ecause these requirements relate to the emission control system of a vehicle"); *see also In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189, at *6 (2016) (preempting state law claims based on "having to drive an 'illegal' vehicle or one that fails to comply with emissions regulations as the source of their injury").

**"Fuel Emissions Fraud" Theory.**  According to Plaintiffs, the CAA "requires that the manufacturer's vehicles and engines, when properly maintained and used, meet air pollution emission standards."  Compl. ¶ 69 (citing 42 U.S.C. § 7541(a)).  Plaintiffs also allege that vehicle manufacturers "must follow EPA-regulated procedures" to test whether an engine satisfies emissions standards, including those related to fuel economy.  *Id.* ¶ 61; *see also id.* ¶¶ 62–64 (citing testing requirements that appear in 40 C.F.R. §§ 1036.535, 1036.540, 1037.501(a), 1037.550). Plaintiffs accuse Hino of violating these EPA-mandated testing requirements because, "while measuring fuel consumption in certification tests, Hino altered the fuel flow calibration value … to make it appear as though its trucks were more fuel efficient than they actually were."  *Id.* ¶ 65. As a result, Plaintiffs say "the Class Trucks' actual $CO_2$ emissions did not meet air pollution

emissions standards" and are "illegal" to sell under federal law. *Id.* ¶ 69.

Here too, the only way that Plaintiffs can prevail on their "Fuel Efficiency Fraud" theory of liability is by proving that Hino violated both federal emissions standards that relate to fuel economy and the procedures for testing for compliance with those standards. A claim based on the allegation that Hino's vehicles "did not meet air pollution emissions standards," *id.*, by definition is an attempt to "enforce … standard[s] relating to the control of emissions" that is preempted. 42 U.S.C. § 7543(a); *see also Sims*, 862 F.2d at 1455 (preempting state laws intending to enforce compliance with federal emissions standards); *In re Volkswagen*, 264 F. Supp. 3d at 1050 ("even if a State does not establish new or conflicting emission standards, its efforts to enforce new vehicle emission standards, including EPA's standards, will be prohibited"); *In re Volkswagen*, 94 Va. Cir. 189, at *6 ("It is hard to imagine a stronger example of" a preempted claim than one where "[t]he 'legal duty' that is the predicate of these claims is compliance with CAA emissions standards[.]").

**"Defective OBD System" Theory.** Plaintiffs allege that "United States emissions regulations require the OBD system to warn the driver when too much soot and particulate matter has accumulated in the diesel particulate filter." Compl. ¶ 9; *accord id.* ¶ 75 (claiming that this function is "required by law"). This requirement is a "standard relating to the control of emissions," 42 U.S.C. § 7543(a), because, according to Plaintiffs, it is "emission-control technology with which [new vehicles] must be equipped," *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004) (interpreting Section 209(a)); *see also* 40 C.F.R. § 86.010-18(a) (requiring an "on-board diagnostic (OBD) system capable of monitoring all emission-related engine systems or components during the life of the engine"). Plaintiffs accuse Defendants of violating this requirement because "[t]he OBD system does not properly alert

drivers that the [diesel particulate filter] is in danger of being clogged," *id.* ¶ 76, which they say "result[s] in the Class Trucks emitting more pollution than permitted by law," *id.* ¶ 9.

Once again, the only way that Plaintiffs can prevail on their "Defective OBD System" theory is through proof that the OBD system does not comply with EPA standards for such systems. Such a claim is expressly preempted by Section 209(a). *See In re Volkswagen*, 959 F.3d at 1218 (state-law claim challenging ineffective "emission-control technology" preempted); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2015 WL 4591236, at *13 (D.N.J. July 29, 2015) (state-law claim based on defective emissions controls system preempted when regulation of the system was governed by the CAA).

### B.    Plaintiffs' Claims Are Implicitly Preempted.

All of Plaintiffs' claims also are preempted under implied conflict preemption principles recognized by the Supreme Court in *Buckman* because the federal government has exclusive authority to decide what actions should be taken if a company provides false information to a federal agency.  In *Buckman*, the Supreme Court recognized that when federal law involves "a somewhat delicate balance of statutory objectives," state-law claims are implicitly preempted because "[t]he balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law." 531 U.S. at 348.

The EPA has similarly broad authority to enforce its regulations, including under the CAA. *See, e.g.,* 42 U.S.C. § 7524(b)-(c) (authority to commence civil actions and assess certain penalties); *id.* § 7525(a)(1) (authority to test emissions for noncompliance); *id.* § 7541(c) (authority to monitor and recall engines not meeting emissions standards).  For this reason, "[t]he preemption of fraud-on-the-FDA claims analysis applies with equal force to preempt fraud-on-the-EPA claims because both the FDA and the EPA are federal agencies equipped with adequate power to deter and punish fraud." *Ramirez v. E.I. Dupont De Nemours & Co.*, 2010 WL 3529509, at *2 (M.D.

Fla. Sept. 3, 2010) (citing *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1206 (9th Cir. 2002)) (in the context of another EPA-enforced act); *see also In re Volkswagen*, 264 F. Supp. 3d at 1054 (N.D. Cal. 2017) (the CAA preempts "State claims predicated on deceit against EPA during new-vehicle certification").

Plaintiffs' three theories of liability are exactly the kind of "fraud-on-the-EPA" claims that are subject to *Buckman* preemption. Plaintiffs allege that "every vehicle sold in the United States" must obtain a Certificate of Conformity from the EPA reflecting the vehicle meets federal emissions standards. Compl. ¶ 58 n.35; *see also* 40 C.F.R. § 86.1848-01. But, according to Plaintiffs, Defendants obtained Certificates of Conformity from the EPA via "illegal[] manipulat[ion]" of "emissions and fuel economy test results," Compl. ¶ 1, by "suppl[ying] false numbers … to U.S. regulators," *id.* ¶ 53, and by "fraudulently manipulat[ing] the fuel economy testing for Class Trucks to make them appear more fuel efficient in certification tests than they actually were," *id.* ¶ 60; *see also id.* ¶ 70. ("[T]he COCs were issued for vehicles with different SCR systems and based on falsified emissions and fuel economy data."). Even assuming Defendants did so, the EPA is "equipped with adequate power to deter and punish fraud," *Ramirez*, 2010 WL 3529509, at *2, and is vested with "significant authority to regulate and enforce new-vehicle emission standards," *In re Volkswagen*, 264 F. Supp. 3d at 1054. Accordingly, Plaintiffs' claims are preempted because they "inevitably conflict with the [EPA]'s responsibility to police fraud consistently with the Administration's judgment and objectives." *Buckman*, 531 U.S. at 350.

## III.    THE FRAUDULENT CONCEALMENT CLAIM SHOULD BE DISMISSED

Like any theory of fraud, Plaintiffs' fraudulent concealment claim must satisfy Rule 9(b)'s heightened pleading requirements. *See U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). This means Plaintiffs must explain "the who, what, when, where, and how"

of the alleged fraud.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).[6]

Applying Rule 9(b), Plaintiffs' fraudulent concealment claim should be dismissed for several reasons.  First, Plaintiffs have not plausibly alleged that any information was actually concealed from them.  Second, the Complaint does not identify any duty Hino owed to Plaintiffs to disclose the disputed information about engine testing and performance.  Third, Plaintiffs have not alleged that they relied on or were otherwise harmed by any particular omission or misleading statement.  Finally, the economic loss rule bars the damages claimed here.

### A.    The Complaint Does Not Plausibly Allege That Anything Was Concealed.

To state a fraudulent concealment claim, Plaintiffs must allege (among other things) that Defendants concealed a material fact.  *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (Florida law).[7]   Plaintiffs have not plausibly alleged that Hino concealed anything with respect to their three theories of fraud.

**"Defective OBD System" Theory.**  Plaintiffs' allegations of defective OBD systems are speculation.  The Complaint contains no facts or citations to any sources to substantiate Plaintiffs' allegations that ***any*** Hino trucks contain defective OBD systems, much less that ***Plaintiffs'*** trucks contained defective OBD systems.  *See* Compl. ¶¶ 72–77.  Instead, Plaintiffs baldly assert that "[i]n the Class Trucks … [t]he OBD system does not properly alert drivers that the [diesel particulate filter] is in danger of being clogged."  *Id.* ¶ 76.  This conclusory allegation fails to provide even "[b]asic information" about the alleged scheme, such as "how [they] discovered"

---

[6]  The Complaint does not specify what law applies, so Defendants assume without conceding that this claim is governed by the law of the state where Plaintiffs purchased their vehicles.

[7]  *See also Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019) (California); *Powell v. Powell*, 2017 WL 2422958, at *3 (D. Ariz. Feb. 22, 2017) (Arizona); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 898 (E.D.N.Y. 2018) (New York); *Flemming v. Goodwill Mortg. Servs., LLC*, 648 F. Supp. 2d 292, 296 (D. Conn. 2009) (Connecticut).

OBD-related issues, and "on what basis [Plaintiffs] realized that [Defendants'] statements" were misleading. *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 978 (N.D. Cal. 2019). Plaintiffs' claims relating to defective OBD systems should thus be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard.

**"SCR Emissions Fraud" and "Fuel Efficiency Fraud" Theories.** As to the SCR Emissions and Fuel Efficiency Fraud theories, the Complaint repeatedly cites a press release summarizing the findings of the Special Investigation Committee that examined HML's past conduct in relation to engine certification applications and processes in Japan. *E.g.*, Compl. ¶ 4. Plaintiffs allege that those findings involved issues with vehicles that were certified to comply with Japanese emissions standards and sold only in Japan and other foreign markets. *Id.* ¶ 7 (acknowledging that "the information Hino publicly provided about this fraud was for certification of engines for the Japanese market"). But Plaintiffs cannot rely on allegations of regulatory violations overseas to plead a plausible fraud claim here. "Without an adequate allegation of facts linking transactions [abroad] to transactions and effects here, plaintiffs' conclusory allegations do not nudge their claims across the line from conceivable to plausible." *Elevator*, 502 F.3d at 52 (rejecting inference that "if it happened there, it could have happened here").

The Complaint's own allegations confirm that Plaintiffs lack the necessary connection between conduct in Japan and conduct in the United States. For example, Plaintiffs allege that the SCR Emissions and Fuel Efficiency Fraud impacted trucks in Japan that contained the A05C, A09C, E13C, and N04C engines. Compl. ¶¶ 8, 52. But Plaintiffs do not allege that they actually purchased trucks that contain any of those engines. *See supra* at 3. In fact, only one of those types of engines (a different variant of the A09C) is even alleged to have been sold in the United States market, and no Plaintiff alleges it purchased a truck containing that engine. Compl. ¶ 67.

Plaintiffs' allegations thus boil down to the assumption that conduct affecting ***different engines*** sold in ***different markets*** involving ***different emissions and fuel economy standards*** must have likewise affected the vehicles they purchased.  That is not enough.  *See Bledsoe*, 307 F. Supp. 3d. at 659 (dismissing similar claims because "Plaintiffs allege no such links between" certain vehicles under investigation and "the Trucks at issue in the current action"); *Rickman*, 2019 WL 2710068, at *11  (dismissing similar claims where "Plaintiffs do not allege that these different BMW models have the same engines or use the same deceptive technology as the Subject Vehicles").

It makes no difference that, after repeating the findings of the HML's Special Investigation Committee—which did not reach any conclusions regarding potential conduct affecting vehicles sold in the United States—Plaintiffs allege that, "[b]ased on information and belief, Defendants engaged in the same or similar fraud vis-à-vis the Class Trucks sold in the United States."  Compl. ¶ 53; *see also id.* ¶¶ 66, 67 (similar).  "When Rule 9(b)'s more rigorous pleading standard applies to claims in a complaint, 'pleadings generally cannot be based on information and belief.'" *Humana Pharmacy Sols., Inc. v. Michelin*, 2021 WL 3403950, at *7 (S.D. Fla. June 15, 2021) (quoting *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).  Once the allegations "on information and belief" are stripped away, the remaining allegations about conduct that occurred in the United States are too thin to satisfy Rule 9(b)'s heightened pleading requirements.  Plaintiffs thus have failed to adequately allege any concealment at all.[8]

### B.    Plaintiffs Have Not Identified Any Duty To Disclose.

Even assuming that Plaintiffs had plausibly alleged Hino concealed anything from them, the fraudulent concealment claim should still be dismissed because Hino owed no duty to disclose

---

[8]  While the Complaint references a pending Department of Justice investigation, *see* Compl. ¶ 57, ongoing governmental investigations "carr[y] no weight in pleading" civil claims "because the outcome of the investigation cannot be predicted." *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1316 (S.D. Fla. 2010).

that information to Plaintiffs.

As a general rule, "one party to a transaction has no general duty to make disclosures to the other."  Restatement (Third) of Torts: Liab. for Econ. Harm § 13 cmt. a (2020); *see Aprigliano*, 979 F. Supp. 2d at 1342 (listing "duty to disclose the material fact" as element of Florida fraudulent concealment).[9]  Indeed, "no court in this Circuit or in Florida has extended the duty of disclosure" to the relationship of "parties negotiating at arms' length," as occurred here.  *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 2012 WL 13148744, at *3 (S.D. Fla. July 11, 2012).

Acknowledging this general rule, Plaintiffs suggest that Hino's "advertising and marketing materials" created a duty to disclose additional information about engine testing and performance.  Compl. ¶ 141.  Even if "partial representations" may give rise to "[a] duty to disclose" specific information in some circumstances and under some states' laws, *Garcia v. Gen. Motors LLC*, 2018 WL 6460196, at *17–18 (E.D. Cal. Dec. 10, 2018), the Complaint does not allege facts that show this is a situation where such a duty arises.

*First*, no Plaintiff identifies any statement they saw that could give rise to a duty to disclose.  To establish "a duty to disclose" based on "partial representations," Plaintiffs must identify "the who, what, when, where, and how" of the relevant representation.  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 4581340, at *6 (N.D. Cal. Sept. 20, 2019) (dismissing "fraud-by-omission" claim under Rule 9(b) where partial representations were not pleaded with enough particularity to support duty to disclose additional facts).  This means Plaintiffs must allege "that class members saw or heard these partial representations and were

---

[9] *See also Ahern*, 411 F. Supp. 3d at 561 (California); *Oden*, 330 F. Supp. 3d at 898 (New York); *Kenney v. Healey Ford-Lincoln-Mercury, Inc.*, 730 A.2d 115, 118 (Conn. App. 1999) (Connecticut).  Arizona law similarly permits fraudulent concealment claims only when the fact "in equity and good conscience should be disclosed."  *Powell*, 2017 WL 2422958, at *3.

misled by them in such a way that [the defendant] should have fully disclosed related information." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015).

The allegations in the Complaint fall well short of this mark, as Plaintiffs do not identify with particularity any specific advertisements, marketing materials, or statements they reviewed. Instead, the Complaint alleges only in generic and conclusory terms that Plaintiffs "rel[ied] on [Defendants'] omissions … by paying for the Class Trucks." Compl. ¶ 139. That is not enough to clear Rule 9(b). *See Opperman*, 84 F. Supp. 3d at 984–85 (rejecting "partial-representation theory" of fraud where plaintiffs failed to allege "that class members saw or heard these partial representations and were misled by them in such a way that [defendant] should have fully disclosed related information"); *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 538 (Fla. Dist. Ct. App. 2018) ("Liability for fraudulent concealment cannot be shown without reliance on a false statement, absent a fiduciary relationship that would create a duty to disclose.").

*Second*, even if Plaintiffs had identified particular statements they relied on—which they do not—the statements referred to in the Complaint are non-actionable puffery. The Complaint cites marketing statements about environmental friendliness and fuel economy, but the cited statements make no specific factual claims about the performance, mileage, or fuel economy of the engines and vehicles at issue. *See* Compl. ¶¶ 94–107. Instead, Plaintiffs point only to broad characterizations, such as descriptions on Hino's website that the trucks "maintain optimal power and high fuel economy performance under any driving conditions," and have "superior fuel economy" and "unmatched reliability." *Id.* ¶¶ 101–02. This is nothing more than "generic sales talk," and it is exactly the type of "non-actionable puffery" that "cannot undergird a claim based on a material omission." *Ahern*, 411 F. Supp. 3d at 562; *see also Counts*, 237 F. Supp. 3d at 597–99 (concluding that claim of "90% less emissions" was "puffery" that was "not actionable").

### C.     Plaintiffs Have Not Identified Any Omissions On Which They Relied.

The fraudulent concealment claim also fails because Plaintiffs do not adequately allege reliance or causation—much less with the particularity required by Rule 9(b).  A fraudulent concealment claim requires Plaintiffs to allege that they relied on and were harmed by a particular omission or misleading statement.  *See Aprigliano*, 979 F. Supp. 2d at 1342 (detrimental reliance is element of Florida fraudulent concealment claim).[10]

Plaintiffs do not even attempt to make this showing here.  The only relevant allegation in the Complaint is a conclusory assertion that Plaintiffs "rel[ied] on [Defendants'] omissions … by paying for the Class Trucks."  Compl. ¶ 139.  Plaintiffs do not allege what information should have been disclosed, much less that they would have seen and relied on such information had it been disclosed.  Without "facts regarding which advertising messages Plaintiffs found persuasive, or the specific statements Plaintiffs relied upon in purchasing their vehicle," *Robison v. Gen. Motors LLC*, 2019 WL 1902592, at *5 (E.D. Cal. Apr. 29, 2019), Plaintiffs' fraudulent concealment claim should be dismissed.  *See Ahern*, 411 F. Supp. 3d at 564 (dismissing fraudulent concealment claim where "Plaintiffs have not specified which statements any of them saw or relied on in deciding to buy the [product]"); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (dismissing omissions-based fraud claim where plaintiff failed "to specifically identify the representations, advertisements, and promotional materials that omitted the [disputed information], misled him, and upon which he relied").

### D.     The Economic Loss Rule Bars The Damages Plaintiffs Seek Here.

Plaintiffs' fraudulent concealment claim also is barred by the economic loss doctrine.  "The

---

[10] *See also Ahern*, 411 F. Supp. 3d at 564 (California); *Hix v. Bos. Sci. Corp.*, 2019 WL 6003456, at *6 (D. Ariz. Nov. 14, 2019) (Arizona); *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90–91 (2d Cir. 2005) (New York); *Flemming*, 648 F. Supp. 2d at 296 (Connecticut).

economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016). "The doctrine preserves the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *5 (S.D. Fla. Jan. 16, 2018) (Gayles, J.). The economic loss rule "clearly bar[s]" fraudulent concealment claims "that seek to recover only economic damages," as compared to damages for injury or bodily harm. *Id.* at *6 (Florida law).[11]

Here, Plaintiffs' fraudulent concealment claim seeks to recover purely "economic losses," such as "payment for additional fuel costs." Compl. ¶ 144. This is a textbook example of economic losses not recoverable via fraud claims. "To hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013).

## IV.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR SEVERAL ADDITIONAL REASONS

In addition to their common-law and nationwide fraudulent concealment claim, Plaintiffs also assert claims under state consumer protection statutes and warranty law based on the location

---

[11] *See also Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1092–93 (S.D. Cal. 2021) (dismissing fraudulent concealment claim under California's economic loss rule); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416–17 (S.D.N.Y. 2013) (dismissing fraud claim under New York's economic loss rule); *Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*, 2012 WL 1019066, at *2 (D. Ariz. Mar. 26, 2012) (dismissing fraud claim under Arizona's economic loss rule).

of their purchases:  Florida, in the case of Plaintiffs Express Freight International and EFI Export & Trading Corp.; New York and Connecticut, in the case of Plaintiff Marders; and Arizona and California, in the case of Plaintiff Redlands.  None of these claims has merit.

### A.       The State Consumer Protection Claims Should Be Dismissed.

Plaintiffs bring omission-based claims under the consumer protection laws of the states where they purchased Hino vehicles:  (1) the FDUTPA in the case of Plaintiffs Express Freight International and EFI Export & Trading Corp; (2) the CUTPA and GBL in the case of Plaintiff Marders, and (3) the ACFA, UCL, CLRA, and FAL in the case of Plaintiff Redlands.  Because these consumer protection claims "sound in fraud," Plaintiffs must once again satisfy Rule 9(b)'s heightened pleading requirements.  *Vazquez*, 2018 WL 447644, at *6 (FDUTPA); *see also Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (ACFA); *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, 2010 WL 1882316, at *9 (D. Conn. May 10, 2010) (CUTPA); *Peguero v. Toyota Motor Sales, USA, Inc.*, 2020 WL 10354127, at *9 (C.D. Cal. Nov. 18, 2020) (GBL); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *7 n.4 (N.D. Cal. Sept. 19, 2013) (UCL, FAL, CLRA).

### 1.       The State Consumer Protection Claims Fail For Many Of The Same Reasons As The Fraudulent Concealment Claim.

The state consumer protection statutes invoked in the Complaint require Plaintiffs to allege an omission of material fact that caused an injury.[12]  Plaintiffs' claims are therefore insufficient for many of the same reasons as their fraudulent concealment claims.

---

[12] *See Schaefer v. Seattle Serv. Bureau, Inc.*, 2015 WL 9031511, at *5 (M.D. Fla. Dec. 16, 2015) (FDUTPA); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 52 (1st Dep't 2004) (GBL); *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 4398506, at *4 (C.D. Cal. Aug. 27, 2019) (UCL, CLRA, and FAL); *Riehle v. Bank of Am., N.A.*, 2013 WL 1694442, at *3 (D. Ariz. Apr. 18, 2013) (ACFA); *Centore v. Smith*, 1994 WL 235359, at *2 (Ct. Sup. Ct. May 23, 1994) (CUTPA).

*First*, Plaintiffs fail to plausibly allege that Hino made any material omissions.  *See* Part III.A, *supra*.  Absent anything to support their allegations about misconduct in the United States market with respect to the engines in the trucks they actually purchased, Plaintiffs are left with nothing more than speculation that anything was concealed from them.

*Second*, Plaintiffs fail to identify any duty Hino owed to disclose the disputed information about engine testing and performance.  *See* Part III.B, *supra*.  The relevant consumer protection statutes require plausible allegations that the defendant owed the plaintiff a duty to disclose the allegedly omitted facts.[13]   No such duty is alleged here.  *See Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 996–97 (N.D. Cal. 2010) (dismissing UCL claim where "plaintiffs have failed to show an affirmative duty to disclose"); *see also Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012) (rejecting FDUTPA claim based on "nothing more than opinion or puffery").

*Third*, the Complaint has not adequately alleged causation or reliance, as required.[14]  Absent allegations "that Plaintiffs actually read the claimed misleading representations" or "were exposed to the materials that should have included a disclosure," Plaintiffs' consumer protection claims should be dismissed.  *ZF-TRW*, 2022 WL 522484, at *70; *see also Ahern*, 411 F. Supp. 3d at 564 (dismissing UCL claim based on partial omission theory where "Plaintiffs have not specified which statements any of them saw or relied on"); *Schellenbach v. GoDaddy.com, LLC*,

---

[13] *See In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *14 (C.D. Cal. May 27, 2015) (FDUTPA); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 560–61, 577 (N.D. Cal. 2019) (UCL, ACFA); *Bank v. Ikon Off. Sols., Inc.*, 2011 WL 2633658, at *1 (D. Conn. July 5, 2011) (CUTPA); *Punian v. Gillette Co.*, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016) (FAL, CLRA, UCL); *Peguero*, 2020 WL 10354127, at *9 (GBL).

[14] *See Alvarez v. Bank of Am. Corp.*, 2014 WL 3767669, at *2 (S.D. Fla July 31, 2014) (FDUTPA); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 522484, at *68, *73 (C.D. Cal. Feb. 9, 2022) (UCL, FAL, CLRA, ACFA); *Solomon*, 9 A.D.3d at 52 (GBL); *Collins v. Anthem Health Plans, Inc.*, 880 A.2d 106, 120 (Conn. 2005) (CUTPA).

321 F.R.D. 613, 624 (D. Ariz. 2017) ("Parties that do not actually rely on a false statement or material omission have no claim under the ACFA.").

> ### 2. Additional State-Specific Requirements Further Bar Plaintiffs' Consumer Protection Claims.

**New York Counts I & II.**  The GBL similarly requires a plaintiff to show that "challenged acts or practices were directed at consumers," *Newton v. Kraft Heinz Foods Co.*, 2018 WL 11235517, at *2 (E.D.N.Y. Dec. 18, 2018), meaning "one who purchases goods and services for personal, family or household use."  *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 265 (S.D.N.Y. 2011).  Plaintiff Marders is a corporation that purchased the trucks for business purposes, *see* Compl. ¶¶ 13, 71, 82, 94, and therefore may not assert GBL claims.  *See Eaves*, 785 F. Supp. 2d at 265–66 (dismissing GBL claim involving "business-only products").

**Connecticut Count I.**  Because Plaintiff Marders "is a New York business," Compl. ¶ 13, the CUTPA claim cannot proceed because that statute does not permit non-Connecticut residents to maintain-class action claims.  *See Chapman v. Priceline Grp., Inc.*, 2017 WL 4366716, at *7 (D. Conn. Sept. 30, 2017) ("CUTPA's requirement of an in-state class representative is a prominent part of the statutory scheme").

**Arizona Count I.**  Unlike a direct purchaser of a product, "a subsequent purchaser is not within the class of consumers intended to be protected by" the ACFA.  *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *18 (D.N.J. Mar. 29, 2019).  Plaintiff Redlands purchased an "used" vehicle, Compl. ¶ 14, and so the ACFA claim fails.

**California Counts I–III.**  Under the CLRA, UCL, and FAL, a manufacturer owes a duty to disclose only facts that relate to a "safety issue." *Taleshpour v. Apple, Inc.*, 2022 WL 1577802, at *1 (9th Cir. May 19, 2022).  The emissions-related conduct alleged in the Complaint does not concern the safety of Plaintiff Redlands' trucks, which means the CLRA, UCL, and FAL claims

should be dismissed.  *See Smith*, 749 F. Supp. 2d at 988 (rejecting CLRA omission claim where plaintiff lacked "evidence of a safety concern"); *Garlough v. FCA US LLC*, 2021 WL 4033177, at *5 (E.D. Cal. Sept 3. 2021) (dismissing omission-based FAL, CLRA, and UCL claims against vehicle manufacturer where plaintiff did not allege the purported defect "render[ed] the car incapable of use or cause[d] an unreasonable safety hazard").

The CLRA claim fails for the additional reason that it only allows "consumers" to sue, *see* Cal. Civ. Code § 1780(a), which the statute defines as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  *Id.* § 1761(d).  As a company that purchased trucks for business use, Compl. ¶ 14, Plaintiff Redlands may not assert a CLRA claim.  *See Frezza v. Google Inc.*, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (dismissing CLRA claim because "the statute is intended to protect consumers, not those who make purchases for business purposes").

**California Count IX**.  Plaintiff Redlands' claim under California law for "Failure to Recall/Retrofit" is barred by the economic loss doctrine.  *See supra* Part III.D; *see also In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 6072406, at *14 (S.D. Fla. Oct. 14, 2016) ("The economic loss rule applies to negligent failure to recall claims" under California law).  It also fails because an essential element of a claim for failure to recall/retrofit is that the "defendant knew or reasonably should have known that the product was dangerous when used in a reasonably foreseeable manner," *Arnett v. Seaside Transp. Servs.*, 2014 WL 117325, at *3 n.6 (N.D. Cal. Jan. 13, 2014), and the Complaint does not allege any facts that Hino's trucks posed a danger to Plaintiff Redlands, *see* Compl. ¶ 335.  *See Sivilli v. Wright Med. Tech.*, 2019 WL 3803808, at *3 (S.D. Cal. Aug. 13, 2019) (dismissing failure-to-recall claim where plaintiff "only offer[ed] a formulaic recitation").

### B.     The Breach-of-Express-Warranty Claims Should Be Dismissed.

Plaintiffs also assert Hino breached express federal emissions warranties required by the

CAA and additional warranties made by Hino.[15]   To state a breach-of-express-warranty claim, Plaintiffs must allege a "promise made by the seller to the buyer which relates to the goods" and a "breach" of that promise.  *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *17–18 (S.D. Fla. Aug. 18, 2021) (Florida).[16]  For multiple reasons, Plaintiffs may not pursue these claims.

### 1.      Claims Based on CAA-Mandated Warranties Are Preempted.

The Complaint alleges that the CAA "mandates" that vehicle manufacturers provide three express emissions-related warranties: a "Performance Warranty," a "Design and Defect Warranty" and a "general" warranty concerning the emission control system.  *See, e.g.*, Compl. ¶¶ 170–73. Plaintiffs assert breaches of all three CAA-mandated warranties.[17] But "permitting Plaintiffs' claim[s] for a breach of [CAA-mandated warranties] would be 'an attempt to enforce [a] standard relating to the control of emissions from new motor vehicles or … engines,'" which means the claims are expressly preempted by Section 209(a) of the CAA for the reasons explained above.  *In re Chrysler-Dodge-Jeep Ecodiesel Mrktg, Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1025 (N.D. Cal. 2018) (quoting 42 U.S.C. § 7543(a)) (claim alleging breach of the CAA's Performance and Design and Defect warranties is expressly preempted because "a finding of violation of a CAA emissions standard necessarily results in a breach of warranty"); *see also In re*

---

[15] *See* Compl. ¶¶ 170–77 (Florida Count II); ¶¶ 216–22 (Arizona Count II); ¶¶ 273–79 (California Count IV); ¶¶ 311–20 (California Count VII); ¶¶364–70 (Connecticut Count II); ¶¶ 423–30 (New York Count III).

[16] *Accord Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 246 (D. Conn. 1998) (Connecticut); *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 448 (E.D.N.Y. 2017) (New York); *D'Agnese v. Novartis Pharms. Corp.*, 952 F. Supp. 2d 880, 893 (D. Ariz. 2013) (Arizona); *Rodarte v. Philip Morris, Inc.*, 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003) (California)

[17] *See* Compl. ¶¶ 170–73, 176 (Florida Count II); ¶¶ 216–18, 221 (Arizona Count II); ¶¶ 273–75, 278 (California Count IV); ¶¶ 364–67, 369 (Connecticut Count II); ¶¶ 423–26, 429 (New York Count III).

*Caterpillar, Inc.* 2015 WL 4591236, at *13 (claim asserting breach of the Federal Emissions Control Warranty is expressly preempted because the warranty "is mandated by federal law as part of the statutory and regulatory scheme to ensure compliance with motor vehicle emissions standards"). The claims "are further impliedly preempted because [they] directly interfere with a central object of federal emission regulation: enforcing manufacturer's compliance with emissions standards." *In re Volkswagen*, 94 Va. Cir. 189, at *2, *6 (dismissing claim asserting breach of emissions warranty "prescribed" by the CAA).

## 2. Claims Based on Hino's Warranties Fail.

Plaintiffs also claim that two additional warranties were breached: (1) "an express base emissions and base after-treatment system warranty," and (2) a two-year "express base vehicle warranty" that covers repairs stemming from "defects in material and workmanship."[18] Neither warranty provides a viable claim.

*First*, Plaintiffs' reference to "an express base emissions and base after-treatment system warranty" is impermissible conclusory pleading. "A claim for a breach of warranty … must identify the actual terms of the [warranty] allegedly breached." *Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*, 2021 WL 2653819, at *3 (S.D. Fla. Feb. 8, 2021). Plaintiffs do not identify the precise terms of the challenged warranty, when the warranty was provided, and how it was supposedly breached. Any claim based on this warranty should therefore be dismissed.

*Second*, the "express base vehicle warranty" based on "defects in material and workmanship" does not cover the defects identified in the Complaint. The phrase "'material and workmanship' is a specialized phrase that refers particularly to manufacturing defects," *Vazquez*, 2018 WL 447644, at *3, which occur when "the unit in question deviates in quality and other

---

[18] *See* Compl. ¶ 169 (Florida Count II); ¶ 215 (Arizona Count II); ¶ 272 (California Count IV); ¶ 363 (Connecticut Count II); ¶ 422 (New York Count III).

performance standards from all of the other identical units" as a result of manufacturing mistake, *Chung v. Igloo Prods. Corp.*, 2022 WL 2657350, at \*14 (E.D.N.Y. July 8, 2022). Where a defect is "common to an entire class of vehicles," rather than a "deviation from other units," it is properly characterized as a design defect, not a manufacturing defect. *Id.* (cleaned up). None of the three theories identified in the Complaint relate to any manufacturing defects. Plaintiffs thus fail to plead that Defendants breached the terms of this warranty. *Coba v. Ford Motor Co*., 932 F.3d 114, 122 (3d Cir. 2019) ("[C]ourts have regularly rejected [the] argument[ ] … that a design defect is within the scope of a materials-and-workmanship warranty clause.").

*Finally*, all of Plaintiffs' express warranty claims should be dismissed because Plaintiffs do not allege that their *specific* vehicles were affected by the conduct alleged in the Complaint. "In asserting a warranty claim … it is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." *Kahn v. FCA US LLC*, 2019 WL 3955386, at \*7 (C.D. Cal. Aug. 2, 2019) (cleaned up). Even if the types of issues alleged in the Complaint were covered by the limited warranty, Plaintiffs still could not establish any breach because Plaintiffs have failed to allege they "personally experience[d] any defects." *Id.*; *see supra* Part I.B.

### 3. The Express Warranty Claims Suffer Additional Defects Under Each State's Law.

**Florida Count II**. Plaintiffs Express Freight International and EFI Export & Trading Corp.'s Florida express warranty claims should be dismissed for three additional reasons. First, these Plaintiffs fail to plausibly allege that they "ever notified Defendants of the alleged breach of a warranty" before filing suit. *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011). Although Plaintiffs vaguely assert that "Defendants were provided reasonable notice of these issues by way of a letter sent by Plaintiffs," Compl. ¶ 184, that letter (which is attached to

this motion) was sent eleven days *after* the Complaint was filed.  *See* Ex. 2, Pls.' Aug. 16, 2022 Ltr.  It cannot satisfy the *pre-suit* notice requirement, which is "designed to encourage pre-suit settlement negotiation."  *Meyer v. Colavita USA*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing claim where plaintiffs' "letters were sent after both … complaints had already been filed in state court").  Moreover, because notice must be given by the "buyer," Fla. Stat. § 672.607(3)(a), "[r]egulators' investigations" also cannot provide notice of a breach-of-warranty claim, *see* Compl. ¶ 184.

Second, "to prove a claim for breach of express warranty, a plaintiff must show that … the plaintiff relied on th[e] warranty."  *Zeldman v. Pershing LLC*, 2010 WL 11505834, *6 n.9 (S.D. Fla. Aug. 20, 2010).  The Complaint's conclusory assertions that "Defendants' warranties formed a basis of the bargain," *see* Compl. ¶ 175, do not satisfy this requirement because they provide no "factual support such as how or in what way [Plaintiffs] relied … on any of the alleged express warranties," *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1274 (M.D. Fla. 2015).

Third, "[i]t is well established law in Florida that … breach of express warranty [claims] require privity of contract between the parties."  *Kaiser v. Depuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013).  "No privity exists, and a breach of warranty claim fails," where, as here, these two "[P]laintiff[s] did not purchase the product from the defendant." *Id.*; *see also* Compl. ¶¶ 11–14 (alleging Class Trucks were purchased from third-party dealers).

**New York Count III.**  A New York express warranty claim must plead "pre-litigation notice," *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020), and "that the warranty was relied upon to plaintiff's detriment," *Koublani v. Cochlear Ltd.*, 2021 WL 2577068, at *15 (E.D.N.Y. June 23, 2021).  Plaintiffs Marders makes no attempt to plead either element here.

**Connecticut Count II.**  Plaintiff Marders' Connecticut warranty claim fails to plead the pre-suit notice, reliance, and privity elements of a Connecticut express warranty claim.  *See Benchmark Bldg. Corp. v. United Builders Supply Co., Inc.*, 1992 WL 124139, at *2 (Conn. Super. Ct. May 29, 1992) (notice); *Danise v. Safety-Kleen Corp.*, 17 F. Supp. 2d 87, 97 (D. Conn. 1998) (reliance); *Fraiser v. Stanley Black & Decker*, 109 F. Supp. 3d 498, 506 (D. Conn. 2015) (privity).

**Arizona Count II.**  Privity and the buyer's "[r]eliance upon a warranty" are both essential elements of an Arizona express warranty claim.  *Flory v. Silvercrest Indus.*, 129 Ariz. 574, 578 (1981) (privity); *Murphy v. Nat'l Iron & Metal Co.*, 71 Ariz. 323, 327 (1951) (reliance).  Plaintiff Redlands does not satisfy either element here.

**California Count IV.**  Plaintiff Redlands' California warranty claim fails because pre-suit notice, reliance, and privity are also required elements of a California express warranty claim, and Plaintiff Redlands likewise failed to plead these elements.  *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) (notice); *Coleman v. Bos. Sci. Corp.*, 2011 WL 13249828, at *2 (E.D. Cal. 2011) (privity and reliance).

## C.   The Breach-of-Implied-Warranty Claims Should Be Dismissed.

Plaintiffs also bring claims for breach of the implied warranty of merchantability under the laws of the states where they made their purchases, but those claims are just as defective as their express warranty claims.[19]

### 1.   Plaintiffs Have Not Alleged that the Class Trucks Were Not Merchantable.

In the five states at issue, "claims for breach of implied warranty of merchantability must

---

[19] *See* Compl. ¶¶ 186–93 (Florida Count III); *id.* ¶¶ 231–39 (Arizona Count III); *id.* ¶¶ 288–96 (California Count V); *id.* ¶¶ 297–310 (California Count VI); *id.* ¶¶ 379–85 (Connecticut Count III); *id.* ¶¶ 439–46 (New York Count IV).

be predicated on allegations that the product was unmerchantable at the time of sale." *Bailey v. Janssen Pharmaceutica, Inc.*, 2006 WL 3665417, at *5 (S.D. Fla. Nov. 14, 2006) (Florida).[20]  A product is merchantable unless it is "[un]fit for the ordinary purposes for which [it is] used." *Jovine*, 795 F. Supp. 2d at 1340.  "[I]n the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (Ct. of App. 2d Dist. 1995).

Here, none of the defects alleged in the Complaint leave Plaintiffs' trucks unable to provide transportation.  To the contrary, Plaintiffs appear to have "dr[iven] their vehicles for years and for thousands of miles without incident and without noticing any [of the alleged defects]." *Tucker v. Gen. Motors LLC*, 2021 WL 2665761, at *4 (E.D. Mo. June 29, 2021); *see also Sheris v. Nissan N.A. Inc.*, 2008 WL 2354908, at *8 (D.N.J. June 3, 2008) (dismissing claim because "[t]he weight of authority, from courts across the country, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts where plaintiffs have driven their cars without problems for years").  Even now, "Plaintiffs have not alleged that they stopped using their vehicles." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (finding cars merchantable).

The fact that Plaintiffs' trucks allegedly "did not comply with emissions regulations" does not make them unmerchantable.  *See, e.g.*, Compl. ¶ 192.  "[I]mplied warranty claims [that] are entirely predicated on compliance with federal emissions standards" are "preempted by the CAA."

---

[20] *Accord Ferry v. Mead Johnson & Co.*, 514 F. Supp. 3d 418, 445 (D. Conn. 2021) (Connecticut); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (California); *Nemes v. Dick's Sporting Goods, Inc.*, 521 F. Supp. 3d 328, 347 (S.D.N.Y. 2021) (New York); *Hallmark Indus., Inc. v. Truseal Techs, Inc.*, 2015 WL 13626029, at *5 (D. Ariz. Sept. 30, 2015) (Arizona).

*In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 1026.  In any event, because courts have held that

"[a] product may be used even if it violates regulatory requirements," it is not plausible that "a car

that does not meet emissions standards set by law is by definition unmerchantable."  *Benipayo v.*

*Volkswagen Grp. of Am., Inc.*, 2020 WL 553884, at *4–5 (N.D. Cal. 2020) (dismissing implied

warranty claim based on allegations of violations of emissions standards, because "increased

emissions did not render Plaintiffs' cars inoperable, pose an immediate danger to Plaintiffs, their

passengers, or anyone else, or affect the cars' performance in any way Plaintiffs were aware of

before the emissions scandal came to light").

### 2.      The Implied Warranty Claims Fail For Lack of Privity.

Privity is a required element of an implied warranty claim under all five state laws at issue.

*See Kelly v. Lee County RV Sales Co.*, 819 F. App'x 713, 717 (11th Cir. 2020) (Florida).[21]

Plaintiffs are not in privity with Defendants because they admit they did not purchase their trucks

directly from Defendants.  Compl. ¶¶ 11–14.  *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.* 193

F. Supp. 3d at 1346 ("Mazda is an automotive distributor, not a dealer. [Plaintiff] could not have

purchased his vehicle from Mazda. Thus, [Plaintiff] lacks privity with Mazda and the implied

warranty claim must fail.").

### 3.      The Implied Warranty Claims Suffer Additional Defects Under Each State's Law.

**<u>New York Count IV</u>**.  Plaintiff Marders failed to provide pre-suit notice as required by

New York law for an implied warranty claim.  *See Richard v. Johnson & Johnson, Inc.*, 2018 WL

2976002, at *8 (N.D.N.Y. June 12, 2018).

---

[21] *Accord Haugland v. Winnebago Indus.*, 327 F. Supp. 2d 1092, 1096–97 (D. Ariz. 2004) (Arizona); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (California); *TD Props., LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009) (Connecticut); *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) (New York).

**Connecticut Count III.**  Plaintiff Marders failed to provide "individualized notice" of its claim before filing suit, which is grounds for dismissal of the Connecticut implied warranty claim. *Zeigler v. Sony Corp. of Am.*, 48 Conn. Supp. 397, 402–03 (Ct. Super. Ct. 2004) (rejecting argument that "the complaint before the court" satisfied the pre-suit notice of requirement).

### D.     The California Song-Beverly Warranty Claims Should Be Dismissed.

Plaintiff Redlands brings three claims under the Song-Beverly Act for breaches of: the implied warranty, Compl. ¶ 307 (California Count VI); "express warranties" made "to members of the California State Class," *id.* ¶ 316 (California Count VII); and "California Emissions Warranties," *id.* ¶¶ 326–31 (California Count VIII).[22]  In addition to suffering the defects identified above, each of these claims is subject to dismissal because the Song-Beverly Act only applies to "[c]onsumer goods," which mean "new product[s] or part[s] thereof that [are] used, bought, or leased for use primarily for personal, family, or household purposes."  Cal. Civ. Code § 1791(a). The trucks Plaintiff Redlands purchased are not "consumer goods" because they are used by a company in connection with its office cleaning business.  Compl. ¶ 14; *see also Dipito LLC v. Siderman*, 2022 WL 3205205, at *4 (S.D. Cal. Apr. 18, 2022) (dismissing Song-Beverly warranty claim because plaintiff "purchased the Subject Vehicle for commercial—not personal— purposes").

### CONCLUSION

This Court should dismiss the Complaint.

---

[22] Although not labeled as a Song-Beverly Act claim, Count VIII also plainly seeks relief under the Act.  *See* Compl. ¶¶ 326–29, 331 (invoking provisions of the Song-Beverly Act codified at Cal. Civ. Code §§ 1793.2 & 1794).

DATED:  November 7, 2022                    Respectfully submitted,

                                             /s/ Jordan S. Cohen
                                            Jordan S. Cohen, Florida Bar No. 551872
                                            Ethan A. Arthur, Florida Bar No. 119054
                                            WICKER SMITH O'HARA MCCOY & FORD, P.A.
                                            515 E. Las Olas Boulevard
                                            SunTrust Center, Suite 1400
                                            Ft. Lauderdale, FL 33301
                                            Phone: (954) 847-4800
                                            Fax: (954) 760-9353

                                            Andrew Soukup (*pro hac vice*)
                                            Henry Liu (*pro hac vice*)
                                            Stephen Petkis (*pro hac vice*)
                                            Jessica Merry Samuels (*pro hac vice*)
                                            COVINGTON & BURLING LLP
                                            One CityCenter
                                            850 Tenth Street, NW
                                            Washington, D.C. 20001
                                            Telephone:  (202) 662-5066
                                            Facsimile:  (202) 778-5066
                                            Email: asoukup@cov.com
                                                    hliu@cov.com
                                                    spetkis@cov.com
                                                    jsamuels@cov.com


                                            *Attorneys for Defendants*
                                            *Hino Motors Manufacturing U.S.A., Inc.*
                                            *and Hino Motors Sales U.S.A., Inc.*


## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Defendants has conferred

with counsel for Plaintiffs regarding the issues set forth in this Motion, and Plaintiffs oppose the

relief requested herein.

                                             /s/ Jordan S. Cohen
                                            Jordan S. Cohen

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 7, 2022, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filling to all counsel of record.

*/s/ Jordan S. Cohen*
Jordan S. Cohen
