**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:22-cv-22483-GAYLES/TORRES**

EXPRESS FREIGHT INTERNATIONAL et al.,

      Plaintiffs,

v.

HINO MOTORS LTD., et al.,

      Defendants.

_____/

**DEFENDANT HINO MOTORS, LTD.'S**
**<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    HML's Lack of Connection to Florida. ..................................................... 2

    B.    HML's Relationship with its U.S. Subsidiaries. ..................................... 2

    C.    Plaintiffs' Complaint. ............................................................................... 3

PROCEDURAL STANDARD .......................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.        THIS COURT LACKS GENERAL PERSONAL JURISDICTION OVER HML ........... 5

II.      THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER HML ............ 6

    A.    Florida's long-arm statute does not confer specific jurisdiction over HML. .......... 6

          1.    HML does not conduct business in Florida under
               Fla. Stat. § 48.193(1)(a)(1). ........................................................ 6

          2.    HML did not cause injury under Fla. Stat. § 48.193(1)(a)(6). .................... 9

    B.    Exercising specific jurisdiction over HML is not consistent with due
        process. ....................................................................................................... 9

          1.    HML has not purposefully availed itself of Florida. ............................... 10

          2.    Exercising personal jurisdiction over HML would violate
               traditional notions of fair play and substantial justice. ............................ 13

III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST HML ........................... 14

CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Walt Disney Co.*,
    132 F. App'x 273 (11th Cir. 2005) ..................................................................7, 8

*Alexander v. Bayerische Motoren Werke AG*,
    2020 WL 2098108 (D.S.C. May 1, 2020)..................................................................12

*Argos Glob. Partner Servs., LLC v. Ciuchini*,
    446 F. Supp. 3d 1073 (S.D. Fla. 2020) ..................................................................5

*Asahi Metal Indus. Co. v. Sup. Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987)..................................................................11, 13

*Braman Motors, Inc. v. BMW of N. Am., LLC*,
    2019 WL 7759096 (S.D. Fla. Sept. 30, 2019) .......................................1, 4, 8, 9, 12

*Brown v. BMW of N.A., LLC*,
    2016 WL 427517 (S.D. Ind. Feb. 4, 2016) ..................................................................12

*Consol. Dev. Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000) ..................................................................10

*Courboin v. Scott*,
    596 F. App'x 729 (11th Cir. 2014) ..................................................................9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..................................................................5

*Damian v. Meftah*,
    2020 WL 13357821 (S.D. Fla. Sept. 24, 2020) ..................................................................7

*Damian v. Meftah*,
    2021 WL 8775762 (S.D. Fla. Dec. 28, 2021) ..................................................................8

*Ditter v. Subaru Corp.*,
    2022 WL 889102 (D. Colo. Mar. 25, 2022) ..................................................................12

*Don't Look Media LLC v. Fly Victor Ltd.*,
    999 F.3d 1284 (11th Cir. 2021) ..................................................................4

*Fischer v. BMW of N.A., LLC*,
    376 F. Supp. 3d 1178 (D. Colo. 2019)..................................................................12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ......................................................................10, 11, 13

*Gilmer v. Bureau Veritas Commodities & Trade, Inc.*,
    2021 WL 3772137 (S.D. Fla. Apr. 20, 2021) ....................................................5, 9

*Giuliani v. NCL (Bahamas) Ltd.*,
    558 F. Supp. 3d 1230 (S.D. Fla. 2021) ...........................................................4, 6

*Hinkle v. Cirrus Design Corp.*,
    775 F. App'x 545 (11th Cir. 2019) ................................................................6

*Internet Sols. Corp. v. Marshall*,
    39 So. 3d 1201 (Fla. 2010)............................................................................6

*Johnson Enterps. of Jacksonville, Inc. v. FPL Grp., Inc.*,
    162 F.3d 1290 (11th Cir. 1998) ..................................................................15

*Knepfle v. J-Tech Corp.*,
    48 F.4th 1282 (11th Cir. 2022) ....................................................................8

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..........................................................9

*Lobegeiger v. Celebrity Cruises, Inc.*,
    869 F. Supp. 2d 1350 (S.D. Fla. 2012) .........................................................15

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) ..........................................................5

*In re Mercedes-Benz Emissions Litig.*,
    2016 WL 7106020 (D.N.J. Dec. 6, 2016) ......................................................14

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ..............................................................13, 14

*Omega Psi Phi Fraternity, Inc. v. HCE Grp. of Cos., Inc.*,
    2011 WL 13228098 (S.D. Fla. Oct. 19, 2011)..................................................15

*Peruyero v. Airbus S.A.S.*,
    83 F. Supp. 3d 1283 (S.D. Fla. 2014) ...........................................................4

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*,
    579 F. App'x 779 (11th Cir. 2014) ................................................................7

*Sanchez v. Team Health, LLC*,
    2021 WL 4990803 (S.D. Fla. Mar. 31, 2021)...................................................8

*Sellers v. Volkswagen AG*,
 2022 WL 4088185 (S.D. Miss. Sept. 6, 2022) .......................................................................12

*Snow v. DirecTV, Inc.*,
 450 F.3d 1314 (11th Cir. 2006) .............................................................................................8

*Story v. Heartland Payment Sys., LLC*,
 461 F. Supp. 3d 1216 (M.D. Fla. 2020) ...............................................................................10

*In re Takata Airbag Prods. Liab. Litig.*,
 396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..........................................................................6, 11, 12

*Thornton v. Bayerische Motoren Werke AG*,
 439 F. Supp. 3d 1303 (N.D. Ala. 2020) ...............................................................................12

*Turner v. Homestead Police Dep't*,
 828 F. App'x 541 (11th Cir. 2020) .......................................................................................15

*United States v. Silva*,
 2018 WL 5847348 (S.D. Fla. Nov. 8, 2018) .........................................................................15

*United Techs Corp. v. Mazer*,
 556 F.3d 1260 (11th Cir. 2009) .............................................................................................6

*Walden v. Fiore*,
 571 U.S. 277 (2014) .........................................................................................................10, 11

*Wolf v. Celebrity Cruises*,
 683 F. App'x 786 (11th Cir. 2017) .........................................................................................5

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ...............................................................................................................11

*Zanakis v. Scanreco, Inc.*,
 2019 WL 2211872 (S.D. Fla. Feb. 6, 2019) .........................................................................11

*Zoch v. Daimler, AG*,
 2017 WL 2903264 (E.D. Tex. May 16, 2017) ......................................................................13

**Statutes**

Fla. Stat. § 48.193 ........................................................................................................................6

Fla. Stat. § 48.193(1)(a)(1) ................................................................................................6, 7, 8, 9

Fla. Stat. § 48.193(1)(a)(6) ......................................................................................................6, 9

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................................5

Fed. R. Civ. P. 9(b) ...........................................................................................................15

Fed. R. Civ. P. 12(b)(1) .......................................................................................................1

Fed. R. Civ. P. 12(b)(2) .......................................................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1

Local Rule 7.1(a)(3) ...........................................................................................................16

Defendant Hino Motors, Ltd. ("HML") moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

## INTRODUCTION

As explained in the motion to dismiss filed by Hino Motors Manufacturing U.S.A., Inc. and Hino Motors Sales U.S.A., Inc., *see* Dkt. 68, the Complaint fails to state a viable claim against any Defendant.  If this Court grants that motion, it should dismiss HML as a Defendant as well.

There are additional, independent reasons to dismiss HML, including for lack of personal jurisdiction.  Plaintiffs are four companies based in Florida, California, and New York that allege they purchased Hino trucks that do not meet various U.S. emissions standards.  Of the 18 Hino trucks owned by Plaintiffs, only three were allegedly purchased in Florida.  Plaintiffs nevertheless chose to file suit in this Court even though no Defendant is present here, none of the alleged misconduct transpired here, and only a small number of Plaintiffs' purchases took place here.

Having chosen for their own strategic reasons to file in a district with a tenuous connection to this action, Plaintiffs have lost jurisdiction over HML.  HML is a stranger to this forum:  it is a Japanese corporation with its principal place of business in Tokyo; it has no presence in Florida; and it has never done business here.  The sole connection between HML and these allegations is the fact that HML sold engines to one of its U.S. subsidiaries, which used those engines to manufacture Hino trucks that were ultimately sold in Florida and across the country through a multi-step distribution network.  This Court previously held that such indirect contacts were insufficient to establish personal jurisdiction over a foreign vehicle manufacturer, *see Braman*

---

[1] The Court previously approved the parties' joint stipulation extending HML's deadline to respond to the Complaint (Dkt. 57), and authorized HML and Toyota Motor Corporation to file separate motions to dismiss (Dkt. 71).

*Motors, Inc. v. BMW of N. Am.*, *LLC*, 2019 WL 7759096 (S.D. Fla. Sept. 30, 2019) (Gayles, J.), and it should reach the same conclusion as to HML. To hold otherwise would subject any foreign manufacturer to jurisdiction here as long as its products eventually made their way to the state.

Even if Plaintiffs could establish personal jurisdiction over HML, Plaintiffs lack standing and fail to state a plausible claim against HML. Plaintiffs' own allegations confirm that HML did not sell any trucks to Plaintiffs or provide any misleading information about those trucks. The absence of any link between HML and Plaintiffs provides an independent basis for dismissal.

## BACKGROUND

### A.    HML's Lack of Connection to Florida.

HML is a Japanese corporation with its principal place of business in Tokyo. (Decl. ¶ 4.)[2] As Plaintiffs acknowledge, HML designs and manufactures commercial engines and vehicles. (Compl. ¶ 15.) All of HML's business activities, however, take place far away from Florida: HML is not registered with the Florida Department of State to transact business in Florida and has never conducted any business in the state. (Decl. ¶ 5.) It has never maintained any office, facility, mailing address, telephone number, real property, or bank account in Florida, and it has no officers or employees here. (*Id.* ¶¶ 6–7.) And since at least 2003, HML has not provided goods or services in Florida or received income or filed tax returns in Florida. (*Id.* ¶ 7.)

### B.    HML's Relationship with its U.S. Subsidiaries.

HML has two subsidiaries that operate independently in the U.S. market: Hino Motors Manufacturing U.S.A., Inc. ("HMM") and Hino Motors Sales U.S.A., Inc. ("HMS"). HMM manufactures Hino trucks that are sold in the United States, while HMS distributes those trucks

---

[2] The attached Declaration of Yumiko Kawamura ("Decl.") includes both the original Japanese declaration, as well as a certified English translation to which this motion cites.

through a network of authorized dealerships.  (Compl. ¶¶ 16–17; Decl. ¶ 11.)  HML, HMM, and HMS are separate and distinct legal entities that keep their own books and records and independently maintain their assets.  (Decl. ¶¶ 9, 15.)  Each company also has its own board of directors, and each company's operations are separately managed by its respective officers.  (*Id.*)

HML does not sell engines or trucks directly to customers in Florida or anywhere in the United States.  (Decl. ¶ 13.)  Instead, the trucks that Plaintiffs allegedly purchased in Florida were sold through a multi-step supply chain and distribution network:

1. HML (operating in Japan) sold only a part of the vehicle—the engine—to HMM (operating in the U.S.) through an arms-length transaction.

2. HMM used those engines, as well as parts purchased from third-party suppliers, to manufacture Hino trucks at facilities in California and West Virginia.

3. HMM sold the completed Hino trucks to HMS through an arms-length transaction.

4. HMS sold the trucks to authorized dealers throughout the United States, including in Florida.

5. Dealerships in Florida sold the trucks to customers, including Plaintiffs.

(*See* Compl. ¶¶ 11–12, 97 (alleging Plaintiffs purchased trucks with the J08E engine); Decl. ¶ 11a (describing how the J08E reaches U.S. customers).)

HML has zero input on when, where, or how Hino trucks are distributed in Florida or in the United States.  Instead, HMS has "full discretion" to decide which dealers should be authorized to sell Hino trucks and how to allocate trucks to those dealers.  (Decl. ¶¶ 12–13.)  HML estimates that less than 0.3 percent of HML's global revenue has been indirectly attributable to engines and vehicles that are ultimately purchased by customers in Florida.  (*Id.* ¶ 14.)

### C.    Plaintiffs' Complaint.

Plaintiffs are four businesses located in Florida, California, and New York.  (Compl. ¶¶ 11–14.)  Although Plaintiffs allege that they collectively bought 18 Hino trucks from 2016 to 2021

from various dealerships in the United States, only three were allegedly purchased in Florida. (*Id.*) Those three were "Hino 268" models, which is "one of the Class Trucks with a J08E engine." (*Id.* ¶¶ 11–12, 97.)

Notwithstanding HML's lack of connection to Florida, Plaintiffs chose to name HML as a Defendant in this action seeking to challenge purported omissions about Hino trucks' compliance with U.S. emissions standards. (*See, e.g.*, Compl. at 30–40.) The paragraphs in the Complaint describing Defendants' alleged conduct contain only two specific references to HML: a reference to a Japanese administrative hearing about Japanese emissions standards (*id.* ¶ 50), and a reference to a statement by HML about its environmental initiatives (*id.* ¶ 100). Plaintiffs say nothing else in those paragraphs about HML, let alone allege that HML sold Plaintiffs their trucks or made any representations that any Plaintiff saw. (*See id.* ¶¶ 42-446.)

## PROCEDURAL STANDARD

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014).[3] As the party invoking this Court's jurisdiction, Plaintiffs "bear[] the burden of establishing a prima facie case of personal jurisdiction." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021); *see also Braman Motors*, 2019 WL 7759096, at *2 ("Complaint[] must include properly pleaded facts pertinent to the conduct and activities of the defendant in the forum state."). Where, as here, "a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Don't Look Media LLC*, 999 F.3d at 1292; *see also Giuliani v. NCL (Bahamas) Ltd.*, 558 F. Supp. 3d 1230, 1235–36 (S.D. Fla. 2021) (Gayles, J.) (similar). "Then, the plaintiff must

---

[3] All internal quotations are omitted and emphases added unless otherwise noted.

affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in its complaint." *Gilmer v. Bureau Veritas Commodities & Trade, Inc.*, 2021 WL 3772137, at *1 (S.D. Fla. Apr. 20, 2021) (Gayles, J.).

## ARGUMENT

Rule 4(k)(1)(A) allows this Court to exercise personal jurisdiction over a defendant that is subject to the personal jurisdiction of Florida courts.  "[A] federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied." *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1084 (S.D. Fla. 2020).  Florida's long-arm statute provides two ways in which a defendant may be subject to personal jurisdiction in Florida courts:  general jurisdiction or specific jurisdiction. *Wolf v. Celebrity Cruises*, 683 F. App'x 786, 790 (11th Cir. 2017).  Because Plaintiffs cannot establish either type of jurisdiction over HML, the Complaint against HML should be dismissed.  And, even if the Court were to conclude otherwise, dismissal would still be appropriate because all of Plaintiffs' claims against HML fail on the merits.

## I.     THIS COURT LACKS GENERAL PERSONAL JURISDICTION OVER HML

The Complaint does not assert that HML is subject to general personal jurisdiction in Florida, and any attempt to do so would fail.  General personal jurisdiction for a corporation is typically available only in its "place of incorporation" or its "principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Neither applies here:  HML is incorporated in Japan, and its principal place of business is in Tokyo.  (Compl. ¶ 15; Decl. ¶ 4.)  Accordingly, the Court lacks general personal jurisdiction over HML. *See McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1347, 1349 (S.D. Fla. 2017) (Gayles, J.) (no general jurisdiction where corporation's place of incorporation and principal place of business were outside Florida).

## II.      THIS COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER HML

There is also no basis for this Court to exercise specific personal jurisdiction over HML. For specific jurisdiction to exist, a court must separately find that jurisdiction (1) is "appropriate under the state long-arm statute," and (2) does "not violate the Due Process Clause of the Fourteenth Amendment." *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Plaintiffs' claims against HML fail on both scores.

### A.      Florida's long-arm statute does not confer specific jurisdiction over HML.

A nonresident defendant is subject to specific personal jurisdiction under Florida's long-arm statute only if the plaintiff's claims "arise out of one of a statutory list of defendant contacts with Florida." *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 547 (11th Cir. 2019); *see also* Fla. Stat. § 48.193(1)(a). "[T]he reach of the Florida long-arm statute is a question of Florida law," *Mazer*, 556 F.3d at 1274, and is a wholly separate inquiry from "the federal due process analysis," *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010). "Florida's long-arm statute is to be strictly construed," *Giuliani*, 558 F. Supp. 3d at 1235, and "any doubts about the applicability of the statute must be resolved in favor of the defendant," *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1140 (S.D. Fla. 2019).

The Complaint invokes two provisions of Florida's long-arm statute (Fla. Stat. § 48.193): (1) section (1)(a)(1), which applies when a foreign defendant "conduct[s] . . . business" in Florida, and (2) section (1)(a)(6), which applies when a foreign defendant "[c]aus[es] injury to persons or property within" Florida. *See* Compl. ¶ 20. Neither section reaches HML.

### 1.      HML does not conduct business in Florida under Fla. Stat. § 48.193(1)(a)(1).

Section (1)(a)(1) is plainly inapplicable to HML. That provision confers specific jurisdiction over a foreign defendant who "operat[es], conduct[s], engag[es] in, or carr[ies] on a

business or business venture in this state or ha[s] an office or agency in this state."  Fla. Stat. § 48.193(1)(a)(1).  To meet that standard, courts look to four factors:  "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients."  *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 784 (11th Cir. 2014).  Plaintiffs have not alleged—and cannot allege—that any of those factors is satisfied as to HML (Compl. ¶¶ 19–41).

The first, second, and third factors cannot be satisfied as to HML:  the company has no offices or employees in Florida, has never done any business in the state, and has never sold any products directly to customers in Florida.  (Decl. ¶¶ 5–7.)  The fourth factor similarly weighs against jurisdiction:  HML estimates that less than 0.3 percent of its overall revenue has been indirectly attributable to vehicles and engines that are ultimately purchased by consumers in Florida.  (*Id.* ¶ 14.)  Accordingly, HML does not "conduct[] . . . business" in Florida within the meaning of section (1)(a)(1).  *See Damian v. Meftah*, 2020 WL 13357821, at *3 (S.D. Fla. Sept. 24, 2020) (rejecting jurisdiction under section (1)(a)(1) where "Defendants live and operate their business solely out of California," even if their products and services were "for the benefit of a Florida company"); *RMS Titanic*, 579 F. App'x at 784 (noting lack of personal jurisdiction where less than 5% and 2% of total revenue was attributable to Florida).

It makes no difference that HML's partially owned subsidiary—HMS—distributes Hino trucks to authorized dealers in Florida.  "[T]he mere presence" of a subsidiary that does business in Florida "is insufficient to form a basis for the assertion of personal jurisdiction" over a parent corporation.  *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 276 (11th Cir. 2005).  Rather, to "establish personal jurisdiction of an upstream, nonresident parent" based on a subsidiary, "the

amount of control exercised by the parent must be high and very significant." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022). When it comes to attributing the actions of a corporate subsidiary to a parent company, "Florida disregards the corporate entity in only the most extraordinary cases." *Braman Motors,* 2019 WL 7759096, at *5 & n.5; *see also Sanchez v. Team Health, LLC*, 2021 WL 4990803, at *5 (S.D. Fla. Mar. 31, 2021) ("Jurisdictional contacts will not be imputed in the absence of such a high degree of control, even when a parent and its subsidiary otherwise have a very close working relationship and regular and extensive contact.").

This is far from the "extraordinary case[ ]." *Braman Motors,* 2019 WL 7759096, at *5 & n.5. While Plaintiffs allege in conclusory fashion that HML "exert[s] substantial control" over HMS (Compl. ¶ 22), these types of "vague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006); *Damian v. Meftah*, 2021 WL 8775762, at *4 (S.D. Fla. Dec. 28, 2021) (dismissing under Florida long-arm statute because "conclusory allegations are not enough"). Plaintiffs' conclusory allegations are also wrong. HMS and HML are separate entities that observe proper corporate form and formalities, and HMS has full discretion to decide whether and how many Hino trucks are sold into the Florida market. (Decl. ¶¶ 9, 12–13.) Plaintiffs therefore cannot establish that HML exercised a "high and very significant" degree of control over HMS's contacts with Florida. *Knepfle*, 48 F.4th at 1292; *see also Abramson*, 132 F. App'x at 276 (no control "where the subsidiary carries on its own business and preserves some independence").

The Court's decision in *Braman Motors*, 2019 WL 7759096, is directly on point. There, the Court held that foreign car manufacturer BMW AG did not "conduct[ ] business" in Florida under section (1)(a)(1) of the long-arm statute, even though the company sold vehicles to its U.S. subsidiary BMW NA, which then distributed those vehicles to Florida dealers. *Id.* at *2, 4–5. That

indirect supply chain was insufficient to establish specific jurisdiction because the plaintiff had "identifie[d] no specific activities of BMW AG that occurred in Florida." *Id.* at *5. Moreover, the plaintiff's conclusory allegation "that BMW AG directed 'many of' BMW NA's actions" was "insufficient . . . to find that BMW AG ha[d] subjected itself to the Court's jurisdiction in Florida" because each entity had "their own management teams, their own books of business, and their own financials." *Id.* at *2, 5.

The same is true here. Although HML—like BMW AG—manufactured engines abroad that were eventually sold in Florida indirectly through U.S. subsidiaries, HML was not the entity "responsible for ensuring the [vehicles] reach their final destination in the United States." *Id.* at *1. Thus, as in *Braman Motors*, Plaintiffs' conclusory allegations of "control" are insufficient to bring HML within the reach of section (1)(a)(1).

### 2. HML did not cause injury under Fla. Stat. § 48.193(1)(a)(6).

Plaintiffs' citation to section (1)(a)(6) of Florida's long-arm statute is equally unavailing. That provision applies where a foreign defendant "caus[ed] injury to persons or property within [Florida] arising out of an act or omission by the defendant outside this state." Fla. Stat. § 48.193(1)(a)(6). But "Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)(6)." *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014). Because the Complaint alleges only "economic losses" (Compl. ¶ 144; *see also id.* ¶¶ 11–14, 71), this section of Florida's long-arm statute does not apply. *See Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1216 (S.D. Fla. 2017) (no jurisdiction under section (1)(a)(6) on that basis).

### B. Exercising specific jurisdiction over HML is not consistent with due process.

Plaintiffs' failure to satisfy Florida's long-arm statute is reason alone to dismiss HML for lack of personal jurisdiction. *See Gilmer*, 2021 WL 3772137, at *2–3. But even if Florida's long-

arm statute applied, the Due Process Clause is a separate and independent barrier to jurisdiction. The Due Process Clause permits a court to exercise specific jurisdiction over a foreign defendant only if (1) the defendant has "take[n] some act by which it purposefully avails itself of the privilege of conducting activities within the forum," and (2) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). These two requirements are based on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). As shown below, neither requirement is met here.

### 1. HML has not purposefully availed itself of Florida.

To satisfy the "purposeful availment" standard, each Plaintiff must show that (1) its claims "arise out of or relate to" HML's contacts with Florida, and (2) HML "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1024–25.

No Plaintiff can satisfy these requirements. For the two named Plaintiffs based in New York and California, their claims against HML have zero connection to Florida and should be dismissed because they do not "arise out of or relate to" HML's contacts with Florida. *Id.*; *see also Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1229 (M.D. Fla. 2020) (non-resident named plaintiffs may not "piggy-back onto the specific personal jurisdiction" of Florida named plaintiffs). For the two named Plaintiffs that purchased vehicles in Florida, the Complaint does not plead any activities by HML that targeted the Florida market in any way. At most, the Complaint contains the conclusory assertion that HML "exert[s] substantial control" over its U.S. subsidiaries. (Compl. ¶ 22.) Not only is that vague allegation untrue (*see supra* at 8), but "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293

(11th Cir. 2000); *see also Takata*, 396 F. Supp. 3d at 1149–50 (no personal jurisdiction over foreign defendants based on business conduct by U.S. subsidiaries).

It is irrelevant that engines manufactured by HML were eventually sold to two Plaintiffs in Florida through a multi-step supply chain. Even if a foreign defendant may have some awareness "that the stream of commerce may . . . sweep [its] product into the forum State," due process requires a showing that the defendant "purposefully avail[ed] itself of the [specific] market." *Asahi Metal Indus. Co. v. Sup. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality opinion). Plaintiffs must therefore demonstrate that HML itself made efforts "to serve . . . the market" in Florida and "deliberately extend" its business into this state specifically. *Ford Motor Co.*, 141 S. Ct. at 1027; *see also Walden*, 571 U.S. at 285 ("plaintiff cannot be the only link between the defendant and the forum"); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) ("[F]oreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.").

Plaintiffs' claims against HML flounder under these principles. As discussed above, HML has no connection to Florida whatsoever: it has never conducted business in Florida, it does not have any facilities or employees in Florida, and it does not engage in any marketing or promotional activities directed at the Florida market. (*See* Decl. ¶¶ 5–7, 16–17.) To be sure, some of HML's engines are contained in vehicles that were ultimately sold to two Plaintiffs in Florida. (Decl. ¶ 11a.) But those engines made their way to those Plaintiffs through a highly indirect and attenuated supply chain in which: (1) HML sold engines from Japan to HMM, (2) HMM manufactured trucks using those engines, (3) HMM sold those trucks to HMS, (4) HMS made the independent decision to distribute those trucks to authorized dealers in Florida, and (5) only then were the trucks purchased by customers. *Supra* at 3; *Zanakis v. Scanreco, Inc.*, 2019 WL 2211872,

at *12 (S.D. Fla. Feb. 6, 2019) (no specific jurisdiction where "joystick was brought into Florida through an attenuated chain of custody over which [foreign manufacturer] had no control"). Finally, even if the supply chain for Plaintiffs' trucks was more direct, a vehicle manufacturer does not "purposefully avail[] itself of the forum state's market simply by shipping its products to the United States for distribution." *Braman Motors*, 2019 WL 7759096, at *7; *see also Sellers v. Volkswagen AG*, 2022 WL 4088185, at *4 (S.D. Miss. Sept. 6, 2022) (no specific jurisdiction in Mississippi over foreign vehicle manufacturer based on U.S. subsidiary's sales).[4]

Once again, *Braman Motors* is instructive.  There, the Court held that it lacked specific jurisdiction over a foreign auto manufacturer (BMW AG), even though "BMW AG directed *some* unspecified activities of BMW NA that then occurred." *Braman Motors*, 2019 WL 7759096, at *6  (emphasis in original).  That connection was insufficient because the plaintiff failed to allege "the nature of the activities or that BMW AG directed BMW NA to perform them *in Florida*." *Id.* (emphasis in original).  Absent facts to "justif[y] a finding of purposeful availment," the Court concluded that it lacked personal jurisdiction over BMW AG. *Id.* at *7.

HML's connection to Florida is even weaker.  Although Plaintiffs allege (in a conclusory fashion) that HML exerts control over its U.S. subsidiaries, the Complaint does not identify any specific activities that HML directed its U.S. subsidiaries to perform in Florida.  The only connection between HML and Plaintiffs' purchases in Florida is the fact that HML sold engines to

---

[4] *See also Alexander v. Bayerische Motoren Werke AG*, 2020 WL 2098108, at *7 (D.S.C. May 1, 2020) (dismissing foreign vehicle manufacturer for lack of personal jurisdiction); *Ditter v. Subaru Corp.*, 2022 WL 889102, at *6–9 (D. Colo. Mar. 25, 2022) (same); *Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1310 (N.D. Ala. 2020) (same); *Takata*, 396 F. Supp. 3d at 1148–49 (same); *Fischer v. BMW of N.A., LLC*, 376 F. Supp. 3d 1178, 1185–89 (D. Colo. 2019) (same); *Brown v. BMW of N.A., LLC*, 2016 WL 427517, at *5–6 (S.D. Ind. Feb. 4, 2016) (same).

HMM—after which those engines were manufactured into trucks, sold to HMS, and then distributed for sale in Florida through authorized dealers. Finding jurisdiction on that basis alone would subject any foreign manufacturer to suit in every single state where its products are ultimately distributed by its subsidiaries. The Court should decline to interpret the Due Process Clause in such an expansive manner.[5]

### 2. Exercising personal jurisdiction over HML would violate traditional notions of fair play and substantial justice.

Even if Plaintiffs could establish purposeful availment, exercise of jurisdiction over HML would still offend due process "notions of fair play and substantial justice." *Ford Motor Co.*, 141 S. Ct. at 1024. The Eleventh Circuit considers several factors in assessing fairness:

> [T]he forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009). The "primary concern of the fairness test is the burden on the defendant, and, in cases involving international defendants, courts should consider the unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* The Supreme Court has also warned that, in light of international comity concerns, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115.

---

[5] *See Zoch v. Daimler, AG*, 2017 WL 2903264, at *10 (E.D. Tex. May 16, 2017) ("The general knowledge that products were entering the United States is not enough to . . . hail [defendant] into court in Texas. Indeed, if that were enough, [defendant] would be subject to personal jurisdiction in all 50 states through its general awareness that its seats might end up in the U.S. market."), *report and recommendation adopted*, 2017 WL 9935519 (E.D. Tex. July 5, 2017), *aff'd*, 810 F. App'x 285 (5th Cir. 2020).

Subjecting HML to jurisdiction here would be manifestly unfair. On the one hand, Florida has little connection to this dispute or the parties involved. Of the 18 trucks at issue, only three were allegedly purchased in Florida. (Compl. ¶¶ 11–14.) Only two of the named Plaintiffs reside in Florida, no Plaintiff claims to have suffered any kind of injury to person or property in Florida, and no Defendant is alleged to have any presence in the state. (*Id.*) This forum has virtually no "interest in adjudicating the dispute." *Oldfield*, 558 F.3d at 1221.

On the other hand, forcing HML to defend this suit in Florida would be unduly burdensome. HML is a foreign company that manufactures engines and vehicles in Japan and has never sold those products to customers in Florida directly. (Decl. ¶¶ 4, 7, 11.) HML has no operations in the state, and its witnesses and documents are located abroad. (*Id.* ¶ 8.) Allowing Plaintiffs to sue HML in a foreign forum to which the company has no connection would impose significant burdens on HML that are "incommensurate with the benefits and protections [HML] has received within the forum." *Oldfield*, 558 F.3d at 1221 n.30. HML should be dismissed for this independent reason as well.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST HML

Even if the Court had jurisdiction, Plaintiffs fail to plead any plausible claims against HML for the reasons set forth in HMM and HMS's motion to dismiss. *See* Dkt. 68 at 7–40. Plaintiffs' claims against HML also fail for several additional reasons.

*First*, Plaintiffs lack standing because HML is not alleged to have sold any vehicles to Plaintiffs or made any allegedly misleading advertisements in connection with the trucks Plaintiffs purchased. Absent allegations that tie HML to Plaintiffs' vehicles, Plaintiffs cannot establish Article III standing to sue HML. *See In re Mercedes-Benz Emissions Litig.*, 2016 WL 7106020, at \*8 (D.N.J. Dec. 6, 2016) (no standing where alleged injuries were not "fairly traceable to any of Defendants' representations" about the purchased vehicles); *see also* Dkt No. 68 at 13–14.

*Second*, Plaintiffs fail to plead plausible fraudulent concealment, consumer protection, or warranty claims as to HML. To survive a motion to dismiss, Plaintiffs must allege—with particularity under Rule 9(b)—that they relied upon particular representations by HML that gave rise to a duty of disclosure. *See* Dkt. No. 68 at 24–27. Plaintiffs do not and cannot identify such representations because HML is not specifically alleged to have directed any marketing activities to the United States, much less made any representations that Plaintiffs claim to have seen. Plaintiffs similarly fail to allege that they were in privity with HML, as required for most of their breach-of-warranty claims. *See id.* at 36–37, 39.

*Third*, Plaintiffs cannot save their claims by attributing HMM or HMS's conduct to HML. "A parent company is not liable for the [] actions of a subsidiary absent a showing that the corporate veil should be pierced." *Turner v. Homestead Police Dep't*, 828 F. App'x 541, 544 (11th Cir. 2020). To pierce the corporate veil, Plaintiffs must show: "(1) that the subsidiary was a 'mere instrumentality' of the parent, and (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary." *Johnson Enterps. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998). This test "looks to the existence of total domination" of the subsidiary by the parent, *Lobegeiger v. Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1350, 1354 (S.D. Fla. 2012), and is satisfied "only in exceptional cases where there has been extreme abuse of the corporate form," *Omega Psi Phi Fraternity, Inc. v. HCE Grp. of Cos., Inc.*, 2011 WL 13228098, at *3 (S.D. Fla. Oct. 19, 2011). The Complaint makes no attempt to carry this "very heavy burden," *United States v. Silva*, 2018 WL 5847348, at *1 (S.D. Fla. Nov. 8, 2018) (Gayles, J.), and instead concedes that HML, HMM, and HMS are distinct legal entities with separate businesses. (Compl. ¶¶ 15–17.) Veil piercing is not warranted here.

## CONCLUSION

Plaintiffs' claims against HML should be dismissed.

DATED:  December 27, 2022                Respectfully submitted,

_/s/ Jordan S. Cohen_____
Jordan S. Cohen, Florida Bar No. 551872
Ethan A. Arthur, Florida Bar No. 119054
WICKER SMITH O'HARA MCCOY & FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Telephone: (954) 847-4800
Facsimile: (954) 760-9353
Email:  JCohen@wickersmith.com
            EArthur@wickersmith.com

Andrew Soukup (*pro hac vice*)
Henry Liu (*pro hac vice*)
Stephen Petkis (*pro hac vice*)
Jessica Merry Samuels (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Telephone:  (202) 662-5066
Facsimile:  (202) 778-5066
Email: asoukup@cov.com
            hliu@cov.com
            spetkis@cov.com
            jsamuels@cov.com

*Attorneys for Defendant Hino Motors, Ltd.*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Defendant has conferred

with counsel for Plaintiffs regarding the issues set forth in this Motion, and Plaintiffs oppose the

relief requested herein.

_/s/ Jordan S. Cohen_____
Jordan S. Cohen

16

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on December 27, 2022, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

*/s/ Jordan S. Cohen*
Jordan S. Cohen
