**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 1:22-cv-22483-Gayles/Torres

EXPRESS FREIGHT INTERNATIONAL, et al.,

        Plaintiffs

    v.

HINO MOTORS, LTD., et al.,

        Defendants.

_____

## **OPPOSITION TO HINO DEFENDANTS' MOTION TO STAY DISCOVERY**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION & SUMMARY OF ARGUMENT ................................................................1

BACKGROUND ...............................................................................................................4

ARGUMENT ....................................................................................................................5

I.     IT IS HIGHLY UNLIKELY THE COURT WILL DISMISS THIS CASE IN
FULL AND DENY LEAVE TO AMEND.....................................................................7

II.    A BALANCING TEST WEIGHS STRONGLY IN PLAINTIFFS' FAVOR. ...............10

     A.    Plaintiffs' targeted discovery imposes no undue burden. ...................................10

     B.    Hino's obstruction and delay continue to prejudice Plaintiffs. ..........................12

III.   DISCOVERY SHOULD PROCEED AGAINST HINO NOTWITHSTANDING
THE FOREIGN DEFENDANT DELAY....................................................................14

CONCLUSION................................................................................................................15

2728113.6

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Alexander v. Allen,*
    No. 2:13-CV-885-FtM-29CM, 2014 WL 3887476 (M.D. Fla. Aug. 7, 2014)..........................6

*Bartholomew v. Avalon Cap. Grp., Inc.,*
    278 F.R.D. 441 (D. Minn. 2011).......................................................................................11

*Bledsoe v. FCA US LLC,*
    307 F. Supp. 3d 646 (E.D. Mich. 2018) ...............................................................................8

*Bledsoe v. FCA US LLC,*
    No 4:16-cv-14024, 2021 WL 1720833 (E.D. Mich. Apr. 30, 2021) .....................................11

*Bocciolone v. Solowsky,*
    No. 08-20200-CIV, 2008 WL 2906719 (S.D. Fla. July 24, 2008) ........................................6

*Bonnell v. Carnival Corp.,*
    No. 13-22265-CIV, 2014 WL 10979823 (S.D. Fla. Jan. 31, 2014)......................................11

*Chudasama v. Mazda Motor Corp.,*
    123 F.3d 1353 (11th Cir. 1997) ..........................................................................................5

*Classic Soft Trim, Inc. v. Albert,*
    No. 6:18-cv-1237-Orl-78GJK, 2021 WL 724974 (M.D. Fla. Feb. 10, 2021) .........................11

*Counts v. Gen. Motors, LLC,*
    No. 16-CV-12541, 2017 WL 1406938 (E.D. Mich. Apr. 20, 2017).......................................9

*Debernardis v. IQ Formulations, LLC,*
    942 F.3d 1076 (11th Cir. 2019) ..........................................................................................7

*Diaz v. Martin,*
    No. 20-CV-23889, 2021 WL 2255126 (S.D. Fla. June 3, 2021)............................................6

*Dillon v. BDI Pharma, Inc.,*
    No. CV 3:18-2058-MGL, 2019 WL 3006777 (D.S.C. Feb. 12, 2019)...................................13

*Eli Rsch., LLC v. Must Have Info Inc.,*
    No. 2:13-CV-695-FTM-38CM, 2014 WL 2118874 (M.D. Fla. May 21, 2014) ......................6

*Feldman v. Flood,*
    176 F.R.D. 651 (M.D. Fla. 1997).............................................................................. 3, 7, 9, 10

*Flecha v. Neighbors Moving Servs., Inc.,*
    944 F. Supp. 2d 1201 (S.D. Fla. 2013)...............................................................................2, 6

*Gannon v. Flood,*
    No. 08-60059-CIV, 2008 WL 793682 (S.D. Fla. Mar. 24, 2008) .........................................6

2728113.6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Houston v. 7–Eleven, Inc.*,
   No. 2:14-cv-441-FtM-29CM, 2015 WL 412523 (M.D. Fla. Jan. 30, 2015) ..........................5, 6

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices., & Prods. Liab. Litig. ("FCA EcoDiesel"),*
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................................7, 9

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
   No. 19-MD-2879, 2020 WL 5525043 (D. Md. Sept. 14, 2020) ...............................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices., & Prods. Liab. Litig.*,
   349 F. Supp. 3d 881 (N.D. Cal. 2018) ..................................................................................9

*In re Winn Dixie Stores, Inc. Erisa Litig.*,
   No. 3:04-CV-194-J-33MCR, 2007 WL 1877887 (M.D. Fla. June 28, 2007) ..........................6

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
   No. 20-CV-23392, 2021 WL 493959 (S.D. Fla. Feb. 10, 2021) ..............................................6

*Jones v. Bank of Am. Corp.*,
   No. 4:08-CV-152 WLS, 2013 WL 5657700 (M.D. Ga. Oct. 15, 2013) ....................................6

*Koock v. Sugar & Felsenthal, LLP*,
   No. 8:09-CV-609-T-17EAJ, 2009 WL 2579307 (M.D. Fla. Aug. 19, 2009)............................6

*Koski v. Carrier Corp.*,
   347 F. Supp. 3d 1185 (S.D. Fla. 2017)..................................................................................8

*Kron Med. Corp. v. Groth*,
   119 F.R.D. 636 (M.D.N.C. 1988) ........................................................................................13

*LaFleur v. State Univ. Sys. of Fla.*,
   No. 8:20-CV-1665-T-36AAS, 2020 WL 7137993 (M.D. Fla. Dec. 7, 2020) ..........................6

*Leigue v. Everglades Coll., Inc.*,
   No. 22-CV-22307, 2022 WL 4110315 (S.D. Fla. Sept. 8, 2022) .......................................6, 10

*McCullough v. Royal Caribbean Cruises, Ltd.*,
   No. 16-CV-20194, 2017 WL 6372619 (S.D. Fla. Jan. 11, 2017)............................................15

*Medina v. Enhanced Recovery Co.*,
   No. 15-14342, 2017 WL 5196093 (S.D. Fla. Nov. 9, 2017)...................................................12

*Mgmt. Registry, Inc. v. A.W. Cos., Inc.*,
   No. 17-cv-5009-JRT-KMM, 2020 WL 468846 (D. Minn. Jan. 29, 2020)...............................11

*Miller's Ale House, Inc. v. DCCM Rest. Grp., LLC*,
   No. 6:15-CV-1109-Orl-22TBS, 2015 WL 6123984 (M.D. Fla. Oct. 16, 2015).......................6

- iii -

## TABLE OF AUTHORITIES
### (continued)

Page

*Mimbs v. J.A. Cambece L. Off., P.C.*,
No. 12-62200-CIV, 2013 WL 11982063 (S.D. Fla. June 13, 2013)...........................................6

*MindbaseHQ LLC v. Google LLC*,
No. 20-CV-24742, 2021 WL 680887 (S.D. Fla. Feb. 22, 2021) ...............................................6

*Monks v. Diamond Resorts Int'l, Inc.*,
No. 17-14307-CIV, 2018 WL 4208330 (S.D. Fla. May 11, 2018)..............................2, 6, 9, 12

*Montoya v. PNC Bank, N.A.*,
No. 14-20474-CIV, 2014 WL 2807617 (S.D. Fla. June 20, 2014)...................................3, 9, 10

*Oliva v. United States*,
No. EP-18-CV-00015-FM, 2019 WL 2572554 (W.D. Tex. Apr. 29, 2019)............................13

*Patterson Dental Supply, Inc. v. Pace*,
No. 19-cv-1940, 2020 WL 13032915 (D. Minn. Dec. 21, 2020) ............................................11

*Pedro v. Equifax, Inc.*,
868 F.3d 1275 (11th Cir. 2017) ...............................................................................................8

*Raines v. Allied Constr. Servs., Inc.*,
No. 18-cv-1804-JNE-KMM, 2019 WL 3545889 (D. Minn. Aug. 5, 2019)............................11

*Randall v. Scott*,
610 F.3d 701(11th Cir. 2010) ...................................................................................................8

*Rangel v. Adtalem Global Education, Inc.*,
No. SA-18-CV-0082-DAE, 2018 WL 11405519 (W.D. Tex. Oct. 11, 2018)........................14

*Ray v. Spirit Airlines, Inc.*,
No. 12-61528-CIV, 2012 WL 5471793 (S.D. Fla. Nov. 9, 2012) ...............................2, 3, 6, 12

*Rife v. Newell Brands, Inc.*,
No. 20-80021-CIV, 2022 WL 4598666 (S.D. Fla. Sept. 30, 2022)...........................................8

*S. Motors Chevrolet, Inc. v. Gen. Motors, LLC*,
No. CV414-152, 2014 WL 5644089 (S.D. Ga. Nov. 4, 2014)..................................................6

*Schreiber v. Kite King's Lake, LLC*,
No. 2:10-CV-391-FtM-29DNF, 2010 WL 3909717 (M.D. Fla. Oct. 1, 2010) ........................6

*Select Exp. Corp. v. Richeson*,
No. 10-80526-CIV, 2010 WL 11561196 (S.D. Fla. Dec. 1, 2010)...........................................6

*Target Corp. v. ACE Am. Ins. Co.*,
No. 20-cv-2400, 2021 WL 6062553 (D. Minn. Dec. 22, 2021) ..............................................11

*Weidman v. Ford Motor Co.*,
No. 18-12719, 2021 WL 236072 (E.D. Mich. Jan. 25, 2021).................................................11

- iv -

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Wiand v. Wells Fargo Bank, N.A.*,
    No. 8:12-CV-557-T-27EAJ, 2013 WL 12157565 (M.D. Fla. Feb. 7, 2013) ..........................13

*Zow v. Regions Fin. Corp.*,
    595 Fed. App'x. 887 (11th Cir. 2014).........................................................................................6

**Rules**

Fed. R. Civ. P. 1 .......................................................................................................................3

Fed. R. Civ. P. 26(f)(1)..............................................................................................................1

## INTRODUCTION & SUMMARY OF ARGUMENT

Hino's motion for a blanket stay of discovery is the company's latest attempt to slow this litigation to a crawl. Previously, Hino refused to participate in a Rule 26(f) conference in blatant violation of that Rule. *See* Fed. R. Civ. P. 26(f)(1) (parties "must" hold the conference "as soon as practicable"). That delay tactic forced Plaintiffs to seek the Court's intervention. Dkt. 59. Hino argued then, as it does again now, that the Court should "defer[]" discovery entirely until after "motions to dismiss are resolved." Dkt. 61 at 2.[1]

The Court disagreed (Dkt. 62), and Hino did not seek reconsideration or, at that time, file a motion to stay. The parties thus conducted the Rule 26(f) conference. With discovery open, Plaintiffs served a limited set of six requests for production ("RFPs"), largely seeking the re-production of documents Hino already has produced to regulators about the Class Trucks. Then, a week before Hino's responses to Plaintiffs' RFPs were due (and nearly two months after the Court's previous order), Hino filed this motion for a stay, rehashing the same arguments and seeking the same relief the Court already had rejected and denied.

Hino's stay motion is weak and should be denied, as discussed below. But more disturbing than its meritless motion is that Hino subsequently usurped the Court's authority and effectively granted its own motion. On December 21, 2022, Hino served its responses to Plaintiffs' RFPs, and categorically refused to "search for or produce documents responsive to these Requests until the Court issues an order denying [its] pending motion to dismiss." Exs. A & B (HMS and HMM discovery responses) at 3.[2]

---

[1] "Hino" refers to the domestic Defendants, Hino Motors Manufacturing U.S.A., Inc. ("HMM"), and Hino Motors Sales U.S.A., Inc. ("HMS"). The "foreign Defendants" are Hino Motors, Ltd., and Toyota Motor Company.

[2] Hino subsequently indicated it would amend the form of its objections and responses "following the holidays" to clarify "whether potentially responsive materials [are] being

Hino could have gone a different route. It could have met and conferred with Plaintiffs in good faith to discuss the scope of the RFPs, specific objections to aspects thereof, or any potential modifications. But instead of using the mechanisms in the discovery rules, Hino decided to impose a unilateral stay on discovery altogether. "Defendant[s] should not be permitted to make an end run around this process by filing a motion to delay discovery and then refusing to participate any further." *Monks v. Diamond Resorts Int'l, Inc.*, No. 17-14307-CIV, 2018 WL 4208330, at *3 (S.D. Fla. May 11, 2018). That's exactly what Hino has done, and not for the first time. This abuse of the discovery process must not be condoned.

In any event, Hino's motion for a discovery stay fails, and the Court should promptly deny it. Staying discovery prior to the resolution of a motion to dismiss is a "disfavored," *Flecha v. Neighbors Moving Servs., Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013), "exception [to the] rule," *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at *1 (S.D. Fla. Nov. 9, 2012). It is appropriate only in rare cases in which a "[p]laintiff's claims are patently invalid on their face," *Monks*, 2018 WL 4208330, at *2, and "there is a strong likelihood [that] the dismissal motion will" fully and finally "dispose of the entire case," *Ray*, 2012 WL 5471793, at *1.[3]

Hino does not come close to making that showing here. This case does not involve novel legal theories, and Plaintiffs' claims—sadly—address an increasingly common trend of consumer fraud and emissions cheating among vehicle manufacturers. As detailed in Plaintiffs' opposition to Hino's pending motion to dismiss (Dkt. 79 at 6-21) and summarized herein, courts

---

withheld," but did not commit to search for or produce even a single document. These future amendments will not resolve the larger issue of Hino's absolute refusal to produce documents due to its self-granted discovery stay.

[3] Here and throughout, emphasis is added and internal citations removed unless otherwise indicated.

across the country routinely have rejected the same supposedly "powerful, case-dispositive" standing and preemption arguments that Hino makes here. Put simply, to obtain a stay of discovery, Hino's motion to dismiss would have to be a "slam-dunk." *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2014 WL 2807617, at *2 (S.D. Fla. June 20, 2014). In reality, it's a half-court heave.

Even if its motion to dismiss appeared sufficiently strong (which it doesn't), Hino still would have to show that the undue burden of complying with discovery outweighed the harm of significant delay. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). Hino has failed to make that showing. Plaintiffs' discovery requests primarily target documents that Hino has, ███ ███████████ already collected, reviewed, and produced to the regulators, and it does not explain why any ████████████████████████████████ ███████████████████████████████████████ ██████████████. Where, as here, "a good deal of the requested discovery . . . has already been provided to . . . regulators," the additional burden of production is minimal and does not justify a stay. *See Montoya*, 2014 WL 2807617, at *3.

In contrast, the prejudice from Hino's requested stay would be significant. Hino wants to freeze this case until the Court resolves its motion to dismiss. That motion raises dozens of arguments and will yield more than 100 pages of briefing for the Court to sort through. Complex motions take time to resolve, meaning that, as a practical matter, the stay could last more than six months. It could run significantly longer if, as Hino argues, discovery cannot proceed without the participation of the foreign defendants, who just filed their own motions to dismiss. This is not "just" or "speedy," Fed. R. Civ. P. 1, and it is plainly prejudicial, *Ray*, 2012 WL 5471793, at *1.

The Court should deny Hino's latest stall tactic.

2728113.6

**BACKGROUND**

The relevant factual background of this extraordinary case is set forth in the Complaint (Dkt. 1 at 1-41), summarized in Plaintiffs' opposition to Hino's motion to dismiss (Dkt. 79 at 1-5), and condensed below. The bottom line is that Hino admitted to falsifying emissions and fuel economy testing for its diesel engines for nearly twenty years in Japan, and the evidence strongly suggests similar cheating occurred on engines sold in the United States.

On March 4, 2022, Hino issued a press release "identif[ying] misconduct" in "the falsification of engine performance data in its emissions durability testing . . . and in the measurement of fuel economy performance" in Japan and announcing a stop sale of three affected engines. *See, e.g.*, Class Action Complaint ("Complaint"), Dkt. 1 ¶ 3. Hino then convened a Special Investigation Committee to "develop a clearer picture . . . and analyze the root cause" of the "confirmed past misconduct." *Id.* ¶ 4. The Special Investigation Committee's report, released in August 2022, confirms that—dating back to at least 2003—Hino employed up to ten different cheating tricks for more than a half-dozen engine families, covering potentially millions of vehicles worldwide. *See, e.g.*, *id.* ¶¶ 6-8; 42-71. Those tricks included, among others: making "false statements [about] test conditions;" "alter[ing] emissions test data;" failing to "perform durability tests;" and "intentionally adjusting" fuel economy test results.

These admissions follow, and are directly related to, similar investigations and actions concerning Hino's vehicles in the United States. As early as 2016, U.S. regulators suspected Hino had "falsified emissions data" for vehicles sold in the United States. *Id.* ¶ 79. Hino apparently denied wrongdoing, but investigations continued, resulting in another confrontation in 2018 when U.S. regulators informed Hino its trucks were not "up to standard." *Id.* These investigations came to a head in 2020 when Hino was forced to issue a stop sale *in the United States* for three diesel engines—including the A09C engine also identified in the Japanese

- 4 -

disclosures—based on purported "challenges in the required U.S. engine certification testing processes." *Id.* ¶ 67. At the time, Hino announced it would resume engine production later, but it soon threw in the towel and turned to a competitor engine manufacturer, Cummins Inc., to equip Hino's vehicles in North America. *Id.* ¶ 80. In other words, with the U.S. regulators looking over its shoulder, Hino was unable to produce compliant engines for the U.S. market without cheating. This comes as no surprise, particularly given the Special Investigation Committee's conclusion that Hino's corporate culture incentivized cheating throughout the entire company's emissions and fuel economy test process. Dkt. 79 at 4.

Put simply, through a multi-decade fraudulent scheme, Hino lied to consumers (and regulators) about its trucks' fuel economy, emissions, and performance. As a result, consumers, including Plaintiffs: (1) had to pay for more fuel than they would have had the trucks achieved the represented fuel economy (Compl. ¶¶ 8-9, 11-14); (2) had to take extra trips to the gas pump as a result (*id.*); and (3) overpaid for their Class Trucks at the point of purchase based on Hino's partial representations and omissions (*id.* ¶¶ 7-10, 11-14). Through their Complaint, Plaintiffs seek to recover these losses.

## ARGUMENT

Motions to dismiss—even those raising potentially case-dispositive issues—are ubiquitous in federal litigation. Discovery stays, in contrast, are very rare. In arguing otherwise, Hino relies primarily on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). *See* Mot. (Dkt. 73) at 6. But as many courts, including the Eleventh Circuit, subsequently have clarified, "*Chudasama* and its progeny 'stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount.'" *Houston v. 7–Eleven, Inc.*, No. 2:14-cv-441-FtM-29CM, 2015 WL 412523, at *1 (M.D. Fla. Jan. 30, 2015); *see also Zow v. Regions Fin. Corp.*, 595 Fed. App'x. 887, 889 (11th Cir.

- 5 -

2014) (explaining the unique circumstances and limited holding of *Chudasama*). Literally dozens of courts have distinguished *Chudasama* on these grounds and denied motions to stay discovery, like Hino's here, pending resolution of purportedly case-dispositive motions to dismiss.[4]

As these many cases hold, "a stay of discovery pending the determination of a motion to dismiss is the exception rather than the rule" and "should be a sparingly ordered thing." *Ray*, 2012 WL 5471793, at *1, *3; *accord Flecha*, 944 F. Supp. 2d at 1203 ("Motions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district."). As noted above, discovery stays are appropriate only when a "preliminary peek" reveals that "[p]laintiff's claims are patently invalid on their face," *Monks*, 2018 WL 4208330, at *2-3, and "there is a strong likelihood [that] the dismissal motion will" fully and finally "dispose of the entire case," *Ray*, 2012 WL 5471793, at *1. And even in those rare cases, courts typically do not

---

[4] *See, e.g.*, *Leigue v. Everglades Coll., Inc.*, No. 22-CV-22307, 2022 WL 4110315, at *1 (S.D. Fla. Sept. 8, 2022); *MindbaseHQ LLC v. Google LLC*, No. 20-CV-24742, 2021 WL 680887, at *2 (S.D. Fla. Feb. 22, 2021); *Diaz v. Martin*, No. 20-CV-23889, 2021 WL 2255126, at *2 (S.D. Fla. June 3, 2021); *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-CV-23392, 2021 WL 493959, at *2 (S.D. Fla. Feb. 10, 2021); *LaFleur v. State Univ. Sys. of Fla.*, No. 8:20-CV-1665-T-36AAS, 2020 WL 7137993, at *2 (M.D. Fla. Dec. 7, 2020); *Monks*, 2018 WL 4208330, at *2; *Miller's Ale House, Inc. v. DCCM Rest. Grp., LLC*, No. 6:15-CV-1109-Orl-22TBS, 2015 WL 6123984, at *2 (M.D. Fla. Oct. 16, 2015); *Houston*, 2015 WL 412523, at *1; *S. Motors Chevrolet, Inc. v. Gen. Motors, LLC*, No. CV414-152, 2014 WL 5644089, at *1 (S.D. Ga. Nov. 4, 2014); *Eli Rsch., LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-38CM, 2014 WL 2118874, at *2 (M.D. Fla. May 21, 2014); *Alexander v. Allen*, No. 2:13-CV-885-FtM-29CM, 2014 WL 3887476, at *1 (M.D. Fla. Aug. 7, 2014); *Flecha*, 944 F. Supp. 2d at 1203; *Jones v. Bank of Am. Corp.*, No. 4:08-CV-152 WLS, 2013 WL 5657700, at *2 (M.D. Ga. Oct. 15, 2013); *Mimbs v. J.A. Cambece L. Off., P.C.*, No. 12-62200-CIV, 2013 WL 11982063, at *1 (S.D. Fla. June 13, 2013); *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at *2 (S.D. Fla. Nov. 9, 2012); *Select Exp. Corp. v. Richeson*, No. 10-80526-CIV, 2010 WL 11561196, at *1 (S.D. Fla. Dec. 1, 2010); *Schreiber v. Kite King's Lake, LLC*, No. 2:10-CV-391-FtM-29DNF, 2010 WL 3909717, at *1 (M.D. Fla. Oct. 1, 2010); *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-CV-609-T-17EAJ, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009); *Gannon v. Flood*, No. 08-60059-CIV, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008); *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008); *In re Winn Dixie Stores, Inc. Erisa Litig.*, No. 3:04-CV-194-J-33MCR, 2007 WL 1877887, at *2 (M.D. Fla. June 28, 2007).

grant stays barring a specific showing that the "burdens of proceeding with discovery" outweigh "the harm produced by a delay in discovery." *Feldman*, 176 F.R.D. at 652.

Hino cannot satisfy any of these criteria and does not deserve a discovery stay.

## I.  IT IS HIGHLY UNLIKELY THE COURT WILL DISMISS THIS CASE IN FULL AND DENY LEAVE TO AMEND.

A "preliminary peek" at Hino's motion to dismiss reveals speculative arguments that are very unlikely to fully and finally resolve this case. Plaintiffs' Complaint has a solid factual foundation that is, at minimum, plausible on its face. Based on investigations that started in the United States, Hino conceded widespread fraud, was forced to stop selling engines in the United States, is subject to an ongoing investigation by U.S. regulators, and admitted to a company-wide culture of cheating on fuel economy and emissions. This is about as solid as it gets at the pleading stage. Unsurprisingly, then, Hino's chances at full and final dismissal are slim, and rest on standing and preemption arguments that have been rejected in similar cases many times over. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices., & Prods. Liab. Litig.* ("*FCA EcoDiesel*"), 295 F. Supp. 3d 927, 946-47, 995 (N.D. Cal. 2018) (rejecting standing challenges and Clean Air Act preemption arguments in similar diesel emissions cheating case).[5]

On standing, Hino's scattershot arguments ask this Court to ignore relevant allegations and to draw inferences in Hino's favor that are entirely inappropriate at the pleading stage. To recap: Plaintiffs allege that they had to pay for more fuel (Compl. ¶¶ 8-9, 11-14), had to take extra trips to the gas pump as a result (*id.*), and overpaid for their Class Trucks at the point of purchase (*id.* ¶¶ 7-10, 11-14). These are quintessential "concrete injur[ies]" that confer standing. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (allegations of

---

[5] Plaintiffs' full response to these arguments is found in their opposition to Hino's motion to dismiss. *See* Dkt. 79 at 6-12 (standing), 12-21 (preemption).

2728113.6

extra money spent); *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (allegations of lost time); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1191 (S.D. Fla. 2017) (overpayment). Plaintiffs also assert their Class Trucks contain defective OBD Systems, requiring costly maintenance, and that their Class Trucks will degrade prematurely. These also are concrete injuries. *Rife v. Newell Brands, Inc.*, No. 20-80021-CIV, 2022 WL 4598666, at *9 (S.D. Fla. Sept. 30, 2022).

      With this in mind, Hino's claim that Plaintiffs allege only "a statutory violation," and no "concrete injury," falls flat. So does Hino's oblivious argument that there is no nexus between the admissions in Japan and the engines sold in the United States. The allegations (mostly admitted facts) connecting the Japanese and U.S. engines are legion, and certainly sufficient at the pleading stage. Given these unusually strong and specific allegations, Hino's authority— which addressed the sufficiency of plaintiffs' independent vehicle testing rather than corporate admissions of wrongdoing and regulator involvement—are inapposite. Mot. at 7 (citing *Bledsoe v. FCA US LLC*, 307 F. Supp. 3d 646, 660 (E.D. Mich. 2018)). Again, Plaintiffs advance detailed allegations regarding Defendants' cheating in the United States. They do not ask the Court to "speculate," but rather to accept as true their plausible allegations about Hino's own testing; Hino's ongoing, two-year-long stop sale in the United States; Hino's admissions of fraud in its world-wide fuel economy and emissions testing processes; and the U.S. regulators' long-running investigations. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) ("We therefore accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor."). Hino does not have a strong likelihood of prevailing on its standing arguments.

      Hino's preemption arguments fare no better. Consumers and regulators frequently work in tandem to vindicate private and public harms from vehicle emissions fraud. The *Volkswagen*

"*Clean Diesel*" and *FCA EcoDiesel* MDLs are two of many examples. As in those cases, Plaintiffs here allege that Defendants' testing misconduct violated federal emissions standards (and potentially other laws) and is the subject of active investigations by government agencies. Compl. ¶¶ 67, 79. Defendants' regulatory breaches are relevant to, but distinct from, Plaintiffs' claims for civil damages. Hino's argument to the contrary—that Plaintiffs' claims are preempted because only the government can enforce the Clean Air Act—misconstrues the nature of Plaintiffs' claims, which seek redress for separate, economic wrongs.

Put another way, the fact that Defendants violated emissions laws does not shield them from liability for deceiving Plaintiffs about the Class Trucks' true nature and performance. Hino is independently liable for those claims. That's why courts routinely reject the same flawed preemption arguments that Hino advances here. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 910-11 (N.D. Cal. 2018); *FCA EcoDiesel*, 295 F. Supp. 3d at 995; *Counts v. Gen. Motors, LLC*, No. 16-CV-12541, 2017 WL 1406938, at *4 (E.D. Mich. Apr. 20, 2017). This Court should do the same after a full review. But, for the purpose of this motion, the salient point is that Plaintiffs' claims are a far cry from being "patently invalid." *See Monks*, 2018 WL 4208330, at *2.

Finally, Hino makes no serious argument that, in the unlikely event this Court grants its motion in full, the Court will not give Plaintiffs leave to amend. This makes a final resolution even more speculative and is yet another reason to deny Hino's motion to stay. *Feldman*, 176 F.R.D. at 653 ("[E]ven a decision granting the motion to dismiss would not necessarily dispose of the case because plaintiffs could seek leave to file an amended complaint.").

Hino's motion to dismiss is far from a "slam-dunk," and its motion to stay should be denied. *Montoya*, 2014 WL 2807617, at *2.

## II.     A BALANCING TEST WEIGHS STRONGLY IN PLAINTIFFS' FAVOR.

Given the extremely remote "possibility that [Hino's] motion will be granted and entirely eliminate the need for such discovery," *Feldman*, 176 F.R.D. 651 at 653, there is nothing to balance the burdens of discovery against. In any event, the burden imposed by Plaintiffs' limited discovery requests is minimal, and the harm from continued delay is significant.

### A.     Plaintiffs' targeted discovery imposes no undue burden.

As a legal matter, the question is not whether Hino will be burdened by discovery. All discovery imposes some burden. Rather, the test is whether discovery would be "***unduly*** burdensome"—a test that can be satisfied only with a "'specific showing' of prejudice." *Leigue*, 2022 WL 4110315, at *1.

Hino does not and cannot make that showing. As noted above, Plaintiffs' narrow requests focused on documents that Hino already had collected and produced to regulators who are investigating the same facts that underlie Plaintiffs' private claims. Where, as here, "a good deal of the requested discovery . . . has already been provided to . . . regulators," then "much of the heavy lifting has already been completed." *Montoya*, 2014 WL 2807617, at *3. Re-producing these documents to Plaintiffs would impose little burden at all—and certainly no ***undue*** burden disproportional to a case about an admitted, decades-long fraudulent scheme that infects more than 100,000 trucks in the United States. *See id.* (denying stay).[6]

Grasping for any conceivable burden argument, ██████████████████████████████

---

[6] And to be clear, Plaintiffs' document requests are not improperly "piggybacking" on the DOJ's investigation, as Hino incorrectly suggests. Mot. at 2, 10. Plaintiffs are entitled to discovery on the fuel economy and emissions certification process for the Class Trucks, which includes Hino's communications with the regulators. This goes to the underlying facts of Plaintiffs' claims. That Hino already compiled this information for regulators does not make it any less relevant or discoverable. Regardless, Hino's "piggybacking" argument is a red herring because the applicable standard requires an undue burden of production, which Hino cannot show.

2728113.6



. Mot. at 9.

. As many courts have concluded, the Federal Rules do not allow litigants to "unilaterally" "redact information from otherwise responsive documents . . . merely because the producing party concludes on its own that some" portions of the document "are somehow not relevant." *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-Orl-78GJK, 2021 WL 724974, at *7 (M.D. Fla. Feb. 10, 2021) (quoting *Bonnell v. Carnival Corp.*, No. 13-22265-CIV, 2014 WL 10979823 at *3-4 (S.D. Fla. Jan. 31, 2014)).[7]

Regardless, one of Plaintiffs' requests seeks regulatory productions concerning fuel economy and emissions of *all* Hino engines— ████████████████ . Mot. at 4. This request is reasonable where, as here, a defendant has admitted to widespread fraud but left Plaintiffs to figure out exactly which vehicles were affected by the world-wide frauds through discovery.

---

[7] *See also*, *e.g.*, *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) ("It is a rare document that contains *only* relevant information," and "[r]edaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request."); *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 5525043, at *1 (D. Md. Sept. 14, 2020) ("[F]ederal courts have concluded that the Federal Rules of Civil Procedure do not permit a party to redact information, claimed to be irrelevant, from the documents it produces."); *accord Target Corp. v. ACE Am. Ins. Co.*, No. 20-cv-2400, 2021 WL 6062553, at *8 (D. Minn. Dec. 22, 2021); *Bledsoe v. FCA US LLC*, No 4:16-cv-14024, 2021 WL 1720833, at *4 (E.D. Mich. Apr. 30, 2021); *Weidman v. Ford Motor Co.*, No. 18-12719, 2021 WL 236072, at *4 (E.D. Mich. Jan. 25, 2021); *Patterson Dental Supply, Inc. v. Pace*, No. 19-cv-1940, 2020 WL 13032915, at *8-9 (D. Minn. Dec. 21, 2020); *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. 17-cv-5009-JRT-KMM, 2020 WL 468846, at *5 (D. Minn. Jan. 29, 2020); *Raines v. Allied Constr. Servs., Inc.*, No. 18-cv-1804-JNE-KMM, 2019 WL 3545889, at *4 (D. Minn. Aug. 5, 2019).

- 11 -

Even assuming, for the sake of argument, ███████ █████████████████████████ ██████████████, that could be accomplished with relative ease. In fact, according to Hino, it has already been done! How else could Hino represent to the Court ████████████ ██████████████████████████████████████████"? Soukup Decl. ¶ 7. Hino's brief confirms the common-sense inference that, in responding to a regulatory request, a sophisticated entity like Hino already has ██████████████████████████████████. It also confirms that, ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████.

Hino's few cited cases are inapposite, mostly because they analyze burden in the context of specific discovery disputes. Nothing is stopping Hino from filing a targeted discovery motion (if it can do so in good faith) objecting to a specific request—and, in fact, the availability of this more precise tool is yet another reason to reject the sweeping stay of all discovery that Hino requests. *Ray*, 2012 WL 5471793, at *4 (denying stay and holding that "the multitude of tools provided by the discovery rules remain at Spirit's disposal" to protect against unduly burdensome discovery); *Monks*, 2018 WL 4208330, at *3 ("If Defendants do not like the discovery requests propounded in this case, the discovery rules provide mechanisms to address this."); *Medina v. Enhanced Recovery Co*., No. 15-14342, 2017 WL 5196093, at *7 (S.D. Fla. Nov. 9, 2017) (same).

Hino's undue burden arguments come nowhere close to justifying a discovery stay.

**B.      Hino's obstruction and delay continue to prejudice Plaintiffs.**

As an initial matter, any delay of discovery prejudices Plaintiffs, because "delay . . . unfairly hold[s] up the prosecution of the case." *Ray*, 2012 WL 5471793, at *1. Indeed,

> [d]isruption … of the discovery schedule is normally in *no one's interest*. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay is lifted. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal trial track. While time may heal some disputes, in others it merely permits more opportunity for festering.

*Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988).

Those concerns are particularly acute here given the likely duration of the requested stay. The briefing on Hino's motion to dismiss will not even be completed until roughly a month from now. And, once briefed, it will cover dozens of complex arguments over more than 100 pages. Complex motions like these can take several months, or longer, to resolve—meaning that, as a practical matter, the stay could extend until a year, or more, after Plaintiffs filed their Complaint. Courts regularly deny stay motions in the face of such delay. *See, e.g.*, *Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-CV-557-T-27EAJ, 2013 WL 12157565, at *2 (M.D. Fla. Feb. 7, 2013) (denying motion to stay, finding that a year delay in discovery is a "harm caused to Plaintiff" that outweighs the "potential that all counts will be dismissed").[8]

But that's not even the full extent of it. Hino also argues that discovery against the domestic defendants should not proceed until discovery opens against the foreign Defendants. Mot. at 12-13. What Hino omits is the Parties' stipulation that, in exchange for the foreign Defendants' agreement to accept service of the Complaint immediately (rather than through the Hague Convention), Plaintiffs agreed that the foreign Defendants would not need to provide

---

[8] *See also, e.g.*, *Oliva v. United States*, No. EP-18-CV-00015-FM, 2019 WL 2572554, at *2 (W.D. Tex. Apr. 29, 2019) (finding one-year discovery delay concerning, because of the weakening of memories from witnesses and spoliation of evidence concerns); *Dillon v. BDI Pharma, Inc.*, No. CV 3:18-2058-MGL, 2019 WL 3006777, at *1–2 (D.S.C. Feb. 12, 2019) (denying discovery stay, noting that as time passes, cases become more difficult try because witnesses relocate, documents are lost, and memories fade).

- 13 -

substantive discovery responses until *75 days after* the Court denies their separate motions to dismiss. *See* Dkts. 50, 53 ¶4(a)(i). Those motions were just filed, won't be fully briefed until February 17, 2023, and will together heap *another* hundred-plus pages of briefing onto the Court's plate. If the Court takes just three months to resolve each of the three motions to dismiss, discovery would remain stayed until 2024. With this context, Hino's claim that the stay will "necessarily be brief" is, at best, disingenuous. Mot. at 2. The delay would be substantial and so would the prejudice.

## III.   DISCOVERY SHOULD PROCEED AGAINST HINO NOTWITHSTANDING THE FOREIGN DEFENDANT DELAY.

As noted above, Plaintiffs stipulated to a staggered schedule for foreign Defendants Hino Motors, Ltd. and Toyota Motor Company in exchange for an agreement to waive service under the Hague Service Convention—a process that can take over a year. Dkts. 50, 53. In other words, Plaintiffs agreed to the stipulation to avoid the delay Hino now requests.

Hino ignores this context as well as the Parties' express agreement that the "stipulation shall not affect or prejudice Plaintiffs' rights or ability to conduct discovery as to" the domestic entities (nor does it foreclose the domestic entities from challenging the specific discovery sought—an option that remains available to them with discovery open). Dkts. 50 at 4; 53 at 4. The Parties therefore already agreed that the stipulations could not be weaponized in precisely the way Hino is using them now. Such gamesmanship is inappropriate and should be rejected.

Regardless, the "piecemeal discovery" concerns implicated in the cases Hino invokes simply are not present here. In *Rangel v. Adtalem Global Education, Inc.*, for example, the plaintiff had not opposed a stay, and after that stay was ordered, sought reconsideration of only one claim. No. SA-18-CV-0082-DAE, 2018 WL 11405519, at *1 (W.D. Tex. Oct. 11, 2018). The problem, the court observed, was that the discovery for the one claim at issue "[was] likely

- 14 -

to overlap at least partially, if not completely, with the discovery related to" the other claims—

meaning that the defendants would effectively have to respond twice. *Id.* Here, in contrast,

Plaintiffs seek discovery from different defendants with different documents, so the domestic

entities will not be forced to respond a second time when the foreign defendants ultimately begin

producing their own documents. Similarly, in *McCullough v. Royal Caribbean Cruises, Ltd.*, this

Court granted a short "sixty-day stay" to one set of defendants, and extended the stay to another

set, primarily because of an "impending fact discovery deadline," and the case management

complications that would arise by creating different deadlines for different defendants. No. 16-

CV-20194, 2017 WL 6372619, at *1 (S.D. Fla. Jan. 11, 2017). No such complications are

implicated here.

The domestic entities may not possess or control all the discovery materials that will

eventually be produced in this action, but there is nothing inefficient, impractical, or unfair about

starting with their documents and then proceeding to the foreign Defendants in due course. To

hold otherwise under the facts of this case would subject Plaintiffs to unsupportable delay,

particularly given the strong likelihood that this case will survive Hino's motion to dismiss.

## CONCLUSION

The Court should deny Defendants' motion to stay discovery and order them to

immediately produce the documents responsive to Plaintiffs' pending RFPs.


Dated: December 29, 2022          Respectfully submitted,

                                  */s/ Peter Prieto*
                                  Peter Prieto (FBN 501492)
                                  Matthew P. Weinshall (FBN 84783)
                                  PODHURST ORSECK, P.A.
                                  SunTrust International Center
                                  One S.E. 3rd Ave, Suite 2300
                                  Miami, Florida 33131

Telephone: 305-358-2800
Facsimile: 305-358-2382
E-mail: pprieto@podhurst.com

David S. Stellings (*pro hac vice*)
Wilson M. Dunlavey (*pro hac vice*)
Katherine I. McBride (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500
E-mail: dstellings@lchb.com

Elizabeth J. Cabraser (*pro hac vice*)
Kevin R. Budner (*pro hac vice*)
Phong-Chau G. Nguyen (*pro hac vice*)
Amelia A. Haselkorn (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
E-mail: ecabraser@lchb.com

Roland Tellis (*pro hac vice*)
David Fernandes (*pro hac vice*)
Adam Tamburelli (*pro hac vice*)
Shannon Royster (*pro hac vice*)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818,839.2333
Facsimile: 818.986.9698
E-mail: rtellis@baronbudd.com

*Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 29, 2022, a true and correct copy of the

foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will

send notice of electronic filling to all counsel of record.

*/s/ Peter Prieto*
Peter Prieto

- 17 -