**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:22-cv-22483-GAYLES/TORRES**

EXPRESS FREIGHT INTERNATIONAL et al.,

      Plaintiffs,

v.

HINO MOTORS LTD., et al.,

      Defendants.

_____/

**DEFENDANTS HINO MOTORS MANUFACTURING U.S.A., INC. AND**
**HINO MOTORS SALES U.S.A., INC.'S REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.     PLAINTIFFS LACK ANY CONCRETE INJURY ...................................................... 1

     A.    Plaintiffs Fail To Allege Any Concrete Injury From The "Defective OBD
          System" Or "Fuel Efficiency Fraud" Theories. ................................................... 2

     B.    Plaintiffs Do Not Allege Any Concrete Injury Caused By The "SCR
          Emissions Fraud" Theory. ................................................................................ 4

II.    THE OPPOSITION CONFIRMS PLAINTIFFS' CLAIMS ARE PREEMPTED. ........... 5

     A.    Plaintiffs' Claims Are Expressly Preempted. ....................................................... 6

          1.    Plaintiffs' Interpretation Of The Clean Air Act Is Erroneous. ................. 6

          2.    This Case Is Unlike Plaintiffs' Cited Cases Because Plaintiffs'
               Allegations Require Proof Of Regulatory Violations. ............................. 9

     B.    Plaintiffs' Claims Are Also Impliedly Preempted. ............................................. 10

III.   PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM FAILS. .......................... 11

     A.    Plaintiffs Fail To Plead Acts Of Concealment With Particularity. ...................... 11

     B.    Plaintiffs Fail To Plead Reliance Or Causation. ................................................. 12

     C.    Plaintiffs Fail To Plead A Duty To Disclose. .................................................... 14

     D.    The Fraudulent Concealment Claim Is Barred By The Economic Loss
          Rule. ............................................................................................................... 15

IV.   PLAINTIFFS' STATE LAW CLAIMS FAIL FOR ADDITIONAL REASONS. ........... 16

     A.    Plaintiffs Abandoned Their Implied Warranty And California Song-
          Beverly Warranty Claims. ................................................................................ 16

     B.    Plaintiffs' State Consumer Protection Claims Fail For Several Reasons. ............ 16

     C.    Plaintiffs' Remaining Breach-of-Express-Warranty Claims Fail. ....................... 19

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
  380 F. Supp. 3d 1243 (M.D. Fla. 2019).................................................................4

*Ahern v. Apple Inc.*
  411 F. Supp. 3d 541 (N.D. Cal. 2019)...............................................................13

*Allegra v. Luxottica N. Am.*,
  341 F.R.D. 373 (E.D.N.Y. 2022) ......................................................................17

*Am. Universal Ins. Grp. v. Gen. Motors Corp.*,
  578 So. 2d 451 (Fla. Dist. Ct. App. 1991) ........................................................15

*Am. Universal Ins. Grp. v. Gen. Motors Corp.*,
  578 So. 2d 451 (Fla. Dist. Ct. App. 1991) ........................................................15

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) ..............................................................11

*Bestwick v. Newmar Corp.*,
  576 F. Supp. 3d 599 (N.D. Ind. 2021) ..............................................................18

*Bettles v. Toyota Motor Corp.*,
  2022 WL 1619337 (C.D. Cal. May 23, 2022).....................................................18

*Burns v. Winnebago Indus., Inc.*,
  2013 WL 4437246 (M.D. Fla. Aug. 16, 2013)...................................................16

*Butnick v. Gen. Motors Corp.*,
  472 F. App'x 80 (2d Cir. 2012) ..........................................................................6

*Cardenas v. Toyota Motor Corp.*,
  418 F. Supp. 3d 1090 (S.D. Fla. 2019) .............................................................16

*In re Caterpillar, Inc.*,
  2015 WL 4591236 (D.N.J. July 29, 2015)............................................... 8, 18, 19

*Chapman v. Priceline Grp., Inc.*,
  2017 WL 4366716 (D. Conn. Sept. 30, 2017) ...................................................18

*In re Chrysler-Dodge-Jeep Ecodiesel Mrktg, Sales Pracs., & Prods. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ..........................................................9, 13

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ................................................................20

*Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ................................................................15

*Counts v. Gen. Motors, LLC*,
   237 F. Supp. 3d 572 (E.D. Mich. 2017) ......................................... 2, 8, 10

*DJ Lincoln Enters., Inc. v. Google, LLC*,
   2021 WL 3079855 (S.D. Fla. July 21, 2021), *aff'd*, 2022 WL 203365 (11th
   Cir. Jan. 24, 2022) ................................................................14

*Dorman v. Aronofsky*,
   36 F.4th 1306 (11th Cir. 2022) ................................................................14

*In re Duramax Diesel Litig.*,
   298 F. Supp. 3d 1037 (E.D. Mich. 2018) ................................................10

*Engine Manufacturers Ass'n v. South Coast Air Quality Management District*
   541 U.S. 246 (2004) ................................................................7

*Felix v. Volkswagen Grp. of Am., Inc.*
   2017 WL 3013080 (N.J. Super. Ct. App. Div. July 17, 2017) ...........................9

*In re Fla. Cement & Concrete Antitrust Litig.*,
   746 F. Supp. 2d 1291 (S.D. Fla. 2010) ................................................3

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
   2010 WL 2813788 (D.N.J. July 9, 2010) ................................................20

*Fox v. Loews Corp.*,
   309 F. Supp. 3d 1241 (S.D. Fla. 2018) ................................................17

*Gamboa v. Ford Motor Co.*
   381 F. Supp. 3d 853 (E.D. Mich. 2019) ................................................10

*Gerritsen v. FCA US LLC*,
   2020 WL 3841304 (C.D. Cal. Mar. 3, 2020) ................................................4

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
   26 F.4th 1235 (11th Cir. 2022) ................................................................5

*Grossman v. GEICO Cas. Co.*,
   2022 WL 1656593 (2d Cir. May 25, 2022) ................................................17

*Int'l Paper Co. v. Ouellette*,
   479 U.S. 481 (1987) ................................................................8

*Jackson v. Gen. Motors Corp.*,
   770 F. Supp. 2d 570 (S.D.N.Y. 2011) ........................................................... 6, 7, 8

*Klein v. Ljubljana Inter Auto d.o.o.*,
   2021 WL 6424917 (C.D. Cal. Sept. 13, 2021) .................................................... 18

*Lisk v. Lumber One Wood Preserving, LLC*,
   792 F.3d 1331 (11th Cir. 2015) ....................................................................... 17

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ................................................................ 13

*McCarthy v. Toyota Motor Corp.*,
   2018 WL 6318841 (C.D. Cal. Sept. 14, 2018) .................................................... 20

*In re Mercedes-Benz Emissions Litig.*,
   2016 WL 7106020 (D.N.J. Dec. 6, 2016) ............................................................ 2

*Meyer v. Colavita USA Inc.*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) .................................................. 20

*Mink v. Smith & Nephew, Inc.*,
   860 F.3d 1319 (11th Cir. 2017) ......................................................................... 2

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) ........................................................................... 4

*Myers v. BMW of N. Am., LLC*,
   2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ..................................................... 14

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ......................................................... 18, 20

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ............................................................... 14

*P.R. v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016) ........................................................................................... 6

*Progressive Ins. Co. v. Ford Motor Co.*,
   790 N.Y.S.2d 358 (Dist. Ct. 2004) .................................................................... 15

*Pye v. Fifth Generation, Inc.*,
   2016 WL 9046788 (N.D. Fla. 2016) .................................................................. 20

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008) ........................................................................................... 7

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021)................................................................13

*Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*,
    862 F.2d 1449 (11th Cir. 1989) (en banc) ................................................6, 7, 10

*Sloan v. Gen. Motors LLC*,
    2017 WL 3283998 (N.D. Cal. Aug. 1, 2017)....................................................19

*Stockinger v. Toyota Motor Sales U.S.A., Inc.*,
    2020 WL 1289549 (C.D. Cal. Mar. 3, 2020) ....................................................18

*In re Takata Airbag Prods. Liab. Litig.*,
    193 F. Supp. 3d 1324 (S.D. Fla. 2016)..............................................................16

*Taleshpour v. Apple, Inc.*,
    2022 WL 1577802 (9th Cir. May 19, 2022) ................................................14, 18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)........................................................................................4

*Tsao v. Captiva MVP Rest. Partners, LLC*,
    986 F.3d 1332 (11th Cir. 2021) ..........................................................................5

*Vazquez v. Gen. Motors, LLC*,
    2018 WL 447644 (S.D. Fla. Jan. 16, 2018) (Gayles, J.)..........................15, 16, 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    264 F. Supp. 3d 1040 (N.D. Cal. 2017).........................................................7, 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    349 F. Supp. 3d 881 (N.D. Cal. 2018)...............................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    959 F.3d 1201 (9th Cir. 2020) ............................................................................7

*Young v. Grand Canyon Univ., Inc.*,
    -- F.4th --, 2023 WL 118610 (11th Cir. Jan. 6, 2023).......................................13

*In re Zantac Litig.*,
    510 F. Supp. 3d 1141 (S.D. Fla. 2020)...............................................................3

*Zia v. CitiMortgage, Inc.*,
    210 F. Supp. 3d 1334 (S.D. Fla. 2016) (Gayles, J.)........................................2, 4

**Statutes**

42 U.S.C. § 7604(e) ...................................................................................................8

42 U.S.C. § 7543(a) ........................................................................................6, 7, 8, 10

## INTRODUCTION

The heated rhetoric in the opposition fails to refute one critical fact: *every* "fraudulent scheme" alleged in the Complaint turns on whether a federal emissions law was violated. That makes this case different from the other emissions-related cases cited by Plaintiffs in several critical respects. Those cases involved *consumers* suing over affirmative misrepresentations about the environmental benefits of vehicles advertised as "Clean Diesel" or "EcoDiesel." This case, by contrast, involves *businesses* who do not—and apparently cannot—identify any affirmative representation about environmental benefits they viewed before purchasing their commercial trucks, as Rule 9(b) requires. Instead, Plaintiffs here rely solely on the allegation that Defendants concealed from them their alleged non-compliance with federal emissions laws.

But enforcing those laws is the exclusive province of the government, and several obstacles prohibit Plaintiffs' attempt to deputize themselves as government attorneys. Article III prevents Plaintiffs from using the courts to enforce federal emissions laws where, as here, Plaintiffs are unable to plead any concrete injury. The CAA independently prevents Plaintiffs from asserting claims that, as here, depend on proof of a violation of federal emissions laws. And Plaintiffs' speculation that certification issues in Japan about *different* engines and a *different* market means that *their* engines violate federal emissions laws is not enough to state a claim.

Plaintiffs have already abandoned many of their claims by failing to respond in their opposition to defendants' arguments for dismissal.[1] This Court should dismiss the rest.

## ARGUMENT

### I.     PLAINTIFFS LACK ANY CONCRETE INJURY.

Plaintiffs do not dispute that they bear the burden of demonstrating they personally suffered

---

[1] Attached is an updated chart (originally submitted at Dkt. 68-1) showing the abandoned claims.

a "concrete injury" to establish Article III standing for each theory of liability. Opp. 6–8. They further concede that technical violations of federal law or generalized environmental harm cannot satisfy this requirement. Plaintiffs' attempts to explain why they suffered a concrete economic injury that gives them standing to pursue any of their three theories of liability are unpersuasive.[2]

### A. Plaintiffs Fail To Allege Any Concrete Injury From The "Defective OBD System" Or "Fuel Efficiency Fraud" Theories.

Plaintiffs focus on two economic "injuries" that purportedly give them standing to pursue their "Defective OBD System" and "Fuel Efficiency Fraud" theories—increased fuel and maintenance costs. Opp. 7. Neither works here.

**Plaintiffs fail to allege any increased fuel costs.** Plaintiffs do not—and cannot—allege that the Special Investigative Committee's report reached any conclusions about the fuel costs of *Plaintiffs'* vehicles. *See* Mot. 13; *see also Zia v. CitiMortgage, Inc.*, 210 F. Supp. 3d 1334, 1337 (S.D. Fla. 2016) (Gayles, J.) ("named plaintiffs who represent a class must allege and show that they personally have been injured").[3] The Complaint does not contain any other allegation that Plaintiffs' trucks are less fuel efficient than they expected, such as test results that other courts have required. *See, e.g., Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 583 (E.D. Mich. 2017); *In re Mercedes-Benz Emissions Litig.*, 2016 WL 7106020, at \*5 (D.N.J. Dec. 6, 2016).

Plaintiffs attempt to distinguish their claims from *Counts* and *Mercedes-Benz* by arguing that those cases did not feature "a regulatory investigation or a stop sale." Opp. 11. But neither provides a basis to infer that Plaintiffs' vehicles suffer from worse-than-expected fuel economy.

---

[2] Plaintiffs are incorrect that the Court cannot dismiss deficient theories of liability. Opp. 9 n.6. The Eleventh Circuit has expressly authorized courts to dismiss defective theories even when they are lumped together with other theories of liability in a single claim. *See, e.g., Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1329 (11th Cir. 2017) (affirming dismissal of certain individual theories of liability underlying a multi-theory negligence claim).

[3] All internal quotations are omitted and emphases added unless otherwise noted.

Plaintiffs ignore that ongoing government investigations "carr[y] no weight in pleading" civil claims "because the outcome of the investigation cannot be predicted." *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1316 (S.D. Fla. 2010). And Plaintiffs offer nothing to support the conclusion that any decision to halt future sales of certain Hino engines in December 2020—long after Plaintiffs purchased their vehicles—was motivated by concerns about fuel economy. *Infra* at 12.

Moreover, Plaintiffs' own allegations confirm that their emissions-related theories of fraud (SCR and OBD) would lead to *better* fuel economy than expected. *See* Compl. ¶ 43. Plaintiffs wrongly claim that this is based merely on "Hino's suggestion." Opp. 9. In reality, it is *Plaintiffs'* allegation that their engines "have an inherent trade-off between power, fuel efficiency, and emissions" that undercuts their allegation of increased fuel costs. Compl. ¶ 43. If, as Plaintiffs allege, "the greater the . . . fuel efficiency, the higher the rate of emissions," *id.*, conduct that increases the rate of emissions necessarily also increases fuel efficiency, leading to *lower* fuel payments and fewer trips to the pump. *See* Mot. 10–11. Plaintiffs did not plead their theories in the alternative, and so Plaintiffs' allegations that their vehicles emit higher-than-expected emissions—which the parties agree is not enough to establish Article III standing (*see* Mot. 8–9), but nonetheless must be accepted as true—render implausible their conclusory allegation that they suffered worse-than-expected fuel economy. *See In re Zantac Litig.*, 510 F. Supp. 3d 1141, 1164 (S.D. Fla. 2020) ("a party may not plead internally inconsistent facts within a count").

**Plaintiffs fail to allege any OBD issues or increased maintenance costs.** Plaintiffs also try to establish standing to pursue their "Defective OBD System" theory on the assertion that "all Plaintiffs allege that their Class Trucks contain defective OBD Systems," Opp. 7 (citing Compl. ¶ 9), but neither the cited paragraph nor the broader OBD allegations actually say such a thing. To

be sure, the Complaint speculates that OBD systems installed in the Class Trucks may encounter problems. But despite years of owning their vehicles, Plaintiffs do not allege that *they* experienced any problems with the OBD systems in *their* trucks. Similarly, although the Complaint alleges that increased maintenance costs are *possible* from a defective OBD system, Plaintiffs do not allege that *they* have incurred those costs or are plausibly likely to do so in the future. To the extent Plaintiffs speculate that they might incur these injuries in the future, "damages claims based on an asserted risk of future harm [are] unavailing" to give them standing now. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–12 (2021); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) ("fears of hypothetical future harm" are not "concrete" injuries).

**B.     Plaintiffs Do Not Allege Any Concrete Injury Caused By The "SCR Emissions Fraud" Theory.**

That leaves Plaintiffs' "SCR Emissions Fraud" theory, which is an afterthought in Plaintiffs' opposition. Plaintiffs claim they have standing to pursue this theory because they "overpaid for their Class Trucks" and their SCR systems "will deteriorate prematurely." Opp. 7. Neither theory is supported by factual allegations in the Complaint indicating that *Plaintiffs'* trucks have been impacted, as *Zia* requires.

***First***, a bare allegation that plaintiffs "suffered an 'ascertainable loss' because of 'overpayment and diminished value of the Vehicle'" is a "conclusory allegation" that is "insufficient." *Gerritsen v. FCA US LLC*, 2020 WL 3841304, at *1 (C.D. Cal. Mar. 3, 2020); *see also In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (conclusory "overpayment" allegation insufficient to confer standing as "a number of courts" have rejected it). Yet that is exactly what Plaintiffs did here. Each Plaintiff's "overpayment" theory relies on the same generic copy-and-pasted allegation that:

> The prices Plaintiff paid were based on the value added by … their [truck's] ability to meet or exceed regulatory emissions requirements for their useful life. …

> Plaintiffs would not have purchased the Class Trucks, or would have paid less for
> them, had it known they did not comply with emissions standards.

Compl. ¶¶ 11–14. No further details are provided, such as the amount of the alleged overpayment, or even whether any overpayment is attributable to the alleged SCR Emissions Fraud (much less any other theory of fraud). The Complaint itself does not even include any alleged "overpayment" among the "concrete injury" Plaintiffs say they suffered. *Id.* Plaintiffs have therefore failed to "set forth general factual allegations that plausibly and clearly allege a concrete injury," and the "mere conclusory statements" that they offer "do not suffice." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337–38 (11th Cir. 2021); *see also Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) ("[o]nly factual allegations, and not legal conclusions" or "mere conclusory statements" are relevant to the standing inquiry).

*Second*, Plaintiffs' speculation that the SCR Emissions Fraud conduct "causes the SCR system to deteriorate prematurely" is even weaker. Compl. ¶ 47. The only alleged impact of a defective SCR system, according to that same paragraph, is increased emissions, *see id.*, which is not an economic injury that satisfies the "concrete injury" requirement. And Plaintiffs do not allege that *their* vehicles—which they have owned for many years—are deteriorating. They instead rely on speculation that their SCR systems are at risk of deteriorating in the future, but speculation that their trucks *might* encounter these problems in the future does not establish Article III standing now. *See supra* at 4. Such speculation is especially unwarranted in this case, when the engine referenced in paragraph 47 is an A05C engine sold in Japan, not the J08E engine Plaintiffs allegedly purchased in the United States. *See* Compl. ¶¶ 11–12, 14, 97.

## II.   THE OPPOSITION CONFIRMS PLAINTIFFS' CLAIMS ARE PREEMPTED.

Even if Plaintiffs had adequately pled a "concrete injury" that gave them standing, their claims should still be dismissed because Congress gave federal regulators, not private plaintiffs,

exclusive authority to enforce federal emissions laws.

### A.    Plaintiffs' Claims Are Expressly Preempted.

Plaintiffs wrongly suggest that a "presumption against preemption" applies here. Opp. 13. When, as here, a "statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *P.R. v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (cleaned up).

Plaintiffs also give short shrift to binding Eleventh Circuit precedent recognizing the broad preemptive scope of Section 209(a) of the CAA. *See Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989) (en banc). As *Sims* holds, a state law is preempted even if it seeks to force vehicle manufacturers to "comply with the Clean Air Act" and "does not establish new or conflicting emissions standards." *Id.*

Plaintiffs' remaining arguments against preemption rest on strained interpretations of the CAA's preemption provisions and attempts to compare this case to dissimilar out-of-circuit cases that have avoided preemption. Neither strategy is successful.

### 1.    Plaintiffs' Interpretation Of The Clean Air Act Is Erroneous.

Plaintiffs begin by asking this Court to be the first to embrace three flawed interpretations of the CAA. No court has accepted Plaintiffs' interpretations, and this Court should not either.

First, Plaintiffs claim that Section 209(a) of the CAA does not apply because Plaintiffs are not a "State or any political subdivision," Opp. 14, but this argument has been repeatedly rejected. "[I]t is clear that a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption." *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 575 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012);

*see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 325 (2008) ("State tort law … disrupts the federal scheme no less than state regulatory law to the same effect."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 264 F. Supp. 3d 1040, 1053 (N.D. Cal. 2017) (preemption provision intended to prevent civil lawsuits so as to avoid "a multiplicity of redundant investigations and enforcement actions").

Second, Plaintiffs claim that they have not accused Hino of violating an emissions "standard" under Section 209(a) because they "do not seek to impose any numerical emissions level or to 'command' what 'new technology' the Class Trucks should be equipped with." Opp. 16. That reads Section 209(a) too narrowly, which is why the Eleventh Circuit did not embrace that interpretation in *Sims*. Section 209(a) "precludes state or local governments from imposing any restriction that has the purpose of enforcing emission characteristics for pre-sale, motor vehicles." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1216 (9th Cir. 2020). A state-law tort claim "that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA." *Jackson*, 770 F. Supp. 2d at 575. Indeed, Plaintiffs' argument is belied by their own allegations that they purchased trucks believing they "met or exceeded all regulatory emissions standards." *See* Compl. ¶¶ 11–14.

Plaintiffs' cited cases do not say otherwise. Plaintiffs mischaracterize *Engine Manufacturers Ass'n v. South Coast Air Quality Management District*, a case that actually *rejected* attempts to adopt a "limiting" interpretation of "standard." 541 U.S. 246, 253 (2004). In that case, the Supreme Court held that "[t]he criteria referred to in § 209(a) relate to the emission characteristics of a vehicle or engine," and "[t]o meet them the vehicle or engine must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-

control device, or must have some other design feature related to the control of emissions." *Id.* The Court went on to cite "numerical emissions levels" as *a single example* of a "standard" enforced by the CAA. *Id.* (noting standards "*such as* numerical emission levels"). Likewise, the claims in *In re Caterpillar* were not preempted because plaintiffs challenged "an alleged defect which prevents the Engines at issue from operating without continually derating and/or shutting down," meaning the claim was not "a failure to perform as an EPA-compliant engine, but a failure to perform as an engine at all." 2015 WL 4591236, at *11 (D.N.J. July 29, 2015). Neither decision supports Plaintiffs' contention that Section 209(a) is limited to claims attempting to enforce "numerical" emissions standards.

Finally, Plaintiffs are wrong to suggest that 42 U.S.C. § 7604(e) saves "private causes of action for damages" from preemption under Section 209(a), Opp. 14, and they cite no case that has accepted this interpretation. Section 7604 is a citizen-suit provision that authorizes private parties to seek injunctive relief and civil penalties to enforce the CAA under certain circumstances. The savings clause in that section, Section 7604(e), merely provides that "'[n]othing *in this section*,' *i.e.*, the citizen-suit provisions, shall affect an injured party's right to seek relief under state law; it does not purport to preclude pre-emption of state law by other provisions of the Act." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 493 (1987) (interpreting materially identical provision in Clean Water Act). As courts have recognized, Section 7604(e) has no effect on the preemptive force of Section 209(a). *See Counts*, 237 F. Supp. 3d at 589 n.7 ("To the extent Plaintiffs rely on the CAA's citizen suit provision, 42 U.S.C. § 7604(e), that provision is trumped by the 'preemptive intent of § 209(a).'"); *Jackson*, 770 F. Supp. 2d at 578 ("it is clear that the preemptive intent of § 209(a) trumps [Section 7604(e)], as Congress has made it abundantly clear that the regulation of motor vehicle emissions is an area of particular congressional concern").

**2.      This Case Is Unlike Plaintiffs' Cited Cases Because Plaintiffs' Allegations Require Proof Of Regulatory Violations.**

The opposition offers no response to the point that each of Plaintiffs' theories depends on proof of a violation of the CAA. Put differently, if Hino did *not* violate any federal regulations— *i.e.*, if Hino's vehicles achieved lawful emissions targets, met emissions standards, complied with federal testing requirements, and adhered to federal OBD requirements—there would be nothing left of Plaintiffs' claims. The opposition makes no argument otherwise.

That makes this case different from Plaintiffs' out-of-circuit cases, all of which involved affirmative misrepresentations to consumers that did not depend on proof of a violation of federal emissions law. The *In re Volkswagen "Clean Diesel"* and *FCA EcoDiesel* cases cited by Plaintiffs, Opp. 12–13, are prime examples. *Volkswagen "Clean Diesel"* involved claims that the defendant prominently branded its vehicles as "clean diesel," and marketed them as "low-emission, environmentally friendly, fuel efficient, and high performing." 349 F. Supp. 3d 881, 890 (N.D. Cal. 2018); *see also Felix v. Volkswagen Grp. of Am., Inc.* 2017 WL 3013080, at *1 (N.J. Super. Ct. App. Div. July 17, 2017) (involving same marketing). Similarly, *FCA EcoDiesel* challenged marketing "that the vehicles were 'EcoDiesel' vehicles (i.e., reduced emissions)" and that they were "a 'green' alternative to gasoline." 295 F. Supp. 3d 927, 946 (N.D. Cal. 2018). As the case names suggest, those plaintiffs challenged affirmative misrepresentations that the vehicles were environmentally friendly. Even if the manufacturers had complied with federal emissions laws, their claims of "Clean Diesel" and "EcoDiesel" could still have misled consumers to purchase vehicles that did not deliver the promised environmental benefits.

Plaintiffs' other cited cases follow the same pattern. *In re Duramax Diesel Litigation* involved misrepresentations that "GM crafted a marketing campaign, intended to reach the eyes of consumers, [which] promoted the Duramax engine as delivering 'low emissions' or having

'reduced NOx emissions.'" 298 F. Supp. 3d 1037, 1049 (E.D. Mich. 2018). *Gamboa v. Ford Motor Co.* similarly involved boasts of "the 'Cleanest Super Diesel Ever,'" claims that "vehicles reduced nitrogen oxide ('NOx') by 80% over previous models," and advertising that "vehicles were 'best-in-class' with respect to fuel economy." 381 F. Supp. 3d 853, 865 (E.D. Mich. 2019). And in *Counts*, "GM promised a clean diesel engine—including 'at least 90% less nitrogen oxide and particulate emissions' … and Plaintiffs chose the diesel model based at least in part on its 'clean diesel' features." 237 F. Supp. 3d at 582.

In contrast to those cases, Hino trucks are commercial trucks that are used primarily for business purposes and are not marketed as "Clean Diesel." Plaintiffs here cannot point to any similar affirmative misrepresentations about the environmental benefits of Hino trucks—much less that they saw or relied on any statement.[4] Rather, Plaintiffs' claims rely exclusively on fraudulent omissions, and Plaintiffs cite no case allowing an omission claim standing alone to escape preemption. If Plaintiffs' views prevailed, Section 209(a) would have no preemptive force, as any plaintiff could twist a claim for violation of federal emissions standards into a fraudulent omission case. Such an outcome would run afoul of the Eleventh Circuit's admonition that "[e]nforcement of the Clean Air Act before [the] first sale [of new motor vehicles] is the sole and exclusive prerogative of the federal government." *Sims*, 862 F.2d at 1455.

### B. Plaintiffs' Claims Are Also Impliedly Preempted.

Plaintiffs do not dispute that, as a general matter, "fraud-on-the-EPA" claims are implicitly preempted under the Supreme Court's decision in *Buckman*. They contend that their claims are excused from this general rule because their claims "are not premised on CAA non-compliance."

---

[4] Although the Complaint identifies several statements that Plaintiffs claim constitute affirmative misrepresentations, no Plaintiff alleges that it saw or acted on any of those statements. That explains why Plaintiffs only allege fraud by *concealment*. *E.g.* Compl. ¶ 136.

Opp. 20 (cleaned up).  But Plaintiffs do not say why this is so, and as explained in the opening motion and above, this characterization of Plaintiffs' claims is not correct.

Plaintiffs fare no better attempting to cast *Buckman* as a decision involving misrepresentations that "were made only to the FDA," whereas here they were made "to consumers."[5]  Opp. 20.  What Plaintiffs allege Hino concealed from consumers *is* fraud on the EPA—namely, false representations that Plaintiffs' trucks complied with federal emissions laws, in order to obtain approval for sale in the United States.  *See* Compl. ¶¶ 93, 137.  Absent a finding of fraud on the EPA, Plaintiffs cannot prove that there was any fraud "to consumers."

## III.   PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM FAILS.

### A.   Plaintiffs Fail To Plead Acts Of Concealment With Particularity.

Plaintiffs' opposition confirms that their concealment claim rests on multiple layers of speculation and innuendo.

**"Defective OBD System" Theory.**   Although Plaintiffs repeatedly refer to the Special Investigation Committee report, they do not argue that the report made findings about Hino's OBD systems.  *See* Opp. 23–24.  Instead, Plaintiffs' assertion that Hino trucks contained defective OBD systems depends on the following, conclusory sentence: "[T]he OBD does not timely inform drivers to idle the Class Trucks to initiate cleaning." Opp. 23 (quoting Compl. ¶ 9). That sentence comes nowhere close to pleading facts needed to satisfy Rule 9(b).  *See* Mot. 22–23.

**"SCR Emissions" and "Fuel Efficiency" Fraud.**  Plaintiffs admit that virtually all of their allegations relate to engines sold in Japan and certified to Japanese regulatory standards.  *See* Opp. 21–22.  They nonetheless try to link those allegations to the U.S. by citing a vague press release

---

[5] *In re Bayer Corp. Combination Aspirin Products Marketing & Sales Practices Litigation* does not hold otherwise.  The claims there did not involve a suggestion of fraud on an agency, but instead "implicit false suggestions in the minds of the consumer that defendants' drug is FDA-approved," when in fact it was not.  701 F. Supp. 2d 356, 373 (E.D.N.Y. 2010).

stating that HML "internally identif[ied] potential issues regarding certification testing to determine the emissions performance of on-road engines for the North American market" and "the U.S. Department of Justice commenced an investigation."   Opp. 23 & Ex. A.  But that statement says nothing about the nature of the certification issues, let alone supports Plaintiffs' SCR Emissions or Fuel Economy theories.  Nor do Plaintiffs otherwise tie the "potential issues" to their specific vehicles.  That is undoubtedly why Plaintiffs make their fraud allegations "on information and belief," Compl. ¶¶ 53, 67, 81, which is impermissible under Rule 9(b).  *See* Mot. 24.

Unable to rely on the press release, Plaintiffs are reduced to the argument that "Hino was forced to stop selling all trucks with Hino engines in the United States since December 2020." Opp. 10 (emphasis omitted).  That argument, however, does not match the facts pled.  Plaintiffs simply allege that Hino *voluntarily* paused production "following challenges in the required U.S. engine certification testing processes for new model years of the A09C, J08E, and J05E engines for North America."  Compl. ¶ 67.  The mere allegation that Hino voluntarily paused future production of certain engines—none of which are the same engines identified in the Japanese disclosures cited by Plaintiffs, and which were manufactured years after Plaintiffs purchased their vehicles—is a far cry from suggesting that Hino engaged in SCR and Fuel Efficiency fraud for twenty years, or that Plaintiffs' vehicles were affected.  If that were a permissible inference, then any decision to stop selling products due to regulatory considerations would be sufficient to plead widespread fraud.

### B.        Plaintiffs Fail To Plead Reliance Or Causation.

Plaintiffs do not dispute that reliance and causation are required elements of fraudulent concealment.  Mot. 27 & n.10; Opp. 27.  They argue that those elements are satisfied by pointing to representations that Hino trucks had "high fuel economy" and "met or exceeded [regulatory or EPA] emissions standards."  Opp. 26.  But "[t]he problem for Plaintiffs is that they have failed to

identify what advertising they saw that promised certain fuel economy or performance." *FCA EcoDiesel*, 295 F. Supp. 3d at 987. Without such allegations, Plaintiffs cannot plead "the manner in which [those statements] misled" them, as required under Rule 9(b). *Young v. Grand Canyon Univ., Inc.*, -- F.4th --, 2023 WL 118610, at *8 (11th Cir. Jan. 6, 2023).

Contrary to Plaintiffs' suggestion, boilerplate allegations that Plaintiffs purchased vehicles "based in part on Hino's representations" are insufficient. Opp. 26 (quoting Compl. ¶¶ 11–14). As Plaintiffs' own cases confirm, plaintiffs must describe which representations or advertisements they reviewed in order to plead reliance and causation. For example, *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1091 (N.D. Cal. 2014), cited allegations that, "[p]rior to purchasing their vehicles, Plaintiffs took time and effort to compare the [vehicles] with other similar and competing vehicles" and "reviewed . . . window stickers or [defendant]'s website."[6] Similarly, *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 910–11 (N.D. Cal. 2021), accepted allegations that the plaintiff "viewed and relied on the [window stickers] on his cars before leasing his cars." No remotely comparable allegations exist here.

Rather than identifying any specific representations they reviewed, Plaintiffs argue that reliance and causation can be met where "information would have reached Plaintiffs through a variety of plausible channels." Opp. 27. That argument puts the cart before the horse: the issue of how a disclosure would be publicized is relevant only where Plaintiffs first plead a specific representation they relied on in purchasing their vehicles. *See Young*, 2023 WL 118610, at *8;

---

[6] Plaintiffs wrongly suggest that *MacDonald* relaxed the reliance standard for an omissions claim (Opp. 27). That court simply noted that plaintiffs who had identified specific statements they saw need not identify every detail of a hypothetical truthful disclosure. 37 F. Supp. 3d at 1091, 1096. Plaintiffs are also incorrect that reliance can be "presumed" under California law. Opp. 27 n.19. As the court in *Ahern v. Apple Inc.* explained, the line of cases on which that assertion relies (*In re Tobacco II*) involved situations—not at issue here—"where a plaintiff has been exposed to numerous advertisements over a period of decades." 411 F. Supp. 3d 541, 563 (N.D. Cal. 2019).

Mot. 27.  In any event, the Complaint contains no facts suggesting that Plaintiffs would have been made aware of any disclosures about Hino vehicles, and "facts contained in a motion or brief cannot substitute for missing allegations in the complaint." *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022); *see also Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *6–7 (N.D. Cal. Oct. 11, 2016) (dismissing concealment claim because plaintiff "has not alleged any facts to indicate that she would have been aware of a disclosure if one was made").

### C. Plaintiffs Fail To Plead A Duty To Disclose.

Plaintiffs agree that there is no general duty to disclose, but raise three reasons why a duty exists in this particular case.  None has merit.

**Concealment.**  Plaintiffs' arguments based on "active[] conceal[ment]" (Opp. 25) fail for the reasons above.  *See supra* at 11–12.  To the extent Plaintiffs suggest that a duty arises from statements that "misle[d] U.S. regulators" (Opp. 25), such a theory is exactly the kind of fraud-on-the-EPA claim that is preempted under *Buckman* and its progeny.  *See* Mot. 20–21.

**Superior Knowledge.**  Plaintiffs say there was a duty to disclose based on "superior knowledge" (Opp. 24), but that is not the law.  "Possession of superior knowledge alone does not create a duty to disclose under Florida law." *DJ Lincoln Enters., Inc. v. Google, LLC*, 2021 WL 3079855, at *3 (S.D. Fla. July 21, 2021), *aff'd*, 2022 WL 203365 (11th Cir. Jan. 24, 2022). Likewise, California law does not recognize a duty to disclose unless a defect presents a "safety issue"—which is not pled here. *Taleshpour v. Apple, Inc.*, 2022 WL 1577802, at *1 (9th Cir. May 19, 2022).  And Plaintiffs fail to allege superior knowledge under New York law because there are no allegations that HMM and HMS "*knew* Plaintiff[s] w[ere] acting on the basis of the mistaken knowledge" before making their purchases. *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 900 (E.D.N.Y. 2018) (emphasis in original).

**Partial Representations.**  For two reasons, Plaintiffs cannot rely on "incomplete

representations" as a basis for a duty to disclose.  Opp. 25.  First, Plaintiffs do not identify any specific representations that *they actually viewed*, which is required to trigger a duty.  *See* Mot. 25–26.  Second, the representations identified in the Complaint—*e.g.*, "superior fuel economy," "optimal power," and "unmatched reliability"—are non-actionable puffery. While Plaintiffs insist that questions of puffery cannot be resolved on the pleadings (Opp. 26), they are wrong: "District courts often resolve whether a statement is puffery when considering a motion to dismiss."  *Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

### D.    The Fraudulent Concealment Claim Is Barred By The Economic Loss Rule.

As this Court has explained, a fraudulent concealment claim that "seek[s] to recover only economic damages" is "clearly barred by Florida's economic loss rule." *Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018) (Gayles, J.).  Neither exception cited in the opposition is applicable.

**Non-Monetary Loss.**  Plaintiffs argue that the economic loss rule does not apply because they allege that defective OBD systems resulted in damage to "engine" and "other hardware." Opp. 28.  Those allegations are irrelevant because Plaintiffs only seek damages for economic losses—not damages resulting from supposed harm to their vehicles.[7]  *See Vazquez*, 2018 WL 447644, at *6 (economic loss rule applies where claims "seek to recover only economic damages").

**Fraudulent Inducement.**  Plaintiffs wrongly contend that any claim sounding in fraud is exempt from the economic loss rule.  *See* Opp. 29–30.  This Court reached the exact opposite

---

[7] Even if Plaintiffs were seeking recovery for damage to their vehicles, that still would not be enough under Florida and New York law.  Under those jurisdictions, damage to the *same product* (*i.e.*, the vehicle) is not recognized as damage to "other property" for the exception to apply.  *See Am. Universal Ins. Grp. v. Gen. Motors Corp.*, 578 So. 2d 451, 453–54 (Fla. Dist. Ct. App. 1991) (affirming dismissal under economic loss rule because engine damage caused by defective oil pump "was not damage to other property"); *Progressive Ins. Co. v. Ford Motor Co.*, 790 N.Y.S.2d 358, 360 (Dist. Ct. 2004) ("[T]he [vehicle] as a whole must be the standard by which the product is measured for purposes of determining whether other property was damaged.").

conclusion in *Vazquez*. There, as here, the plaintiffs asserted a fraudulent concealment claim and argued that the economic loss rule does not bar such a claim. 2018 WL 447644, at *1–2, 5. This Court disagreed, explaining that "allowing such claims to proceed would undermine the economic loss rule altogether." *Id.* at *5.

Plaintiffs cite cases from other jurisdictions reaching a different conclusion (Opp. 29–30 & n.24), but the better-reasoned cases hold that the economic loss rule applies to fraud claims. Otherwise, a plaintiff could "avoid the economic loss rule" by simply "assert[ing] claims for negligent and fraudulent concealment regarding the defect." *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013). That explains why numerous courts in this Circuit have dismissed fraudulent concealment claims against vehicle manufacturers seeking only economic damages. *See In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1337, 1339 (S.D. Fla. 2016) (dismissing fraudulent concealment claim based on manufacturer's "fail[ure] to disclose"); *Vazquez*, 2018 WL 447644, at *1–2, 6 (similar); *Burns*, 2013 WL 4437246, at *4 (similar); *see also Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1097, 1104 (S.D. Fla. 2019) (similar) (cited at Opp. 33 n.26). This Court should as well.

## IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL FOR ADDITIONAL REASONS.

### A.    Plaintiffs Abandoned Their Implied Warranty And California Song-Beverly Warranty Claims.

Plaintiffs abandon their breach-of-implied warranty claims and California Song-Beverly Act claims by failing to respond to HMM and HMS's arguments challenging those claims. *See* Mot. 37–40. Florida Count III, Arizona Count III, Connecticut Count III, New York Count IV, and California Counts VI, VII, and VIII should be dismissed.

### B.    Plaintiffs' State Consumer Protection Claims Fail For Several Reasons.

<u>No Material Omission or Duty to Disclose</u>. Plaintiffs do not deny that they must plead a

material omission and a duty to disclose under each state's consumer protection law. Mot. 30. They have not done so for the reasons above. *See supra* at 11–12, 14–15.

**No Causation or Reliance**. Plaintiffs agree that they must show individualized reliance under the ACFA (Arizona). *See* Mot. 30 n.14. Their own authority also recognizes that a "plaintiff must establish 'actual reliance' to recover on a misrepresentation-based UCL, CLRA or FAL [California] claim[]." *Allegra v. Luxottica N. Am.*, 341 F.R.D. 373, 410 (E.D.N.Y. 2022) (cited at Opp. 31 n.25). Those claims should therefore be dismissed because Plaintiffs do not identify the specific representations they relied upon in making their purchases, as required by Rule 9(b).

Plaintiffs dispute that a reliance requirement exists for the FDUTPA (Florida), CUTPA (Connecticut), or GBL (New York) (*see* Opp. 31), but that is irrelevant because *causation* is a necessary element. *See* Mot. 30 n.14. Plaintiffs cannot plead causation where they do not identify the specific advertisements or representations they reviewed before making their purchases. *Id.*; *Grossman v. GEICO Cas. Co.*, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (dismissing GBL claim where "the specific advertisement that Plaintiffs allege misled them and caused their injury appeared on GEICO's website, which Plaintiffs nowhere allege that they ever visited"); *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1250 (S.D. Fla. 2018) (same for FDUTPA).

**New York Counts I & II**. Marders does not deny that its trucks are used for business, not personal, family, or household use. Marders' assertion that Hino's conduct was "directed to the consuming public" (Opp. 32), makes no sense when the product has no consumer use. Mot. 31.

**Connecticut Count I**. Plaintiffs are wrong that *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015), means that Rule 23 displaces CUTPA's bar on class claims by non-residents. Unlike the Alabama-law provision at issue in *Lisk*, "CUTPA's requirement of an in-state class representative is a prominent part of the statutory scheme" that is not displaced by

Rule 23.  *Cf. Chapman v. Priceline Grp., Inc.*, 2017 WL 4366716, at *7 (D. Conn. Sept. 30, 2017).

**Arizona Count I.**  None of Plaintiffs' cited authorities holds that a purchaser of a *used* product (like Redlands) can maintain an ACFA claim.  *See* Opp. 33.  The only case cited by Plaintiffs that addressed such a claim, *Bestwick v. Newmar Corp.*, 576 F. Supp. 3d 599 (N.D. Ind. 2021), held—as HMM and HMS argue here—that a subsequent purchaser *cannot* assert an ACFA claim against an upstream seller who "was not part of the sales transaction" and "had no contact with [the subsequent purchaser] vis-à-vis the sale." *Id.* at *607.

**California Counts I-III.**  Plaintiffs' authority confirms they are "required to plead an unreasonable safety hazard" to state a duty to disclose under California law, which they have not done.  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 927 (N.D. Cal. 2018) (cited at Opp. 39).  Plaintiffs counter that a duty arises when a defect impairs the vehicle's "central functioning," but their cited cases predate the Ninth Circuit's holding that a "safety hazard" is required. *Taleshpour*, 2022 WL 1577802, at *1.  Even if the "central functioning" rule applied, Plaintiffs fail to allege that their "car currently is inoperable or otherwise fails to drive properly," as they must. *Klein v. Ljubljana Inter Auto d.o.o.*, 2021 WL 6424917, at *7 (C.D. Cal. Sept. 13, 2021).[8]

This Court should also dismiss the CLRA claim because Redlands is an office cleaning business, not a "consumer" under the statute. Mot. 32.  Plaintiffs' only response is that this issue should be deferred (Opp. 35), but courts routinely grant motions to dismiss CLRA claims on this basis.  *See* Mot. 32; *In re Caterpillar, Inc.*, 2015 WL 4591236, at *34 (no CLRA violation where "it is clear from the [complaint] that Plaintiffs utilized the Engines for business purposes").

---

[8] Plaintiffs' authorities are distinguishable on this basis. *See Bettles v. Toyota Motor Corp.*, 2022 WL 1619337, at *1 (C.D. Cal. May 23, 2022) (plaintiff noticed "foul odor emanating from the air-conditioning"); *Stockinger v. Toyota Motor Sales U.S.A., Inc.*, 2020 WL 1289549, at *1 (C.D. Cal. Mar. 3, 2020) (vents in plaintiffs' vehicles "blew airborne mold into passenger compartments").

**California Count IX.**  Plaintiffs provide no authority challenging HMM and HMS's cited case law that the economic loss doctrine bars their "failure to Recall/Retrofit" claim.  Mot. 32.

### C.    Plaintiffs' Remaining Breach-of-Express-Warranty Claims Fail.

**Claims Based on CAA-Mandated Warranties are Preempted.**  No court has allowed a claim for breach of an express warranty *mandated by the CAA* to escape federal preemption, and this Court should not be the first.  Plaintiffs' reliance on *In re Caterpillar* is perplexing because that court dismissed a similar claim as preempted because the CAA warranty was "mandated by federal law."  2015 WL 4591236, at *13.  Plaintiffs' other authorities are irrelevant because they do not address claims involving express warranties mandated by the CAA.  *See* Opp. 19.

**Claims Based on Hino Warranties Fail.**  Plaintiffs cite two Hino warranties that were purportedly breached, but the opposition fails to overcome the grounds for dismissing those claims.

*Five-Year Express Base Emissions & Base After-Treatment System Warranty*.  Plaintiffs try to save their "base emissions and base after treatment system" warranty claim by arguing that the terms of that warranty are detailed in the Complaint.  *See* Opp. 36.  Even a cursory review of the Complaint suggests otherwise.  *See* Compl. ¶ 169 (failing to describe the warranty's terms, when it was provided, and by whom).

*Two-Year Express Base Vehicle Warranty*.  Plaintiffs' "base vehicle" warranty claim should also be dismissed because that warranty, which covers "defects in materials and workmanship," applies solely to manufacturing defects. *See* Mot. 34.  Although Plaintiffs contend that it is "premature" to decide that issue (Opp. 36), this Court has held otherwise.  *Vasquez*, 2018 WL 447644, at *3 & n.4 ("'[M]aterials or workmanship' is a specialized warranty term meaning manufacturing defects."); *see also Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (noting "overwhelming weight of state authority" requiring dismissal of similar claims).  Apart from conclusory assertions (Compl. ¶¶ 176, 221, 278, 369, 429), Plaintiffs do not

plead any facts that their vehicles experienced a manufacturing defect.

**Florida Count II.** Plaintiffs disregard that "a prerequisite to an express warranty claim is notice to the *manufacturer* of the breach," *Pye v. Fifth Generation, Inc.*, 2016 WL 9046788, at *3 (N.D. Fla. 2016), and "[t]he filing of a lawsuit does not constitute notice," *Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011). Plaintiffs' assertion that reliance is not required is puzzling because their own cases confirm that it is.[9]

**New York Count III.** Plaintiffs agree they must plead notice and reliance (Opp. 39), but do not address HMM and HMS's cases demonstrating Plaintiffs' failure to plead both. Mot. 36.

**Connecticut Count II.** Plaintiffs ignore the argument that they have not pled reliance or notice under Connecticut law. Mot. 37; Opp. 39. This alone justifies dismissal of their claim.

**Arizona Count II.** Plaintiffs concede that the Arizona express warranty claim should be dismissed for failure to plead reliance or privity by failing to address those elements. *See* Mot. 37.

**California Count VI.** Plaintiffs' own authority confirms that reliance is a required element of a California express warranty claim and that conclusory allegations that "Defendants' warranties formed a basis of the bargain" are insufficient. *McCarthy v. Toyota Motor Corp.*, 2018 WL 6318841, at *8 (C.D. Cal. Sept. 14, 2018) (dismissing similar warranty claim) (cited at Opp. 36). Privity also does not exist here because a remote manufacturer or seller of a *new* product (like HMM or HMS) and a purchaser of *used* product (like Redlands) are not in "adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

## CONCLUSION

This Court should dismiss the Complaint.

---

[9] *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788 (D.N.J. July 9, 2010) ("justifiable reliance" required for express warranty claim under Florida law) (cited at Opp. 39); *Nexus 6P*, 293 F. Supp. 3d at 916 (same) (cited at Opp. 39).

DATED: January 20, 2023   Respectfully submitted,

      /s/ Jordan S. Cohen
Jordan S. Cohen, Florida Bar No. 551872
Ethan A. Arthur, Florida Bar No. 119054
WICKER SMITH O'HARA MCCOY & FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353

Andrew Soukup (*pro hac vice*)
Henry Liu (*pro hac vice*)
Stephen Petkis (*pro hac vice*)
Jessica Merry Samuels (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Telephone:  (202) 662-5066
Facsimile:  (202) 778-5066
Email: asoukup@cov.com
   hliu@cov.com
   spetkis@cov.com
   jsamuels@cov.com


*Attorneys for Defendants*
*Hino Motors Manufacturing U.S.A., Inc.*
*and Hino Motors Sales U.S.A., Inc.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 20, 2023, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filling to all counsel of record.

      /s/ Jordan S. Cohen
     Jordan S. Cohen