**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 1:22-cv-22483-Gayles/Torres

EXPRESS FREIGHT INTERNATIONAL, et
al.,

               Plaintiffs

    v.

HINO MOTORS, LTD., et al.,

               Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT HINO MOTORS, LTD.'S
<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT .................................................................................................................................. 2

I.      This Court Has Personal Jurisdiction Over Hino Japan. ................................................... 2

        A.      Florida's Long-Arm Statute Confers Jurisdiction over Hino Japan...................... 3

                1.      Hino Trucks Is An Agent of Hino Japan. ................................................... 3

                2.      Fla. Stat. § 48.193(1)(a)(1): Hino Japan Individually and Through
                        Its Agent Hino Trucks Committed A Tortious Act In Florida Giving
                        Rise to Jurisdiction Under Florida's Long-Arm Statute. .......................... 8

                3.      Fla. Stat. § 48.193(1)(a)(2): Hino Japan, Through Its Agent Hino
                        Trucks, Conducted Business In Florida, Giving Rise to Jurisdiction
                        Under Florida's Long-Arm Statute. .......................................................... 9

        B.      Hino Japan's Contacts with Florida Satisfy Due Process. .................................... 9

                1.      Plaintiffs' Claims Arise Out of Hino Japan's Contacts with Florida. ...... 10

                2.      Hino Japan Purposefully Availed Itself of Florida. ................................. 10

                3.      Exercising Personal Jurisdiction Over Hino Japan Does Not
                        Offend Traditional Notions of Fair Play and Substantial Justice. ............ 12

        C.      In the Alternative, Plaintiffs Request Jurisdictional Discovery. ......................... 13

II.     The Complaint States Claims Against Hino Japan. ........................................................ 14

CONCLUSION ............................................................................................................................. 15

REQUEST FOR ORAL ARGUMENT ......................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**

*ADT LLC v. Alarm Prot. Tech. Florida, LLC*,
No. 12-80898-CIV, 2013 WL 11276119 (S.D. Fla. Apr. 18, 2013) ........................................... 3

*Andres v. Raytheon Techs. Corp.*,
No. 21-61757-CIV, 2022 WL 1015489 (S.D. Fla. Apr. 5, 2022) ............................................... 4

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
480 U.S. 102 (1987) .......................................................................................................... 11

*Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*,
722 F. App'x 870 (11th Cir. 2018) ................................................................................... 13

*Brown v. Bottling Grp., LLC*,
159 F. Supp. 3d 1308 (M.D. Fla. 2016) ........................................................................... 11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......................................................................................................... 10

*Consol. Dev. Corp. v. Sherritt, Inc.*,
216 F.3d 1286 (11th Cir. 2000) ......................................................................................... 4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......................................................................................................... 10

*Deltona Transformer Corp. v. Shft Glob., Inc.*,
No. 614CV825ORL41GJK, 2014 WL 12629945 (M.D. Fla. Nov. 12, 2014) ......................... 3

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ....................................................................................... 12

*Eaton v. Dorchester Dev., Inc.*,
692 F.2d 727 (11th Cir. 1982) ......................................................................................... 13

*Evans v. Wurkin Stiffs, Inc.*,
No. 15-cv-61934, 2016 WL 8793339 (S.D. Fla. Mar. 21, 2016) ......................................... 14

*Falco v. Nissan N. Am. Inc.*,
96 F. Supp. 3d 1053 (C.D. Cal. 2015) .............................................................................. 11

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
106 F. Supp. 2d 1278 (S.D. Fla.1999) ............................................................................... 9

*Gourdine v. Karl Storz Endoscopy-America, Inc.*,
223 F. Supp. 3d 475 (D.S.C. 2016) ................................................................................. 11

*Hatton v. Chrysler Canada, Inc.*,
937 F. Supp. 2d 1356 (M.D. Fla. 2013) ........................................................................... 11

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
753 F.3d 521 (5th Cir. 2014) ................................................................................... 2, 10, 13

*Keim v. ADF MidAtlantic, LLC*,
199 F. Supp. 3d 1362 (S.D. Fla. 2016) .............................................................................. 3

*Licciardello v. Lovelady*,
554 F.3d 1280 (11th Cir. 2008) ............................................................................ 3, 8, 10, 13

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ........................................................................ 2, 10

*Meier v. Sun Int'l Hotels, Ltd.*,
  288 F.3d 1264 (11th Cir. 2002) ..................................................................... 3, 4, 9

*Northern Insurance Co. of New York v. Construction Navale Bordeaux*,
  No. 11-60462-CV, 2011 WL 2682950 (S.D. Fla. July 11, 2011) .............................. 7

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) .......................................................................... 15

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*,
  579 F. App'x 779 (11th Cir. 2014) ..................................................................... 13

*Robinson v. Giarmarco & Bill, P.C.*,
  74 F.3d 253 (11th Cir. 1996) ............................................................................. 13

*S.A.S.B. Corp. v. Concordia Pharm., Inc.*,
  2016 WL 10953760 (S.D. Fla. Aug. 26, 2016) ..................................................... 14

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
  447 F.3d 1357 (11th Cir. 2006) ........................................................................... 4

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................................ 11

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................................... 10, 11

*Young v. Mitsubishi Motors N. Am. Corp., Inc.*,
  No. 19-cv-2070, 2020 WL 4584391 (W.D. Wash. Aug. 10, 2020) .......................... 11

**Statutes**

Fla. Stat. § 48.193(1)(a) ......................................................................................... 3

Fla. Stat. § 48.193(1)(a)(1) ................................................................................. 3, 8

Fla. Stat. § 48.193(1)(a)(2) ................................................................................. 8, 9

## INTRODUCTION AND SUMMARY OF ARGUMENT

Hino Motors, Ltd. ("Hino Japan" or, as used in the Complaint, "Hino Motors") is at the center of the alleged fraudulent scheme to fabricate emissions and fuel economy test results for its Hino-branded trucks in the United States ("Class Trucks"). As detailed in Plaintiffs' opposition to the motion to dismiss filed by Hino Motors' American subsidiaries—Hino Motors Manufacturing U.S.A., Inc. ("Hino Manufacturing") and Hino Motors Sales U.S.A., Inc.'s ("Hino Trucks")—Hino Japan admitted to widespread fraud in connection with many of its engines for decades.

That fraud is plainly connected to the Class Trucks in the United States. To summarize: (1) Hino Japan designs, develops, manufacturers, and—in many cases—installs its engines in all of its trucks in the U.S.; (2) the investigations that led to Hino Japan's admissions were catalyzed by U.S. regulators and began only "[a]fter [Hino] internally identif[ied] potential issues regarding certification testing to determine the emissions performance of on-road engines for the *North American* market;" (3) one of the engines Hino Japan admitted to cheating on in Japan is also subject to a stop sale in the U.S.; (4) Hino was forced to stop selling *all trucks* with Hino engines in the U.S. in December 2020 because it could not meet engine certification requirements and ultimately had to use another company's engines in its U.S. trucks; (5) Hino Japan admits that U.S. regulators are continuing their investigation; and (6) Hino Japan's own root cause analysis identifies systematic failures in the departments that developed and certified all Hino engines, including those in the Class Trucks. *See* ECF 1 at 15 and 79 at 9-11.

Hino Japan's attempts to evade responsibility for the fraud in its motion are unpersuasive. *First*, Hino Japan's personal jurisdiction challenge fails because Hino Japan has extensive contacts with Florida, including through its substantial control over its agent, Hino Trucks, the exclusive distributor of the Class Trucks and their engines. Under well-settled law in this circuit,

those contacts are more than sufficient for specific personal jurisdiction. *Second*, Hino Japan's pleading challenge merely rehashes some of the same unpersuasive arguments that Hino Japan's U.S. subsidiaries asserted in their motion. The Court should easily reject those arguments here for the same reasons set forth in Plaintiffs' opposition brief (*see* ECF 79).

Because neither of Hino Japan's arguments merit dismissal of the Complaint, the Court should deny Hino Japan's motion to dismiss in its entirety.

**ARGUMENT**

**I.      This Court Has Personal Jurisdiction Over Hino Japan.**

Determining personal jurisdiction over a nonresident defendant involves a two-step inquiry: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).[1] As explained below, the Court can exercise specific personal jurisdiction over Hino Japan under Florida's long-arm statute because, among other reasons, Hino Japan conducted business in Florida and committed the fraudulent acts complained of in Florida through its agent Hino Trucks. Moreover, the Court's exercise of jurisdiction over Hino Japan would not violate due process. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 530-535 (5th Cir. 2014) (a principal-agent relationship allows for imputation of an agent's contacts the purposes of personal jurisdiction under Florida's long-arm statute and the due process analysis).

---

[1] Here and throughout, citations omitted and emphasis added unless otherwise indicated.

### A.      Florida's Long-Arm Statute Confers Jurisdiction over Hino Japan.

Florida's Long-Arm statute confers specific personal jurisdiction over parties "who personally *or through an agent* does any of the acts enumerated in this subsection." Fla. Stat. § 48.193(1)(a) (emphasis added). As relevant here, those acts include: "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state;" and "[c]ommitting a tortious act within this state." *Id*. at §§ 48.193(1)(a)(1)-(2). Each of these sections provides an independent basis for jurisdiction and both are present here.[2]

Plaintiffs demonstrate below that Hino Trucks is an agent of Hino Japan, and Hino Japan committed a tortious act in the business it conducted in Florida through its agent, Hino Trucks. *See Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1369 (S.D. Fla. 2016) ("[It] is well-established that general agency principles apply when determining personal jurisdiction. And Florida's long-arm statute expressly incorporates this well-established principle . . . .).[3] Separately, Hino Japan, both independently and through Hino Trucks, committed tortious acts that "cause[d] injury within Florida"—which is all that is required under the statute. *Licciardello v. Lovelady*, 554 F.3d 1280, 1283 (11th Cir. 2008)).

### 1.      Hino Trucks Is An Agent of Hino Japan.

If a "subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the

---

[2] Although Plaintiffs did not explicitly cite § 48.193(1)(a)(2) in their Complaint, they allege facts supporting jurisdiction on this basis, which is sufficient. *See Deltona Transformer Corp. v. Shft Glob., Inc.*, No. 614CV825ORL41GJK, 2014 WL 12629945, at *2 (M.D. Fla. Nov. 12, 2014) ("[F]ailure to cite the state statute is not a basis for dismissing for lack of personal jurisdiction.").
[3] *See also ADT LLC v. Alarm Prot. Tech. Florida, LLC*, No. 12-80898-CIV, 2013 WL 11276119, at *3 (S.D. Fla. Apr. 18, 2013) ("The Florida long-arm statute provides for specific jurisdiction over nonresidents who commit [acts] in Florida through their agents in Florida."); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272-75 (11th Cir. 2002) (similar).

parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006) (quoting *Meier*, 288 F.3d at 1272); *see also Andres v. Raytheon Techs. Corp.*, No. 21-61757-CIV, 2022 WL 1015489, at *4 (S.D. Fla. Apr. 5, 2022) ("Courts will find personal jurisdiction appropriate where a parent entity exercises operational control over its subsidiary[.]"). Plaintiffs' unchallenged allegation—which must be construed as true at this stage, *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)—is that Hino Japan "exert[s] substantial control over [its] domestic subsidiaries, [Hino Manufacturing] and [Hino Trucks]." Compl. ¶ 22. Accordingly, Hino Japan does business in Florida through its agent Hino Trucks, so is subject to this Court's jurisdiction.

In an effort to create a separation where none exists, Hino Japan attaches a self-serving Declaration of a general manager to its motion to dismiss. ECF 80-1. But this Declaration only underscores the plausibility of Plaintiffs' allegations. Mr. Kawamura concedes that Hino Japan owns 50 percent of Hino Trucks. Kawamura Decl. ¶ 9. Moreover, Hino Japan's website holds Hino Japan and its subsidiaries out to be one unified group of entities called the "Hino Group." Specifically, it represents that "Team HINO throughout the world will work as one to raise the value of the HINO brand[.]"[4] This "work as one" includes a "global Hino technician qualification system" which develops technicians around the world.[5] Hino Japan's website also represents that Hino Japan instituted a Code of Conduct that applies to "all officers and employees of Hino Group."[6] And, it lists Hino Trucks as a "base of Hino [Japan],"[7] and connects customers to Hino

---

[4] https://www.hino-global.com/corp/about_us/pdf/corporate_information/2022_corporate_profile_english.pdf
[5] https://www.hino-global.com/ts/service/
[6] https://www.hino-global.com/corp/about_us/hino_credo.html
[7] https://www.hino-global.com/corp/about_us/network/

Trucks' website, which solicited the sale of the Class Trucks and provided information about authorized dealers in the United States, including Florida.[8] *See* Compl. ¶ 32. Put another way, "Hino Motor Sales, U.S.A. [(Hino Trucks)] is" simply the "United States Sales and Customer Support division of Hino Motors Ltd. [(Hino Japan)]."[9]

Additionally, Hino Japan and Hino Trucks share numerous executives and Board members—a cross-pollination that further demonstrates Hino Japan's control over Hino Trucks. Mr. Kawamura himself sits on Hino Trucks' Board of Directors while simultaneously serving as the General Manager of Hino Japan's North America Department, where his duties include overseeing Hino Japan's business relationship with Hino Trucks. Kawamura Decl. ¶¶ 1-2. To be clear though, this is not a two-way street. It is Hino Japan that appoints Hino Trucks' executives, not vice versa. And it invariably appoints current or former Hino Japan executives to lead Hino Trucks. For example, Hino Japan appointed Hino Trucks' current president and CEO, Yoshi Shimo, to those positions from his position with Hino Japan.[10] Before Mr. Shimo, Hino Japan appointed Yoshinori Noguchi as president and CEO, and then as chairman, of Hino Trucks, after he jointly served on the Board of Hino Trucks and as managing officer of Hino Japan, where he was responsible for all overseas business, *including the United States*. Compl. ¶ 39.[11] Prior to that, Hino Japan appointed Takashi Ono as President of Hino Trucks after he served as Senior General Manager of Hino Japan. *Id.* And, in 2008, Hino Japan appointed Sumio Fukaya as

---

[8] https://www.hino-global.com/corp/about_us/network/north_america.html#north-america
[9] CCJ, *Hino Motors Sales U.S.A., Inc. Announces New Distribution Center Grand Opening* (April 12, 2005), https://www.ccjdigital.com/business/article/14900461/hino-motors-sales-usa-inc-announces-new-distribution-center-grand-opening.
[10] https://www.prnewswire.com/news-releases/shigehiro-matsuoka-appointed-president-and-ceo-of-hino-north-america-300800385.html
[11] *See also* https://www.aftermarketnews.com/yoshinori-noguchi-appointed-president-of-hino-trucks-u-s-a/

President and CEO of Hino Trucks from his position with Hino Japan.[12]

The intertwined business relationship between the entities further demonstrates the agency relationship. Put simply, Hino Trucks and Hino Manufacturing exist to serve Hino Japan, and Hino Japan maintains ultimate control.

As phrased in Mr. Kawamura's declaration, Hino Japan also manufactures engines and vehicles for sale to Hino Manufacturing and/or Hino Trucks in the United States, including the engines in the Class Trucks. Kawamura Decl. ¶¶ 10-11. Hino Japan "sells" the J08E and A09C engines to Hino Manufacturing and ships them to Hino Manufacturing facilities in California or West Virginia to be installed in Class Trucks, which are then "sold" to Hino Trucks. *Id*. ¶ 11. Hino Japan also manufactures the J05E engines and installs them in vehicles, and then ships those vehicles to Hino Trucks in Maryland or California. *Id*. These sales are mere formalities, in part because Hino Japan retains and exercises control over the distribution of all Hino vehicles, including the Class Trucks. *See* Compl. ¶ 25. Mr. Kawamura asserts that Hino Japan granted Hino Trucks the "exclusive right to distribute Hino vehicles in the United States," but concedes that this "exclusive right" is constrained by Hino Japan, which "decides on an annual basis how much of its production capacity will be allocated to the production of engines and vehicles for the United States market." Kawamura Decl. ¶ 12.

In other words, although Hino Trucks has purported discretion on where to sell the Class Trucks in the U.S., it does so only after Hino Japan decides how many vehicles Hino Trucks can sell through the distribution network Hino Japan established. Courts have found this exercise of control alone enough to establish jurisdiction. *See Northern Insurance Co. of New York v. Construction Navale Bordeaux*, No. 11-60462-CV, 2011 WL 2682950, at *3-4 (S.D. Fla. July 11,

---

[12] https://www.ccjdigital.com/business/article/14910463/hino-trucks-names-new-president-ceo

2011) (holding plaintiff had "sufficiently shown a prima facie case of control" where it demonstrated that the foreign defendant, a boat manufacturer, controlled its dealer in Florida through provisions in its distribution contract).

Plaintiffs further allege that "Hino [Japan] also reviewed and approved the designs, testing strategies, marketing, and advertising campaigns designed to sell the Hino-branded Class Trucks in Florida and throughout the United States." Compl. ¶ 15. While Hino Japan disclaims *creating* marketing materials, Kawamura Decl. ¶ 16, it does not deny reviewing or approving Hino Trucks' marketing and advertising campaigns. Accordingly, at this stage, the Court must accept these allegations of control as true.

Further confirmation that Hino Japan is the decision-making entity exerting final control over its subsidiaries can be found in Hino Japan's public responses to the scandals underlying this lawsuit. Indeed, it was Hino Japan that issued a December 23, 2020, press release announcing a "Production Pause at Hino's North America Plaints." ECF 79-5. There, Hino Japan stated that *its* Board of Directors (not Hino Trucks' or Hino Manufacturing's) "approved a formal pause of vehicle production at its plants in its consolidated subsidiaries in North America," including Hino Manufacturing's West Virginia plant. *Id*. It also stated that Hino Japan—not Hino Manufacturing or Hino Trucks—"is currently investigating the impact of the production pause on its earnings and will disclose any updates as appropriate in a timely manner." *Id*. And when Hino issued press releases about the emissions and fuel economy cheating, it revealed that it was ***Hino Japan*** that was "cooperating" with U.S. Department of Justice's investigation into trucks nominally sold by the agent, Hino Trucks. *See, e.g.*, ECF 79-1 at 2. In short, Hino Japan is in control and calling the shots.

Taken together, these many facts and uncontroverted allegations show that Hino Japan

exerts substantial control over Hino Trucks such that Hino Trucks is its agent for jurisdictional purposes. Given this agency relationship, this Court should exercise specific personal jurisdiction over Hino Japan based on Hino Trucks' contacts with Florida, described below.

### 2. Fla. Stat. § 48.193(1)(a)(1): Hino Japan Individually and Through Its Agent Hino Trucks Committed A Tortious Act In Florida Giving Rise to Jurisdiction Under Florida's Long-Arm Statute.

Jurisdiction is also proper over Hino Japan under Florida's long-arm statute because it committed a tortious act in Florida both directly and through its agent, Hino Trucks. Fla. Stat. § 48.193(1)(a)(2). Under "Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida." *Licciardello*, 554 F.3d at 1283.[13] That is precisely what happened here.

First, as alleged in detail in the Complaint, Hino Japan independently engaged in the Emissions, Fuel Economy, and OBD systems frauds with respect to the Florida Plaintiffs' Class Trucks. *See* Compl. ¶ 8. The Florida Plaintiffs allege injury in Florida as a result of the scheme. Under Florida's long-arm statute, that is enough, and Hino Japan is subject to this Court's specific jurisdiction. *See id*. ¶¶ 11-12.

Separately, jurisdiction is proper over Hino Japan because Hino Trucks—its agent—sold the defective Class Trucks in Florida, thereby committing a tortious act in Florida. *See* Fla. Stat. § 48.193(1)(a)(2). Mr. Kawamura admits in his Declaration that Hino Trucks determines where the defective Class Trucks are sold in the United States and then sold them to Hino-authorized dealers. Kawamura Decl. ¶¶ 10-13. Additionally, he acknowledges that Hino Trucks established the Hino network and determined which dealerships were included in the network—at least

---

[13] Thus, a tortfeasor's "physical presence in Florida is not required to obtain personal jurisdiction" under this provision. *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009).

twelve of which were in Florida. *Id*. ¶ 14. Moreover, Mr. Kawamura concedes that Hino Trucks is responsible for advertising Hino vehicles within the U.S., including in Florida. *Id*. ¶ 17.

      **3.**      **Fla. Stat. § 48.193(1)(a)(2): Hino Japan, Through Its Agent Hino Trucks, Conducted Business In Florida, Giving Rise to Jurisdiction Under Florida's Long-Arm Statute.**

To establish a defendant is "carrying on business" under the Florida long-arm statute, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 106 F. Supp. 2d 1278, 1281 (S.D. Fla.1999).

As discussed above, Hino Trucks' activities in Florida show a course of business activity for pecuniary benefit. Notably, Hino Trucks did not contest jurisdiction in this case, and the facts set forth in Mr. Kawamura's Declaration reveal why. Hino Trucks was responsible for establishing Hino's network in Florida and designating at least twelve Hino-authorized dealerships in the state. Kawamura Decl. at ¶ 14. Hino Trucks exclusively sold Hino vehicles to those dealerships, including the Class Trucks purchased by Florida Plaintiffs, and advertised and promoted those vehicles in Florida. *Id*. ¶¶ 11-12, 17, 30. In short, Hino Trucks carried on the business of selling Hino-branded vehicles, including the Class Trucks, directly in Florida, thereby subjecting itself to jurisdiction. And because Hino Trucks operated as an agent or instrumentality of Hino Japan, Hino Trucks' contacts with Florida can be imputed to Hino Japan for jurisdictional purposes. *See Meier*, 288 F.3d at 1274.

      **B.**      **Hino Japan's Contacts with Florida Satisfy Due Process.**

The exercise of jurisdiction over Hino Japan satisfies due process because (1) Plaintiffs' claims "arise out of or relate to" Hino Japan's contacts with the forum through its agent, Hino Trucks; (2) Hino Japan "purposefully availed" itself of the privilege of conducting activities within Florida through Hino Trucks; and (3) exercising jurisdiction over Hino Japan comports

with "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 135. This is not a demanding standard. Where a nonresident defendant has knowingly caused injury directed at someone in the forum, "even a single act" will satisfy federal due process concerns and "support the exercise of personal jurisdiction." *Licciardello*, 544 F.3d at 1285 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

        **1.**       **Plaintiffs' Claims Arise Out of Hino Japan's Contacts with Florida.**

This element is easily satisfied. The Florida Plaintiffs' claims arise out of Hino Japan's individual contacts with Florida—*i.e.*, the manufacture of the defective engines in the Class Trucks that injured the Florida Plaintiffs. *See In re Chinese Drywall*, 753 F.3d at 539, 543 (a foreign company's manufacture of defective drywall in China that injured Florida residents was "enough" to satisfy to satisfy this element). The claims further arise out of Hino Trucks' marketing and sale of the Class Trucks in Florida, and those contacts are imputed to Hino Japan under the agency principles articulated above.

        **2.**       **Hino Japan Purposefully Availed Itself of Florida.**

It is well-established law that a corporation "can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court explained that "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *Id*. at 297 (emphasis added). Thereafter, in *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102 (1987), the Supreme Court provided examples of contacts that can give rise to jurisdiction, including "marketing [a]

product through a distributor who has agreed to serve as the sales agent in the forum State." *Id*. at 112. Under this line of reasoning, even where a foreign parent does not specifically direct the actions of a subsidiary, it may have sufficient contacts with the forum if it has the ability to substantially control its subsidiary. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017).

In the automotive context, courts have held that a foreign parent's "involve[ment] in" and "authority over the manufacturing process," use of a subsidiary "as its distribution agent," and involvement "in the marketing of the vehicles, with the intent of selling them in [the forum]," are each sufficient for a court to exercise jurisdiction over a foreign parent. *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1060 (C.D. Cal. 2015).[14] These facts are all present here, and fit squarely within *World–Wide Volkswagen* and *Asahi*: Hino Japan serves the Florida market through the exclusive distribution channels it established for its agent, Hino Trucks, markets the Class vehicles in Florida through Hino Trucks, and controls the number of Class Trucks Hino Trucks is permitted to sell in Florida.

Indeed, these facts are stronger than those in *Brown v. Bottling Grp., LLC*, 159 F. Supp. 3d 1308, 1313-15 (M.D. Fla. 2016), where the court found sufficient purposeful activity to hale a German company into a Florida District Court. There, a German corporation Westfalia, manufactured cranes for sale through its U.S. subsidiary WTI. Like Hino Japan here, Westfalia

---

[14] *See also Young v. Mitsubishi Motors N. Am. Corp., Inc.*, No. 19-cv-2070, 2020 WL 4584391, at *3 (W.D. Wash. Aug. 10, 2020) (minimum contacts found where foreign parent utilized its U.S. subsidiary to implement a distribution plan to sell vehicles in the U.S.); *Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356 (M.D. Fla. 2013) (court had personal jurisdiction over a Canadian company that placed vehicle into the stream of commerce in Florida by selling vehicles to its national distributor in U.S.); *Gourdine v. Karl Storz Endoscopy-America, Inc.*, 223 F. Supp. 3d 475 (D.S.C. 2016) (German manufacturer had sufficient contacts with South Carolina where it marketed there through its subsidiary).

averred that Westfalia had "no employees, no offices, no bank accounts, no telephone listings, and no real property in Florida." *Id*. For its part, WTI was the exclusive distributor of Westfalia's products, but had "no formal corporate connection" between the two companies, and was only a partner from "a marketing perspective." *Id*. WTI also took possession of the cranes in Germany. *Id*. at 1313-14. Despite this, the fact that Westfalia had manufactured two cranes at WTI's request, was aware that those cranes were to be installed in Florida, and shipped replacement parts to Florida established "at least minimal commercial contacts with Florida" such that Westfalia could reasonably anticipate being haled into a Florida court." *Id*. at 1314-15.

Given that the relationship between Hino Japan and Hino Trucks is more intertwined than the entities in *Brown*, and that Hino Japan's distribution network in Florida through authorized dealerships established by Hino Trucks is far more robust than that in *Brown*, Hino Japan should have anticipated being haled into this Court due to its purposeful availment of this forum.

### 3.  Exercising Personal Jurisdiction Over Hino Japan Does Not Offend Traditional Notions of Fair Play and Substantial Justice.

Because Plaintiffs have satisfied the first two prongs of the due process analysis, the burden shifts to Hino Japan to "make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010). Hino Japan's argument that it will be inconvenienced falls well short of a "compelling case." In fact, its only argument is that if its "employees were required to travel from Japan to Florida for multiple or extended periods of time, that would interfere with the employees' day-to-day responsibilities at the company, require additional staffing to cover for them, and require significant expenditure for airfares, accommodation, and other necessary logistics." Kawamura Decl. ¶ 8. Courts regularly reject such arguments because "modern methods of transportation and communication reduce this

burden significantly." *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996).

Regardless, those minimal burdens do not outweigh the significant interests of the Florida Plaintiffs or the State of Florida itself, which has a strong interest in adjudicating a dispute regarding intentional acts that not only harmed the Florida Plaintiffs, but thousands of other Florida residents as well. *See id.* at 259; *Licciardello*, 544 F.3d at 1288. Hino Japan effectively admitted to widespread fraud in public press releases, and its desire not to be burdened by answering for its misconduct in Florida should be given little weight. *See In re Chinese Drywall*, 753 F.3d at 544 ("Florida's interest in litigating against defendants that harmed its residents, the plaintiffs' interest in litigating in the United States as opposed to China, the judicial system's interest in resolving these cases" all outweigh a foreign defendant's inconvenience.).

## C.    In the Alternative, Plaintiffs Request Jurisdictional Discovery.

If the Court still questions whether it can exercise jurisdiction over Hino Japan, the Court should grant Plaintiffs leave to conduct jurisdictional discovery as provided in the parties' stipulation.[15] "[R]esolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790 (11th Cir. 2014). As such, Plaintiffs have, at minimum, "a qualified right to conduct jurisdictional discovery," *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 878 (11th Cir. 2018), which is "highly favored" before resolving a motion to dismiss for lack of personal jurisdiction, *S.A.S.B. Corp. v.*

---

[15] In that stipulation, Plaintiffs reserved the right to seek jurisdictional discovery from Hino Japan in the event that it challenged jurisdiction. ECF 50. The stipulation also provided that "if the Court finds that Plaintiffs are entitled to the jurisdictional discovery at issue, [Hino Japan] shall provide such responses within 60 days of resolution by the Court." *Id.* Consistent with the stipulation, Plaintiffs served targeted jurisdictional discovery on Hino Japan on January 30, 2023.

*Concordia Pharm., Inc.*, 2016 WL 10953760, at *2 (S.D. Fla. Aug. 26, 2016) (collecting cases).

Jurisdictional discovery "is appropriate when there is a dispute about the 'facts that would support [the plaintiff's] allegations of jurisdiction.'" *Aviation One of Fla.*, 722 F. App'x at 878. "A genuine dispute exists when the Court 'cannot resolve the [jurisdictional] issue without additional evidence." *Evans v. Wurkin Stiffs, Inc.*, No. 15-cv-61934, 2016 WL 8793339, at *5 (S.D. Fla. Mar. 21, 2016)). Here, the parties dispute facts regarding the control Hino Japan exercises over Hino Trucks and the degree to which the entities are distinct. For example, Mr. Kawamura's Declaration references certain arrangements between Hino Japan and Hino Trucks that appear to be contractual, such as the sale of engines and vehicles to Hino Manufacturing and Hino Trucks, the shipping of the engines from Japan to Hino Trucks, marketing-related duties, and Hino Trucks' rights and obligations with respect to the distribution and sale of Hino vehicles in the United States. Details regarding the terms of those arrangements and related issues would likely reveal relevant facts regarding the true relationship between the parties.[16]

## II.    The Complaint States Claims Against Hino Japan.

Hino Japan also argues that Plaintiffs fail to state any claims against it. *See* Mot. at 14-15. First, it incorporates the arguments in Hino Manufacturing's and Hino Trucks' motion to dismiss. Accordingly, Plaintiffs incorporate their Opposition to that motion. *See* ECF 79.

Hino Japan then devotes a single page to making three additional cursory arguments, all of which essentially rehash the flawed arguments Hino Manufacturing and Hino Trucks made in their motion. It argues that it did not make any misleading advertisements in connection with the

---

[16] Jurisdictional discovery will also show the extent of Hino Japan's involvement in the U.S. emissions certifications for the Class Trucks and/or their engines. Hino Japan is named in Executive Orders from the California Air Resources Board that certify compliance with California emissions regulations for various Hino vehicles. *See, e.g.*, https://ww2.arb.ca.gov/sites/default/files/classic/msprog/onroad/cert/mdehdehdv/2019/hino_voc_a0310098.pdf. Hino Japan likely was responsible for similar applications with the U.S. EPA, and possibly Florida.

Class Trucks, so Plaintiffs lack standing. This fails on multiple levels. *See* ECF 79 at 12 (addressing the domestic Hino entities' identical argument). Most glaringly, Hino Japan is wrong on the law because "[t]he question for standing purposes is not whether Plaintiffs[] relied on [defendant's] advertising . . . [but] whether it was [defendant's] conduct, not a third party's conduct, which caused Plaintiffs' alleged injury." *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 586 (E.D. Mich. 2017). The Eleventh Circuit agrees, and has held that "[e]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

Hino Japan next argues that Plaintiffs fail to plead fraudulent concealment claims because they do not identify any particular misrepresentations. This fails to acknowledge that Plaintiffs have brought omission and concealment-based claims predicated on Hino Japan's breach of its duty to disclose. As Plaintiffs have explained, those claims do not require affirmative misrepresentations because Hino Japan's duty to disclose arose from its superior knowledge, its actions to conceal the fraud, and its incomplete representations to regulators. *See* ECF 79 at 24-26. Finally, Hino Japan argues that Plaintiffs cannot "save their claims" by attributing the conduct of Hino Japan's subsidiaries to it. These claims do not need "saving" because Hino Japan misreads Plaintiffs' fraudulent concealment theory. In any event, Plaintiffs have stated claims against Hino Japan directly for the reasons detailed above.

## CONCLUSION

Hino Japan's motion should be denied for the reasons stated herein. If the Court finds that any claims require re-pleading, Plaintiffs seek jurisdictional discovery and leave to amend.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request the opportunity to address these issues at oral argument.

Dated: January 31, 2023   Respectfully submitted,

*/s/ Peter Prieto*

Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, Florida 33131
Telephone: 305-358-2800
Facsimile: 305-358-2382
E-mail: pprieto@podhurst.com


Roland Tellis (*pro hac vice*)
David Fernandes (*pro hac vice*)
Adam Tamburelli (*pro hac vice*)
Shannon Royster (*pro hac vice*)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818,839.2333
Facsimile: 818.986.9698
E-mail: rtellis@baronbudd.com


David S. Stellings (*pro hac vice*)
Wilson M. Dunlavey (*pro hac vice*)
Katherine L. McBride (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500
E-mail: dstellings@lchb.com


Elizabeth J. Cabraser (*pro hac vice*)
Kevin R. Budner (*pro hac vice*)
Phong G. Nguyen (*pro hac vice*)
Amelia A. Haselkorn (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
E-mail: ecabraser@lchb.com


*Counsel for Plaintiffs*

- 16 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 31, 2023, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filling to all counsel of record.

*/s/ Peter Prieto*
Peter Prieto
