**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 1:22-cv-22483-Gayles/Torres

EXPRESS FREIGHT INTERNATIONAL,
EFI EXPORT & TRADING CORP.,
MARDERS, and REDLANDS OFFICE
CLEANING SOLUTIONS, LLC, on behalf of
themselves and all others similarly situated,,

        Plaintiffs

   v.

HINO MOTORS, Ltd., TOYOTA MOTOR
CORPORATION, HINO MOTORS
MANUFACTURING U.S.A., Inc., and HINO
MOTORS SALES U.S.A., Inc.,

        Defendants.

_____

**<u>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(e)</u>**

# TABLE OF CONTENTS

**Page**

I.  Introduction ................................................................................................................. 1

II. Background and Procedural History ........................................................................... 2

    A.  Factual background: Plaintiffs allege Hino cheated on emissions and hid related performance impacts in the Class Trucks. ................................................. 2

    B.  Procedural background: Plaintiffs investigated their claims through a comprehensive, contested discovery process. ....................................................... 4

    C.  The settlement process: a highly regarded mediator facilitated the Parties' negotiations to success. ..................................................................................... 7

III. The Settlement Terms and Relief Provided to the Proposed Class ............................ 8

    A.  The Settlement Class definition ....................................................................... 8

    B.  Settlement benefits to Settlement Class members ............................................ 8

    C.  Notice and claims administration ................................................................... 10

    D.  Attorneys' fees and expenses ......................................................................... 10

IV. Legal Standard for Preliminary Approval and Decision to Give Notice ...................... 10

V.  Argument .................................................................................................................. 11

    A.  The Settlement is fair, reasonable, and adequate. ............................................ 11

        1.  Rule 23(e)(2)(A): proposed Settlement Class Representatives and Settlement Class Counsel zealously represented the Settlement Class. ........................................................................................... 12

        2.  Rule 23(e)(2)(B): The Settlement is the product of good-faith, informed, and arm's-length negotiations. ............................................... 14

        3.  Rule 23(e)(2)(C): The Settlement provides substantial relief to all Settlement Class Members. ...................................................................... 17

        4.  Rule 23(e)(2)(D): The Settlement treats Settlement Class members equitably relative to each other. .............................................................. 24

    B.  The Court will be able to certify the proposed Settlement Class for settlement purposes upon final approval. ......................................................... 25

        1.  Rule 23(a)(1): Numerosity is satisfied. .................................................. 25

        2.  Rule 23(a)(2): Commonality is satisfied. ............................................... 26

        3.  Rule 23(a)(3): Typicality is satisfied. ..................................................... 26

        4.  Rule 23(a)(4): Adequacy is satisfied. ..................................................... 27

**TABLE OF CONTENTS**
**(continued)**

**Page**

5.      Rule 23(b)(3): Predominance requirements are met. ............................. 28

6.      Rule 23(b)(3): Class treatment is superior to other available methods for the resolution of this case. .................................................. 29

C.     The proposed Notice Program provides the best notice practicable to the proposed Class. ........................................................................................ 30

VI.    The Court Should Schedule a Fairness Hearing and Related Dates. ............................. 32

VII.   Conclusion ........................................................................................................... 33

2865831.12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alabama v. Blue Bird Body Co.*,
   573 F.2d 309 (5th Cir. 1978) .................................................................................................. 29

*Allapattah Services, Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................................... 24

*Almanzar v. Select Portfolio Servicing, Inc.*,
   No. 1:14-CV-22586-FAM, 2015 WL 10857401 (S.D. Fla. Oct. 15, 2015) ............................ 11

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002) ............................................................................................ 11

*Behrens v. Wometco Enterprises, Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................................ 20

*Belin v. Health Ins. Innovations, Inc.*,
   No. 19-CV-61430, 2022 WL 1126006 (S.D. Fla. Mar. 10, 2022) ........................................... 23

*Bennett v. Behring Corp.*,
   737 F.2d 982, 986 (11th Cir. 1984) ........................................................................................ 11

*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006) ............................................................................................ 31

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012) .................................................................................................. 29

*Carter v. Forjas Taurus*, S.A.,
   No. 16-15277, 2017 WL 2813844 (11th Cir. June 29, 2017) .................................................. 22

*Cotter v. Checkers Drive-In Restaurants, Inc.*,
   No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ...................... 15

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ................................................................................................ 12

*Counts v. Gen. Motors, LLC*,
   No. 1:16-cv-12541, 2023 WL 4494336 (E.D. Mich. July 12, 2023) ....................................... 20

*Fabricant v. Sears Roebuck*,
   202 F.R.D. 310 (S.D. Fla. 2001) ...................................................................................... 26, 27

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   No. 15-22782-Civ, 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) .......................................... 23

*Ferron v. Kraft Heinz Foods Co.*,
   No. 20-CV-62136-RAR, 2021 WL 2940240 (S.D. Fla. July 13, 2021) .............................. 16, 17

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Francisco v. Numismatic Guaranty Corp. of America*,
No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)............................................. 13

*Fruitstone v. Spartan Race, Inc.*,
No. 20-cv-20836, 2021 WL 2012362 (S.D. Fla. May 20, 2021)............................................. 15

*Gevaerts v. TD Bank, N.A.*,
No. 1:14-cv-20744-RLR, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)................................... 15

*Gevaerts v. TD Bank, N.A.*,
No. 11:14-CV-20744-RLR, 2015 WL 12533121 (S.D. Fla. Aug. 4, 2015) ............................ 11

*Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941
(S.D. Fla. May 24, 2019) ...................................................................................................... *passim*

*Hamilton v. SunTrust Mortg. Inc.*,
No. 13-60749-CIV, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) .......................................... 15

*Hanley v. Tampa Bay Sports & Ent. LLC*,
No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)..................... 23

*Hurst v. BMW of N. Am. LLC*,
No. 22-3928 (SDW)(AME), 2023 WL 4760442 (D.N.J. July 26, 2023) ................................ 20

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
2023 WL 7012247 (11th Cir. Oct. 25, 2023).......................................................................... 25

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011).............................................................................................. 26

*In re Checking Account Overdraft Litig.*,
No. 1:10-CV-22190-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) ............................... 24

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ........................... 18, 23

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 17-MD-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ................................... 1

*In re Duramax Diesel Litig.*,
No. 1:17-cv-11661, 2023 WL 4493595 (E.D. Mich. July 12, 2023)........................................ 20

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*,
65 F.4th 851 (6th Cir. 2023) .................................................................................................... 20

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*,
No. 0:21-md-3015, 2023 WL 2284684 (S.D. Fla. Feb. 28, 2023)........................................... 12

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018)...................................................................................... 24

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Takata Airbag Prods. Liab. Litig.*,
No. 15-MD-2599-FAM (S.D. Fla. Dec. 22, 2017) .................................................. 23

*In re Takata Airbag Prods. Liab. Litig.*,
No. 14-24009-CV, 2017 WL 11680208 (S.D. Fla. Sept. 19, 2017) ......................... 26

*In re Vitamins Antitrust Litig.*,
No. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) .............................. 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 15-MD-02672-CRB, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ................ 25

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) ............ 15, 17

*Jairam v. Colourpop Cosms., LLC*,
No. 19-CV-62438-RAR, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) .................... 14

*Janicijevic v. Classica Cruise Operator, Ltd.*,
No. 20-cv-23223, 2021 WL 2012366 (S.D. Fla. May 20, 2021) ............................ 15

*Kilgo v. Bowman Trans.*,
789 F.2d 859 (11th Cir. 1986) ................................................................................. 26

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ............................................................................... 29

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ............................................................................... 27

*Kukorinis v. Walmart, Inc.*,
No. 19-20592-CV, 2021 WL 8892890 (S.D. Fla. Sept. 20, 2021) ......................... 15

*Lee v. Ocwen Loan Servicing, LLC*,
No. 14-CV-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ......................... 16

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ................................................................... 21

*Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*,
221 F.3d 1235 (11th Cir. 2000) ............................................................................... 27

*Mercedes-Benz Emissions Litigation*,
No. 216-CV-881 (KM)(ESK), 2021 WL 7833193 (D.N.J. Aug. 2, 2021) .............. 2, 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................................. 31

*Murray v. Auslander*,
244 F.3d 807 (11th Cir. 2001) ................................................................................. 27

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Poertner v. Gillette Co.*,
618 F. App'x 624 (11th Cir. 2015) ........................................................... 22

*Poertner v. Gillette Co.*,
No. 14-13882, 2015 WL 4310896 (11th Cir. 2015) ................................. 16

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ............................................................... 28

*Schulte v. Fifth Third Bank*,
No. 09-cv-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ............... 19

*Smith v. Wm. Wrigley Jr. Co.*,
No. 09-cv-60646-CIV, 2010 WL 2401149 (S.D. Fla. June 15, 2010) ....... 11

*Thorpe v. Walter Inv. Mgmt. Corp.*,
No. 14-cv-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ....... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ...................................................................... 28, 29

*Urethane Antitrust Litig.*,
No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ............... 24

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ............................................................... 23

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ............................................................... 26

*Wilson v. EverBank*,
No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ............... 22

*Wolff v. Cash 4 Titles*,
No. 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ........... 23

*Wolin v. Jaguar Land Rover N.Am., LLC*,
617 F.3d 1168,1176 (9th Cir. 2010) ........................................................ 30

**Rules**

Fed. R. Civ. P. 23(a)(4) ...................................................................... 27, 28

Fed. R. Civ. P. 23(c)(2) ....................................................................... 11, 30

Fed. R. Civ. P. 23(e)(1) ........................................................................ 11, 30

Fed. R. Civ. P. 23(e)(1)(B). ........................................................................ 30

Fed. R. Civ. P. 23(e)(2) ........................................................................ *passim*

Fed. R. Civ. P. 23(e)(2)(B) .................................................................... 14, 16

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Civ. P. 23(e)(5) ................................................................................................ 11

Fed. R. Civ. P. 23(e). .................................................................................................... 2

**Treatises and Secondary Sources**

2018 Advisory Committee Notes to Rule 23 ................................................................. 11

Manual for Complex. Litig., § 21.31 ........................................................................... 31

William B. Rubenstein, et al., Newberg on Class Actions § 13.44 (6th ed. 2023) ....................... 11

William B. Rubenstein, et al., Newberg on Class Actions § 13:49 (5th ed. 2012) ................ 14, 15

## I.     <u>Introduction</u>

After months of pre-filing investigations and more than a year of active litigation and discovery, Plaintiffs have secured a non-reversionary, common fund Settlement that provides **$237,500,000 in cash benefits**—plus valuable protections from two robust warranty provisions—for a Settlement Class that purchased or leased approximately 104,000 Hino diesel trucks.[1]

The proposed agreement resolves Plaintiffs' claims for economic losses from Hino's[2] alleged scheme to cheat on its emissions tests with attendant impacts on Hino vehicles' on-road performance. The amount of compensation each truck owner/lessee receives depends on how many Settlement Class members file claims, but even the most conservative claim projections yield significant individual compensation. A projected 50% claims rate, for example, would translate into anticipated payments of more than $3,000 per truck, while anticipated payments would reach $15,000 per truck at the median claims rate of 10% across all class settlements. Regardless of the claims rate, Settlement Class members will receive substantial compensation to resolve their claims.

This significant compensation compares favorably to settlements of other, similarly serious diesel emissions cases. In arguably the two closest analogs, the *FCA EcoDiesel* and *Mercedes BlueTec* MDLs, the class vehicles received fixed amounts of $3,075 and $3,290, respectively, to be divided among multiple owners and lessees. *See, e.g.*, *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 536661, at *8 (N.D. Cal. Feb. 11, 2019) (preliminary settlement approval order noting that the compensation was

---

[1] The proposed Settlement Agreement ("SA") is attached hereto as Exhibit 1. Capitalized terms not defined herein are defined as in the Settlement.

[2] For purposes of this Motion, "Hino" refers collectively to Defendants Hino Motors, Ltd. (individually, "HML" or "Hino Japan"), Hino Motors Manufacturing U.S.A., Inc. ("HMM"), and Hino Motors Sales U.S.A., Inc. ("HMS").

"substantial and likely to gain [class members'] attention"); *In re Mercedes-Benz Emissions Litigation*, No. 216-CV-881 (KM)(ESK), 2021 WL 7833193, at *3 (D.N.J. Aug. 2, 2021) ("*Mercedes BlueTec*"). The recovery here will meet, and likely exceed, those benchmarks even under the most ambitious participation projections.

This is an extraordinary result, particularly because the claims in *FCA EcoDiesel* and *Mercedes BlueTec* were strengthened by an official violation issued and/or parallel litigation by U.S. regulators. In this case, U.S. regulators are investigating Hino's historical emissions conduct, but they have reached no conclusions and have not intervened in this litigation. Rather, Plaintiffs achieved this significant settlement only after, and because of, their own advocacy, including considerable briefing efforts, tireless pursuit of discovery (over 750,000 pages produced), and the guidance of a highly respected mediator, among other important milestones over the nearly fifteen-month course of this litigation.

In sum, the proposed Settlement followed a thorough investigation, finds support in a well-developed record, and provides significant cash and additional warranty value to compensate the Settlement Class. Plaintiffs are proud to present this Settlement to the Court, and respectfully request approval to give notice to the Settlement Class and set the matter for final approval. *See* Fed. R. Civ. P. 23(e).

## II.   **Background and Procedural History**

### A.   **Factual background: Plaintiffs allege Hino cheated on emissions and hid related performance impacts in the Class Trucks.**

Plaintiffs' Complaint details Hino's alleged scheme to manipulate emissions tests and misrepresent related performance in its medium and heavy duty diesel trucks in the U.S. ECF 1. The case began after Hino issued a press release in March 2022 revealing that it had identified "past misconduct" comprising falsification of engine performance in relation to its applications for

certification for certain engines sold in Japan. *See, e.g.*, Complaint ¶ 3. After this March 2022 disclosure, Hino convened an independent Special Investigation Committee ("SIC") to further investigate these Japanese-market certification issues, and the resulting SIC reports confirmed Hino's "long-term misconduct concerning applications for engine certification" in Japan. *Id.* ¶ 4.

Hino's public admissions focused on the Japanese market, but Plaintiffs alleged that its misconduct was not so limited. Indeed, the Complaint details how Hino also identified and disclosed "potential issues regarding certification testing in . . . the North American market," which led to an ongoing investigation by U.S. regulators. *Id.* ¶ 3. From this background, Plaintiffs alleged three ways in which Hino's misconduct negatively impacted on-road performance and caused excessive emissions.

First, Plaintiffs alleged that Hino skewed its emissions test results through numerous practices, including those detailed in the SIC report. This included using parts in regulatory testing that were different from the parts installed in Hino trucks ultimately sold to its customers, such as replacing the selective catalytic converter ("SCR") system mid-test due to an issue with premature deterioration in that component. Plaintiffs alleged that Hino manipulated test results through these tactics so that its diesel engines appeared to be cleaner than they actually were on the road. *See id*. ¶¶ 6, 43-59.

Second, Plaintiffs alleged that the onboard diagnostic ("OBD") systems in Hino trucks fail to timely initiate diesel particulate filter ("DPF") cleaning. As Plaintiffs contend, the DPFs clog more frequently, and without needed alerts from the OBD, which causes increased emissions and other material issues with vehicle hardware and performance. *Id.* ¶¶ 9, 72-77.

Third, based on the SIC findings from Japan, Plaintiffs also alleged that Hino manipulated the fuel economy test results for the Class Trucks to make them appear more fuel efficient than Hino represented. *Id.* ¶¶ 8, 60-71.[3]

Plaintiffs alleged that the conduct summarized above and throughout the Complaint deceived regulators, Plaintiffs, and the proposed Class about the *true* emissions and related performance in the proposed Class Trucks, causing Plaintiffs to suffer economic losses.

### B. Procedural background: Plaintiffs investigated their claims through a comprehensive, contested discovery process.

After Hino's March 2022 press release in Japan—and without a U.S. regulatory citation to provide a roadmap of Hino's U.S. misconduct, or any public admission from Hino regarding the U.S. fleet—Plaintiffs undertook their own thorough investigation over the course of the next several months to assess whether and how Hino's misconduct in Japan might translate to their U.S. trucks. Those efforts culminated in a detailed complaint filed in August 2022.

From there on, as the docket reflects, the parties litigated this case intensively. Hino put up rigorous challenges to Plaintiffs' allegations, and Plaintiffs defended them in kind. The U.S. Hino entities (HMM and HMS) moved to dismiss the Complaint in a joint 40-page brief, and raised potentially case-dispositive issues such as Article III standing and federal preemption. ECF 68. Plaintiffs researched and drafted a 40-page opposition to defend their claims (ECF 79), and HMM and HMS filed a reply (ECF 89). Hino Japan joined in the domestic Defendants' arguments and also moved separately to dismiss on jurisdictional grounds (ECF 80), Plaintiffs prepared an opposition to support their jurisdictional theories (ECF 94), and Hino Japan filed a reply (ECF

---

[3] Plaintiffs' subsequent investigation concluded that because of dissimilar national fuel economy testing regimes and other variables, Hino's practice of manipulating equipment used in fuel economy tests for certain engines sold in Japan likely did not impact the U.S. Settlement Class Trucks as Plaintiffs initially alleged.

- 4 -

97).[4] The parties did not rest there. After briefing on these motions completed, Hino continued to file supplemental authorities purportedly supporting dismissal, and Plaintiffs worked quickly to distinguish them. ECF 110, 131. Hino's pleading challenges are pending before the Court.

The U.S. Hino entities also moved to stay discovery during the pendency of their pleading challenges. ECF 73. Plaintiffs strongly opposed, and fended off Hino's efforts to delay their factual investigation and progress on their claims. *See* ECF 81 (opposition brief), 86 (Order denying stay motion). The parties then concluded weeks of negotiations on comprehensive confidentiality and ESI protocols to govern the discovery to follow. ECF 95, 111.

Over the next nine months, Plaintiffs served Hino with three sets of substantive document requests, comprised of 67 individual requests, plus sets of jurisdictional discovery to the Japanese Hino and Toyota entities. Hino ultimately produced over 750,000 pages of documents and ESI in response, including a key corpus that was also previously produced to the U.S. regulators in their investigations. Plaintiffs further sought and obtained relevant materials from third party DWS Fleet Management, which performed testing and analysis for Hino trucks in the U.S., and through a Freedom of Information Act request to the California Air Resources Board ("CARB"), totaling an additional 9,000 pages. *See* Declaration of Proposed Settlement Class Counsel, ("Class Counsel Decl.") ¶¶ 7, 9.

Plaintiffs' counsel carefully analyzed these materials to evaluate the strengths and weaknesses of their claims and to inform litigation and discovery strategies. To do so, Plaintiffs had to grasp complicated diesel engine emissions technologies and the regulatory frameworks to

---

[4] Plaintiffs originally brought claims against Toyota Motors Corporation ("Toyota"), the Japanese corporate grandparent of the U.S. Hino entities, and Toyota also moved to dismiss on personal jurisdiction grounds. ECF 78. After Plaintiffs further investigated Toyota's role in the design, development, and testing for the Class Trucks, and based on related discovery and information exchanged, Plaintiffs voluntarily dismissed Toyota without prejudice. ECF 98.

test them in both the U.S. and Japan as they evolved through the relevant time period. For these and other subjects, Plaintiffs retained technical experts to ensure they obtained important data files and test documents, and to place the responsive productions in context. Also, because much of the relevant conduct occurred in Japan—including development and testing of the engines for the Class Trucks—Plaintiffs faced difficulties and nuances to process Japanese documents, for which they hired attorneys fluent in Japanese to ensure meaningful and accurate analysis. Class Counsel Decl. ¶ 10.

These critical productions did not come easy. The parties hotly contested the scope and relevance of discovery topics from the start, leading to dozens of hours of video meet and confer conferences and seemingly countless discovery dispute letters. Class Counsel Decl. ¶ 8. These discussions culminated in two multi-hour hearings before Magistrate Judge Torres covering a range of disputed issues, many of which the Court decided in Plaintiffs' favor (including, for example, the scope of relevance and the production of regulatory documents Hino had previously withheld). *See, e.g.*, ECF 107, 113, 117, 125 (Plaintiffs' agendas and supporting papers for discovery conferences).

On top of this litigation discovery work, and prior to finalizing the Settlement, the parties also engaged in a robust confirmatory discovery process. On this track, Plaintiffs' counsel traveled to Tokyo, Japan—where the Class Trucks' engines were developed and tested—to meet with and question key Hino Japan personnel and representatives directly about the alleged misconduct and Hino's internal investigations. Class Counsel Decl. ¶ 14. Also in confirmatory discovery, Plaintiffs received substantial document productions from Hino Japan, which had not previously produced documents due to its jurisdictional challenges. Plaintiffs analyzed these materials to test the strength of their allegations and to vet the parties' settlement positions. *Id.*

- 6 -

Finally, on the defensive side, each of the proposed Settlement Class Representatives searched for and provided documents and ESI responsive to Hino's numerous production requests, totaling well more than a thousand pages. *Id.* ¶ 11. Each also assisted counsel to consult their records, draft, and approve detailed responses to Hino's 35+ Interrogatories, later supplemented on two occasions to add even further detail at Hino's request. *Id.*

All told, Plaintiffs fought hard to access critical information in this case. Through those efforts, Plaintiffs secured a thorough record and a strong evidence-based understanding of their claims.

### C.     The settlement process: a highly regarded mediator facilitated the Parties' negotiations to success.

Pursuant to the district's local rules and this Court's order setting a deadline for mediation (ECF 87), the parties conferred and agreed on the Honorable Layn R. Phillips (Ret.) as mediator.[5] Thereafter, while litigation and discovery proceeded apace, Judge Phillips and the parties scheduled mediation for July 25, 2023.

The parties prepared extensively for this formal mediation session, including by drafting and sharing multiple rounds of mediation briefing, and communicated regularly with Judge Phillips both separately and together to prepare in the weeks and months beforehand. The in-person mediation discussions promoted a candid and fulsome exchange, and at the close of an extended day, the parties reached a tentative agreement on the basic terms of a settlement. Class Counsel Decl. ¶ 13. That initial agreement launched several months of further confirmatory discovery and negotiations, *id.* ¶ 14, and concluded in the proposed comprehensive Settlement, detailed exhibits, and notice program now before the Court.

---

[5] *See* Judge Phillips' background, available at: https://phillipsadr.com/dnld/bio/PhillipsADR-LaynPhillips.pdf

### III.     **The Settlement Terms and Relief Provided to the Proposed Class**

The Settlement provides $237.5 million in non-reversionary cash compensation, available to proposed Settlement Class members through a streamlined, state-of-the-art claims process; up to *ten years* of additional, valuable coverage from an Extended Warranty for relevant engine systems and emissions components in the Settlement Class Trucks; and a commitment for even further warranty coverage in the event of a future recall.

### A.     **The Settlement Class definition**

The proposed Settlement Class is: "All persons or entities that purchased a Settlement Class Truck, or leased a Settlement Class Truck, through the date of the Preliminary Approval Order."[6] Settlement Agreement ("SA") ¶ 2.4. The Settlement Class Trucks include approximately 104,000 on-road Hino diesel trucks with a Hino engine from engine model years 2010 through and including engine model year 2019, as defined in Exhibit A of the proposed Settlement Agreement. *Id.* ¶ 2.45.[7]

### B.     **Settlement benefits to Settlement Class members**

The proposed Settlement delivers substantial cash payments—set at a floor of $1,500 but likely ranging from $3,000 up to ***$15,000*** for each Hino truck included in the Settlement. Compensation for individual Settlement Class members within this range will be calculated by a

---

[6] Those excluded from the Settlement Class are: (a) Defendants' officers, directors, and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors and employees; Released Parties; (b) judicial officers and their immediate family members and associated court staff assigned to this case; and (c) all those otherwise in the Settlement Class who or which timely and properly exclude themselves from the Settlement Class as provided in this Class Action Agreement. SA ¶¶ 2.39(a)-(c).

[7] Plaintiffs' Complaint alleges Hino's misconduct dates back to approximately model year 2004. Based on the knowledge Plaintiffs developed over the course of the litigation and a more thorough understanding of which trucks in the U.S. were affected, the Settlement does not include, or release claims, for the earlier model year vehicles in the Complaint (*i.e.,* prior to engine model year 2010).

straightforward and fair allocation process. At the close of the claims period, the Settlement Cash Value (after deducting Court-approved fees, expenses, and administration costs) will be divided on a per-capita basis among all Settlement Class Trucks for which a valid claim is received. Then, if more than one Settlement Class member submits a valid Claim for the same truck, the original owner (who purchased new) will receive 60% of the funds for that truck, and the remaining 40% will be distributed evenly to or among the other valid claimants.[8]

Whether or not they claim a cash payment, all Class Trucks will receive a robust Extended Warranty that covers nearly two dozen relevant engine systems and parts for periods up to eight years from Settlement approval, eight years from the initial warranty expiration, or ten years from the date of first sale. *See* SA ¶ 4.2 and Exhibit B. Further, Plaintiffs negotiated for a commitment from Hino so that, if the government requires or recommends an emissions recall for the Settlement Class Trucks anytime in the next three years, impacted Settlement Class members will *also* receive a New Parts Warranty with five additional years of coverage for any parts repaired, replaced, or modified by that recall or repair. SA ¶ 4.3.[9]

If there are any funds remaining in the Settlement Cash Value after all valid, complete, and timely claims are paid, the parties will attempt a second distribution to Settlement Class members who submitted valid claims, unless it is economically infeasible to do so. SA ¶ 4.6. Thereafter, if any minimal balance remains, the funds will not revert to Hino, but will instead be directed *cy pres*

---

[8] The Settlement Administrator retains discretion to adjust the allocation if a Settlement Class member owned or leased a Settlement Class Truck for less than six months.

[9] Importantly, excluded from the Released Claims are Settlement Class members' rights or ability to participate in any future truck buyback or repurchase program that any federal or state government entity recommends or orders post-Settlement. The timing and likelihood of such a program remain unknown, but the settlement does not impact Settlement Class members' right to participate in a future program of this kind and receive additional compensation, should it materialize. *Id.* ¶ 11.6.

to environmental remediation efforts subject to the Court's approval. *Id.* This ensures that every dollar secured by the Settlement will inure to the benefit of the Settlement Class and their interests advanced in this litigation.

### C.    Notice and claims administration

The proposed Settlement Administrator—JND Legal Administration—was selected through a competitive bidding process that involved multiple respected vendors. JND is a well-known firm that has successfully administrated numerous class settlements and judgments, including large automotive cases. *See* Declaration of Jennifer Keough ("Keough Decl.") ¶¶ 1, 4-11. The Settlement Fund will pay the fees and costs of the Settlement Administrator to implement the notice program, administer the claims process, mail checks as necessary, and perform the other administrative tasks described in the Settlement. SA ¶ 5.3. JND estimates that these costs will range from approximately $620,000 to $850,000, with the total based on the final tally of claims administered. These estimates are reasonable and necessary given the size of the Class.

### D.    Attorneys' fees and expenses

Proposed Settlement Class Counsel will apply to the Court for an award of reasonable attorneys' fees and costs. As will be detailed in their forthcoming motion, counsel anticipate they will request up to one third (33.33%) of the Settlement Cash Value—which will represent a significantly lower percentage of the total value of the Settlement to Settlement Class members after accounting for the value of the Extended Warranty—in attorneys' fees and reasonable expenses incurred. Any attorneys' fees and expenses granted by the Court will be paid from the Settlement Fund. SA ¶ 14.2.

## IV.    <u>Legal Standard for Preliminary Approval and Decision to Give Notice</u>

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of a proposed class action settlement and creates a three-step process for approval.

First, in a preliminary assessment, the court must determine that it is likely to: (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B); *see also* 2018 Advisory Committee Notes to Rule 23. At bottom, this preliminary evaluation considers whether the settlement is within the "range of reasonableness." *Almanzar v. Select Portfolio Servicing, Inc.*, No. 1:14-CV-22586-FAM, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015); *see also Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Second, upon a favorable preliminary assessment, the court must then direct notice to the proposed class. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. Fed. R. Civ. P. 23(e)(2).

Throughout this work, "courts are guided by the 'strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).); *see also Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* William B. Rubenstein et al., Newberg on Class Actions § 13.44 (6th ed. 2023) (citing cases).

## V. **Argument**

### A. **The Settlement is fair, reasonable, and adequate.**

Rule 23(e)(2) establishes the criteria for the Court to use to decide whether to direct notice to the proposed class because it is likely to approve the Settlement at the final approval stage.

2865831.12

Courts in this Circuit also look to the six *Bennett* factors, which overlap with the federal rule.[10] As explained below, the proposed Settlement is an outstanding result for the Settlement Class and easily satisfies these requirements.

> **1.     Rule 23(e)(2)(A): proposed Settlement Class Representatives and Settlement Class Counsel zealously represented the Settlement Class.**

Rule 23(e)(2)(A) asks (1) whether the proposed class counsel have the necessary qualifications and experience to lead the litigation and (2) whether the interests of the class representatives are aligned with the interests of other class members. *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 0:21-md-3015, 2023 WL 2284684, at *9 (S.D. Fla. Feb. 28, 2023) (citation omitted). The answer to both is "yes."

As detailed above, proposed Settlement Class Counsel have undertaken substantial work, effort, and expense to represent Plaintiffs and the proposed Settlement Class throughout this hard-fought litigation, and have demonstrated their willingness to devote whatever resources were necessary to reach a successful outcome. *See* Section II.B. In litigating, and equally so in the settlement negotiations, Settlement Class Counsel had the benefit of years of experience in class action litigation, and a strong track record in other automotive class actions involving similar product liability and emissions cheating claims. This includes their roles as court-appointed

---

[10] The *Bennett* factors are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *3-4 (S.D. Fla. May 24, 2019) (*citing Bennett*, 737 F.2d at 986)). Because they have not yet weighed in at this stage, Plaintiffs do not address the potential Settlement Class' reaction, the fifth factor, but have every reason to believe it will be favorable in light of the strong result.

plaintiffs' counsel in the *Volkswagen "Clean Diesel"* MDL, the *FCA EcoDiesel* MDL, and the *Takata Airbag* MDL, as just a few examples of many.[11] Class Counsel Decl. ¶ 3.

      With the benefit of their knowledge and experience, counsel doggedly pursued discovery through carefully crafted, technical requests, and dozens of hours of meet and confers to ensure Hino appropriately searched for and produced relevant materials. Plaintiffs ultimately sought the Court's intervention on multiple issues (largely decided in their favor). Counsel also engaged in robust Rule 12 motion practice in response to two separate pleading challenges (from the U.S. entities together, and from Hino Japan). ECF 79, 94. *See* Section II.B.

      This developed record, and the assistance of Plaintiffs' diesel engine and emissions experts, enabled proposed Settlement Class Counsel to develop a sophisticated understanding of the central questions in the case, and prepared them for well-informed, evidence-based settlement negotiations. *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel obtained "thousands" of pages of documentary discovery).

      The proposed Settlement Class Representatives are likewise actively engaged. Each preserved and collected documents and electronic information related to their claims, worked with counsel to produce them and to prepare responses to detailed Interrogatories, actively monitored progress in the litigation, and worked with counsel to review and evaluate the terms of the proposed Settlement Agreement. Class Counsel Decl. ¶ 23. Each Representative has also expressed their

---

[11]   *See* firm resumes for LCHB, Baron & Budd, and Podhurst Orseck: https://www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf; https://baronandbudd.com/wp-content/uploads/FirmResume10-11-23.pdf; https://www.podhurst.com/landmark-cases/.

continued willingness to protect the Settlement Class until the Settlement is approved and its administration completed. *Id*. Their interests are aligned and coextensive with those of absent Settlement Class members, as is the relief they stand to receive.

### 2. Rule 23(e)(2)(B): The Settlement is the product of good-faith, informed, and arm's-length negotiations.

The Settlement is the result of intensive negotiations between experienced attorneys who are very familiar with complex class action litigation and with the legal and factual issues of this case. These serious, arm's length discussions, overseen by an experienced and highly respected mediator, unquestionably support approval. *See* Rule 23(e)(2)(B); *see also Gonzalez*, 2019 WL 2249941, at *5 (*Bennett* factors four and six: the complexity, expense, and duration of the litigation, and the stage of the proceedings at which settlement is achieved).

### a. The detailed factual record shows the Parties' negotiations were appropriately informed and non-collusive.

Where extensive information has been exchanged, "[a] court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." William B. Rubenstein et al., 4 *Newberg on Class Actions* § 13:49 (5th ed. 2012) ("*Newberg*"); *see also Jairam v. Colourpop Cosms., LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *5 (S.D. Fla. Oct. 1, 2020) ("formal discovery with Defendant and non-parties" and plaintiffs showed that the parties "were well-positioned to confidently evaluate the strengths and weaknesses of the claims."); *Kukorinis v. Walmart, Inc.*, No. 19-20592-CV, 2021 WL 8892890, at *7 (S.D. Fla. Sept. 20, 2021) (the parties fully briefed a dispositive motion to dismiss on the merits, engaged in informal discovery, and

exchanged additional information during the mediation process, which provided class counsel sufficient information to analyze the strengths and weaknesses of the case).[12]

Similarly, a meaningful information exchange also shows that the litigation was adversarial and therefore serves as "an indirect indicator that a settlement is not collusive but arms-length." 4 *Newberg* § 13:49; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *2 (S.D. Fla. Oct. 24, 2014) (no evidence of collusion where settlement was reached "after the exchange and production of considerable discovery"); *Fruitstone v. Spartan Race, Inc.*, No. 20-cv-20836, 2021 WL 2012362, at *8 (S.D. Fla. May 20, 2021) (finding no fraud or collusion where negotiations were "informed by extensive discovery obtained by Class Counsel"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., No. MDL 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations.").

The extensive record here proves the Settlement process was well-informed, and that the result was reached by adversarial parties. Counsel have zealously advanced their respective clients' interests and developed a thorough understanding of the claims and issues. Additionally, as described above, Hino produced approximately 750,000 pages of documents and native files, including highly technical design documents and test results, which further developed Plaintiffs' understanding of the strengths and weaknesses of their claims.

---

[12] *See also Janicijevic v. Classica Cruise Operator, Ltd.,* No. 20-cv-23223, 2021 WL 2012366, at *5 (S.D. Fla. May 20, 2021) (investigation and review of information provided by defendants prepared counsel for well-informed settlement negotiations); *Gevaerts v. TD Bank, N.A*., No. 1:14-cv-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015) (similar); *Cotter v. Checkers Drive-In Restaurants, Inc*., No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (similar).

**b.** **The mediator's oversight further supports the adversarial nature of the negotiation.**

The Parties engaged in extensive adversarial negotiations with the assistance of a highly respected mediator, Hon. Layn R. Phillips (Ret.), during a full day mediation (with anticipatory briefs and substantial evidence exchanged). This, too, shows a lack of collusion. *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules-2018 Amendment ("[T]he involvement of a neutral or court-affiliated mediator ... may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *see also Poertner v. Gillette Co.*, No. 14-13882, 2015 WL 4310896, *6 (11th Cir. 2015) (oversight of an experienced mediator supported approval of class action settlement); *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *1 (S.D. Fla. July 13, 2021) (approval where attorneys "proficiently identified the strengths and weaknesses of the issues . . . prior to reaching a settlement through a mediation process overseen by an experienced and well-respected mediator"); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (history omitted) (similar).

**c.** **Proposed Settlement Class Counsel's endorsement also supports approval.**

Finally, where Settlement Class members stand to receive the kind of substantial benefits available from this proposed Settlement, there is little room for argument that counsel failed to protect the Settlement Class' interests or otherwise engaged in collusive behavior. This is particularly so given that proposed Settlement Class Counsel are experienced class action litigators and skilled negotiators who have successfully litigated and resolved numerous similar litigations at this scale. *See* Class Counsel Decl. ¶ 3. This too weighs in favor of approval. *See Ferron*, 2021 WL 2940240, at *13 (counsel could confidently evaluate the strengths and weaknesses of claims due in part to prior experience in similar litigation); *In re Volkswagen*, 2019 WL 2077847, at *1

(granting final settlement approval where "Lead Counsel ha[d] . . . a successful track record of representing [plaintiffs] in cases of this kind . . . [and] attest[ed] that both sides engaged in a series of intensive, arm's-length negotiations" and there was "no reason to doubt the veracity of Lead Counsel's representations").

### 3.   Rule 23(e)(2)(C): The Settlement provides substantial relief to all Settlement Class Members.

This non-reversionary Settlement is an excellent outcome for the Settlement Class, especially taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan and claims program; and (iii) the fair terms of the anticipated requested award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C); *see also Gonzalez*, 2019 WL 2249941, at *4 (*Bennett* factors one, two, and three: the likelihood of success at trial, the possible range of recovery in the litigation, and how the settlement recovery compares). This critical factor strongly supports approval here.

$237.5 million cash settlements do not come along every day. Add to that the substantial extended warranties likely to add more than $100 million of extra value to the Settlement—due to their comprehensive coverage, and also because the warranties transfer with the Settlement Class Trucks for their duration (a valuable asset for resale)—and this is clearly an impressive recovery for the proposed Settlement Class.[13]

Perhaps even more important than the aggregate value of the Settlement is the substantial amount of money each owner and lessee can receive through the Settlement. Because the

---

[13] Plaintiffs have retained one of the country's leading automotive warranty valuation experts to submit a declaration that will calculate the monetary value of the negotiated extended warranties. Plaintiffs intend to file the declaration with their final approval papers. At this stage, Plaintiffs' reference to this likely warranty value is based on prior testimony from similar automotive cases and warranties. *See* § V.A.3.c. Forthcoming testimony will present the value of the specific warranty here.

Settlement is non-reversionary, the amount paid per vehicle will depend on the number of vehicles for which claims are submitted. Assuming the median class action claims rate of approximately 10%[14], each Settlement Class Truck with a valid claim would be allocated ***more than $15,000.***

Even with an extremely ambitious (and very rarely achieved) projected claims rate of 50%, each Settlement Class Truck would receive more than $3,000, a recovery comparable to settlements of similar diesel emissions cases that resolved later in their respective lifecycles (and on arguably stronger records). The settlement in *FCA EcoDiesel*, for example, provided a maximum of $3,075 per vehicle. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019) ("*FCA EcoDiesel*") (final settlement approval). Another case based on allegedly excessive diesel emissions, *Mercedes BlueTec*, settled with the manufacturer for a similar value of $3,290 per vehicle. *Mercedes BlueTec*, 2021 WL 7833193, at *3.

Notably, those cases settled only *after* surviving motions to dismiss and after the U.S. regulators issued a formal notice of violation (*FCA EcoDiesel*) or in conjunction with a resolution with U.S. regulators (*Mercedes BlueTec*). Here, in contrast, the U.S. regulators have not yet weighed in, and Defendants' multiple motions to dismiss remain unresolved. Thus, under even the most conservative estimates, on a per-vehicle basis, the cash portion of the settlement in this case is likely to match or even exceed the settlements secured in similar diesel cases with arguably stronger claims. *See Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) ("[A] comparison of settlements in similar cases is relevant to whether a

---

[14] Federal Trade Commission Staff Report, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns (Sep. 2019), available at (https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. (FTC's comprehensive study of class actions, identifying the mean and median claims rates of 5% and 10%, respectively).

settlement is fair, adequate and reasonable."). This is, by all accounts, an excellent result—especially so given the considerable risks the proposed class faced in continued litigation—and strongly supports approval.

Apart from the settlement recovery, the *EcoDiesel* plaintiffs also presented expert testimony on their potential economic damages. This included an overpayment "premium" theory to measure the benefit-of-the-bargain losses incurred when plaintiffs paid for cheating diesel vehicles due to the defendants' fraud. *See* Decl. of Colin Weir, *FCA EcoDiesel*, ECF 327-4 (June 6, 2018) (describing overpayment premium theory and calculating damages from $4,500 to $4,770 per vehicle).[15]

These damages from *EcoDiesel* inform the scope of likely damages in this case, too, given the clear similarities in the classes' injuries and the defendants' alleged misconduct.[16] The Settlement compensation is thus a healthy percentage of Plaintiffs' potential trial recovery approximated by the *EcoDiesel* damages figures.[17] This strongly supports the proposed resolution. *See Gonzalez*, 2019 WL 2249941, at *4 (*Bennett* factors two and three, potential damages compared to settlement recovery). Indeed, a negotiated resolution can be fair, reasonable, and adequate even where it recovers a much lower proportion of available damages. *See Behrens v.*

---

[15] In addition to the price premium theory, experts in *EcoDiesel* also proposed a survey-based conjoint study, and performed an illustrative survey to demonstrate that methodology at the class certification stage. Plaintiffs' experts' damages analysis here would also likely have involved a conjoint survey at a later stage, which would be tailored to the medium and heavy duty truck sector, and the distinct facts of this case.

[16] Plaintiffs' damages are the difference in value between the Settlement Class Trucks they reasonably expected, and as actually received. A precise calculation of that difference would ultimately involve expert testimony at a later stage of the litigation. At this stage, based on Plaintiffs' Counsel's experience in *EcoDiesel* and other similar automotive cases, the *EcoDiesel* damages amounts serve as apt comparators for potential recovery here, even if not identical.

[17] As explained above, a rare 50% claims rate would yield per-truck compensation of $3,000, and increase up to $15,000 (far exceeding *EcoDiesel*) at 10% participation.

*Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988*)* ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *see also Thorpe v. Walter Inv. Mgmt. Corp*., No. 14-cv-20880-UU, 2016 WL 10518902, at \*10 (S.D. Fla. Oct. 17, 2016) (describing as "excellent" and an "outstanding result" a recovery of 5.5% of the class' maximum damages and 10% of the class' most likely damages).

### a.    The Settlement provides significant benefits to the Settlement Class in light of the costs, risks, and delay of trial and appeal.

As noted, the Settlement benefits described above are even more impressive given the inherent uncertainties of continued litigation. *See Gonzalez*, 2019 WL 2249941, at \*4 (*Bennett* factor one, likelihood of success). While Plaintiffs and their counsel are confident in the strength of their case and submit that the Complaint states valid, cognizable claims, they are also pragmatic and aware of the various, potentially-case dispositive defenses available to Hino. For example, one of the central arguments of Defendants' motion to dismiss is that the Clean Air Act preempts all of Plaintiffs' claims. A recent Sixth Circuit decision (issued well after the settlements in *FCA EcoDiesel* and *Mercedes BlueTec*) adopted very similar preemption arguments and affirmed the complete dismissal of the plaintiffs' claims. *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 866 (6th Cir. 2023). In the months that have followed, several courts have applied *Ford* to emissions claims and found them to be impliedly preempted by the Clean Air Act. *In re Duramax Diesel Litig.*, No. 1:17-cv-11661, 2023 WL 4493595, at \*8 (E.D. Mich. July 12, 2023); *Counts v. Gen. Motors, LLC*, No. 1:16-cv--12541, 2023 WL 4494336, at \*8 (E.D. Mich. July 12, 2023); *see also Hurst v. BMW of N. Am. LLC*, No. 22-3928 (SDW)(AME), 2023 WL 4760442, at \*7 (D.N.J. July 26, 2023) (dismissing another automotive case under *Ford*). Plaintiffs submit that the better-reasoned authority rejects these arguments, including for the reasons articulated in Plaintiffs' opposition brief (*see* ECF 70 at p.

12-21). But the point is that Defendants' case-dispositive preemption arguments had teeth and posed considerable risk. This was just one of many serious legal risks briefed in the motions to dismiss that lie in wait absent settlement.

On the other side of the motions to dismiss, moreover, Plaintiffs faced the challenge of obtaining litigation certification of a proposed class comprising more than a decades' worth of vehicles equipped with three different engine types, along with all of the other inherent summary judgment, *Daubert*, trial and appellate risks posed in complex litigation. And, of course, even if Plaintiffs were able to clear every one of these hurdles, doing so would take several years, during which Plaintiffs would receive nothing at all. Avoiding years of additional, costly, and risky litigation in exchange for the immediate and significant Settlement cash and warranties provides a clear benefit to the Settlement Class, and itself "strongly favor[s]" settlement approval at this stage. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005).

In short, the Settlement reflects a very successful compromise of hotly contested claims.

> **b.  The Settlement benefits will be distributed through a simple, straightforward Settlement Claims process.**

The Settlement Claims process, overseen by the Settlement Administrator, will be straightforward, efficient, and based on recent experience administering similar claims processes in other automotive settlements. Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class members need only submit a short claim form online or by mail (at their choosing), and may be asked to submit basic supporting documentation, *e.g.*, proof of ownership or lease, only where such information is necessary to verify the claim. Settlement Class members who submit a valid claim will be paid after the Effective Date and will be able to select a streamlined form of e-payments, including through Venmo, PayPal, and other forms of online transfer. Moreover, all eligible Settlement Class Trucks will automatically receive the robust Extended Warranty protections without the need for any claim

- 21 -

at all. The effort required and safeguards incorporated in this process are proportional to the compensation available and necessary to preserve the integrity of the Claims Program.

Finally, it bears repeating that the Settlement is ***non-reversionary***, meaning that ***no unused funds will revert or be returned to Hino***. This is the most effective way to ensure that Settlement Cash Benefits will go to the Settlement Class.

### c.    Counsel will seek reasonable attorneys' fees and costs

Settlement Class Counsel will move for an award of reasonable attorneys' fees and reimbursement of their expenses incurred in furtherance of this litigation and its successful result. Fed. R. Civ. P. 23(e)(2)(C)(iii). They anticipate they will ask the Court to award up to a third of the Settlement Cash Value in attorneys' fees and reasonable expenses. Although this anticipated request is described as 33.33%, the percentage of the actual total settlement value will be much lower after appropriately "taking into account the potential value" of the nonmonetary relief the Settlement provides in the robust Extended Warranty. *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *14 (S.D. Fla. Feb. 3, 2016) (measuring attorneys' fees request against total settlement value including injunctive relief); *see also Carter v. Forjas Taurus*, S.A., No. 16-15277, 2017 WL 2813844, at *5 (11th Cir. June 29, 2017) (holding that fee award was "a reasonable percentage of the settlement value" including the value of an "enhanced warranty, which is itself a significant tangible benefit"); *Poertner v. Gillette Co*., 618 F. App'x 624, 629-630 (11th Cir. 2015) (rejecting settlement objector's argument that overlooked "substantial nonmonetary benefit" as based on a "flawed valuation of the settlement").

To that point, in their forthcoming attorneys' fees motion (which they will file in connection with their motion for final settlement approval), Plaintiffs will present testimony from a warranty valuation expert who will opine on the market value of the Extended Warranty to the Settlement Class. Based on prior experience with similar settlements, Plaintiffs' Counsel anticipate

this testimony will show the Extended Warranty provides significant, calculable economic value—likely nine figures' worth of benefits—and will result in a material reduction of the requested fee percentage of the total value of the Settlement. *See, e.g.*, Decl. of Kirk D. Kleckner, *In re Takata Airbag Prods. Liab. Litig.*, No. 15-MD-2599-FAM (S.D. Fla. Dec. 22, 2017), ECF 2256-3 (valuation of $207,760,000 for 10-year extended warranty in the *Takata* MDL); Decl. of Kirk D. Kleckner, *FCA EcoDiesel.*, ECF 491-4 (N.D. Cal. January 10, 2019) (expert valued extended warranty lasting 10 years from sale or 4 years from recall repair at $239.5 million).

But even at one-third of the $237.5 million Settlement Cash Value alone, the anticipated fee request finds ample support in this Court and Circuit. As this Court has previously observed, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Gonzalez,* 2019 WL 2249941, at *6. Indeed, it is a "customary fee for class actions" in this Circuit. *Belin v. Health Ins. Innovations, Inc.*, No. 19-CV-61430, 2022 WL 1126006, at *6 (S.D. Fla. Mar. 10, 2022); *see also e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming district court fee award of 33 1/3%).[18] Attorneys' fee percentages at or near a third are often approved even for settlements, like this one, worth hundred(s) of millions of dollars or more. *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) (31.33% attorneys' fee award in a $1 billion+ settlement);

---

[18] *See also Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc*., No. 15-22782-Civ, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (finding 35% fee award reasonable, noting "Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund"); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012), report and recommendation adopted, No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (collecting cases and concluding "[t]he average percentage award in the Eleventh Circuit" is "roughly one-third"); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (one-third is a "benchmark" for attorneys' fees in the Eleventh Circuit); *In re Checking Account Overdraft Litig.*, No. 1:10-CV-22190-JLK, 2020 WL 4586398, *16 (S.D. Fla. Aug. 10, 2020) (approving fee award of 35% of fund plus expenses).

*In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (awarding attorneys' fees of one-third of $974 million settlement); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018) (awarding attorneys' fees of one-third of a $1.5B settlement and collecting authority on "similar fees in megafund cases"); *In re Vitamins Antitrust Litig.*, No. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) (33.8% awarded of a $365 million settlement).

Counsel will file their fee application and supporting materials in advance of the objection deadline, and it will be available on the Settlement website after it is filed. Any attorneys' fees and expenses the Court awards will be paid from the Settlement Fund. SA ¶ 14.2.

### 4.    Rule 23(e)(2)(D): The Settlement treats Settlement Class members equitably relative to each other.

The proposed Settlement fairly and reasonably allocates benefits among Settlement Class members based on the nature and status of their relationship with a Settlement Class Truck.

For cash payments, Settlement Class Trucks with valid claims will be allocated payment amounts on a per-capita basis. SA ¶ 4.1. In other words, after deducting fees and costs, the Settlement Cash Value will be divided evenly among all Settlement Class Trucks for which a timely and valid claim is submitted. If more than one valid claim applies for the same Settlement Class Truck, the original owner who purchased new will receive 60% of the allocated funds, and the 40% remainder will be distributed evenly to or among the other valid claimants. This allocation weighting fairly reflects the economic reality that the trucks' value is highest when new, such that the damages incurred as a relative percentage of vehicle value are also highest for new purchasers, versus the used purchasers and lessees allocated a lower percentage. *See In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 2023 WL 7012247, at *9 (11th Cir. Oct. 25, 2023) ("[T]he text of the amended rule requires equity, not equality, and treating class members equitably does not

necessarily mean treating them all equally"). It also reflects the reality that new purchasers face fewer legal hurdles and arguably present stronger claims for relief. *See*, *id.* at \*9-10 (affirming approval of allocation formula that took into account the "comparative strengths of each class's … claims"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at \*8 (N.D. Cal. Nov. 9, 2022) (concluding allocation formula was equitable where differing payment amounts "roughly correspond[ed] to the strength of [class members'] claims and the likelihood of damages at trial").

In sum, the allocation uses transparent and objective criteria to equitably apportion Settlement Class member payments and ensures that claims administration is feasible, cost effective, and streamlined for Settlement Class members. *See* Fed. R. Civ. P. 23(e)(2)(D).

\* \* \*

For all the above reasons, the proposed Settlement is "fair, reasonable, and adequate," and the Court should authorize the parties to direct notice to the class.

**B.    The Court will be able to certify the proposed Settlement Class for settlement purposes upon final approval.**

The Court should certify the proposed Settlement Class for settlement purposes only pursuant to Rule 23(e) because it meets the applicable prerequisites of Rules 23(a) and (b). *Gonzalez*, 2019 WL 2249941, at \*2.

**1.    Rule 23(a)(1): Numerosity is satisfied.**

The proposed Settlement Class, which consists of owners and lessees of approximately 104,000 Settlement Class Trucks throughout the United States, unquestionably meets the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### 2.      Rule 23(a)(2): Commonality is satisfied.

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Courts routinely find commonality where, as here, the class claims arise from a defendant's uniform course of fraudulent conduct. *See, e.g.*, *FCA EcoDiesel.*, 2019 WL 536661, at *6 (commonality satisfied by the defendants' "common course of conduct" in perpetrating alleged vehicle emissions cheating scheme); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2017 WL 11680208, at *3 (S.D. Fla. Sept. 19, 2017) (common questions about defective airbag modules satisfied commonality requirement); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673-74 (S.D. Fla. 2011).

Here, questions of law and fact centered on Hino's alleged fraud about emissions tests and performance in the Settlement Class Trucks, and related representations to regulators and consumers, are common to all Settlement Class members. Just like in the *Volkswagen* diesel litigation, "[w]ithout class certification, individual Class members would be forced to separately litigate the same issues of law and fact which arise from Volkswagen's use of the [emissions cheating device] and Volkswagen's alleged common course of conduct." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 2672 CRB (JSC*)*, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016).

### 3.      Rule 23(a)(3): Typicality is satisfied.

For similar reasons, Plaintiffs' claims are coextensive with those of the absent Settlement Class members, and Rule 23(a)(3)'s typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v.*

*Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiffs and absent Settlement Class members were subjected to the same misconduct by Hino, claim to have suffered the same injuries in paying more for their Settlement Class Trucks than they otherwise would have, and will equally benefit from the relief provided by the Settlement.

### 4.    Rule 23(a)(4): Adequacy is satisfied.

Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry looks to: (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Both are readily satisfied here.

The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). As explained in § V.B.3 above, Plaintiffs have no interests antagonistic to Settlement Class members and will continue to protect the Settlement Class's interests in overseeing the Settlement administration and through any appeals. Indeed, Plaintiffs "are entirely aligned [with the Settlement Class] in their interest in proving that [Defendants] misled them and share the common goal of obtaining redress for their injuries." *Volkswagen*, 2016 WL 4010049, at *11. The Representatives understand their duties, have agreed to consider the interests of absent Settlement Class members, and have reviewed and uniformly endorsed the Settlement terms. *See* Class Counsel Decl. ¶¶ 22-23.

Further, Plaintiffs are represented by qualified and competent counsel with extensive experience prosecuting complex class actions. As demonstrated throughout the nearly fifteen

months since filing this case (and in their prefiling investigation before that), Settlement Class counsel have undertaken an enormous amount of work, effort, and expense in litigating Plaintiffs' claims, and they obtained an excellent result for Plaintiffs and the Settlement Class. They, too, satisfy Rule 23(a)(4).

### 5.    Rule 23(b)(3): Predominance requirements are met.

Rule 23(b)(3)'s requirements are also satisfied because (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (predominance means the impact of common issues is "more substantial than the impact of individualized issues in resolving the claim or claims of each class member").

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).

Common questions predominate here because they substantially outweigh issues individual to each Settlement Class member. Hino's common course of alleged conduct—misconduct in diesel engine emissions tests and resulting representations to regulators and consumers—is central to Plaintiffs' claims. Common, unifying questions include, for example:

- 28 -

Hino's practices and procedures for emissions tests and reporting results; what Hino knew about misconduct in its emissions tests, and when it learned that information; whether representations about the Settlement Class Trucks emissions performance were misleading to reasonable customers; and whether Hino's actions were fraudulent. The evidentiary presentation changes little if there are 100 Class members or 100,000. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[I]f common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

In sum, Hino allegedly "perpetrated the same fraud in the same manner against all Class Members." *Volkswagen*, 2016 WL 4010049, at \*12. Predominance is satisfied.

### 6.    Rule 23(b)(3): Class treatment is superior to other available methods for the resolution of this case.

Furthermore, Class treatment here is far superior to the litigation of tens of thousands of individual cases. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023; *see also Wolin v. Jaguar Land Rover N.Am., LLC,* 617 F.3d 1168,1176 (9th Cir. 2010) ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication."). The maximum damages sought by each Settlement Class member (in the thousands of dollars), while significant to individuals, are relatively small in comparison to the substantial cost of prosecuting each one's individual claims, especially given the complex and technical nature of the claims at issue.

Class resolution is also superior from an efficiency and resource perspective. Indeed, "[i]f Class members were to bring individual lawsuits against [Defendants], each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence." *Volkswagen*, 2016 WL 4010049, at *12. With a Settlement Class associated with over 104,000 Settlement Class Trucks, "there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results." *Id.* "Thus, classwide resolution of their claims is clearly favored over other means of adjudication, and the proposed Settlement resolves Class members' claims at once." *Id.* Superiority is met here, and Rule 23(e)(1)(B)(ii) is satisfied.

\* \* \*

For all the reasons set forth above, Plaintiffs respectfully submit that the Court will—after notice is issued and Class member input received—"likely be able to . . . certify the class for purposes of judgment on the proposal." *See* Fed. R. Civ. P. 23(e)(1)(B).

### C.    The proposed Notice Program provides the best notice practicable to the proposed Class.

Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." For a Rule 23(b)(3) Settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This means notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also* MANUAL FOR COMPLEX. LITIG., § 21.31 (listing relevant information).

- 30 -

The proposed Notice here readily meets the Rule 23 standard, as well as relevant guidance in this district. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 677 (S.D. Fla. 2006) (settlement notices should contain "clear and concise information about the settlement" to "fairly apprise[] the prospective class members of the proposed settlement terms and the the of the options that are open to them."). The Parties created this proposed program, its content, and the distribution plan with JND, an experienced firm specializing in notice in complex class action litigation. Keough Decl. ¶¶ 1, 4-11.

The principal method of reaching Settlement Class members will be through direct, individual notice, consisting of both individual email notices where email contact information validated by third-party data sources is available, as well as mailed notices for all Settlement Class members for whom a valid mailing address is available. *See id*. ¶¶ 20-32. The email notice conveys the structure of the Settlement and is designed to capture Settlement Class members' attention with concise, plain language. *Id.* ¶ 23. The email notice program was designed specifically to avoid spam filters and to be easily read across all formats, including mobile. *Id.* ¶¶ 24-27. The mailed notice is similarly structured and provides all basic information about the Settlement and Settlement Class members' rights thereunder. *Id.* ¶ 31. JND will send Settlement Class members who owned or leased more than ten Settlement Class Trucks a consolidated cover letter directing them to contact the Settlement Administrator for claim filing assistance. *Id.*

Beyond that, JND will supplement the direct notice with an internet search campaign and a robust digital notice effort including digital banner advertisements through Google Display Network, Facebook, Instagram, and industry websites such as *Heavy Duty Trucking* and *Land Line*. ¶¶ 33-43. To extend reach even further, JND also proposes print notice in three leading industry publications and distribution of an informational press release. *Id*. ¶¶ 40-41, 44-45.

Finally, JND will operate a toll-free telephone number as well as an email address and post office box to receive and respond to inquiries from Settlement Class members. *Id.* ¶¶ 48-49. Based on her considerable experience, Ms. Keough anticipates that "the direct notice effort alone to reach virtually all Settlement Class Members" and the "supplemental digital and print effort, the internet search campaign, and the distribution of a national press release will further enhance that reach." *Id.* ¶ 51.

These various and complementary notice formats will direct Settlement Class members to the comprehensive Settlement Website, which will house links to important case materials and the Short and Long Form Notices. *Id.* ¶ 46. The Long Form Notice explains Settlement Class members' rights and obligations under the Settlement in clear terms and in a well-organized and reader-friendly format. *Id.*, Exhibit H. It includes among other information an overview of the litigation; an explanation of the Settlement benefits; a brief description of the reason for settlement; contact information for Settlement Class Counsel; instructions on how to access the case docket; and detailed instructions on how and by when to participate in, object to, or opt out of the Settlement. *Id.* The Settlement Website will also feature a user-friendly look-up tool for potential Settlement Class members to enter their VIN and confirm whether their Settlement Class Truck is eligible under the Settlement.

**VI.    <u>The Court Should Schedule a Fairness Hearing and Related Dates.</u>**

The next steps in the settlement approval process are to notify Settlement Class members of the proposed Settlement, then allow Settlement Class members to file comments or objections or to opt out, and finally to hold a Fairness Hearing. As set forth in the proposed Order and paragraph 15.1 of the Settlement Agreement the Parties respectfully propose the following schedule.

2865831.12

| Date | Event |
|------|-------|
| *TBD* | Entry of Preliminary Approval Order |
| 1 day after entry of Preliminary Approval Order | Settlement Class Notice Program begins |
| 75 days after entry of Preliminary Approval Order | Substantial Completion of Direct Notice Component of Settlement Class Notice Program |
| 82 days after entry of Preliminary Approval Order | Motion(s) for Final Approval and Attorneys' Fees and Expenses |
| 115 days after entry of Preliminary Approval Order | Objection and Opt-Out Deadline |
| 136 days after entry of Preliminary Approval Order | Reply Memoranda in Support of Final Approval and Fee/Expense Motion(s) |
| 150 days after entry of Preliminary Approval Order | Fairness hearing |
| 75 days after entry of Final Approval Order | Settlement Claims Deadline |

## VII.   <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) determine under Rule 23(e)(1) that it is likely to approve the proposed Settlement and certify the Settlement Class; (2) appoint Express Freight International, EFI Export & Trading Corp., Marders, and Redlands Office Cleaning Solutions, LLC, as interim Class Representatives; (3) appoint JND Legal Administration as Settlement Administrator and direct notice to the Class through the proposed Notice Program; (4) appoint David Stellings, Roland Tellis, and Peter Prieto as Interim Settlement Class Counsel to conduct the necessary steps in the Settlement approval process; and (5) schedule a final approval hearing under Rule 23(e)(2). A proposed Preliminary Approval Order is attached.

Dated: October 27, 2023           Respectfully submitted,

/s/ *Peter Prieto*
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)

- 33 -

2865831.12

PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, Florida 33131
Telephone: 305-358-2800
Facsimile: 305-358-2382
E-mail: pprieto@podhurst.com

David S. Stellings (*pro hac vice*)
Wilson M. Dunlavey (*pro hac vice*)
Katherine I. McBride (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500
E-mail: dstellings@lchb.com

Elizabeth J. Cabraser (*pro hac vice*)
Phong-Chau G. Nguyen (*pro hac vice*)
Kevin R. Budner (*pro hac vice*)
Amelia A. Haselkorn (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
E-mail: ecabraser@lchb.com

Roland Tellis (*pro hac vice*)
David Fernandes (*pro hac vice*)
Adam Tamburelli (*pro hac vice*)
Shannon Royster (*pro hac vice*)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333
Facsimile: 818.986.9698
E-mail: rtellis@baronbudd.com

*Counsel for Plaintiffs in*
*Express Freight International, et al. v. Hino Motors, Ltd., et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

*/s/ Peter Prieto*_____

Peter Prieto

2865831.12