**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:22-cv-22483-Gayles/Torres

EXPRESS FREIGHT INTERNATIONAL, EFI
EXPORT & TRADING CORP., MARDERS,
and REDLANDS OFFICE CLEANING
SOLUTIONS, LLC, on behalf of themselves
and all others similarly situated,

         Plaintiffs

   v.

HINO MOTORS, Ltd., TOYOTA MOTOR
CORPORATION, HINO MOTORS
MANUFACTURING U.S.A., Inc., and HINO
MOTORS SALES U.S.A., Inc.,

         Defendants.

---

## MOTION FOR FINAL SETTLEMENT APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS

## TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................................. 1

II.     Background ................................................................................................................... 3

      A.      The Settlement provides excellent benefits to Settlement Class Members. .......... 3

      B.      The Settlement was secured after extensive litigation and discovery. .................. 5

III.    Argument ...................................................................................................................... 8

      A.      The Court should grant final approval of the Settlement because it is a fair,
           reasonable, and adequate resolution of this case. .................................................. 8

           1.      Rule 23(e)(2)(A): Settlement Class Representatives and Settlement
                  Class Counsel zealously represented the Settlement Class ......................... 9

           2.      Rule 23(e)(2)(B): The Settlement was reached after extensive,
                  complex litigation as well as informed, arm's-length negotiations
                  (*Bennett* factors four and six). ................................................................ 10

           3.      Rule 23(e)(2)(C): The substantial relief from the Settlement is fair,
                  reasonable, and adequate (*Bennett* factors two and three). ...................... 12

           4.      Rule 23(e)(2)(D): The Settlement treats Settlement Class Members
                  equitably relative to each other. ................................................................ 16

            5.      Settlement Class Members are engaged and showing support
                  (*Bennett* factor five). .............................................................................. 17

      B.      The Settlement Class satisfies all requirements of Rule 23 and should be
           certified. ............................................................................................................... 18

           1.      Rule 23(a)(1): Numerosity is satisfied. .................................................... 18

           2.      Rule 23(a)(2): Commonality is satisfied. .................................................. 19

           3.      Rule 23(a)(3): Typicality is satisfied. ....................................................... 20

           4.      Rule 23(a)(4): Adequacy is satisfied. ....................................................... 20

           5.      Rule 23(b)(3): Predominance requirements are met. ................................. 21

           6.      Rule 23(b)(3): Class treatment is superior to other available
                  methods for the resolution of this case. ..................................................... 22

      C.      Settlement Class Counsel's requested fee is fair, reasonable and
           appropriate. .......................................................................................................... 23

           1.      Properly calculated, the requested fee is "presumptively
                  reasonable." .............................................................................................. 23

**TABLE OF CONTENTS**
**(continued)**

Page

2.  Even under a more conservative analysis, the requested fee is commonplace and justified by the facts of this case. ................................ 26

3.  The relevant *Johnson* factors confirm the requested fees are reasonable. ................................................................................. 27

4.  Settlement Class Counsel's request for reimbursement of litigation expenses should be approved. ................................................. 35

IV.   Conclusion .................................................................................................. 37

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...................................................................25

*Beesley v. Int'l Paper Co.*,
    No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ..............36

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) ..............14, 34

*Belin v. Health Ins. Innovations, Inc.*,
    No. 19-CV-61430, 2022 WL 1126006 (S.D. Fla. Mar. 10, 2022)..........................26

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ........................................................................8, 14

*Butler v. Sears, Roebuck & Co.*,
    702 F.3d 359 (7th Cir. 2012) ...............................................................................21

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d (11th Cir. 1991) ....................................................................................23

*Carter v. Forjas Taurus, S.A.*,
    No. 16-15277, 2017 WL 2813844 (11th Cir. June 29, 2017)............................2, 23

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    No. 1:04-cv-3066, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) .........................34

*Cotter v. Checkers Drive-In Rests., Inc.*,
    No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021).....................12

*Counts v. Gen. Motors, LLC*,
    No. 1:16-cv-12541, 2023 WL 4494336 (E.D. Mich. July 12, 2023)......................14

*Fabricant v. Sears Roebuck*,
    202 F.R.D. 310 (S.D. Fla. 2001)....................................................................19, 20

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ............................................................................27

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    No. 15-22782-Civ, 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017).........................26

*Ferron v. Kraft Heinz Foods Co.*,
    No. 20-CV-62136-RAR, 2021 WL 2940240 (S.D. Fla. July 13, 2021) ............10, 24

*Francisco v. Numismatic Guar. Corp. of Am.*,
    No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)..............................9

## TABLE OF AUTHORITIES
### (continued)

Page

*Fruitstone v. Spartan Race, Inc.*,
 No. 20-cv-20836, 2021 WL 2012362 (S.D. Fla. May 20, 2021)............................................11

*Gevaerts v. TD Bank, N.A.*,
 No. 1:14-cv-20744-RLR, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)................................11

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
 No. 1:18-CV-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019) ..................... *passim*

*Gutierrez v. Amplify Energy Corp.*,
 No. 8:21-CV-01628-DOC(JDEx), 2023 WL 3071198 (C.D. Cal. Apr. 24,
 2023) ...............................................................................................................................36

*Hamilton v. SunTrust Mortg. Inc.*,
 No. 13-60749-CIV, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) .........................................11

*Hanley v. Tampa Bay Sports & Ent. LLC*,
 No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)....................26

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...............................................................................................22

*Hurst v. BMW of N. Am. LLC*,
 No. 22-3928 (SDW)(AME), 2023 WL 4760442 (D.N.J. July 26, 2023) ...............................14

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
 85 F.4th 1070 (11th Cir. 2023) ...................................................................................... *passim*

*In re Checking Account Overdraft Litig.*,
 275 F.R.D. 666 (S.D. Fla. 2011) ...........................................................................................19

*In re Checking Account Overdraft Litig.*,
 No. 1:10-CV-22190-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020)
 .....................................................................................................................26, 29, 31, 32

*In re: Checking Acct. Overdraft Litig.*,
 No. 1:09-MD-02036-JLK, 2013 WL 11319391 (S.D. Fla. Aug. 5, 2013) ............................24

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab.
 Litig.*,
 No. 17-MD-02777- EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019).....................4, 12, 19

*In re Duramax Diesel Litig.*,
 No. 1:17-cv-11661, 2023 WL 4493595 (E.D. Mich. July 12, 2023)......................................14

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
 Litig.*,
 65 F.4th 851 (6th Cir. 2023) ........................................................................................14, 31

- iv -

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Mercedes-Benz Emissions Litig.*,
No. 2:16-cv-881 (KM) (ESK), 2021 WL 7833193 (D.N.J. Aug. 2, 2021)............................12

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................................................33

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018) ......................................................................................25

*In re Takata Airbag Prods. Liab. Litig.*,
MDL No. 2599, 2017 WL 11680208 (S.D. Fla. Sept. 19, 2017) .............................................19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
Prods. Liab. Litig.*,
No. 8:10 ML 02151 JVS, 2013 WL 12327929 (C.D. Cal. July 24, 2013) .................................4

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .....................................................................................................8

*In re: Urethane Antitrust Litig.*,
No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ...............................................25

*In re Vitamins Antitrust Litig.*,
No. 99-197(TFH), 2001 WL 34312839 (D.D.C. July 16, 2001) ..............................................25

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015) ...........................................................................................4

*In re Volkswagen "Clean Diesel" Mktg.*,
No. 15-md-02672-CRB, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ..................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 29, 2016)....................19, 20, 21, 22

*Jairam v. Colourpop Cosms., LLC*,
No. 19-CV-62438-RAR, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) .............................11, 29

*Janicijevic v. Classica Cruise Operator, Ltd.*,
No. 20-cv-23223, 2021 WL 2012366 (S.D. Fla. May 20, 2021).............................................11

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (11th Cir. 2011) .................................................................................................27

*Kilgo v. Bowman Transp.*,
789 F.2d 859 (11th Cir. 1986) .................................................................................................18

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ...............................................................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kukorinis v. Walmart, Inc.*,
No. 19-20592-CV, 2021 WL 8892890 (S.D. Fla. Sept. 20, 2021) ..........................................11

*Lee v. Ocwen Loan Servicing, LLC*,
No. 14-CV-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ........................................10

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................................................................8, 15

*Lipuma v. Am. Express Co.*,
No. 04-20314-CIV, 2007 WL 9701671 (S.D. Fla. Sept. 14, 2007)........................................24

*Mahoney v. TT of Pine Ridge, Inc.*,
No. 17-80029-CIV, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ........................................26

*Millstein v. Holtz*,
No. 21-CV-61179-RAR, 2022 WL 18024840 (S.D. Fla. Dec. 30, 2022)
....................................................................................................................................29, 32, 33, 34

*Morgan v. Pub. Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) .......................................................................29, 31, 33

*Murray v. Auslander*,
244 F.3d 807 (11th Cir. 2001) ...............................................................................................20

*Perez v. Asurion Corp.*,
No. 06-20734-CIV, 2007 WL 2591180 (S.D. Fla. Aug. 8, 2007) ........................................24

*Poertner v. Gillette Co.*,
618 F. App'x 624 (11th Cir. 2015) ....................................................................................10, 24

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)...........................................................................................35

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014)......................................................................................15, 18

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) .............................................................................................21

*Schulte v. Fifth Third Bank*,
No. 09-cv-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010)............................................13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...........................................................................................24, 27

*Swift v. BancorpSouth Bank*,
No. 1:10-cv-00090, 2016 WL 11529613 (N.D. Fla. July 15, 2016)......................................35

2922631.8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Taylor v. Serv. Corp. Int'l*,
   No. 20-CV-60709-RAR, 2023 WL 2346295 (S.D. Fla. Mar. 3, 2023) ............................29, 33

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   No. 14-cv-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ...................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016).............................................................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................................................19

*Walco Invs., Inc. v. Thenen*,
   975 F. Supp. 1468 (S.D. Fla. 1997) .....................................................................................33

*Waters v. Cook's Pest Control, Inc.*,
   No. 2:07-cv-00394-LSC, 2012 WL 2923542 (N.D. Ala. July 17, 2012) ..............................30

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ...........................................................................................26

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ...........................................................................................19

*Wilson v. EverBank*,
   No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ...........................................24

*Wolff v. Cash 4 Titles*,
   No. 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012).......................................26

*Wolin v. Jaguar Land Rover N.Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .............................................................................................22

**Court Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................18, 20, 23

Fed. R. Civ. P. 23(b)....................................................................................................18, 21, 23

Fed. R. Civ. P. 23(e) ............................................................................................................. *passim*

Fed. R. Civ. P. 23(h) ............................................................................................................34

Rule 23(a)(1)'s .....................................................................................................................18

**Other Authorities**

Am. Law Inst., *Principles of the Law of Aggregate Litigation* § 3.13(b) (2010) .........................24

Fed. Trade Comm'n Staff Report, *Consumers and Class Actions: A Retrospective
   and Analysis of Settlement Campaigns* (Sept. 2019) ................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

Page

Theodore Eisenberg, Geoffrey P. Miller, and Roy Germano, *Attorneys' Fees in Class Action Settlements: 2009-2013*, 92 N.Y.U. L. Rev. 937 (2017) ...................................35

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*..................................................................................35

William B. Rubenstein et al., 4 *Newberg on Class Actions* § 13:49 (5th ed. 2012)......................11

## I.      <u>Introduction</u>

The Settlement is an outstanding result for the Settlement Class.[1] It provides a non-reversionary cash fund of $237.5 million, a robust Extended Warranty valued at $208 million,[2] and a five-year New Parts Warranty in the event of a future recall. All together, these benefits are worth more than ***$445,500,000.00*** and will provide Settlement Class Members with tangible, meaningful relief.

This is significant, both in the aggregate and, perhaps more importantly, on an individual basis. All Settlement Class Members are eligible to receive substantial cash payments, likely in the range of $1,500 to $15,000 per Settlement Class Truck, depending on the number of claims submitted. *See* Settlement Agreement ("SA"), ECF 146-1, ¶ 4.1. No matter the claims rate, every Settlement Class Member who submits a valid claim stands to receive significant compensation.

But that's not all. The Settlement's two warranty provisions provide further benefits to Settlement Class Members beyond the direct cash payments. Of particular note is the Extended Warranty—applicable to every single Settlement Class Truck even without a Settlement claim—which covers nearly two dozen relevant engine systems and emissions components for up to five or eight years from Settlement approval (depending on the part). SA ¶ 4.2 & Ex. B. A leading automotive warranty expert has valued the Extended Warranty at over $208,000,000. *See* Kleckner Decl. §§ 2(a), 7(f)(i)-(iii). The separate New Parts Warranty provides further protection for the Settlement Class Trucks if they are subject to an emissions system recall or repair campaign. SA ¶ 4.3.

---

[1] Capitalized terms not defined herein have the same definitions and meanings used in the Class Action Agreement, ECF 146-1 ("Settlement Agreement").

[2] This valuation was provided by Kirk Kleckner, an automotive warranty valuation expert, whom Plaintiffs retained to "independently value the Class Member extended warranty benefits made available from th[e] Settlement." *See* Declaration of Kirk Kleckner ("Kleckner Decl.").

This proposed resolution—reached after extensive pre-filing investigations, contentious litigation and discovery, and intensive settlement negotiations overseen by the Honorable Layn R. Phillips (Ret.)—provides comprehensive benefits that address the Settlement Class Members' interests in numerous, complementary ways. The compensation here also compares favorably to other diesel emissions cases, particularly because this settlement was secured without the benefit of a regulatory finding regarding Hino's alleged misconduct.

In this case, Settlement Class Counsel faced the challenges and risks of litigation alone and on a purely contingent basis. As compensation for the effort, time, and money invested to secure this outstanding settlement, Settlement Class Counsel seek reimbursement of $400,000 in costs, and $78,766,666.67 in fees—which represents less than 17.7%[3] of the Settlement's full value. *See, e.g.*, *Carter v. Forjas Taurus, S.A.*, No. 16-15277, 2017 WL 2813844, at *5 (11th Cir. June 29, 2017) (affirming consideration of warranty valuation in settlement and fees approval); Declaration of Brian Fitzpatrick T. Fitzpatrick ("Fitzpatrick Decl.") ¶¶ 12-13, 27. Such a fee award is "presumptively reasonable," *In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, 85 F.4th 1070, 1100 (11th Cir. 2023),[4] well below average awards in this Circuit, and easily justified on the facts of this case. *See* § III.C; Fitzpatrick Decl. ¶ 27.

Settlement Class Representatives respectfully ask the Court to certify the Settlement Class, grant final approval to the Settlement, and award $400,000 in reasonable costs and $78,766,666.67 in fees to Settlement Class Counsel for their work in securing this significant result.

---

[3] This percentage is reached by dividing $78,766,666.67 in attorneys' fees into a denominator of $445,500,000 in settlement value. The denominator includes the $237.5 million in cash compensation plus $208 million in quantifiable Extended Warranty benefits as measured by Plaintiffs' automotive warranty valuation expert. *See* Kleckner Decl. § 2(a); § 7(f)(ii)-(iii); Section III.C.1, below.

[4] Internal citations are omitted throughout unless otherwise indicated.

## II.    Background

The Court is familiar with the history of this litigation, much of which is detailed in Plaintiffs' preliminary approval briefing. *See* ECF 146 at 2-7. In the interest of efficiency, Plaintiffs incorporate that brief by reference and provide the following summary of key points.

### A.    The Settlement provides excellent benefits to Settlement Class Members.

As discussed above, the proposed Settlement provides substantial and valuable benefits to the Settlement Class. Direct cash payments out of the $237.5 million Settlement Cash Value are set at a floor of $1,500, but assuming the median national class action claims rate of approximately 10%,[5] each Settlement Class Truck with a valid claim would be allocated ***more than $15,000***.[6] Even with an extremely ambitious (and very rarely achieved) projected claims rate of 50%, each Settlement Class Truck would receive more than $3,000, which is comparable to settlements of similar diesel emissions cases that resolved later in their respective lifecycles (and on arguably stronger records), as discussed below.

Additionally, without the need to submit a settlement claim, all Settlement Class Trucks will automatically receive a robust and transferrable Extended Warranty for periods up to eight years from Settlement approval, eight years from the initial warranty expiration, or ten years from the date of first sale. *See* SA ¶¶ 4.2, 4.4, and Ex. B. Leading warranty valuation expert Kirk

---

[5] Fed. Trade Comm'n Staff Report, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019), available at (https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. (FTC's comprehensive study of class actions, identifying the mean and median claims rates of 5% and 10%, respectively).

[6] If more than one Settlement Class Member submits a valid Claim for the same truck, the original owner (who purchased new) will receive 60% of the funds for that truck, and the remaining 40% will be distributed evenly to or among the other valid claimants. The Settlement Administrator retains discretion to adjust the allocation if a Settlement Class Member owned or leased a Settlement Class Truck for less than six months. SA ¶ 4.1.2.

Kleckner values this Extended Warranty at more than $208,000,000. *See* Kleckner Decl., §§ 2(a), 7(f)(i)-(iii). Mr. Kleckner's valuation work is thorough, reliable, and routinely accepted by courts in large automotive class action settlements like this one. *See, e.g.*, *In re Takata Airbags Prods. Liab. Litig.*, No. 15-MD-2599 (S.D. Fla.), ECF 2162 (order granting motion for final approval of BMW settlement, supported by ECF 2033-2, declaration of Kirk Kleckner), ECF 2385, 2256-4 (same for Nissan settlement); ECF 3121 (order denying motion to exclude testimony of Kirk Kleckner on warranty valuation); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. 19-cv-2905-JAK-MRW (C.D. Cal.), ECF No. 843 (accepting Mr. Kleckner's warranty valuations).[7]

Finally, Plaintiffs negotiated a commitment from Hino that if a government-mandated or a government-recommended emissions system recall or repair campaign is issued for the Settlement Class Trucks any time in the next three years, the impacted trucks will automatically receive a transferable New Parts Warranty with five additional years of coverage for any parts repaired, replaced, or modified by that recall or repair. SA ¶¶ 4.3, 4.4.[8] This is a valuable prospective benefit to the Settlement Class that the Settlement secures *in addition* to the $445.5 million in quantified benefits described above.

---

[7] *See also In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.* ("*EcoDiesel*"), No. 17-MD-02777- EMC, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019); ECF 561 (order granting motion for final approval of settlement, supported by ECF 491-4, declaration of Kirk Kleckner on warranty valuation); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) (accepting Mr. Kleckner's warranty valuations); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10 ML 02151 JVS (FMOx), 2013 WL 12327929, at *9 n.10 (C.D. Cal. July 24, 2013) (finding Mr. Kleckner's warranty valuation to be "both reliable and relevant").

[8] Importantly, excluded from the Released Claims are Settlement Class Members' rights or ability to participate in any future buyback or repurchase of any Settlement Class Truck that any federal or state government entity recommends or orders Hino to buyback or repurchase post-Settlement for reasons relating to the Released Claims. SA ¶ 11.6.

2922631.8

Importantly, this Settlement is non-reversionary. If there are any funds remaining in the Settlement Cash Value after all valid claims are paid, the Settlement requires a second distribution to Settlement Class Members who submitted valid claims, unless it is economically infeasible to do so. Any modest amount remaining thereafter will be directed to relevant *cy pres* recipients, subject to Court approval. SA ¶ 4.6. This ensures that every dollar the Settlement secures will inure to the benefit of the Settlement Class and the interests advanced in this litigation.

**B.   The Settlement was secured after extensive litigation and discovery.**

The valuable Settlement benefits described above were not easily obtained, as evidenced by the intense, adversarial litigation between the parties before they reached settlement.

The consolidated litigation traces back to March 2022, when Hino issued a press release revealing that it had identified "past misconduct" comprising falsification of engine performance in its certification applications for certain engines sold in Japan. Plaintiffs and their experts undertook their own thorough investigation over the course of the next several months to assess whether and how Hino's misconduct in Japan might translate to their U.S. trucks. In those efforts, unlike other emissions cases, Plaintiffs did not have the benefit of a U.S. regulatory citation to provide a roadmap of Hino's U.S. misconduct, or any admission from Hino regarding the U.S. fleet. Plaintiffs' investigation culminated in a detailed Complaint filed in August 2022 alleging that Hino Japan and its U.S. subsidiaries, HMM and HMS, knowingly misrepresented and withheld information that deceived U.S. regulators, Plaintiffs, and the Settlement Class about the true emissions and related performance in the Settlement Class Trucks, causing Plaintiffs to suffer economic losses. *See* ECF 1. In the months and years that followed, Settlement Class Counsel devoted significant resources to the extensive investigation, litigation, and resolution of the complex issues and claims in this case.

As the docket reflects, the Parties litigated this case intensively. On November 7, 2022, the U.S. Hino entities (HMM and HMS) moved to dismiss the Complaint in a joint 40-page brief, raising potentially case-dispositive defenses such as Article III standing and federal preemption under the Clean Air Act. ECF 68. Plaintiffs researched and drafted a 40-page opposition to defend their claims (ECF 79), and HMM and HMS filed a reply (ECF 89). Then, on December 27, 2022, Hino Japan joined in the domestic Defendants' arguments and moved separately to dismiss on jurisdictional grounds (ECF 80). Plaintiffs prepared an opposition to support their jurisdictional theories (ECF 94), and Hino Japan filed a reply (ECF 97).[9] After the briefing completed, Hino continued to file supplemental authorities purportedly supporting dismissal (ECF 106, 124), and Plaintiffs worked quickly to distinguish them. ECF 110, 131. Hino's pleading challenges remain pending before the Court.

Amid all of this, on December 15, 2022, the U.S. Hino entities also moved to stay discovery during the pendency of their pleading challenges. ECF 73. This motion, if successful, would have effectively frozen the litigation for months or more. Plaintiffs strongly opposed these efforts and ultimately prevailed. *See* ECF 81 (opposition brief), 86 (Order denying stay motion). The Parties then waded through months of negotiations on comprehensive confidentiality and ESI protocols to govern the discovery to follow. ECF 95, 111.

Alongside these lengthy and complicated briefing efforts, the Parties also engaged in extensive document discovery. This included the production and review of approximately 750,000 pages of documents and ESI from Hino, many containing technical presentations and data that

---

[9] Plaintiffs originally brought claims against Toyota Motors Corporation ("Toyota"), the Japanese corporate grandparent of the U.S. Hino entities, and Toyota also moved to dismiss on personal jurisdiction grounds. ECF 78. After Plaintiffs further investigated Toyota's role in the design, development, and testing for the Settlement Class Trucks, and based on related discovery and information exchanged, Plaintiffs voluntarily dismissed Toyota without prejudice. ECF 98.

Hino provided to U.S. regulators in their investigations. Plaintiffs propounded requests for production and interrogatories to the domestic Hino entities, plus jurisdictional discovery to Hino Japan and Toyota. Plaintiffs further sought and obtained relevant materials from third party DWS Fleet Management and the California Air Resources Board ("CARB") totaling an additional 9,000 pages. Settlement Class Representatives also searched for and provided documents and ESI responsive to Hino's numerous production requests, totaling more than a thousand pages, and assisted Settlement Class Counsel to consult their records, draft, and approve detailed responses to Hino's 35+ Interrogatories, later supplemented on two occasions at Hino's request.

The Parties met and conferred extensively regarding this discovery and a variety of other topics, including Hino's ESI disclosures. These discussions culminated in two multi-hour hearings before Magistrate Judge Torres covering a range of disputed issues, many of which the Court decided in Plaintiffs' favor (including, for example, the scope of relevance and the production of regulatory documents Hino had previously withheld). *See*, *e.g.*, ECF 107, 113, 117, 125 (Plaintiffs' agendas and supporting papers for discovery conferences).

As the litigation progressed, the Parties also pursued a simultaneous resolution track. Pursuant to this district's local rules and this Court's order setting a deadline for mediation (ECF 87), the Parties agreed on the Honorable Layn R. Phillips (Ret.) as mediator and scheduled mediation for July 25, 2023. The Parties then prepared extensively for this formal mediation session, including by exchanging multiple rounds of mediation briefing and communicating regularly with Judge Phillips. Those efforts produced a tentative agreement that launched several additional months of robust confirmatory discovery and ultimately resulted in the Settlement Agreement now before the Court.

### III.   <u>Argument</u>

**A.    The Court should grant final approval of the Settlement because it is a fair, reasonable, and adequate resolution of this case.**

A "court may approve [a settlement agreement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2)). Along with the criteria from Rule 23(e), courts in this Circuit also look to the six *Bennett* factors, which overlap with the federal rule.[10] In this process, the Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986. "Public policy strongly favors the pretrial settlement of class action lawsuits," *In re U.S. Oil & Gas Litigation*, 967 F.2d 489, 493 (11th Cir. 1992), which "have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005).

At the preliminary approval phase, the Court considered the proposed agreement and concluded that: (1) "the Settlement is sufficiently fair, reasonable, and adequate as to the Settlement Class Members under the relevant considerations to warrant sending notice of the Settlement to the Settlement Class"; (2) it is "the product of arm's length negotiations by the Parties through an experienced mediator"; and (3) it "is sufficiently fair, reasonable, and adequate" to warrant preliminary approval. ECF 148 ("Prelim. Order") at 2-3. These conclusions apply equally now. Because the Settlement satisfies all relevant criteria, the Court should grant final approval.

---

[10] The *Bennett* factors are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *3-4 (S.D. Fla. May 24, 2019) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

1.     **Rule 23(e)(2)(A): Settlement Class Representatives and Settlement Class Counsel zealously represented the Settlement Class.**

Settlement Class Counsel and the Settlement Class Representatives fought hard to protect the interests of the Settlement Class. These efforts find no better evidence than the outstanding result they achieved in a Settlement worth over $445.5 million.

As the outcome reflects, Settlement Class Counsel showed dedication to investigating, prosecuting, and resolving this action over the course of nearly two years. *See* Fed. R. Civ. P. 23(e)(2)(A). Settlement Class Counsel undertook significant efforts to pursue and refine the Class's claims. *See* § II.B. They doggedly pursued discovery in dozens of hours of meet and confers about Hino's responses to technical, detailed document requests, and strategically (and successfully) sought the Court's intervention on multiple key issues. Settlement Class Counsel defended against two separate pleading challenges (from the foreign and domestic entities), a process that fleshed out the strengths and vulnerabilities of Plaintiffs' claims. Even after the initial mediation session, Settlement Class Counsel continued their discovery efforts, including through examination of key Hino personnel in Tokyo, Japan. This record meant that Settlement Class Counsel were well-positioned to evaluate the case and to negotiate a fair and reasonable Settlement. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel obtained "thousands" of pages of documentary discovery). They have done so.

The Settlement Class Representatives are also actively engaged. Each preserved and collected documents and electronic information related to their claims, worked with counsel to produce them and to prepare responses to detailed Interrogatories, actively monitored the litigation, and worked with counsel to evaluate the terms of the proposed Settlement Agreement.

- 9 -

Settlement Class Counsel Decl. ¶ 23. Each Representative has also expressed their continued willingness to protect the Settlement Class until the Settlement is approved and its administration completed. *Id*. Their interests are aligned and coextensive with those of absent Settlement Class Members, as is the relief they stand to receive. *Id*. ¶ 22. The Settlement Class was and remains well represented.

### 2. Rule 23(e)(2)(B): The Settlement was reached after extensive, complex litigation as well as informed, arm's-length negotiations (*Bennett* factors four and six).[11]

As the Court observed at the preliminary approval stage, the Settlement "is the product of arm's length negotiations by the Parties through an experienced mediator, former United States District Judge Layn R. Phillips (Ret.) and comes after adequate investigation of the facts and legal issues." Prelim. Order at 3. The arm's length discussions overseen by Judge Phillips and the developed factual record unquestionably support approval here. *See* Rule 23(e)(2)(B); *see also Gonzalez*, 2019 WL 2249941, at *4 (settlement reached after "arm's length" negotiations before a retired U.S. District Court Judge found to be non-collusive).[12]

Settlement negotiations continued after the parties reached an agreement in principle at the mediation. This reflects the technical nature of the negotiations and the parties' efforts to support

---

[11] *Bennett* factors four and six are: (4) the complexity, expense and duration of litigation and (6) the stage of proceedings at which the settlement was achieved. *Gonzalez*, 2019 WL 2249941, at *3-4.

[12] *See also* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's Note to 2018 amendment ("[T]he involvement of a neutral or court-affiliated mediator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests."); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630-31 (11th Cir. 2015) (oversight of an experienced mediator supported approval of class action settlement); *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *1 (S.D. Fla. July 13, 2021) (approval where attorneys "proficiently identified the strengths and weaknesses of the issues . . . prior to reaching a settlement through a mediation process overseen by an experienced and well-respected mediator"); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (similar).

them through a parallel investigatory process and information exchanges in confirmatory discovery. This included production of an important set of materials from Hino Japan, which had not previously engaged in discovery due to pending jurisdictional challenges. Settlement Class Counsel Decl. ¶ 14. As part of this process, Settlement Class Counsel traveled to Tokyo, Japan—where the Settlement Class Trucks' engines were developed and tested—to meet with and question key Hino Japan personnel and representatives directly about the alleged misconduct and Hino's internal investigations. *Id.* These investigatory efforts supplemented the already significant record of more than 750,000 pages of documents and ESI produced from Hino in litigation.

This robust exchange of information and documents confirms that the Parties were well-informed and reached the Settlement in a procedurally fair manner. William B. Rubenstein et al., 4 *Newberg on Class Actions* § 13:49 (5th ed. 2012); *see also Jairam v. Colourpop Cosms., LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *6 (S.D. Fla. Oct. 1, 2020) ("formal discovery with Defendant and non-parties" and plaintiffs showed that the parties "were well-positioned to confidently evaluate the strengths and weaknesses of the claims"); *Kukorinis v. Walmart, Inc.*, No. 19-20592-CV, 2021 WL 8892890, at *7 (S.D. Fla. Sept. 20, 2021) (the parties fully briefed a dispositive motion to dismiss on the merits, engaged in informal discovery, and exchanged additional information during the mediation process, which provided class counsel sufficient information to analyze the strengths and weaknesses of the case).[13]

---

[13] *See also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *2 (S.D. Fla. Oct. 24, 2014) (no evidence of collusion where settlement was reached "after the exchange and production of considerable discovery"); *Fruitstone v. Spartan Race, Inc.*, No. 20-cv-20836, 2021 WL 2012362, at *8 (S.D. Fla. May 20, 2021) (finding no fraud or collusion where negotiations were "informed by extensive discovery obtained by Class Counsel"); *Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 WL 2012366, at *5 (S.D. Fla. May 20, 2021) (investigation and review of information provided by defendants prepared counsel for well-informed settlement negotiations); *Gevaerts v. TD Bank, N.A.*, No. 1:14-cv-20744-RLR, 2015 WL

Finally, further demonstrating the lack of collusion, the Settlement is non-reversionary, meaning that *none* of the value obtained for the Settlement Class will revert to Hino if unclaimed.

### 3. Rule 23(e)(2)(C): The substantial relief from the Settlement is fair, reasonable, and adequate (*Bennett* factors two and three).[14]

This Court already found that "the relief provided to the Settlement Class is adequate taking into account, *inter alia*, the costs, risks, and delay of trial and appeal and the proposed method of distributing compensation to the Settlement Class." Prelim. Order at 3. Nothing has changed to alter that conclusion. This non-reversionary Settlement remains an excellent outcome for the Settlement Class, especially taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan and claims program; and (iii) the fair terms of the anticipated requested award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C).

As Plaintiffs explained in their preliminary approval motion, the Settlement benefits are likely to match, and even exceed, compensation in settlements of similar diesel emissions cases that resolved later in their respective lifecycles (and on arguably stronger records). *See*, *e.g.*, *EcoDiesel*, 2019 WL 2554232, at *1 (final settlement approval providing a maximum of $3,075 per vehicle *after* surviving motions to dismiss and after the U.S. regulators issued a formal notice of violation); *In re Mercedes-Benz Emissions Litig.*, No. 2:16-cv-881 (KM) (ESK), 2021 WL 7833193, at *3 (D.N.J. Aug. 2, 2021) (settled with the manufacturer for $3,290 per vehicle *after* surviving motions to dismiss). Here, unlike in *EcoDiesel* and *Mercedes*, the U.S. regulators have not weighed in, and Defendants' multiple motions to dismiss remain unresolved. This provides

---

6751061, at *7 (S.D. Fla. Nov. 5, 2015) (similar); *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (similar).

[14] *Bennett* factors two and three are: (2) the range of possible recovery and (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable. *Gonzalez*, 2019 WL 2249941, at *3-4.

strong support for the result here. *See Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) ("[A] comparison of settlements in similar cases is relevant to whether a settlement is fair, adequate and reasonable.").

Apart from the recovery in similar settlements, the result here also compares favorably to Settlement Class Members' potential damages estimates. Although the parties had not progressed to the expert report stage in this case, in *EcoDiesel*, the plaintiffs presented expert testimony on an overpayment "premium" theory that measured the benefit-of-the-bargain losses incurred when plaintiffs paid for over-polluting diesel vehicles. *See* Decl. of Colin Weir, *EcoDiesel*, ECF 327-4, ¶¶ 47-51. The quantified value was about $4,500 per vehicle. *Id.*[15]

These damages from *EcoDiesel* inform the scope of likely damages in this case, too, given the clear similarities in the defendants' alleged misconduct and the resulting injuries to Settlement Class Members.[16] The individual Settlement recoveries here are therefore likely to be a significant percentage of (if not 100%) of Plaintiffs' potential trial recovery, as approximated by the *EcoDiesel* analysis.[17] This strongly supports the proposed resolution. Indeed, a negotiated resolution can be fair, reasonable, and adequate even where it recovers a much lower proportion of available

---

[15] Experts in *EcoDiesel* also proposed a separate survey-based conjoint study for damages calculations, and performed an illustrative survey to demonstrate that methodology at the class certification stage. Plaintiffs' experts' damages analysis here would also likely have involved a conjoint survey at a later stage, which would be tailored to the medium and heavy duty truck sector, and the distinct facts of this case.

[16] Plaintiffs' damages are the difference in value between the Settlement Class Trucks they reasonably expected and those they actually received. A precise calculation of that difference would ultimately require expert testimony at a later stage of the litigation. At this stage, based on Plaintiffs' Counsel's experience in *EcoDiesel* and other similar automotive cases, the *EcoDiesel* damages amounts serve as apt comparators for potential recovery here, even if not identical.

[17] As explained above, a rare 50% claims rate would yield per-truck compensation of $3,000, and increase up to $15,000 (multiples of the recovery in *EcoDiesel*) at a more typical 10% participation rate.

damages. *See* Fitzpatrick Decl. ¶ 22 (considering the *EcoDiesel* damages model and concluding that even based on a conservative, cash-only valuation without considering the warranty, the Settlement here would still represent an "excellent recovery" of at least "half of the class's possible damages"); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-cv-20880-UU, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (describing as "excellent" and an "outstanding result" a recovery of 5.5% of the class's maximum damages and 10% of the class's most likely damages).

> ### a. The Settlement mitigates the risks, expenses, and delays the Settlement Class would face in pressing through to trial (Rule 23(e)(2)(C)(i) and *Bennett* factor one).[18]

As noted, the Settlement benefits described above are even more impressive given the inherent uncertainties of continuing this litigation. *See Gonzalez*, 2019 WL 2249941, at *4 (*Bennett* factor one, likelihood of success). Numerous, significant hurdles remained.

For example, while Plaintiffs' Complaint states cognizable claims, Plaintiffs are mindful of the various, potentially case-dispositive defenses raised in Hino's motion to dismiss, including challenges over whether the Clean Air Act preempts all of Plaintiffs' claims[19] and claims that this Court does not have personal jurisdiction over Hino Japan. Plaintiffs submit that the better-

---

[18] *Bennett* factor one considers the "likelihood of success at trial." *Gonzalez*, 2019 WL 2249941, at *3-4.

[19] Various federal courts outside of this District have adopted similar preemption arguments and dismissed the plaintiffs' claims. *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 866 (6th Cir. 2023); *In re Duramax Diesel Litig.*, No. 1:17-cv-11661, 2023 WL 4493595, at *8 (E.D. Mich. July 12, 2023); *Counts v. Gen. Motors, LLC*, No. 1:16-cv-12541, 2023 WL 4494336, at *8 (E.D. Mich. July 12, 2023); *Hurst v. BMW of N. Am. LLC*, No. 22-3928 (SDW)(AME), 2023 WL 4760442, at *7 (D.N.J. July 26, 2023).

- 14 -

reasoned authority rejects these arguments, including for the reasons articulated in Plaintiffs' opposition briefs (*see* ECF 79 at 12-21; ECF 94 at 2-14). Nonetheless, Hino's arguments presented material risk. Even if Plaintiffs' claims survived the pleading stage, moreover, Plaintiffs faced several years more of litigation and additional procedural hurdles (class certification, summary judgment, *Daubert*, etc.), any of which could have significantly weakened or even ended Plaintiffs' case. Even if they passed through that gauntlet, Plaintiffs would then face the uncertainties of trial, in which "the range of possibility spans from a finding of non-liability to a varying range of monetary . . . relief." *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014).

In other words, in reaching this Settlement, Plaintiffs avoided years of additional, costly, and risky litigation in exchange for immediate and significant cash payments and warranties. This principled compromise inured to the clear benefit of the Settlement Class, and this factor strongly favors final approval. Fed. R. Civ. P. 23(e)(2)(C)(i); *Gonzalez*, 2019 WL 2249941, at *5 (settlement approval supported in part by the "potential for expensive and time-consuming litigation absent a settlement"); *Saccoccio*, 297 F.R.D. at 694 (approving class action settlement where "[t]he parties have already expended significant energy and money litigating this case and propounding discovery, and, absent settlement, would have had to expend significant resources in litigating a protracted trial and appeal"); *Lipuma*, 406 F. Supp. 2d at 1323 ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

> **b.      The Settlement distributes compensation through a streamlined and flexible claims process (Rule 23(e)(2)(C)(ii)).**

When it comes to distribution, it bears repeating that the Settlement is ***non-reversionary***, meaning that ***no unused funds will revert or be returned to Hino***. This is the most effective way to ensure that Settlement Cash Benefits will go to the Settlement Class.

The Settlement Claims process builds from successes in other automotive settlements and is designed to be straightforward, efficient, and user-friendly. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class Members need only submit a short claim form online or by mail (at their choosing), and may be asked to submit basic supporting documentation, *e.g.*, proof of ownership or lease, only where such information is necessary to verify the claim. Settlement Class Members who submit a valid claim will be paid after the Effective Date and will be able to select streamlined e-payments if desired. Moreover, all eligible Settlement Class Trucks will automatically receive the robust Extended Warranty protections without the need for any claim at all. The effort required and safeguards incorporated in this process are proportional to the compensation available and necessary to preserve the integrity of the Claims Program.

> ### c. Settlement Class Counsel seek reasonable attorneys' fees and expenses (Rule 23(e)(2)(C)(ii)).

Settlement Class Counsel's reasonable fee request is detailed below (§ III.C), but in this context it is worth reiterating that "terms of . . . [the] proposed award of attorneys' fees" are fair and reasonable, particularly in light of the substantial recovery for the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Prelim. Order at 3 ("Settlement Class Counsel's proposed request for attorneys' fees . . . appears reasonable."). Further support comes from the Declaration of Professor Brian T. Fitzpatrick, a law professor at Vanderbilt University who is one of the nation's leading experts on attorneys' fees in class action settlements.

> ### 4. Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably relative to each other.

The Settlement uses transparent and objective criteria to equitably apportion Settlement Class Member payments and ensures that claims administration is feasible, cost effective, and streamlined for Settlement Class Members. *See* Fed. R. Civ. P. 23(e)(2)(D).

Cash payments for all Settlement Class Trucks with valid claims will be divided evenly (per capita). SA ¶ 4.1. If more than one valid claim is received for the same Settlement Class Truck, the original owner who purchased new will receive 60% of the allocated funds, and the 40% remainder will be distributed evenly to or among the other valid claimant(s). This allocation equitably accounts for the trucks' greater value at their original sale, such that the damages incurred as a relative percentage of vehicle value are also highest for new purchasers. *See In re Blue Cross*, 85 F.4th at 1093 ("[T]he text of the amended rule requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally."). It also reflects the reality that original purchasers face fewer legal hurdles and arguably present stronger claims for relief. *See id.* at 1093-94 (affirming approval of allocation formula that took into account the "comparative strengths of each class's … claims"); *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-md-02672-CRB, 2022 WL 17730381, at *8 (N.D. Cal. Nov. 9, 2022) (concluding allocation formula was equitable where differing payment amounts "roughly correspond[ed] to the strength of [class members'] claims and the likelihood of damages at trial").

### 5. Settlement Class Members are engaged and showing support (*Bennett* factor five).

Following preliminary approval, the Parties worked with respected class notice provider and settlement administrator JND to roll out the Court-approved Notice Program, which Plaintiffs' preliminary approval motion described at length. *See* ECF 146 at 30-32. While the Notice Program remains underway, it has been a success thus far and will reach "virtually all Class Members." *See* Declaration of Jennifer Keough ("Keough Decl.") ¶ 37. Plaintiffs will provide the Court with an update on the Notice Plan and the reaction of the Settlement Class in their Reply Memoranda, which they will file in advance of the April 1, 2024, Fairness hearing. *See* Prelim. Order at 12.

- 17 -

In the meantime, Settlement Class Members initial reactions to the Settlement have been positive. With the claims program just opening, Class Members have already submitted nearly 2,500 claims, and the Settlement Administrator is in the process of assisting Settlement Class Members with large vehicle fleets to submit claims for many thousands of additional Settlement Class Trucks. Keough Decl. ¶ 35. In contrast, no Settlement Class Member has yet objected or opted out. *Id.* ¶¶ 32, 34. Together, these are encouraging signs of the Settlement Class's early engagement that Plaintiffs anticipate will yield substantial participation. Although it is early going, this "important factor" also supports final approval. *Saccoccio*, 297 F.R.D. at 694.

*       *       *

The Settlement is a fair, adequate, and reasonable resolution of the Settlement Class Members' claims, and the Court should grant final approval.

**B.      The Settlement Class satisfies all requirements of Rule 23 and should be certified.**

After considering the relevant Rule 23(a) and 23(b)(3) requirements at the preliminary approval phase, the Court concluded "the Settlement Class, as defined above, meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3)." Prelim. Order at 3. This remains true, and the Settlement Class should be finally certified for settlement purposes.

**1.      Rule 23(a)(1): Numerosity is satisfied.**

The Settlement Class, which consists of owners and lessees of approximately 104,000 Settlement Class Trucks throughout the United States, unquestionably meets Rule 23(a)(1)'s numerosity requirement. *See* Prelim. Order at 4 (finding "the Settlement Class Members are sufficiently numerous"); *Kilgo v. Bowman Transp.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity

- 18 -

satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). Numerosity remains satisfied.

### 2. Rule 23(a)(2): Commonality is satisfied.

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Courts routinely find commonality where, as here, the class claims arise from a defendant's uniform course of fraudulent conduct. *See, e.g.*, *EcoDiesel*, 2019 WL 536661, at *6; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig. ("VW Clean Diesel")*, No. 2672 CRB (JSC), 2016 WL 4010049, at *10 (N.D. Cal. July 29, 2016) ("Without class certification, individual Class Members would be forced to separately litigate the same issues of law and fact which arise from Volkswagen's use of the [emissions cheating device] and Volkswagen's alleged common course of conduct."); *In re Takata Airbag Prods. Liab. Litig.*, MDL No. 2599, 2017 WL 11680208, at *3 (S.D. Fla. Sept. 19, 2017); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673-74 (S.D. Fla. 2011).

Like those cases, the Settlement Class's claims here are rooted in common questions that center on Hino's alleged fraud about emissions tests and performance in the Settlement Class Trucks, and related representations to regulators and consumers, which are common to all Settlement Class Members. *See VW Clean Diesel*, 2016 WL 4010049, at *10; *EcoDiesel*, 2019 WL 536661, at *6. These common questions will, in turn, generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Conversely, "[w]ithout class certification, individual Class Members would be forced to separately litigate the same issues of law and fact which arise from Volkswagen's use of the [emissions cheating device] and Volkswagen's alleged common course of

conduct." *VW Clean Diesel,* 2016 WL 4010049, at *10. Commonality remains satisfied. *See* Prelim. Order at 4.

### 3. Rule 23(a)(3): Typicality is satisfied.

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are coextensive with those of the absent Settlement Class Members, and Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs and absent Settlement Class Members were subjected to the same misconduct by Hino, claim to have suffered the same injuries in paying more for their Settlement Class Trucks than they otherwise would have, and will equally benefit from the relief provided by the Settlement. *See* Prelim. Order at 4 (finding "proposed Settlement Class Representatives' claims are typical of those of the Settlement Class Members"); *see also See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### 4. Rule 23(a)(4): Adequacy is satisfied.

Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry looks to: (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The answers remain no and yes, respectively. *See* Prelim. Order at 4 (finding adequacy satisfied for both the Settlement Class Representatives and Settlement Class Counsel at preliminary approval).

### 5.     Rule 23(b)(3): Predominance requirements are met.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (predominance means the impact of common issues is "*more substantial than the impact of individualized issues* in resolving the claim or claims of each class member"). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods*, 577 U.S. at 453. At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012), *reversed on other grounds*, 569 U.S. 1015 (2013).

Common questions predominate here because they substantially outweigh issues individual to each Settlement Class Member. Hino's common course of alleged conduct—misconduct in diesel engine emissions tests and resulting representations to regulators and consumers—is central to Plaintiffs' claims. Common, unifying questions include, for example: Hino's practices and procedures for emissions tests and reporting results; what Hino knew about misconduct in its emissions tests, and when it learned that information; whether representations about the Settlement Class Trucks' emissions performance were misleading to reasonable customers; and whether Hino's actions were fraudulent. *VW Clean Diesel*, 2016 WL 4010049, at *12. In sum, Hino allegedly "perpetrated the same fraud in the same manner against all Class Members." *Id.* Predominance remains satisfied. *See* Prelim. Order at 4.

- 21 -

6.      **Rule 23(b)(3): Class treatment is superior to other available methods for the resolution of this case.**

Class treatment here is far superior to the litigation of tens of thousands of individual cases. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998); *see also Wolin v. Jaguar Land Rover N.Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010) ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication."). The maximum damages sought by each Settlement Class Member (in the thousands of dollars), while significant to individuals, are relatively small in comparison to the substantial cost of prosecuting each one's individual claims, especially given the complex and technical nature of the claims at issue.

Class resolution is also superior from an efficiency and resource perspective. Indeed, "[i]f Class Members were to bring individual lawsuits against [Defendants], each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence." *VW Clean Diesel*, 2016 WL 4010049, at *12. With a Settlement Class associated with over 104,000 Settlement Class Trucks, "there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results." *Id.* "Thus, classwide resolution of their claims is clearly favored over other means of adjudication, and the proposed Settlement resolves Class Members' claims at once." *Id.* Superiority is met here, and Rule 23(e)(1)(B)(ii) is satisfied.

*       *       *

The Settlement Class meets all relevant requirements of Rule 23(a) and (b). Plaintiffs thus request that the Court confirm the certification of the Settlement Class and the appointment of the Settlement Class Representatives and Settlement Class Counsel.

**C.     Settlement Class Counsel's requested fee is fair, reasonable and appropriate.**

As discussed at length in this brief, this is a strong settlement. Each Settlement Class Truck with a valid claim will receive thousands of dollars in compensation as well as robust extended warranty protections that, if past cases are any guide, are every bit as valuable to Settlement Class Members as the direct cash payments. In the aggregate, the cash benefit totals $237.5 million, and the extended warranty is valued by Mr. Kleckner at over $208 million, which brings the total value of the Settlement to $445,500,000.00. For their work in securing this exceptional result, Settlement Class Counsel seek $78,716,666.67 in fees. The resulting fee percentage (17.67%) is well below average, "presumptively reasonable" under Eleventh Circuit precedent, and easily justified under the facts of this case. The same conclusion follows under even the most conservative valuation of the Settlement. "No matter how you slice it," Settlement Class Counsel's requested fee is fair, reasonable, and appropriate. Fitzpatrick Decl. ¶ 21

**1.     Properly calculated, the requested fee is "presumptively reasonable."**

When a class settlement establishes a calculable monetary benefit, or common fund, attorneys' fees should be awarded based on a percentage of the benefit obtained. *See In re Blue Cross*, 85 F.4th at 1100 ("In a common fund settlement, attorneys' fees 'shall be based upon a reasonable percentage of the fund established for the benefit of the class.'") (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). In calculating the total value of the common fund, courts consider both the cash compensation and, if reasonably quantified, the value of non-monetary benefits. *See, e.g.*, *Carter*, 2017 WL 2813844, at *5 (affirming district court's reliance on the value of a class settlement's enhanced warranty, as estimated by a valuation

- 23 -

expert, to award class counsel attorneys' fees, and recognizing that the enhanced warranty "is itself

a significant tangible benefit"); *Ferron*, 2021 WL 2940240, at \*19, \*22 ("In determining the value

of the settlement fund, courts consider the value of any nonmonetary relief in addition to the

monetary relief.").[20]

Both monetary and quantifiable non-monetary benefits are relevant here. As noted, in

addition to the cash compensation, the Settlement secures significant extended warranty

protections for all Settlement Class Trucks. Those benefits were carefully scrutinized by Kirk

Kleckner, a seasoned expert in the automotive industry whose extended warranty valuations have

been relied upon by numerous courts in similar litigation. Kleckner Decl. ¶ 3(d) (listing relevant

cases) & Ex. A (C.V.). Applying his experience to this case, Mr. Kleckner "determined that the

value of the Settlement's Warranty Extension exceeds $208,000,000." *Id.* ¶ 2(a). Notably, this

analysis does *not* include any valuation of certain covered diagnostic tests, replacement parts (*e.g.*,

the OBD sensors), or the New Parts Warranty that would automatically take effect in the event of

an emissions-related recall—meaning that Mr. Kleckner's evaluation is, if anything, a conservative

---

[20] *See also Poertner*, 618 F. App'x at 629-30 (rejecting objector's argument that overlooked "substantial nonmonetary benefit" and therefore constituted a "flawed valuation of the settlement"); *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at \*14 (S.D. Fla. Feb. 3, 2016) (measuring attorneys' fees request against total settlement value including injunctive relief); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at \*13 (S.D. Fla. Aug. 5, 2013) ("[C]ourts often include the value of [non-monetary] relief in the common fund and award class counsel a percentage of the total fund.") (citing *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)); *Lipuma v. Am. Express Co.*, No. 04-20314-CIV, 2007 WL 9701671, at \*5 (S.D. Fla. Sept. 14, 2007) ("[W]hen determining the total value of a class action settlement for purposes of calculating the attorney's fee award, courts usually consider both the compensatory relief and the economic value of any [non-monetary] relief obtained for the class."); *Perez v. Asurion Corp.*, No. 06-20734-CIV, 2007 WL 2591180, at \*4 (S.D. Fla. Aug. 8, 2007) (same); Am. Law Inst., *Principles of the Law of Aggregate Litigation* § 3.13(b) (2010) ("[A] percentage of the fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.").

quantification of the Settlement's non-monetary benefits. *Id.* ¶ 2(b)-(c); S.A. § 4.3. Thus, for the purpose of evaluating Settlement Class Counsel's fee percentage, the value of the Settlement is at least $445,500,000.00 ($237.5 million cash + $208 million Extended Warranty). Of that, Settlement Class Counsel request $78,716,666.67.

This request is reasonable under any metric. It is just 17.67% of the combined value of the Settlement—far below the mean and median percentages awarded in this Circuit. *See, e.g.*, Fitzpatrick Decl. ¶ 19 (The "average and median awards by district courts in the Eleventh Circuit using the percentage method were 28.1% and 30%, respectively."); *id.* (noting that another well-respected empirical study found a "mean and median of 30% and 33% in the Eleventh Circuit since 2009"). Indeed, just last year, the Eleventh Circuit reiterated that "[i]f a fee award falls between 20 and 25 percent, it is ***presumptively reasonable***," even for a settlement worth billions. *In re Blue Cross*, 85 F.4th at 1100 (emphasis added) (affirming district court's fee award of approximately $626,649,000—or 23.47% of $2.67 billion common fund).[21] At 17.67%, the presumption is even stronger, and nothing in this case rebuts it. The Settlement followed vigorous litigation, resulted from arm's-length negotiations with an experienced mediator, and, most

---

[21] As Professor Fitzpatrick explains, while some courts in other circuits award lower percentages of bigger recoveries, there is "no evidence" that such a trend has taken hold in the Eleventh Circuit. Fitzpatrick Decl. ¶ 21. "To the contrary," in this Circuit, "25% is supposed to be the 'benchmark' in all cases," including, as *Blue Cross Blue Shield* instructs, in cases worth billions. *Id.* Even in other circuits, attorneys' fee percentages at or near one-third are often approved even for settlements, like this one, worth hundred(s) of millions of dollars or more. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) (31.33% attorneys' fee award in a $1 billion+ settlement); *In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (awarding attorneys' fees of one-third of $974 million settlement); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018) (awarding attorneys' fees of one-third of a $1.5B settlement and collecting authority on "similar fees in megafund cases"); *In re Vitamins Antitrust Litig.*, No. 99-197(TFH), 2001 WL 34312839, at *9 (D.D.C. July 16, 2001) (33.7% awarded of a $365 million settlement).

importantly, provides an excellent outcome for the Settlement Class. This can and should end the inquiry. *See id.* (requiring analysis of the *Johnson* factors only for fee requests exceeding 25%).

> **2.     Even under a more conservative analysis, the requested fee is commonplace and justified by the facts of this case.**

Even if the court were to disregard the Extended Warranty valuation (which it should not do), counsel's request would still be fair and well justified under the facts of this case. Measured solely against the cash component, the fees are still only about 33%, which—depending on the dataset—is right at, or only slightly above, the median award in this Circuit. Fitzpatrick Decl. ¶ 19. Thus, as this Court has previously observed, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Gonzalez*, 2019 WL 2249941, at *6. Indeed, it is a "customary fee for class actions" in this Circuit. *Belin v. Health Ins. Innovations, Inc.*, No. 19-CV-61430, 2022 WL 1126006, at *6 (S.D. Fla. Mar. 10, 2022); *see also e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming district court fee award of 33 1/3%).[22] This percentage is particularly reasonable in this case given the very significant warranty protections that—if not quantified—at least serve as a "relevant circumstance," or plus factor, that justifies an above-average award. *See, e.g.*, *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *10 (S.D. Fla. Nov. 20, 2017)

---

[22] *See also Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782-Civ, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (finding 35% fee award reasonable, noting "Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund"); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012), report and recommendation adopted, No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (collecting cases and concluding "[t]he average percentage award in the Eleventh Circuit" is "roughly one-third"); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (one-third is a "benchmark" for attorneys' fees in the Eleventh Circuit); *In re Checking Account Overdraft Litig.*, No. 1:10-CV-22190-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (approving fee award of 35% of fund plus expenses).

(awarding 33.4% in fees where "plaintiff submitted no evidence regarding an estimated value" of non-monetary relief) (quoting *Staton*, 327 F.3d at 974)).

That is why Professor Fitzpatrick opined that "it does not matter whether the extended warranties secured by this settlement are included in the settlement valuation or not: if they are included, class counsel is seeking a below-benchmark fee percentage that is easy to justify; if they are not included, class counsel should be awarded an above-benchmark fee percentage to compensate them for the significant non-monetary relief." Fitzpatrick Decl. ¶ 26. Either way, Settlement Class Counsel's request is reasonable and should be approved.

### 3. The relevant *Johnson* factors confirm the requested fees are reasonable.

Because Settlement Class Counsel's request falls below the range of presumptive reasonableness in this Circuit, the Court need not analyze the twelve *Johnson* factors.[23] *In re Blue Cross*, 85 F.4th at 1100 (courts apply the *Johnson* factors for fee requests that *exceed* 25% of the settlement value). Nevertheless, should the Court choose to consider them, each of the relevant factors demonstrates that what is "presumed" reasonable is actually so on the record here.

---

[23] The twelve factors are: "(1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because [they] accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242-43 (11th Cir. 2011) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (11th Cir. 2011)). Plaintiffs address all but factors 7 and 11 here, as those two factors are not pertinent.

> a.   **Settlement Class Counsel invested substantial time and labor (factor 1) to secure an outstanding result for the Settlement Class (factor 8).**

Settlement Class Counsel began to investigate the alleged emissions misconduct in the Settlement Class Trucks in March 2022. Settlement Class Counsel Decl. ¶ 5. From that point on, they devoted whatever resources were necessary to develop and successfully prosecute Plaintiffs' claims. In all, they spent many thousands of hours throughout fifteen focused months of litigation, and nearly two years with the time to finalize and obtain approval for the Settlement. This was a tremendous effort on multiple fronts, and Settlement Class Counsel staffed the case appropriately to keep the pressure on. Significant time was spent, for example, to:

a.   conduct a thorough pre-filing investigation that culminated in a detailed complaint with technical allegations of emissions misconduct and involvement from each of the defendant Hino entities (ECF 1);

b.   protect the Complaint from dual pleading challenges from the U.S. Hino entities and Hino Japan (ECF 68, 79, 80, 89, 94, 97, 124, 131);

c.   defeat Hino's efforts to stay discovery and hinder Plaintiffs' investigation (ECF 73, 81, 86);

d.   serve 67 document requests to the U.S. Hino defendants, plus sets of jurisdictional discovery to the Japanese Hino and Toyota entities (Settlement Class Counsel Decl. ¶ 7);

e.   draft numerous discovery dispute letters on key issues, precipitating dozens of hours of video conferences on Hino's discovery responses (*Id.* ¶ 8);

f.   present on discovery impasses in two multi-hour hearings before Magistrate Judge Torres, many of which the Court decided in Plaintiffs' favor (ECF 107, 113, 117, 125);

g.   analyze documents and ESI produced from U.S. Hino entities, including over 750,000 pages of documents plus substantial additional materials produced from Hino Japan in confirmatory discovery (Class Counsel Decl. ¶ 9-10);

h.   subpoena more than 9,000 pages of relevant documents from third parties and regulators (*Id.* ¶ 9);

i.   interview Hino Japan personnel and representatives about Hino's alleged misconduct and investigations in Tokyo, Japan, where much of the alleged misconduct occurred (*Id.* ¶ 14);

- 28 -

j.   advise named Plaintiffs in preparing responses to Hino's 35+ interrogatories and producing more than a thousand pages of documents in named Plaintiff discovery (*Id.* ¶ 11); and

k.   negotiate a complex resolution that provides significant and complementary relief for all Settlement Class Members (*Id.* ¶¶ 13-15).

By any measure, these and other tasks required a substantial resource investment. Settlement Class Counsel's unwavering commitment to provide the time and labor necessary to advance this litigation weighs in favor of the fee request. *See Jairam*, 2020 WL 5848620, at *8 (time and labor were "extensive" and supported fee award where counsel litigated for approximately one year and engaged in formal and third party discovery); *see also Taylor v. Serv. Corp. Int'l*, No. 20-CV-60709-RAR, 2023 WL 2346295, at *7 (S.D. Fla. Mar. 3, 2023) (fees awarded for "considerable time and effort" spent investigating "both before and after the initiation" of the case, and reviewing "an extensive amount of discovery"); *In re Checking*, 2020 WL 4586398, at *18-19 (finding that "considerable" time and labor spent and "excellent results" supported requested fees, further analysis of lodestar was "unnecessary" in light of "the inefficiencies that it creates").

The net result of Settlement Class Counsel's time and labor—over ***$445.5 million dollars*** in benefits obtained for the Settlement Class, plus valuable commitments to further warranty coverage in the event of a future recall—should speak for itself. Likewise at the individual level, Settlement Class Member recovery will likely exceed the compensation obtained in the similar *EcoDiesel* and *Mercedes* MDL settlements, despite the additional challenges faced here. § III.C.2.b, *infra*; *see also*. ECF 146 at 18-19. This outcome is "far better than most," (Fitzpatrick Decl. ¶ 22) and, thus, the "result obtained" factor also weighs heavily in favor of the requested fees. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016) (that counsel obtained a "cash common fund" was "especially significant" as a "substantial, tangible, and real

- 29 -

benefit for the class"); *Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 WL 18024840, at *11 (S.D. Fla. Dec. 30, 2022) (same, where the fund enabled all class members to "recover a portion of their losses").

> **b.** **Novel and difficult issues (factor 2) made the case undesirable for other plaintiffs' counsel (factor 10).**

This case shares some aspects of past diesel emissions litigations (*see*, *e.g.*, Complaint ¶ 1, 3), but it also presented unique and significant challenges. Settlement Class Counsel rose to meet those challenges, and did so with creativity, tenacity, and steadfast resolve.

Factually, this case was about complicated diesel engine technology, emissions systems, and the evolving regulatory frameworks that applied to them over time. Defendants included three corporate entities (one based in Japan) that played various roles in the manufacture, testing, or sale of the Settlement Class Trucks. Much of the relevant conduct occurred in Hino's emissions laboratories in Japan, where many witnesses were situated. Investigating allegations of years-long misconduct in a foreign laboratory required dogged persistence. To do so, Settlement Class Counsel worked closely with multiple experts to understand the intersection of the emissions regimes in Japan and the United States, and the testing protocols in each country, to inform their document discovery strategy. Plaintiffs then faced difficulties to process Japanese language documents, for which they hired attorneys fluent in Japanese to ensure accurate analysis. Settlement Class Counsel Decl. ¶ 6. These "difficult discovery and liability issues" show that this case "is not '[like] most lawsuits" and support the requested fees. *Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394-LSC, 2012 WL 2923542, at *19 (N.D. Ala. July 17, 2012) (awarding 35% of the settlement fund).

Moreover, unlike many other emissions cases, there was no formal Notice of Violation from the government to guide Settlement Class Counsel's investigation or boost the plausibility of

Plaintiffs' allegations. This made the case even more difficult and less desirable, a reality borne out in the relatively lean group of Plaintiffs' counsel willing to take it on. Emissions cases typically attract large cohorts of firms willing to litigate in the wake of a regulatory finding. For example, more than *thirty* firms applied for a 10-seat PSC in *EcoDiesel*, a case of comparable scale (approximately 100,000 vehicles). *EcoDiesel*, No. 17-md-2777 (N.D. Cal.) at ECF 173. And in *Volkswagen* "*Clean Diesel*," lead counsel and a 21 member PSC were selected from a crowded field of *150* applications. *VW Clean Diesel*, No. 15-md-2672 (N.D. Cal.) at ECF 1084. In this case, the three Settlement Class Counsel firms were the only ones who stepped up to the challenge and could not count on a broad group to share the burdens of complex litigation. They "should be rewarded for taking on a case from which other law firms shrunk." *In re Checking*, 2020 WL 4586398, at *19; *see also Morgan*, 301 F. Supp. 3d at 1257 ("No other law firm has taken the risk to bring this action and tackle these difficult issues.").

Legally, the threat of dispositive preemption arguments also made this a challenging case, particularly so as recent decisions affirmed dismissal of emissions cheating cases on similar grounds. *See, e.g.*, *In re Ford*, 65 F.4th at 866; *see also* Fitzpatrick Decl. ¶ 23 (characterizing preemption as a "serious risk"). Plaintiffs believed they had strong arguments to defeat preemption, but the commercial nature of the Settlement Class Trucks presented new twists. Arguably missing here were the ubiquitous "clean" or "eco" branding and similar consumer-facing representations that supported deceptive marketing claims in other emissions cases. This meant that a well-worn path around preemption through distinct consumer protection violations in misleading marketing was less apparent here. The Settlement Class Trucks' commercial nature also raised unique defenses to statutory consumer protection claims, which defendants argued were limited to

- 31 -

"consumers" and products used for "personal, family, or household purposes." *See, e.g.*, ECF 68 at 32.

The challenges did not end there. Looking ahead, Settlement Class Counsel would have to obtain litigation certification of a proposed class across a range of model years and engine types, implicating at least three emissions cheating tactics. Even then, all of the other inherent summary judgment, *Daubert*, trial, and appellate risks posed in complex class litigation awaited. "Class Counsel confronted these issues" from the outset and "nonetheless accepted the case and the risks that accompanied it," which provides still further support for the fees sought. *In re Checking*, 2020 WL 4586398, at \*20.

> c.    **With their significant experience in complex class cases (factor 9), Settlement Class Counsel had the skill this case required (factor 3).**

Settlement Class Counsel have years of experience in complex class action litigation and a strong track record in other automotive class actions. This includes serving as court-appointed plaintiffs' counsel in the *Volkswagen "Clean Diesel"* MDL, the *EcoDiesel* MDL, and the *Takata Airbag* MDL, as just a few examples of many.[24] Settlement Class Counsel Decl. ¶ 3.

Settlement Class Counsel's considerable experience benefitted the Settlement Class here. Among other things, it facilitated the early retention of technical experts in diesel engines and the emissions regulations. Because they knew where to look and what to look for, Settlement Class Counsel were able to serve targeted discovery right out of the gate and were ready to seek Court intervention proactively when Hino resisted. *Id.* ¶¶ 7-8, 10. Ultimately, this led to favorable rulings

---

[24]   *See* firm resumes for Lieff Cabraser, Baron & Budd, and Podhurst Orseck: https://www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf; https://baronandbudd.com/wp-content/uploads/FirmResume10-11-23.pdf; https://www.podhurst.com/landmark-cases/.

for Plaintiffs including on the scope of relevance and on the production of a key tranche of regulatory materials. *Id* ¶ 8. Had Settlement Class Counsel's pursuit of these materials been less targeted or less zealous from the start, the litigation would have undoubtedly drawn out much further, at minimum delaying the meaningful relief now available to the Settlement Class.

This all goes to show that Settlement Class Counsel's qualifications and expertise were valuable assets in this case—a factor that supports their requested fees. *See Millstein*, 2022 WL 18024840, at *13 (approving fee request in part because "Class Counsel . . . ha[d] extensive experience and expertise prosecuting complex class action[s]"); *see also Morgan*, 301 F. Supp. 3d at 1256 (counsel's "skill, sophistication, and creativity" from experience in consumer class actions meant an "excellent settlement" was reached "[d]espite the case's flaws").

Apart from Settlement Class Counsel's own background, Hino's counsel were experienced and highly respected litigators themselves. Their skilled advocacy "required Class Counsel to maintain the highest quality of representation to reach the point of settlement," *Millstein*, 2022 WL 18024840, at *13. This too tips in favor of the fee request here. *See Taylor*, 2023 WL 2346295, at *7 (success in facing "extremely capable counsel" from "a prominent national law firm" supported fee award); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.").

> **d.** **Settlement Class Counsel brought this action purely on a contingent basis (factor 6), and their work precluded other valuable efforts (factor 4).**

Because of the contingent fee structure here, "[f]rom the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the Class and, hence, no compensation." *Millstein*, 2022 WL 18024840, at *12. Settlement Class Counsel thus "took a significant risk in prosecuting this action." *Morgan*, 301 F. Supp. 3d at 1253. Compensation for

- 33 -

attorneys who assume contingent representation should reflect these risks. *Id*. (collecting cases). Without such a "bonus . . . very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money" required. *Id*. For these reasons, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Millstein*, 2022 WL 18024840, at \*11; *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001) (same).

This case is no exception. Settlement Class Counsel took on this litigation against well-resourced corporate defendants, represented by a top-tier firm. They devoted nearly two years and many thousands of attorney hours to the investigation, litigation, and settlement of Plaintiffs' claims, and invested approximately $400,000 in reasonable litigation expenses—all with no guarantee of reimbursement.

The resources spent on this case also detracted from Settlement Class Counsel's time and resources available for others. Settlement Class Counsel Decl. ¶ 25. As is necessary to prosecute any complex case, "Class Counsel put off other matters, outsourced work, and declined cases they would otherwise have pursued but for the efforts toward this case. Although Class Counsel successfully resolved this part of the litigation . . . [that] success was by no means assured." *Millstein*, 2022 WL 18024840, at \*12. The contingent fee and preclusion of other work also justify the reasonable fee sought.

**e.      The requested fees are in line with customary and recent awards in similar cases (factors 5 and 12).**

As explained above and in the accompanying declaration of Professor Fitzpatrick, the fee percentage requested here is below average, presumptively reasonable, and, even under the most conservative calculation, still within the customary range. *See* § III.C.1-2, supra; *see also e.g.*, *Gonzalez*, 2019 WL 2249941, at \*6 (fee awards of "one-third of the common settlement fund" are

"routinely approve[d]"); Fitzpatrick Decl. ¶¶ 15-27. *Johnson* factors five and twelve are also satisfied.

> **4.    Settlement Class Counsel's request for reimbursement of litigation expenses should be approved.**

Settlement Class Counsel are "entitled to be reimbursed from the class fund for the reasonable expenses incurred" in pursuing this action. *Behrens*, 118 F.R.D. at 549; *see also* Fed. R. Civ. P. 23(h). This includes expenses that are reasonable, necessary, directly related to the litigation, and normally charged to a fee-paying client. *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066, 2008 WL 11234103, at *6 (N.D. Ga. Mar. 4, 2008) (approving $2.4 million for reimbursement of litigation expenses); *Swift v. BancorpSouth Bank*, No. 1:10-cv-00090, 2016 WL 11529613, at *20 (N.D. Fla. July 15, 2016) (approving application for reimbursement of costs that "were necessarily incurred in furtherance of the litigation of the Action and the Settlement"); *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) (approving requested expenses as reasonable and necessary).

Here, Settlement Class Counsel seek $400,000 in litigation expenses, which includes $368,279.44 they already expended to advance the common benefit, as well as a $31,720.56 that Settlement Class Counsel are responsibly reserving to cover the anticipated costs associated with the future on-the-ground administration and Settlement implementation efforts. Settlement Class Counsel Decl. ¶ 27. At 0.09% of the total Settlement value, these costs are significantly less than the average costs awarded in class action settlements. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 267 (2010) (mean and median of 2.8% and 1.7% before 2002 and 2.7% and 1.7% thereafter); Theodore Eisenberg, Geoffrey P. Miller, and Roy Germano, *Attorneys' Fees in Class Action*

*Settlements: 2009-2013*, 92 N.Y.U. L. Rev. 937, 963 (2017) (mean and median of 3.9% and 1.7% since 2009).

More importantly, these costs are commensurate with the stakes, complexity, and intensity of this litigation. This includes, for example, approximately (1) $140,207.45 to employ technical experts on emissions system functionality, foreign and domestic emissions regulations, and testing processes. These experts worked hand-in-hand with Settlement Class Counsel from the beginning of the case, and their participation was a key factor in enabling counsel to advance the litigation effectively and efficiently. It also includes (2) $189,232.90 for reasonable travel expenses and mediation that were critical to the resolution of this case. These costs were incurred for, among other things, a full-day mediation in New York with an experienced mediator and former federal judge, Layn R. Phillips and his team; a critical settlement and confirmatory discovery trip to meet with Hino personnel in Tokyo; and travel to and from multiple discovery hearings in Miami. An additional (3) $16,930.50 was spent on translation services for the hundreds of thousands of pages produced in Japanese; and (4) $17,784.43 more was spent on legal research services and the electronic database necessary to host the significant volume of produced documents. The remaining costs include (5) $1,253.94 for mailings, messengers, and service of process; and (6) $2,820.22 for telephone, printing, transcripts, filing fees, and other miscellaneous charges. Settlement Class Counsel Decl. ¶ 28.

No doubt, this was a technical case, and it was expensive to prosecute. But, as other courts have recognized, "Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Gutierrez v. Amplify Energy Corp*., No. 8:21-CV-01628-DOC(JDEx), 2023 WL 3071198, at *7 (C.D. Cal. Apr. 24, 2023) (quoting *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31,

2014)). This is true, and Settlement Class Counsel expended only that which they believed was necessary to advance the interests of the Settlement Class. The requested costs are reasonable and should be reimbursed.

**IV.** **<u>Conclusion</u>**

Settlement Class Representatives and Settlement Class Counsel respectfully request that the Court certify the Settlement Class and appoint Settlement Class Counsel and Settlement Class Representatives; grant final approval to the Settlement; and award $78,766,666.67 in attorneys' fees and $400,000 in reasonable expenses. Plaintiffs will provide a proposed order with their reply brief.

Dated: January 22, 2024                 Respectfully submitted,

                                         _/s/ Peter Prieto_
                                        Peter Prieto (FBN 501492)
                                        Matthew P. Weinshall (FBN 84783)
                                        PODHURST ORSECK, P.A.
                                        One S.E. 3rd Ave, Suite 2300
                                        Miami, Florida 33131
                                        Telephone: 305-358-2800
                                        Facsimile: 305-358-2382
                                        E-mail: pprieto@podhurst.com

                                        David S. Stellings (*pro hac vice*)
                                        Wilson M. Dunlavey (*pro hac vice*)
                                        Katherine I. McBride (*pro hac vice*)
                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                        250 Hudson Street, 8th Floor
                                        New York, New York 10013-1413
                                        Telephone: 212.355.9500
                                        E-mail: dstellings@lchb.com

                                        Elizabeth J. Cabraser (*pro hac vice*)
                                        Phong-Chau G. Nguyen (*pro hac vice*)
                                        Kevin R. Budner (*pro hac vice*)
                                        Amelia A. Haselkorn (*pro hac vice*)
                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA 94111-3339
                                        Telephone: 415.956.1000
                                        E-mail: ecabraser@lchb.com

                                        Roland Tellis (pro hac vice)
                                        David Fernandes (pro hac vice)
                                        Adam Tamburelli (pro hac vice)
                                        Shannon Royster (pro hac vice)
                                        BARON & BUDD, P.C.
                                        15910 Ventura Boulevard, Suite 1600
                                        Encino, CA 91436
                                        Telephone: 818,839.2333
                                        Facsimile: 818.986.9698
                                        E-mail: rtellis@baronbudd.com

                                        *Counsel for Plaintiffs in*
                                        *Express Freight International, et al. v. Hino Motors, Ltd., et al.*

- 38 -

2922631.8

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

*/s/Peter Prieto*
Peter Prieto

2922631.8