**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:22-cv-22483-GAYLES/TORRES**

EXPRESS FREIGHT INTERNATIONAL, et al.,

    Plaintiffs,

v.

HINO MOTORS LTD., et al.,

    Defendants.

_____/

**ORDER OF DISMISSAL AND JUDGMENT GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL AND AWARD OF ATTORNEYS' FEES AND COSTS**

THIS CAUSE came before the Court on Plaintiffs' Motion for Final Settlement Approval and Award of Attorneys' Fees and Costs (the "Motion"). [ECF 151]. As the background, procedural history, and Settlement terms were summarized in the Court's Order Granting Preliminary Approval of Class Settlement and Directing Notice to the Settlement Class under Federal Rule 23(e), familiarity with it is presumed. *See* [ECF 148] ("Preliminary Approval Order").

Following the Court's Preliminary Approval Order, notice was sent to the Settlement Class via the Court-approved notice program, which delivered direct notice to "virtually all Class members." Supplemental Keogh Decl. ¶¶ 4-6, 16. The Settlement Class's response to the Settlement has been overwhelmingly positive, with an unusually high claims rate and no objections. *Id.* ¶¶ 10, 12.

1

The Court has considered the Parties' briefs and accompanying submissions, the reactions of Settlement Class Members, and the arguments at the April 1, 2024, final fairness hearing, and the Court hereby **GRANTS** the Motion.

I. **CLASS CERTIFICATION AND SETTLEMENT APPROVAL**

    A. **Class Certification for Settlement**

Plaintiffs seek to certify a single nationwide class for settlement purposes only under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3). Preliminary Approval Order at 2. Upon granting preliminary approval, the Court found that, for settlement purposes only, it was likely to be able to certify the Settlement Class, defined as follows:

> All persons or entities that purchased a Settlement Class Truck, or leased a Settlement Class Truck, through the date of the Preliminary Approval Order.

The following entities and individuals are excluded from the Settlement Class:

> (a) Defendants' officers, directors, and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; Released Parties;
>
> (b) Judicial officers and their immediate family members and associated court staff assigned to this case; and
>
> (c) All those otherwise in the Settlement Class who or which timely and properly exclude themselves from the Settlement Class as provided in the Class Action Agreement.

*Id*.

The Court also preliminarily found that certification for purposes of settlement only was proper because the putative class met all the Rule 23(a) and (b)(3) requirements. *Id*. at 3-4. Consistent with the Preliminary Approval Order, the Court grants final certification of the Settlement Class. Specifically, the Court finds, for settlement purposes only, that:

(1) the Settlement Class Members are sufficiently numerous such that joinder is impracticable, *see* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Transp.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area");

(2) there are questions of law and fact common to Settlement Class Members, *see* Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009);

(3) proposed Settlement Class Representatives' claims are typical of those of the Settlement Class Members, *see* Fed. R. Civ. P. 23(a)(3); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory");

(4) proposed Settlement Class Representatives and Settlement Class Counsel have fairly and adequately represented, and will continue to fairly and adequately represent, the interests of the Settlement Class Members, *see* Fed. R. Civ. P. 23(a)(4); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001); and

(5) the predominance and superiority requirements of Rule 23(b)(3) are satisfied, *see Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010).

### B.     Final Approval of the Settlement Agreement

#### 1.     <u>Notice to Settlement Class Members</u>

The Court must ensure that "notice [is given] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Class members must be "given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action." *Fought v. Am. Home Shield Corp.*, 668 F.3d

1233, 1239 (11th Cir. 2011) (internal quotations omitted). In an action certified under Rule 23(b)(3), "class members should receive 'the best notice that is practicable under the circumstances.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)). A claim process that involves "completing a one-page form and submitting it either online or by mail" is not "particularly difficult or burdensome." *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (per curiam).

The Court finds that Settlement Class Notice program was implemented in the manner approved by the Court in its Preliminary Approval Order. *See* Supplemental Keogh Decl. ¶¶ 4-9, 16. The Court finds that the form, content, and methods of disseminating notice to the Settlement Class Members: (1) comply with Rule 23(c)(2) of the Federal Rules of Civil Procedure as they are the best practicable notice under the circumstances and are reasonably calculated to apprise the Settlement Class Members of the pendency of this Action, the terms of the Settlement, and their right to object to the Settlement; (2) comply with Rule 23(e), as they are reasonably calculated to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including, but not limited to, their right to object to, or opt out of, the proposed Settlement and other rights under the terms of the Settlement Agreement; (3) comply with Rule 23(h), as they are reasonably calculated to apprise the Settlement Class Members of any motion by Settlement Class Counsel for reasonable attorney's fees and costs, and their right to object to any such motion; (4) constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (5) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c), (e), and (h), and the Due Process Clause of the United States Constitution.

## 2. The Settlement is Fair, Reasonable, and Adequate

A "court may approve [a settlement agreement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the Court must consider whether "(A) the class representatives and Plaintiff's counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:" accounting for the risks of trial, the effectiveness of the proposed method of relief, and the terms of the fee award; and "(D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Along with the criteria from Rule 23(e), courts in this Circuit also look to the following six *Bennett* factors, which overlap with the federal rule: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *3-4 (S.D. Fla. May 24, 2019) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

At the preliminary approval stage, the Court considered the proposed Settlement Agreement and concluded that the Settlement was fair, reasonable, and adequate. *See* Preliminary Approval Order at 2-3. For the reasons below, and following the fairness hearing, the Court confirms that final approval of the Settlement is appropriate under Rule 23(e)(2) and the *Bennett* factors.

        **a.**        **Rule 23(e)(2)(A): Settlement Class Representatives and Settlement Class Counsel adequately represented the Settlement Class.**

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Here, Settlement Class Counsel and the Settlement Class Representatives fought hard to protect the interests of the Settlement Class and devoted substantial time and resources to the litigation both before and after mediation. *See* Motion at 9-10. As a result of their efforts, Settlement Class Counsel obtained a Settlement worth over $445.5 million, including a $237.5 million non-reversionary cash benefit. Thus, this factor favors final approval.

        **b.**        **Rule 23(e)(2)(B): The Settlement was reached after extensive, complex litigation as well as informed, arm's-length negotiations (*Bennett* factors four and six).**

The Settlement is the product of arm's-length negotiations by the Parties through an experienced mediator, former United States District Judge Layn R. Phillips (Ret.), and comes after adequate investigation of the facts and legal issues through motion practice, extensive document discovery, and questioning of Hino Japan personnel and representatives directly about the alleged misconduct and Hino's internal investigations. *See* Motion at 10-12. The arm's-length discussions overseen by Judge Phillips and the developed factual record support approval here. *See Gonzalez*, 2019 WL 2249941, at *4 (settlement reached after "arm's length" negotiations before a retired U.S. District Court Judge found to be non-collusive); *Kukorinis v. Walmart, Inc.*, No. 19-20592-CV, 2021 WL 8892890, at *7 (S.D. Fla. Sept. 20, 2021) (the parties fully briefed a dispositive motion to dismiss on the merits, engaged in informal discovery, and exchanged additional information during the mediation process, which provided class counsel sufficient information to analyze the strengths and weaknesses of the case).

        **c.**      **Rule 23(e)(2)(C): The substantial relief from the Settlement is fair, reasonable, and adequate (*Bennett* factors two and three).**

Rule 23(e)(2)(C) and the first, second, and third *Bennett* factors require the Court to determine whether the Settlement benefits are fair, reasonable, and adequate taking into account the range of recovery; costs, risks, and delay of trial and appeal; the effectiveness of the proposed distribution plan and claims program; and the fair terms of the anticipated requested award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C); *Gonzalez*, 2019 WL2249941, at *4-5.

Here, the Settlement provides substantial relief to the Settlement Class, including a non-reversionary cash fund of $237.5 million, a robust Extended Warranty valued at $208 million by a leading automotive warranty valuation expert retained by the Plaintiffs, and a five-year New Parts Warranty if the Settlement Class Trucks are recalled in the future. Based on this valuation, which no Settlement Class Member has questioned and which the Court finds reasonable, these benefits combined are worth more than $445,500,000.00—and no Settlement Class Member has raised concern with this valuation. *See* Motion at 1. Based on current claim projections, this is likely to yield $3,500 and $4,500 per truck—a recovery that meets or exceeds those offered in comparable diesel emissions settlements. *See* Reply at 1. The Court has already found that the benefits provided to the Settlement Class are fair, reasonable, and adequate. Preliminary Approval Order at 2-3. The Court now confirms that conclusion for the following reasons.

First, the Settlement benefits are significant given the inherent costs, risks, and delay of trial and appeal. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii); *Gonzalez*, 2019 WL 2249941, at *4 (*Bennett* factor one, likelihood of success). Significant hurdles remained in the litigation at the time the Parties reached Settlement, such as potentially case-dispositive preemption and jurisdictional defenses raised in Hino's motion to dismiss. Motion at 14-15; *see also* Defs.' Mem. In Support of Mot. for Final Approval of Class Action Settlement, Part I. Even if Plaintiffs' claims survived the

7

pleading stage, they likely faced several years more of litigation and additional procedural hurdles (class certification, summary judgment, *Daubert*, etc.), any of which could have significantly weakened or even ended their case. *Id.* at 15. At best, Plaintiffs would then face the uncertainties of trial, in which "the range of possibility spans from a finding of non-liability to a varying range of monetary . . . relief." *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014).

By reaching this Settlement, Plaintiffs avoided years of additional, costly, and risky litigation in exchange for immediate and significant cash payments and warranties. Motion at 15. This compromise inured to the benefit of the Settlement Class, which strongly favors final approval. *See Gonzalez*, 2019 WL 2249941, at *5 (settlement approval supported in part by the "potential for expensive and time-consuming litigation absent a settlement"); *Saccoccio*, 297 F.R.D. at 694 (approving class action settlement where "[t]he parties have already expended significant energy and money litigating this case and propounding discovery, and, absent settlement, would have had to expend significant resources in litigating a protracted trial and appeal"); *Lipuma*, 406 F. Supp. 2d at 1323 ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

Second, the Settlement benefits fall squarely within the range of possible recovery and the point in the range of possible recovery at which a settlement is fair, adequate, and reasonable, satisfying *Bennett* factors two and three. *See Gonzalez*, 2019 WL 2249941, at *4. The result here compares favorably to Settlement Class Members' potential damages estimates. Although a precise calculation of damages would require expert testimony at a later stage of the litigation, a comparison with damages in similar cases is instructive. For example, in *EcoDiesel*, the plaintiffs presented expert testimony on an overpayment "premium" theory (like the theory of damages

8

advanced by Plaintiffs here) that measured the benefit-of-the-bargain losses incurred when the plaintiffs paid for over-polluting diesel vehicles. *See* Decl. of Colin Weir, *EcoDiesel*, ECF 327-4, ¶¶ 47-51. The quantified value was about $4,500 per vehicle. *Id.* These damages from *EcoDiesel* inform the scope of likely damages in this case given the similarities in the defendants' alleged misconduct and the resulting injuries to Settlement Class Members. The individual Settlement recoveries here are therefore likely to be a significant percentage of Plaintiffs' potential trial recovery, as approximated by the *EcoDiesel* analysis. This strongly supports the proposed resolution.

Indeed, a negotiated resolution can be fair, reasonable, and adequate even where it recovers a much lower proportion of available damages. *See* Fitzpatrick Decl. ¶ 22 (considering the *EcoDiesel* damages model and concluding that even based on a conservative, cash-only valuation without considering the warranty, the Settlement here would still represent an "excellent recovery" of at least "half of the class's possible damages"); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-cv-20880-UU, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (describing as "excellent" and an "outstanding result" a recovery of 5.5% of the class's maximum damages and 10% of the class's most likely damages).

Moreover, the Settlement benefits are likely to match, and even exceed, compensation in settlements of similar diesel emissions cases that resolved later in their respective lifecycles. *See*, *e.g.*, *EcoDiesel*, 2019 WL 2554232, at *1 (final settlement approval providing a maximum of $3,075 per vehicle *after* surviving motions to dismiss and after the U.S. regulators issued a formal notice of violation); *In re Mercedes-Benz Emissions Litig.*, No. 2:16-cv-881 (KM) (ESK), 2021

9

WL 7833193, at *3 (D.N.J. Aug. 2, 2021) (settled with the manufacturer for $3,290 per vehicle *after* surviving motions to dismiss). Here, unlike in *EcoDiesel* and *Mercedes*, the U.S. regulators have not weighed in, and Defendants' multiple motions to dismiss remain unresolved. This provides strong support for the result here. *See Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) ("[A] comparison of settlements in similar cases is relevant to whether a settlement is fair, adequate and reasonable.").

Third, the Settlement distributes compensation through a streamlined and flexible claims process, thereby satisfying Rule 23(e)(2)(C)(ii). Because the Settlement is non-reversionary, no unused funds will be returned to Hino. Motion at 16. Moreover, the Settlement Claims process builds from successes in other automotive settlements and is designed to be straightforward, efficient, and user-friendly. Settlement Class Members need only submit a short claim form online or by mail (at their choosing), and may be asked to submit basic supporting documentation, *e.g.*, proof of ownership or lease, only where such information is necessary to verify the claim. *Id*. Settlement Class Members who submit a valid claim will be paid after the Effective Date and can select streamlined e-payments if desired. *Id*. All eligible Settlement Class Trucks will automatically receive the robust Extended Warranty protections without the need for any claim at all. *Id*.

Finally, for the reasons addressed in Section II, the terms of any proposed award of attorneys' fees, including timing of payment, also support approval of the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Preliminary Approval Order at 3 ("Settlement Class Counsel's proposed request for attorneys' fees . . . appears reasonable.").

### d. Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably relative to each other.

Rule 23(e)(2)(D) requires that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. (e)(2)(D). Here, this factor favors final approval because the Settlement

uses transparent and objective criteria to equitably apportion Settlement Class Member payments and ensures that claims administration is feasible, cost effective, and streamlined for Settlement Class Members.

Specifically, cash payments for all Settlement Class Trucks with valid claims will be divided evenly (per capita). Settlement Agreement ¶ 4.1. If more than one valid claim is received for the same Settlement Class Truck, the original owner who purchased new will receive 60% of the allocated funds, and the 40% remainder will be distributed evenly to or among the other valid claimant(s). This allocation equitably accounts for the trucks' greater value at their original sale, such that the damages incurred as a relative percentage of vehicle value are also highest for new purchasers. *See In re Blue Cross*, 85 F.4th at 1093 ("[T]he text of the amended rule requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally."). It also reflects the reality that original purchasers face fewer legal hurdles and likely present stronger claims for relief. *See id.* at 1093-94 (affirming approval of allocation formula that took into account the "comparative strengths of each class's … claims"); *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-md-02672-CRB, 2022 WL 17730381, at *8 (N.D. Cal. Nov. 9, 2022) (concluding allocation formula was equitable where differing payment amounts "roughly correspond[ed] to the strength of [class members'] claims and the likelihood of damages at trial").

        e.    **Settlement Class Members are engaged and showing support (*Bennett* factor five).**

"The reaction of the class [to the settlement] is an important factor." *Saccoccio*, 297 F.R.D. at 694 (internal quotations and citations omitted). In this case, it overwhelmingly supports final approval. The Settlement Class consists of more than 100,000 members, "virtually all" of whom received direct notice. Supplemental Keogh Decl. ¶ 16. Remarkably, given the size of the Settlement Class, no Settlement Class Members objected, and only one opted out. *Id.* ¶¶ 10-11.

11

This is an exceptionally positive response from the Settlement Class that strongly supports final approval. *See, e.g.*, *Gonzalez*, 2019 WL 2249941, at *5 ("[A] lack of opposition, and implicitly overwhelming Settlement Class Member support, weighs strongly in favor of the Court's approval of the Settlement Agreement."); *Fruitstone v. Spartan Race, Inc.*, No. 20-CV-20836, 2021 WL 2012362, at *10 (S.D. Fla. May 20, 2021) (low number of opt outs (eight) and objections (two) demonstrated "overwhelming support" from the Settlement Class and provided strong "evidence of the Settlement's fairness").

## II. THE REQUESTED ATTORNEYS' FEES AND COSTS

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When a class settlement establishes a calculable monetary benefit, attorneys' fees are awarded based on a "reasonable percentage of the fund established for the benefit of the class." *In re Blue Cross Blue Shield Antitrust Litig.* MDL 2406, 85 F.4th 1070, 1100 (11th Cir. 2023). The value of the benefit obtained for the Settlement Class includes both cash compensation and, if reasonably quantified, the value of any non-monetary benefits. *Carter v. Forjas Taurus*, S.A., No. 16-15277, 2017 WL 2813844, at *5 (11th Cir. June 29, 2017) (holding that fee award was appropriately measured as "a reasonable percentage of the settlement value," including the value of an enhanced warranty); *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *19 (S.D. Fla. July 13, 2021) (similar).

The Settlement before the Court secures $445.5 million in calculable monetary benefits for the Settlement Class. As described above, this includes a $237.5 million cash fund, plus Extended Warranty benefits calculated by a warranty valuation expert to provide at least $208 million in additional, quantifiable benefits. ECF 151-3. The Settlement's benefits are non-reversionary,

eliminating incentive to discourage Settlement Class members' participation in the Settlement and ensuring that the full value is put towards the Settlement Class and its interests.

From this amount, Settlement Class Counsel requests $79,158,750, which includes an award of $78,766,666.67 in attorneys' fees and $392,083.33 in reasonable expenses, to be paid from the Settlement Fund. *See* Settlement Agreement ¶ 14.2. The requested fee represents approximately 17.7% of the $445.5 million Settlement Class Counsel obtained for the Class, which sits well below the "presumptively reasonable" range of 20 to 25 percent, *In re Blue Cross*, 85 F.4th at 1100, and likewise below the mean and median award percentages in this Circuit. *See* ECF 151-2, Declaration of Brian T. Fitzpatrick, ¶ 19 (summarizing data that the average and median awards in this Circuit were 28.1% and 30%, respectively).

Even under a more conservative framework that excludes the Extended Warranty value, Settlement Class Counsel's fee request represents approximately 33% of the Settlement Fund. This remains well in line with fee awards regularly approved in similar cases and is reasonable and justified by the facts of this case—particularly given the excellent recovery and the extensive warranty (which would, in this alternative analysis, be a significant plus factor). *See Gonzalez*, 2019 WL 2249941, at *6 ("[D]istrict courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782-Civ, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (finding 35% fee award reasonable, noting "Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund"). Consistent with the foregoing, the Court finds that requested fee percentage is reasonable.

Because Settlement Class Counsel's below-20% fee request is "presumptively reasonable," the Court is not required to further analyze the *Johnson* factors, which apply in the assessment of

requested fee awards exceeding 25% of the settlement fund. *In re Blue Cross*, 85 F.4th at 1100. Regardless, the Court considers the applicable factors briefly below and concludes that the factors further establish that the fee request is reasonable.[1] The twelve *Johnson* factors include: "(1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because [they] accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242-43 (11th Cir. 2011) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (11th Cir. 2011)).

Weighing strongly in favor of the request are *Johnson* factors eight and one: the substantial result obtained for the Settlement Class ($445.5 million dollars, with individual recovery likely in the thousands of dollars), and time and labor required to secure it through more than fifteen months of active litigation, which itself followed from a significant pre-filing investigation that counsel began in March 2022. ECF 151-1, Settlement Class Counsel Decl. ¶ 5

The result is also particularly strong considering the novelty, difficulty, and undesirability of the Plaintiffs' case (factors 2 and 10). Class action litigation is generally complex, and the Court is well-informed of the various challenges Settlement Class Counsel faced in litigating this action, including the comprehensive legal challenges from Defendants' pending motions to dismiss. ECF 68. Settlement Class Counsel faced unique challenges to prosecute Plaintiffs' claims with much of

---

[1] The Court does not consider *Johnson* factors 7 and 11, which Settlement Class Counsel has not addressed and which do not appear to be applicable here.

relevant conduct, witnesses, and information located in Japan (and in Japanese). Moreover, unlike other vehicle emissions cases described in Plaintiffs' motion, counsel lacked a Notice of Violation from the government to shape and strengthen Plaintiffs' claims. The Court further concludes Settlement Class Counsel's qualifications and experience in complex class action cases, including prior automotive defect cases (*see* ECF 151-1, Settlement Class Counsel Decl. ¶ 3), enabled them to face these risks and challenges while up against capable defense counsel (factors 3 and 9).

The remaining *Johnson* factors are equally supportive, as Settlement Class Counsel undertook this litigation on a contingency and thus faced the possibility that they would receive no compensation while they dedicated time and resources to this case, and not others. Put another way, the substantial work necessitated by this case diverted Settlement Class Counsel from putting time and resources into other matters (factors 4 and 6). Finally, as explained above, the 17.7% fee request is both presumptively reasonable and well within the customary range approved in this Circuit (factors 5 and 12).

The requested costs are also reasonable. As reported in the motion and accompanying declaration, the amount spent on each of the cost categories is commensurate with the scope of this litigation, and, at just 0.09% of the total Settlement value, the aggregate costs are significantly less than the average costs awarded in class action settlements. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 267 (2010) (mean and median of 2.8% and 1.7% before 2002 and 2.7% and 1.7% thereafter); Theodore Eisenberg, Geoffrey P. Miller, and Roy Germano, *Attorneys' Fees in Class Action Settlements: 2009-2013*, 92 N.Y.U. L. Rev. 937, 963 (2017) (mean and median of 3.9% and 1.7% since 2009).

For all these reasons, Settlement Class Counsel's request for $78,766,666.67 in attorneys' fees and $392,083.33 in expenses is reasonable and supported, and the motion is hereby **GRANTED.**

### III. CONCLUSION

Accordingly, the Court hereby orders, adjudges, finds, and decrees as follows:

1. The Court hereby **CERTIFIES** the Settlement Class for settlement purposes only and **GRANTS** the Motion for Final Approval of the Settlement. The Court fully and finally approves the Settlement in the form contemplated by the Settlement Agreement, [ECF 146-1], and finds its terms to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23. The Court directs the consummation of the Settlement pursuant to the terms and conditions of the Settlement Agreement.

2. The Court **DISMISSES** the Action and all claims contained therein, as well as all the Released Claims, with prejudice as to the Parties, including the Settlement Class. The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement.

3. Only those persons who timely submitted valid requests to opt out of the Settlement Class are not bound by this Order and are not entitled 'to any recovery from the Settlement. The only valid exclusion request received is listed in Exhibit A to this order.

4. As of the Effective Date, in consideration of the benefits provided under the Class Action Agreement, and for other good and valuable consideration set forth in the Class Action Agreement, Releasing Parties shall be deemed to have fully, finally, and forever released and discharged Released Parties from the Released Claims, as those terms are defined in the Settlement Agreement. The full terms of the release described in this paragraph are set forth in Section 11 of the Settlement Agreement. The Court and this Order expressly adopts and incorporates by

reference Section 11 of the Settlement Agreement. The Released Parties may file the Class Action Agreement and/or this Order in any other litigation to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any similar defense or counterclaim.

5. The Court **CONFIRMS** the appointment of David Stellings of Lieff Cabraser Heimann & Bernstein, LLP, Roland Tellis of Baron & Budd P.C., and Peter Prieto of Podhurst Orseck, P.A. as Settlement Class Counsel.

6. The Court **CONFIRMS** the appointment of the Settlement Class Representatives listed as Plaintiffs in the operative Complaint. [ECF 1].

7. The Court **CONFIRMS** the appointment of JND Legal Administration as Claims and Notice Administrator.

8. The Court **GRANTS** Class Counsel's request for attorneys' fees and costs, and AWARDS Class Counsel of $78,766,666.67 in attorneys' fees and $392,083.33 in expenses.

9. The Court hereby discharges and releases the Released Claims as to the Released Parties, as those terms are used and defined in the Settlement Agreement.

10. The Court hereby permanently bars and enjoins the institution and prosecution by Settlement Class Plaintiffs and any Settlement Class Member of any other action against the Released Parties in any court or other forum asserting any of the Released Claims, as those terms are used and defined in the Settlement Agreement. This permanent bar and injunction is necessary to protect and effectuate the Class Action Agreement and this Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction and to protect its judgments. Notwithstanding the foregoing, nothing in this Order and the accompanying Judgment shall preclude an action to enforce the terms of the Class Action Agreement.

11. Pursuant to the terms of the Class Action Agreement, Settlement Class Representatives, Settlement Class Counsel, Defendants, and Defendants' Counsel release and forever discharge each other from any and all claims relating to the institution or prosecution of the Action.

12. The Court further reserves and retains exclusive and continuing jurisdiction over the Settlement concerning the administration and enforcement of the Settlement Agreement and to effectuate its terms. Settlement Agreement ¶ 5.4.

13. This Final Approval Order, the accompanying Judgment, the Preliminary Approval Order, the Class Action Agreement, and all negotiations, statements, agreements, and proceedings relating to the Class Action Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements shall not constitute, be described as, construed as, offered or received against Defendants or the other Released Parties as evidence or an admission of: (a) the truth of any fact alleged by Settlement Class Representatives in the Action; (b) any liability, negligence, fault, or wrongdoing of Defendants or the Released Parties; or (c) that this Action or any other action may be properly certified as a class action for litigation, non-settlement purposes.

14. Under Rule 54(b) of the Federal Rules of Civil Procedure, no just reason exists for delay in entering final judgment. The Court accordingly directs the Clerk to enter final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of April, 2024.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE